# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED, ET AL.,<br><br>          Plaintiffs and<br>          Consolidated Plaintiffs,<br><br>      v.<br><br>UNITED STATES,<br><br>          Defendant. | Consol. Court No. 22-00069<br><br>**<u>NON-CONFIDENTIAL VERSION</u>**<br><br>Business Proprietary Information has been deleted on page 6 |

**MEMORANDUM IN SUPPORT OF THE RULE 56.2 MOTION
OF CONSOLIDATED PLAINTIFF JIANLONG BIOTECHNOLOGY CO. LTD.,
FOR JUDGMENT UPON THE AGENCY RECORD**

Submitted by:

**Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760**

*Counsel to Consolidated Plaintiff
Jianlong Biotechnology Co., Ltd.*

Dated: July 19, 2022

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

I.      STATEMENT PURSUANT TO RULE 56.2(c) ........................................... 1

II.     STANDARD OF REVIEW ........................................................................... 2

III.    STATEMENT OF FACTS .............................................................................. 3

IV.     SUMMARY OF ARGUMENT ...................................................................... 7

V.      ARGUMENT .................................................................................................. 8

        A.      Substantial Evidence Does Not Support Commerce's Assignment of a Dumping
                Rate to Meihua Based on Adverse Facts Available................................................ 8

        B.      Commerce's Determination to Assign Separate Rate Respondents the Simple
                Average of the AFA Rate Assigned to Meihua and the 0% Rate Assigned to
                Fufeng Is Not Supported by Substantial Evidence ................................................. 9

VI.     RELIEF REQUESTED................................................................................... 17

# TABLE OF AUTHORITIES

**Judicial Precedent**

Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330 (Fed. Cir. 2002) .....................2

CS Wind Vietnam Co. v. United States, 832 F.3d 1367 (Fed. Cir. 2016) ......................................2

Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978 (Fed. Cir. 1994) .........2

Nippon Steel Corp v. United States, 458 F.3d 1345 (Fed. Cir. 2006) ............................................2

Dorbest v. United States, 30 C.I.T. 1671, 462 F. Supp. 2d 1262 (2006) ........................................2

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29 (1983) .............................3

Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370 (Fed. Cir. 2013)
.......................................................................................................................................10, 15, 16

Albemarle Corp. v. United States, 821 F.3d 1345 (Fed. Cir. 2016) .............................................14

Bosun Tools Co., Ltd. v. United States, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022) .....................16

Hamilton v. Brown, 39 F.3d 1574 (Fed. Cir. 1994).......................................................................16

**Statutes**

19 U.S.C. § 1516a(b)(l)(B)(i) ..........................................................................................................1

19 U.S.C. § 1673d(c)(5)(B) ....................................................................................................5, 11, 16

19 U.S.C. § 1677e(a).....................................................................................................................5, 8

19 U.S.C. § 1677e(b) ................................................................................................................5, 7, 8

19 U.S.C. § 1673d(c)(1)(B)(i)(II) ...................................................................................................10

19 U.S.C. § 1673d(c)(5)(A) ............................................................................................................11

**Administrative Determinations**

Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty
Administrative Review and Final Determination of No Shipments; 2019-2020, 87 Fed. Reg.
7,104 (Dep't Commerce February 8, 2022)........................................................................1, 6, 17

Issues and Decision Memorandum for the Final Results of the 2019-2020 Antidumping Duty

Administrative Review of Xanthan Gum from the People's Republic of China (Jan. 31, 2022) .................................................................................................................................1, 6, 7, 11

Xanthan Gum from the People's Republic of China: Amended Final Determination of Sale at Less Than Fair Value and Antidumping Duty Order, 78 Fed. Reg. 43,143 (Dep't Commerce July 19, 2013) .................................................................................................................................2

Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 85 Fed. Reg. 39,531 (Dep't Commerce July 1, 2020)...............3

Initiation of Antidumping and Countervailing Duty Administrative Reviews, 85 Fed. Reg. 54,983 (Dep't Commerce September 3, 2020) ..............................................................................3

Xanthan Gum From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2019-2020, 86 Fed. Reg. 42,781 (Dep't Commerce August 5, 2021)...............................................................................................................................4, 5

Xanthan Gum From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015–2016, 83 Fed. Reg. 6,513 (Dep't Commerce Feb. 14, 2018) ......................................................................................13

Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Discontinuation of Antidumping Duty Administrative Review; 2016–2017, 83 Fed. Reg. 65,143 (Dep't Commerce Dec. 19, 2018)...............................................................................................................................13

Xanthan Gum From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2016–2017, 86 Fed. Reg. 26,905 (Dep't Commerce May 18, 2021) .................................................................................................................................13

Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017–2018, 84 Fed. Reg. 64,381 (Dep't Commerce Nov. 25, 2019) ...................................................................................13

Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2018–2019, 86 Fed. Reg. 16,189 (Dep't Commerce Mar. 26, 2021).....13

**Other Authority**

Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-826, Vol. I (1994), *reprinted in* 1994 U.S.C.C.A.N. 3773 .................................6, 11

**MEMORANDUM IN SUPPORT OF THE RULE 56.2 MOTION
OF CONSOLIDATED PLAINTIFF JIANLONG BIOTECHNOLOGY CO. LTD.,
FOR JUDGMENT UPON THE AGENCY RECORD**

## I.  STATEMENT PURSUANT TO RULE 56.2(c)

Consolidated Plaintiff, Jianlong Biotechnology Co., Ltd. ("Jianlong" or "Consolidated Plaintiff"), hereby moves for judgment upon the agency record with respect to its complaint challenging the final results of the administrative review of the antidumping duty order on xanthan gum from the People's Republic of China (Case No. A-570-985), issued by the U.S. Department of Commerce ("Commerce"), International Trade Administration, in <u>Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020</u>, 87 Fed. Reg. 7104 (Dep't Commerce February 8, 2022), PR 317 ("<u>Final Results</u>").[1]  The challenged determination, findings, and conclusions are set forth in Commerce's unpublished Issues and Decision Memorandum.  <u>See</u> Issues and Decision Memorandum for the Final Results of the 2019-2020 Antidumping Duty Administrative Review of Xanthan Gum from the People's Republic of China (Jan. 31, 2022), PR 312 ("Final Decision Memo").

Consolidated Plaintiff seeks judgment upon the agency record with respect to the following two issues:

1. Whether Commerce's application of facts available with an adverse inference, or total adverse facts available ("AFA"), to assign a dumping margin to Meihua Group International Trading (Hong Kong)/ Xinjiang Meihua Amino Acid Co., Ltd. (collectively "Meihua") was supported by substantial evidence and otherwise in accordance with law; and

2. If Commerce's application of total AFA to Meihua was in accordance with law and supported by substantial evidence, whether its determination was supported

---

[1]  Citations to public documents from Commerce's Administrative Record List are designated as "PR __," and citations to confidential documents are designated as "CR __."  All record documents cited will be included in the Joint Appendix to be filed with the Court.

by substantial evidence or otherwise in accordance with law where Commerce assigned a dumping rate to cooperating respondents that were not individually investigated, including Jianlong, based on the simple average of: (a) the total AFA rate assigned to Meihua; and (b) the calculated margin of 0.00% for Neimenggu Fufeng Biotechnologies Co., Ltd., and its affiliates, Shandong Fufeng Fermentation Co., Ltd. (Shandong Fufeng) and Xinjiang Fufeng Biotechnologies Co., Ltd. (Xinjiang Fufeng) (collectively "Fufeng").

## II.    STANDARD OF REVIEW

This Court is required to hold Commerce's determinations in antidumping duty proceedings unlawful if they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(l)(B)(i). In reviewing for substantial evidence, the Court must search for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The substantiality of evidence must account for anything in the record that reasonably detracts from its weight. CS Wind Vietnam Co. v. United States, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (quoting Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997)). This includes "contradictory evidence or evidence from which conflicting inferences could be drawn." Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951)).

These standards require the Court to view the record as a whole, and "can be translated roughly to mean 'is {the determination} unreasonable?'" Nippon Steel Corp v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (citation omitted). To affirm Commerce's determination, the agency must have provided "a reasoned explanation ... that is supported by the administrative record." Dorbest v. United States, 30 C.I.T. 1671, 1677-78, 462 F. Supp. 2d 1262, 1269-70 (2006) (citing Goldlink Indus. Co. v. United States, 30 C.I.T. 616, 629, 431 F. Supp. 2d. 1323, 1334 (2006)). That is, "the agency must {have} examine{d} the relevant data and articulate{d} a

**Consolidated Plaintiff's Rule 56.2 Memorandum**
**Consol. Court No. 22-00069**

*Non-Confidential Version*

satisfactory explanation for its action including a 'rational connection between the facts found

and the choice made.'" <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.</u>, 463 U.S. 29,

43 (1983) (<u>citing</u> <u>Burlington Truck Lines v. United States</u>, 371 U.S. 156, 168 (1962)).

## III. <u>STATEMENT OF FACTS</u>

On July 13 2013, Commerce published in the *Federal Register* an antidumping duty

("AD") order on xanthan gum from China. <u>See</u> <u>Xanthan Gum from the People's Republic of</u>

<u>China: Amended Final Determination of Sale at Less Than Fair Value and Antidumping Duty</u>

<u>Order</u>, 78 Fed. Reg. 43,143 (Dep't Commerce July 19, 2013) *("*<u>Order</u>*")*. Subsequently, on July

1, 2020, Commerce published in the *Federal Register* a notice of opportunity to request an

administrative review of the AD order on xanthan gum from China for the period July 1, 2019,

through June 30, 2020. <u>See</u> <u>Antidumping or Countervailing Duty Order, Finding, or Suspended</u>

<u>Investigation; Opportunity to Request Administrative Review</u>, 85 Fed. Reg. 39,531 (Dep't

Commerce July 1, 2020).

Commerce received requests to conduct administrative reviews of the AD order on

xanthan gum from China in July 2020 for numerous companies, including, among others,

Meihua; Fufeng; Deosen Biochemical (Ordos) Ltd./ Deosen USA Inc. (collectively "Deosen");

and CP Kelco (Shandong) Biological Co., Ltd.; as well as for Consolidated Plaintiff. On

September 3, 2020, Commerce published a notice of initiation of administrative review for

multiple companies, including Consolidated Plaintiff. <u>See</u> <u>Initiation of Antidumping and</u>

<u>Countervailing Duty Administrative Reviews</u>, 85 Fed. Reg. 54,983 (Dep't Commerce September

3, 2020). Commerce's period of review was July 1, 2019, through June 30, 2020.

On October 2, 2020, prior to Commerce's selection of mandatory respondents, and

without knowing whether it would be selected as a mandatory respondent, Jianlong timely

**Consolidated Plaintiff's Rule 56.2 Memorandum**
Consol. Court No. 22-00069

*Non-Confidential Version*

submitted a separate rate application to Commerce.  See Jianlong Separate Rate Application

(Oct. 2, 2020), PR 29, CR 4CR 7.  On June 8, 2021, Jianlong also submitted a response to a

separate rate application supplemental questionnaire issued by Commerce.  See Jianlong

Separate Rate Application Supplemental Response (June 8, 2021), PR 233, CR 148.

On October 26, 2020, after considering the large number of potential producers/exporters

involved in the administrative review, Commerce selected Meihua and Fufeng as mandatory

respondents because it determined that it was not practicable to examine all exporters/producers

of subject merchandise for which a review was requested.  See Selection of Respondents for the

2019-2020 Administrative Review of the Antidumping Duty Order on Xanthan Gum from the

Republic of China (Oct. 26, 2020), PR 39, CR 16.  As a result, Commerce issued the AD

questionnaire to Meihua and Fufeng.  See Letter from Howard Smith, Program Manager,

AD/CVD Operations, Office IV, Enforcement and Compliance to Fufeng, re: "Administrative

Review of the Antidumping Order on xanthan gum from the People's Republic of China:

Request for Information" (Oct. 28, 2020), PR 4043, Letter from Howard Smith, Program

Manager, AD/CVD Operations, Office IV, Enforcement and Compliance to Meihua, re:

"Administrative Review of the Antidumping Order on xanthan gum from the People's Republic

of China: Request for Information" (Oct. 28, 2020), PR 4447.

On August 5, 2021, Commerce published the preliminary results of the 2019-2020

administrative review.  See Xanthan Gum From the People's Republic of China: Preliminary

Results of Antidumping Duty Administrative Review, Partial Rescission of the Antidumping

Duty Administrative Review, and Preliminary Determination of No Shipments; 2019-2020, 86

Fed. Reg. 42,781 (Dep't Commerce August 5, 2021) ("Preliminary Results"), PR 279, and

accompanying Decision Memorandum for the Preliminary Results of the Seventh Antidumping

Duty Administrative Review of Xanthan Gum from the People's Republic of China (July 30, 2021), PR 278 ("Prelim. Decision Memo"). Commerce relied on AFA to assign a dumping margin for Meihua because Commerce preliminarily determined that: (1) Meihua had provided Commerce with inaccurate data pertaining to certain adjustments needed to calculate accurate net U.S. prices; and (2) Meihua had failed to act to the best of its ability to comply with a request for information because it found Meihua had withheld relevant information and knowingly failed to disclose that certain reported information was inaccurate.. See Prelim. Decision Memo at 78. As a result, Commerce preliminarily assigned a rate of 154.07 percent to Meihua. Id. at 8, see also Preliminary Results, 86 Fed. Reg. at 42,783.

Commerce preliminarily determined that the information placed on the record demonstrated that four companies, including Jianlong, Meihua, Fufeng, and Deosen Biochemical (Ordos) Ltd. and Deosen Biochemical Ltd. (collectively "Deosen"), were free of both *de jure* and *de facto* government control. Prelim. Decision Memo at 14. Based on Commerce's reading of the guidance in section 735(c)(5)(B) of the Tariff Act of 1930 (i.e., 19 U.S.C. § 1673d(c)(5)(B)), it preliminarily assigned respondents not individually examined that qualified for a separate rate, including Jianlong, a dumping margin "equal to the simple average {(i.e., 77.04%)} of the preliminary dumping margin assigned" to Fufeng (i.e., 0.00%) and the total AFA rate assigned to Meihua (i.e., 154.07%). Id. at 15; see also Preliminary Results, 86 Fed. Reg. at 42783.

Deosen filed a case brief in which it challenged Commerce's determination to base the non-individually investigated respondents' dumping margins on the simple average of Fufeng's 0.00% calculated rate and Meihua's total AFA rate. See Letter from Alston & Bird to Sec'y of Commerce, re: "Xanthan Gum from China: Deosen's Case Brief" (Sept. 14, 2021), PR 293, CR 177 ("Deosen Case Br."), at 29. Specifically, Deosen argued that the simple average rate of

Consolidated Plaintiff's Rule 56.2 Memorandum
Consol. Court No. 22-00069

*Non-Confidential Version*

77.04% did not reasonably reflect the dumping margin assigned to the separate rate respondents

because: (1) Deosen's U.S. per-unit sales prices on the record were [          ] than the per-

unit prices of subject merchandise sold to U.S. customers by Fufeng, which had been assigned a

0.00% rate, id. at 5-6; (2) that Deosen had no incentive to sell its product at a lower price than its

competitors in light of its relative market position relative to other exporters, including Meihua

and Fufeng, id. at 6; and (3) the pattern of Deosen's calculated rates in prior segments of this

proceeding show that separate rate respondent's dumping behavior was much closer to Fufeng's

0% margin than to Meihua's 154.07% total AFA margin. Id. at 78.

On February 8, 2022, Commerce published the Final Results of this administrative

review. See Final Results, 87 Fed. Reg. at 7,104. In the Final Results, Commerce affirmed its

preliminary determination and continued to assign non-individually investigated cooperating

respondents, including Jianlong, a dumping margin of 77.04%, which was based on the simple

average of the dumping margin calculated for Fufeng (i.e., 0.00%) and the total AFA rate

assigned to Meihua (i.e., 154.07%). Id. at 7,105. Commerce justified its determination by

arguing that its methodology for calculating a separate rate to non-individually investigated

respondent is consistent with the expected method, as set out in the Statement of Administrative

Action ("SAA"). Final Decision Memo at 5. Citing the facts that individually investigated

respondents in prior segments of this proceeding had received rates based on AFA, that when

Deosen (a separate rate respondent) had been individually investigated it only received a zero or

*de minimis* rate once, and that it claimed it could not draw conclusions with respect to non-

individually investigated respondents' dumping margins based on a comparison of those

respondents' sales prices during the period of review ("POR") to Fufeng's U.S. sales prices

during the POR, Commerce further concluded that the separate rate assigned is reasonably reflective of the non-individually investigated respondents' dumping margins. See id. at 56.

This appeal ensued.

## IV.    SUMMARY OF ARGUMENT

In accordance with 19 U.S.C. § 1677e(a), Commerce is authorized to use facts otherwise available if necessary information is not on the record, or if an interested party or any other person withholds requested information, fails to provide requested information by the requested deadline or in the requested form and manner, significantly impedes a proceeding, or provides information that cannot be verified.  Further, 19 U.S.C. § 1677e(b) authorizes the use of adverse inferences if Commerce determines that an interested party has failed to cooperate by not acting to the best of its ability.  In this review, there was no gap in the record and Meihua was fully cooperative because Meihua provided all necessary information and did not withhold any information, (2) Commerce did not identify any information that was not provided upon request by Meihua, and (3) Meihua acted to the best of its ability to comply with all information requests from Commerce.  As such, Commerce's application of AFA to Meihua was unsupported by substantial evidence and contrary to law.

Commerce also erred in assigning to Jianlong a dumping margin that was based on the simple average of the dumping margin calculated for Fufeng (i.e., 0.00%) and the total AFA rate assigned to Meihua (i.e., 154.07%).  The U.S. Court of Appeals for the Federal Circuit has held that a rate that results from a simple average of a total AFA rate and a *de minimis* rate may be unreasonable where data does not support Commerce's determination that the resulting separate rate is reasonably reflective of the separate rate respondents' dumping margins.  In this case, there is no record evidence that the 77.04% dumping margin that Commerce assigned to

Consolidated Plaintiffs reflects in any way the dumping rate of the cooperative separate rate respondents. As such, Commerce's inclusion of an AFA rate in the calculation of the dumping rate assigned to the separate rate respondents was unsupported by substantial evidence and contrary to law.

## V.    ARGUMENT

### A.    Substantial Evidence Does Not Support Commerce's Assignment of a Dumping Rate to Meihua Based on Adverse Facts Available

Jianlong concurs with and incorporates by reference the arguments set forth in the USCIT Rule 56.2 memorandum of law filed concurrently by Plaintiff Meihua that Commerce lacked a legal or factual basis to conclude that Meihua failed to cooperate to the best of its ability. Jianlong therefore concurs with, and incorporates by reference, Meihua's arguments that Commerce's application of total AFA was unsupported by substantial evidence and otherwise not in accordance with law. Lastly, Consolidated Plaintiff concurs with, and incorporates by reference, Meihua's arguments that Commerce acted contrary to law by assigning an excessively high AD rate of 154.07% to Meihua.

The application of facts otherwise available and adverse inferences is governed by 19 U.S.C. § 1677e(a) and (b). Specifically, 19 U.S.C. § 1677e(a) authorizes the use of facts otherwise available if necessary information is not on the record, or if an interested party or any other person withholds requested information, fails to provide requested information by the requested deadline or in the requested form and manner, significantly impedes a proceeding, or provides information that cannot be verified. Further, 19 U.S.C. § 1677e(b) authorizes the use of adverse inferences if the administrating authority "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority…"

In this case, Meihua correctly reported to Commerce the duties *paid* to CBP and the

entered values listed on CBP 7501 Entry Summaries (the only fixed values at the time of the

submission of the Section C Questionnaire Response), as requested in the AD Questionnaire.  As

such, Meihua accurately reported to Commerce the duty amounts that were *paid* – as requested

in Commerce's questionnaire.  Moreover, the duties that Meihua paid and the entered values

reported on the CBP 7501 Entry Summaries and the non-final values were on the administrative

record, and were reported by the appropriate deadline.  In so doing, Meihua did not deviate from

Commerce's longstanding and consistent practice of requiring respondents to report entered

values and duty amounts at the time of entry reflected on CF-7501 Customs entry documents.

In this case, (1) there was no gap in the record because Meihua fully cooperated by

providing necessary information and not withholding any information, (2) Commerce did not

identify any information that was not provided upon request by Meihua, and (3) Meihua acted to

the best of its ability to comply with all information requests from Commerce.  As such,

Commerce's application of AFA to Meihua was unsupported by substantial evidence and

contrary to law.

**B       Commerce's Determination to Assign Separate Rate Respondents the Simple
          Average of the AFA Rate Assigned to Meihua and the 0% Rate Assigned to
          Fufeng Is Not Supported by Substantial Evidence**

Even if the Court concludes that Commerce's application of total AFA to Meihua is not

contrary to law and supported by substantial evidence, it was unreasonable for Commerce to

calculate the separate rate based on a simple average of Meihua's total AFA margin (i.e.,

154.07%) and Fufeng's calculated rate (i.e., 0.00%) because Commerce ignored substantial

evidence that the 77.04% rate assigned to cooperating separate rate plaintiffs, including Jianlong,

is not "reasonably reflective" of non-individually investigated respondent's potential dumping

behavior in this proceeding.  Specifically, Commerce ignored record evidence that the calculated

rates in this proceeding have never exceeded 10%.  Commerce's explanation that this proceeding

has a history of mandatory respondents being assigned AFA does not justify or explain why it is

reasonable to assume that cooperating respondents should be assigned a rate that is over seven

times higher than the highest calculated rate assigned to respondents in past segments of this

proceeding.  Here, the rate assigned by Commerce to cooperating separate rate respondents is far

in excess of the 0% rate assigned to the only cooperating respondent, and is based on the rate

assigned to the China-wide entity that did not demonstrate independence of government control

without any information that supports its determination that those respondents deserve a rate that

almost doubles their import's sales price.

The statute is silent on the method for calculating a "separate rate" within the context of

an AD case involving a non-market economy such as China.  Commerce's practice is to

determine separate rates according to the statutory methodology used to calculate the "all others

rate" stated in 19 U.S.C. § 1673d(c).  See <u>Yangzhou Bestpak Gifts & Crafts Co. v. United States</u>,

716 F.3d 1370, 1374 (Fed. Cir. 2013) (the separate rate for eligible non-mandatory respondents

is generally calculated following the statutory method for determining the "all others rate" under

19 U.S.C. § 1673d(c)).  The statute articulates a mandatory default methodology for Commerce

to determine the estimated rate for all exporters and producers not individually investigated in an

AD investigation.  See 19 U.S.C. § 1673d(c)(1)(B)(i)(II).  Specifically, the AD rate for non-

individually investigated exporters and producers shall generally be:

> an amount equal to the weighted average of the estimated weighted average
> dumping margins established for exporters and producers individually
> investigated, excluding any zero and de minimis margins and any margins
> determined entirely {through application of AFA}.

Consolidated Plaintiff's Rule 56.2 Memorandum
Consol. Court No. 22-00069

*Non-Confidential Version*

19 U.S.C. § 1673d(c)(5)(A).  If the estimated weighted average dumping margins for all exporters and producers individually investigated are zero, de minimis, or determined entirely based on AFA, Commerce "may use any reasonable method to establish the estimated all-others rate for exporters and producers individually investigated, including averaging the estimated weighted average dumping margins for exporters and producers individually investigated."  19 U.S.C. § 1673d(c)(5)(B).  Neither the statute nor Commerce's regulations address a specific methodology for calculating an AD rate assigned to non-individually investigated respondents in an AD administrative review.

However, in administrative reviews, Commerce's practice for establishing an AD rate for non-individually examined exporters and producers is to follow the statutory methodology provided for investigations.  See Final Decision Memo at 45.  The Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA") provides some clarification as to what Congress considered to constitute a reasonable method for establishing a rate for exporters and producers not individually investigated where the estimated weighted average dumping margins for all exporters and producers individually investigated are zero, de minimis, or determined entirely based on AFA.  See generally Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-826, Vol. I, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3773, 4163 ("SAA").  Specifically, the SAA provides that, where the AD margins for all exporters and producers that are individually investigated are determined entirely on the basis of AFA,

> the expected method in such cases will be to weight-average the zero and de minimis margins and margins determined {entirely pursuant to AFA}, provided that volume data are available.  However, if this method not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods.

**Consolidated Plaintiff's Rule 56.2 Memorandum**
Consol. Court No. 22-00069

*Non-Confidential Version*

Id.

That § 1673d(c)(5)(B) provides that a reasonable alternative method for calculating separate rate respondents margins may include weight-averaging rates for producers individually investigated does not excuse Commerce from providing a reasoned explanation for why it is reasonable to apply a non-contemporaneous AFA rate that is significantly higher than the rate assigned to cooperating separate rate respondents in the prior review where Commerce has not found that separate rate respondents failed to cooperate in the investigation or purported to be applying AFA to separate rate respondents.

Here, Commerce ignored evidence that the calculated rates assigned to individually investigated respondents in the most recent prior segments of this proceeding had decreased over time and never exceeded 10 percent. In so doing, Commerce failed to justify its calculation of a separate rate that was over seven times higher than the highest calculated rate assigned to an individually investigated respondent in prior segments of this proceeding based on the irrelevant fact that mandatory respondents had been assigned rates based on AFA in past segments of this proceeding. See Final Decision Memo at 6 (noting that Deosen had received an AFA rate in the 2013-2014 and 2014-2015 administrative reviews, which was two of the four times it was selected as a mandatory respondent). As the following chart demonstrates, the calculated rates assigned to individually investigated respondents that fully cooperated in the proceeding have not exceeded 9.3% and have been 0% in the most recently completed administrative reviews:

Consolidated Plaintiff's Rule 56.2 Memorandum
Consol. Court No. 22-00069

*Non-Confidential Version*

| Administrative Review | FR Notice | Mandatory Respondent 1 | Mandatory Respondent 2 | Separate Rate | Separate Rate Companies |
|---|---|---|---|---|---|
| AR3 (2015-2016) | 83 Fed. Reg 6513 (Feb. 14, 2018) | Deosen: **9.3%** | Fufeng: **0%** | 9.3% | CP Kelco, Shanghai Smart, Jianlong, Meihua |
| AR4 (2016-2017) | 83 Fed. Reg. 65143 (Dec. 19, 2018); 86 Fed. Reg. 26905 (May 18, 2021) | Meihua: **0%** | Fufeng: **0%** | **0%** | CP Kelco, Deosen, Shanghai Smart, |
| AR5 (2017-2018) | 84 Fed. Reg. 64831 (Nov. 25, 2019) | Meihua: **0%** | Deosen: **0%** | **0%** | CP Kelco |
| AR6 (2018-2019) | 86 Fed. Reg. 16189 (Mar. 26, 2021) | Meihua: **0%** | N/A | **0%** | CP Kelco |

Not only did Commerce fail to acknowledge that the <u>calculated</u> dumping margins for individually investigated respondents have declined in the most recently completed administrative review (i.e., from 9.3% to 0%), but Commerce attempted to justify the relevance of the AFA rate assigned to Meihua by pointing to the fact that Deosen—one of those respondents granted a separate rate here—had received a rate based on total AFA in the 2013-2014 and 2014-2015 administrative reviews. <u>Id.</u> at 7. That one of the separate rate respondents in the current review received a rate based on AFA several reviews preceding the present administrative review does not make it reasonable to equally weight a total AFA rate that is more than seven times higher than any rate calculated in the most recent five administrative reviews. The AFA rates highlighted by Commerce long preceded the present administrative review. Commerce does not explain why it is reasonable to conclude based on this far-removed history of AFA that Meihua's total AFA rate continues to be equally relevant to the potential dumping behavior of the cooperating separate rate respondents in the present review.

In calculating AD rates, the Court of Appeals for the Federal Circuit has noted "the statute's manifest preference for contemporaneity in periodic administrative reviews." Albemarle Corp. v. United States, 821 F.3d 1345, 1356 (Fed. Cir. 2016).  The Court further noted that there is "no basis to simply assume that the underlying facts or calculated dumping margins remain the same from period to period."  Id.  The Court's holding in Albemarle stands for the notion that Commerce may not disregard contemporaneous calculated rates to apply a higher rate from a previous review to separate rate respondents in the absence of evidence suggesting that the lower calculated rates of the largest exporters are not representative of the pricing behavior of smaller exporters.  Id. at 1353.

Commerce unjustifiably ignored the general downward trend of the calculated rates for cooperative respondents.  The fact that some mandatory respondents in preceding administrative reviews received rates based on non-cooperation does not justify ignoring the fact that more contemporaneous data shows that calculated rates have been much closer to the 0% rate calculated for Fufeng than the total AFA rate assigned to Meihua.  Commerce's rationale merely justifies the baseline relevance of the AFA rate, but it does not justify its decision to equally weight a total AFA rate that is over seven times higher than the highest calculated rate in the last five administrative reviews merely because a separate rate respondent (i.e., Deosen) received an AFA rate in two administrative reviews relating to imports during the 2013-2014 and 2014-2015 PORs.  Commerce cites no evidence to justify its implicit conclusion—based on the nature of the simple averaging of the total AFA rate and the 0% rate—that those rates are of equal relevance to cooperating separate rate respondents' potential dumping behavior in the current administrative review.

Consolidated Plaintiff's Rule 56.2 Memorandum
Consol. Court No. 22-00069

*Non-Confidential Version*

In Yangzhou Bestpak, the Court of Appeals for the Federal Circuit held that a rate that results from a simple average of a total AFA rate and a *de minimis* rate may be unreasonable where data does not support Commerce's determination that the resulting separate rate is reasonably reflective of the separate rate respondents' dumping margins. See Yangzhou Bestpak, 716 F.3d at 1378. The Court looked askance Commerce's calculation of a separate rate that was "over 120% of the only fully investigated respondent"—and half of the rate assigned to respondents that had not qualified for a separate rate—where Commerce cited no data to support that the calculate rate reasonably approximated the separate rate respondent's potential dumping rate. See id. at 1380.

The assumption that individually-investigated respondents' contemporaneous margins are reflective of all exporters' current dumping margins breaks down where one of the individually investigated respondent's margins is not calculated from its own data, but rather via an adverse inference that cannot be applied to cooperating non-selected respondents. On the contrary, where, as here, non-selected respondents have cooperated in the administrative review, it is not reasonable for Commerce to assume that a rate that is the product of an adverse inference is equally reflective of the non-selected respondents' margins in this review without some independent data that corroborates that conclusion. The simple fact that separate rate respondents cooperated while Meihua did not makes it unreasonable for Commerce to conclude that Meihua's rate is equally representative of cooperative separate rate respondents' potential dumping margins, and Commerce makes no effort to explain the continued equal relevancy of the AFA rate despite its non-contemporaneity to the cooperating separate rate respondents in the present review.

15

Consolidated Plaintiff's Rule 56.2 Memorandum
Consol. Court No. 22-00069

*Non-Confidential Version*

In <u>Yangzhou Bestpak</u>, the Court viewed it as unreasonable and punitive to assign separate rate respondents a rate based on the simple average of a *de minimis* rate and a total AFA rate that was over 120% of the only fully investigated respondent.  Without other evidence demonstrating the relevance of the AFA rate to the separate rate respondents, the resulting rate may be unjustifiably high and may amount to being punitive, which is not permitted by the statute. <u>Yangzhou Bestpak</u>, 716 F.3d at 1379 (<u>citing</u> <u>F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States</u>, 216 F.3d 1027, 1032 (Fed. Cir. 2000)).  Likewise, here, Commerce fails to point to any evidence that the 77.04% rate—which is far in excess of the 0% rate assigned to Fufeng and half of the total AFA rate assigned to Meihua based on AFA as well as to entities not qualifying for separate rate treatment—is reasonably reflective of the separate rate respondents' dumping margins.

Finally, Jianlong recognizes that the Court of Appeals for the Federal Circuit stated in a nonprecedential opinion that Commerce may factor an AFA rate into its calculation of a separate rate consistent with the 19 U.S.C. § 1673d(c)(5)(B), <u>see</u> <u>Bosun Tools Co., Ltd. v. United States</u>, 2022 WL 94172 at *4 (Fed. Cir. Jan. 10, 2022) (<u>nonprecedential opinion</u>).  However, nonprecedential opinions and orders are "not citable" and "do not represent the considered view of the Federal Circuit regarding aspects of a particular case beyond the decision itself, and they are not intended to convey this court's view of law applicable in other cases."  <u>Hamilton v. Brown</u>, 39 F.3d 1574, 1581 (Fed. Cir. 1994).  The Court of Appeals for the Federal Circuit itself considers such opinions to be "primarily for the benefit of the parties," and further states that "{i}t is error to assume that a nonprecedential order or opinion provides support for a particular position or reflects a new or changed view held by this court.  <u>Id.</u>

Jianlong also concurs with and incorporates by reference the arguments set forth in the

USCIT Rule 56.2 memorandum of law filed concurrently by Deosen that Commerce's

determination to calculate the separate rate applied to non-individually investigated respondents

was not in accordance with law and otherwise unsupported by substantial evidence.

## VI.    <u>RELIEF REQUESTED</u>

The statute, regulations, and the record evidence do not support Commerce's

determinations in this proceeding.  For the reasons set forth above, Consolidated Plaintiff

Jianlong respectfully requests that this Court:  (1) determine that Commerce's final results of

review of the antidumping duty order on xanthan gum from the People's Republic of China were

unsupported by substantial evidence on the record and were otherwise not in accordance with

law; (2) remand this case to Commerce with instructions to revise the <u>Final Results</u> consistent

with the findings of the Court; and (3) provide such other or additional relief as this Court may

deem just and proper.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760
*Counsel to Consolidated Plaintiff*
*Jianlong Biotechnology Co., Ltd.*

Dated:  July 19, 2022

**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

_____
)
MEIHUA GROUP INTERNATIONAL TRADING )
(HONG KONG) LIMITED, ET AL., )
)
               Plaintiffs and )
               Consolidated Plaintiffs, )
)
            v. )
)
UNITED STATES, )
)
               Defendant. )
_____)

Consol. Court No. 22-00069

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)**

The undersigned counsel at Trade Pacific PLLC hereby certifies that the accompanying Memorandum of Law in Support of Plaintiffs' Rule 56.2 Motion for Judgment upon the Agency Record, dated July 19, 2022, complies with the 14,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures. The memorandum of law contains 4,942 words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760
_Counsel to Consolidated Plaintiff_
_Jianlong Biotechnology Co., Ltd._

Dated: July 19, 2022