**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED AND XINJIANG MEIHUA AMINO ACID CO., LTD., | ) ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY, LTD., | ) Cons. Court No. 22-00069 ) ) ) |
| Plaintiff-Intervenors, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant. | ) ) |

**PLAINTIFF-INTERVENOR DEOSEN'S MOTION FOR SUMMARY JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of this Court, Deosen Biochemical (Ordos) Ltd. and Deosen Biochemical Ltd. (collectively "Plaintiff-Intervenor" or "Deosen"), respectfully move for judgment on the agency record with respect to its complaint. A memorandum of points and authorities in support of this motion is included as an attachment herewith.

Respectfully submitted,

*/s/ Chunlian (Lian) Yang*

Chunlian (Lian) Yang
Lucas Queiroz Pires
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel to Deosen*

Dated: July 19, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED AND XINJIANG MEIHUA AMINO ACID CO., LTD., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| and | ) ) |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY, LTD., | ) ) ) |
| Plaintiff-Intervenors, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant. | ) ) |

Cons. Court No. 22-00069

**ORDER**

Upon reading Plaintiff-Intervenor Deosen's 56.2 Motion for Summary Judgment on the Agency Record and all other papers and proceedings herein; it is hereby

**ORDERED** that Plaintiff-Intervenor Deosen's 56.2 Motion for Judgment on the Agency Record is GRANTED; and it further

**ORDERED** that the action is remanded to Commerce for reconsideration in accordance with the Court's decision.

SO ORDERED.

Dated: _____, 2022                          _____

New York, New York                                      Jennifer Choe-Groves, Judge

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| _____ )<br>MEIHUA GROUP INTERNATIONAL TRADING )<br>(HONG KONG) LIMITED AND XINJIANG MEIHUA )<br>AMINO ACID CO., LTD., )<br> )<br>                    Plaintiff, )<br> )<br>   and )<br> )<br>DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN )<br>BIOCHEMICAL LTD., AND JIANLONG )<br>BIOTECHNOLOGY COMPANY, LTD., )<br> )<br>                Plaintiff-Intervenors, )<br> )<br>            v. )<br> )<br>UNITED STATES, )<br> )<br>             Defendant. )<br>_____) | Cons. Court No. 22-00069 |

**<u>PLAINTIFF-INTERVENOR DEOSEN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE AGENCY RECORD</u>**

Chunlian (Lian) Yang
Lucas Queiroz Pires

ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel to Deosen*

Dated: July 19, 2022

# TABLE OF CONTENTS

RULE 56.2 STATEMENT ................................................................................................ 1

   I.   Administrative Determination Sought to Be Reviewed ..................................... 1

   II.   Issue Presented................................................................................................... 2

FACTS ........................................................................................................................... 2

ARGUMENT ................................................................................................................. 3

   I.   Standard of Review............................................................................................ 4

   II.   The Separate Rate Is Not Reasonably Reflective of Deosen's Potential Dumping Margin. 5

      A.   The 77.04 Percent Separate Rate is Not Reasonably Reflective of Deosen's Potential Dumping Margin. ......................................................................................... 7

      B.   The Contested Separate Rate Is Not Reasonable in View of the History of this Proceeding. ...................................................................................................... 10

      C.   Commerce Failed to Adopt Other Reasonable Methods Proposed by Deosen............. 12

   III.   Commerce Erred in not Rescinding the Review of Deosen Biochemical Ltd. .............. 15

CONCLUSION AND PRAYER FOR RELIEF ......................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## COURT CASES

Aimcor, Ala. Silicon, Inc. v. United States,
   154 F.3d 1375 (Fed. Cir. 1998)....................................................................................4

Albemarle Corp. v. United States,
   821 F.3d 1345 (Fed. Cir. 2016).................................................................9, 10, 12, 13, 15

Allegheny Ludlum Corp. v. United States,
   346 F.3d 1368 (Fed. Cir. 2003)..................................................................................10

Bosun Tools Co., Ltd. v. United States,
   2021-1929, 2022 U.S. App. LEXIS 624 (Fed. Cir. 2022) ...............................12, 14

Chevron USA v. Nat. Res. Def. Council, Inc.,
   467 U.S. 837 (1984)........................................................................................................4

Corus Staal BV v. United States,
   593 F. Supp. 2d 1373 (Ct. Int'l Trade 2008) ............................................................4

F.Lii De Cecco di Filippo Fara S. Martino S.p.A. v. United States,
   216 F.3d 1027 (Fed. Cir. 2000)....................................................................................7

Gallant Ocean (Thailand) Co. v. United States,
   602 F.3d 1319 (Fed. Cir. 2010)..................................................................................15

Gerald Metals, Inc. v. United States,
   132 F.3d 716 (Fed. Cir. 1997)...................................................................................5, 9

Huaiyin Foreign Trade Corp. (30) v. United States,
   322 F.3d 1369 (Fed. Cir. 2003)....................................................................................4

Rhone Poulenc, Inc. v. United States,
   899 F.2d 1185 (Fed. Cir. 1990)..................................................................................15

SNR Roulements v. United States,
   402 F.3d 1358 (Fed. Cir. 2005)..................................................................................15

Timken Co. v. United States,
   354 F.3d 1334 (Fed. Cir. 2004)....................................................................................4

Universal Camera Corp. v. NLRB,
   340 U.S. 474 (1951) ......................................................................................................9

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
   783 F. Supp. 2d 1343 (Ct. Int'l Trade 2011) .......................................................7

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
   716 F.3d 1370 (Fed. Cir. 2013)..................................................7, 8, 9, 15


**STATUTES**

19 U.S.C. § 1673d(c)(5)(A) ...........................................................................5

19 U.S.C. § 1673d(c)(5)(B) ...........................................................................7

19 U.S.C. § 1677e(b) ...............................................................................7, 14

19 U.S.C. § 1516a ........................................................................................4

19 U.S.C. § 1677f-1(c)(1) .............................................................................5

19 U.S.C. § 1677f-1(c)(2) .............................................................................5


**REGULATIONS**

19 C.F.R. § 351.107(d) .................................................................................5

19 C.F.R. § 351.408 .....................................................................................5

19 C.F.R. § 351.213(d) ...............................................................................16


**PUBLICATIONS**

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 85 FR
   54,983 (September 3, 2020)...........................................................................2

*Multilayered Wood Flooring from the People's Republic of China*, 86 FR 22,016 (April
   26, 2021) ...............................................................................................13

*Multilayered Wood Flooring from the People's Republic of China*, 86 FR 59,987
   (October 29, 2021) .....................................................................................3

*Xanthan Gum From the People's Republic of China: Amended Final Determination of
   Sales at Less Than Fair Value and Antidumping Duty Order*, 78 FR 43,413 (July 9,
   2013) ..................................................................................................2, 14

*Xanthan Gum from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016,* 83 FR 6,513 (February 14, 2018) ........................................................................................... 11

*Xanthan Gum from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments, and Partial Discontinuation of Antidumping Duty Administrative Review; 2016-2017,* 83 FR 65,143 (December 19, 2018) .................................................................................... 11

*Xanthan Gum from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018,* 84 FR 64,831 (November 25, 2019) ................................................................................. 11

*Xanthan Gum from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Partial Rescission; 2018-2019,* 85 FR 74,686 (November 23, 2020) ............................................................................................................ 9

*Xanthan Gum from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review; 2018-2019,* 86 FR 16,189 (March 26, 2021) ........................... 11

*Xanthan Gum from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2016-2017,* 86 FR 26,905 (May 18, 2021) ........ 11

*Xanthan Gum from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments,* 86 FR 42,781 (August 5, 2021) ........................................................................................... 2, 3

*Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020,* 87 FR 7,104 (February 8, 2022) ................................................................................. 1, 2, 3, 11, 16

## OTHER AUTHORITIES

1994 U.S.C.C.A.N. 4040 ...................................................................................................... 6

H.R. DOC. No. 103-316 (1994) ........................................................................................... 6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION**
**FOR SUMMARY JUDGMENT ON THE AGENCY RECORD**</u>

**RULE 56.2 STATEMENT**

    **I.**      **Administrative Determination Sought to Be Reviewed**

Plaintiff-Intervenor, Deosen Biochemical (Ordos) Ltd. and Deosen Biochemical Ltd. (collectively "Deosen"), contests the U.S. Department of Commerce's ("Commerce's") final determination in the 7th antidumping duty administrative review of Xanthan Gum from the People's Republic of China (Case No. A-570-985) covering the time period of July 1, 2019 through June 30, 2020 ("POR").  <u>See Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020</u>, 87 Fed. Reg. 7,104 (Dep't of Commerce, February 8, 2022) ("Final Results"), P.R. 317,[1] incorporating Issues and Decision Memorandum for the Final Results of the 2019-2020 Antidumping Duty Administrative Review of Xanthan Gum from the People's Republic of China (January 31, 2022), P.R. 313 ("Final Decision Memo")*.*  Commerce assigned Deosen a separate rate at 77.04 percent ad valorem, which is the simple average of the zero dumping margin assigned to one mandatory respondent and the total adverse facts available ("AFA") rate of 154.07 percent assigned to the second mandatory respondent.

---

[1] Citations to the administrative record are to the public record document number ("P.R.") followed by the page or exhibit number based on the May 19, 2022, administrative index list filed with this court. *See* ECF No. 23.

## II.    Issue Presented

Whether Commerce's calculation of Deosen's margin based on a simple average of a total AFA rate and a zero percent rate was supported by substantial evidence and in accordance with law.

## FACTS

Commerce issued an antidumping duty order on xanthan gum from China in July 2013. See Xanthan Gum From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 78 Fed. Reg. 43,413 (July 19, 2013) (the "Order").  This action arises from Commerce's 7th administrative review of the Order that covered Deosen and several other Chinese xanthan gum exporters.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 85 Fed. Reg. 54,983 (Sept. 3, 2020).  For the review, Commerce selected Fufeng[2]  and Meihua[3]  as mandatory respondents for individual examination.

In the Preliminary Results and Final Results, Commerce found that Fufeng did not make sales of subject merchandise in the United States at prices below normal value during the POR. Commerce found that Meihua reported incorrect sales information to Commerce and withheld certain relevant information from Commerce about the reported sales and assigned a total AFA rate of 154.07 percent to Meihau.  See Xanthan Gum from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments, 86

---

[2] Neimenggu Fufeng Biotechnologies Co., Ltd. (aka Inner Mongolia Fufeng Biotechnologies Co., Ltd.)/Shandong Fufeng Fermentation Co., Ltd./ Xinjiang Fufeng Biotechnologies Co., Ltd. (collectively "Fufeng").
[3] Meihua Group International Trading (Hong Kong) Limited/ Langfang Meihua BioTechnology Co., Ltd./ Xinjiang Meihua Amino Acid Co., Ltd. (collectively "Meihua").

Fed. Reg. 42,781 (August 5, 2021), P.R. 279 ("Preliminary Results"); Decision Memorandum

for the Preliminary Results of the Seventh Antidumping Duty Administrative Review of Xanthan

Gum from the People's Republic of China (July 30, 2021), P.R. 278 ("Preliminary Decision

Memo"); <u>see</u> Final Results and Final Decision Memo.

  Deosen timely submitted its separate rate application ("SRA") and responded to

Commerce's supplemental SRA questionnaire.  Deosen Biochemical Ltd. submitted a No

Shipment Certification, stating it did not sell or export subject merchandise during the POR.

  In the Preliminary Results, Commerce found Deosen eligible for a separate rate and

calculated the rate using a simple average of the dumping margins of the two mandatory

respondents.  Commerce declined to rescind the review with respect to Deosen Biochemical Ltd.

  Deosen submitted a case brief contesting Commerce's preliminary separate rate

determination.  Deosen argued that the calculation and application to it of a rate based on a

simple average of Fufeng's zero rate and Meihua's total AFA rate was unreasonable under

section 19 U.S.C. § 1673d(c)(5), because the rate was not reasonably reflective of Deosen's

potential dumping margin as a fully cooperative non-investigated producer/exporter.  Deosen

further argued that Commerce should rescind the review with respect to Deosen Biochemical

Ltd. in light of its timely filed No Shipment Certification.

  In the Final Results, Commerce's decision remained unchanged from the Preliminary

Results and assigned a separate rate of 77.04 percent to both Deosen entities.

**ARGUMENT**

  Commerce's calculation of the separate rate for Deosen based on a simple average of

Fufeng's zero dumping margin and Meihua's total AFA rate of 154.07 percent was not supported

by substantial evidence or in accordance with law.  Commerce's approach resulted in an

exorbitant rate of 77.04 percent.  Substantial evidence shows that this rate is not reasonably reflective of Deosen's potential dumping margin as a fully cooperative separate respondent.

## I.     Standard of Review

In reviewing Commerce's determinations in an antidumping or countervailing duty proceeding, the Court "shall hold unlawful any {Commerce} determination, finding or conclusion found to be unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a.

In reviewing whether Commerce acted in accordance with law, if the statute is clear, "the agency must give effect to the unambiguously expressed intent of Congress." Chevron USA v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).  When the statute does not directly address the question before the agency, the court will defer to Commerce's construction of its authority only if it is reasonable.  Timken Co. v. United States, 354 F.3d 1334, 1342 (Fed. Cir. 2004).

When reviewing Commerce's determinations, findings or conclusions, the Court may only uphold those decisions supported by substantial evidence.  Corus Staal BV v. United States, 32 CIT 1480, 1488, 593 F. Supp. 2d 1373 (2008).  Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Aimcor, Ala. Silicon, Inc. v. United States, 154 F. 3d 1375, 1378 (Fed. Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984)).  The substantial evidence standard requires the reviewing court to consider "the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence."  Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (internal quotations omitted).

Moreover, the substantial evidence standard "requires more than mere assertion of evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences would be drawn." Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997).

## II.      The Separate Rate Is Not Reasonably Reflective of Deosen's Potential Dumping Margin.

The antidumping duty statute requires Commerce to establish an antidumping duty margin for each exporter.  19 U.S.C. § 1677f-1(c)(1).  When it is "not practicable" for Commerce to determine individual margin for each exporter, the statute permits Commerce to limit its examination to a "reasonable" number of exporters accounting for the largest volume of the subject merchandise from the exporting country and to estimate the margin for non-selected exporters.  19 U.S.C. § 1677f-1(c)(2).

In proceedings involving non-market economy ("NME") such as China, Commerce presumes that the exporters are under foreign government control and assigns them a single country wide rate, unless an exporter demonstrates its independence from government control and qualifies for a "separate rate."   19 C.F.R. § 351.107(d); 19 C.F.R. § 351.408.

To determine the separate rate of non-individually examined exporters, Commerce generally calculates the rate by averaging the rates of the individually examined respondents, excluding rates that are de minimis, zero, or based entirely on AFA.  §1673d(c)(5)(A).[4]

---

[4] 19 U.S.C. § 1673d(c)(5) states:

> (5) Method for determining estimated all-others rate
>
> (A) General rule. For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for

However, if the individually examined respondents all receive <u>de minimis</u>, zero, or AFA rates, the "Exception" in 1673d(c)(5)(B) applies.  In that case, Commerce may calculate the separate rate using "any reasonable method," including by "averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated." §1673d(c)(5)(B).

The Statement of Administrative Action accompanying the Uruguay Round Agreements Act explains that the "expected method" under section 1673d(c)(5)(B) "will be to weight-average the zero and <u>de minimis</u> margins and margins determined pursuant to the facts available, provided that volume data is available."  <u>See</u> H.R. DOC. No. 103-316 (1994) ("SAA"), <u>reprinted in</u> 1994 U.S.C.C.A.N. 4040, 4201.  However, the SAA further explains that "if this method is not feasible, or **if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods**."  <u>Id.</u> (emphasis added).

---

exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title.

(B) Exception. If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

Therefore, even when relying on the "expected method," Commerce must ensure the margin is reasonably reflective of respondents' potential dumping margins.  Yangzhou Bestpak Gifts & Crafts Co. v. United States, 35 CIT 948, 783 F. Supp. 2d 1343, 1350-51 (2011).

**A.  The 77.04 Percent Separate Rate is Not Reasonably Reflective of Deosen's Potential Dumping Margin.**

The Court of Appeals for the Federal Circuit has struck down the use of the "expected method" in situations where it was not reasonable.  In  Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370 (Fed. Cir. 2013) ("Bestpak"),  Commerce assigned a de minimis dumping margin to one mandatory respondent and an AFA rate of 247.65 percent to the other uncooperative mandatory respondent.  For the separate rate companies, Commerce took a simple average of the de minimis rate and the AFA rate, resulting in a 123.83 percent margin.

Commerce justified its calculation under 1673d(c)(5)(B).  On appeal, the Federal Circuit found that while the statute allows the use of a simple average, Commerce's separate rate determination was inconsistent with the law because the circumstances of the case rendered the method "unreasonable as applied" and the determination did not reflect economic reality. Bestpak, 716 F.3d at 1378.  The Federal Circuit noted that the separate rate was "far in excess" of the de minimis rate assigned to the only cooperating mandatory respondent and the separate rate appellant was similar to the cooperating mandatory respondent in that they demonstrated independence of government control.  Id. at 1379.  "Assigning a non-mandatory, separate rate respondent a margin equal to over 120% of the only fully investigated respondent with no other information is unjustifiably high and may amount to being punitive, which is not permitted by the statute."  Id., citing F.Lii De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("{T}he purpose of section 1677e(b) is to provide respondents

with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins.").

The facts of this case are analogous to those in <u>Bestpak</u>.  Here, like in the underlying administrative proceeding in <u>Bestpak</u>, Commerce justified its separate rate calculation under 1673d(c)(5)(B).  However, the calculation method resulted in a rate of 77.4 percent, which far exceeds the zero margin determined for the cooperative mandatory respondent Fufeng.

Evidence in the administrative record indicates that this rate is not reasonably reflective of Deosen's potential dumping margin for at least three reasons.  First, in its case brief, Deosen compared its situations with those of Fufeng and demonstrated that Deosen and Fufeng are similarly situated, including having similar factors of production profil (<u>e.g.</u>, with respect to labor and energy consumption) and both being independent of government control and fully cooperative with Commerce's review.  <u>See</u> Letter from Alston & Bird LLP to Dep't of Commerce, Xanthan Gum from China: Deosen's Case Brief, P.R. 293, C.R. 177 (Sept. 14, 2021) ("Deosen Case Brief"), at 5-6.  Deosen further compared the U.S. sale price of a representative transaction that was included in its separate rate application with that of a cotemporaneous sale by Fufeng.  <u>Id.</u>, at 5.  Deosen's much higher price indicates that an exorbitant rate of 77.4 percent for Deosen is unjustifiably high considering that Commerce found Fufeng did not make sales at less than fair value.

Second, the record shows that Deosen exported limited quantities of subject merchandise to the United States during the POR and is a relatively small exporter in comparison to the mandatory respondents.  Deosen Case Brief, at 6.  Thus, Deosen submitted to Commerce that it had no incentive to sell its product at a lower price than before or than its competitors.  It noted that in the most recently concluded 6th review, petitioner withdrew its request of Deosen,

indicating petitioner's belief that Deosen had not sold subject merchandise at less than fair value. Id.; see also Xanthan Gum from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, and Partial Rescission; 2018-2019, 85 Fed. Reg. 74,686 (Nov. 23, 2020), and accompanying Decision Memorandum.

Third, Deosen reminded that, if Commerce found the single Deosen transaction on the record insufficient for it to assess Deosen's potential margin relative to Fufeng, Commerce still should not penalize Deosen for Commerce's own decision to limit the individual examination to only two respondents.  See Bestpak, 716 F.3d at 1378 (Commerce may not justify "the absence of evidence by invoking procedural difficulties that were at least in part a creature of its own making."); Deosen Case Brief, at 6.

Commerce categorically dismissed Deosen's contentions without offering any credible evidence to the contrary.  In fact, its justification for the use of a simple average in this case amounts to no more than an assertion that the SAA and the court authorize the use of the "expected method" in some cases.  See Final Decision Memo, at 5-6.  Commerce demonstrated no consideration of the reasonableness of the separate rate as applied to Deosen, in utter disregard of the record evidence indicating otherwise.  Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997) ("the substantial evidence standard "requires more than mere assertion of "evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences would be drawn."", citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951)).  Hence, Commerce failed to meet its obligation to ensure the review results be as accurate as possible. See Albemarle Corp. v. United States, 821 F.3d 1345, 1356 (Fed. Cir. 2016) ("Albemarle") ("In short, as we have previously recognized, "there is a clear congressional intent" that

administrative reviews "be as accurate and current as possible.""), citing <u>Allegheny Ludlum</u>
<u>Corp. v. United States</u>, 346 F. 3d 1368, 1373 (Fed. Cir. 2003).

Further, Commerce's reliance on <u>Albemarle</u> to defend its separate rate approach is
misplaced.  Final Decision Memo, at 5.  In <u>Albemarle</u>, the mandatory respondents in the third
review of the antidumping duty order on Activated Carbon from China received <u>de minimis</u>
margins based on their own data.  <u>Albemarle</u>, 821 F.3d at 1350.  Instead of applying the
"expected method" of calculating the separate rate by averaging the individually reviewed
companies' margins, Commerce used an above <u>de minimis</u> rate applied to various separate rate
respondents in the previous review.  The Federal Circuit criticized Commerce for not following
the expected method because the record contained no information to suggest the <u>de minimis</u>
margins would not be reasonably reflective of the non-selected respondents' potential dumping
margins.  <u>Id.</u>, at 1359.  In contrast, here the record does contain evidence to show that the simple
average rate is not reasonably reflective of Deosen's potential dumping margin and therefore
deviation from the "expected method" is necessary.

**B. The Contested Separate Rate Is Not Reasonable in View of the History of this
Proceeding.**

The underlying review was the 7th review of subject exporters, and the history of this
proceeding shows a downward trend of the dumping rates over time and a consistent lack of
dumping in recent reviews.  Commerce has individually examined Deosen and determined much
lower rates, including a zero rate for it.  The chart below shows the dumping margins in all
previously reviews, in which Commerce determined the dumping margins for mandatory
respondents **based on their actual data**:

| Administrative Review (AR) | FR Notice | Mandatory Respondent 1 | Mandatory Respondent 2 | Separate Rate | Separate Rate Companies |
|---|---|---|---|---|---|
| AR3, 2015-16 | 83 FR 6,513, 2/14/2018 | **Deosen: 9.3%** | Fufeng: 0% | 9.3% | CP Kelco, Shanghai Smart, Jianlong, Meihua |
| AR4, 16-17 | 83 FR 65,143, 12/19/2018; 86 FR 26,905, 5/18/2021 (pertaining to Fufeng) | Meihua: 0% | Fufeng: 0% | 0% | CP Kelco, Deosen, Shanghai Smart |
| AR5, 17-18 | 84 FR 64,831, 11/25/2019 | Meihua: 0% | **Deosen: 0%** | 0% | CP Kelco |
| AR6, 18-19 | 86 FR 16,189, 3/26/2021 | Meihua: 0% | N/A | 0% | CP Kelco (Deosen not reviewed) |
| AR7, 19-20 | 87 FR 7,104, 2/8/2022 | Meihua: 154.07% | Fufeng: 0% | 77.04% | Deosen, Jianlong |

As reflected in the table above, since the 3rd review when Commerce calculated the respondents' dumping margins based on their actual data rather than a total AFA, the margins for either the mandatory respondents or separate rate respondents never exceeded 10 percent. In the 3rd review, concluded in 2018, Commerce individually examined Deosen and assigned a 9.3 percent margin to Deosen. In the 5th review, concluded in 2019, Commerce individually examined Deosen again and found a zero margin for Deosen. From the 3rd through the 6th review, when Commerce individually examined Meihua and Fufeng, both respondents had a zero margin. In the most recent three consecutive reviews, Commerce found a zero margin for **all** respondents.

This pattern demonstrates that Chinese xanthan gum producers/exporters like Deosen have not made sales at less than fair value to the United States for many years. The only reason that the margin increased dramatically in the 7th review is because Commerce assigned a punitive total AFA rate of 154.07 percent to Meihua for failure to cooperate with Commerce's review, which is being challenged in this action.

Given this history, the separate rate of 77.04 percent rate is unreasonable. It is substantially higher than any rate that Commerce has assigned to Deosen since the 3rd review, including the two reviews in which Commerce individually examined Deosen based on its own data. This rate is considerably higher than any rate assigned to a cooperative respondent in each single one of the reviews throughout the history of this proceeding, including the 7th review at issue. The rate is inconsistent with a clear downward trend of the margins assigned to ether mandatory or separate rate respondents throughout the history of this case. Thus, the separate rate resulting from including a total AFA rate in the calculation in this case is unreasonable considering the history of the proceedings.

Commerce's failure to properly consider this substantial record evidence is inconsistent with law. See Bosun Tools Co., Ltd. v. United States, 2021-1929, 2022 U.S. App. LEXIS 624 (Fed. Cir. 2022) ("Bosun Tools"). In Bosun Tools, the Federal Circuit found that both historical dumping rates and the general trend of the dumping rates over time are relevant to assessing the reasonableness of Commerce's separate rate calculation. The Court also found that Commerce appropriately weighted the rate from the most recent review most heavily. Bosun Tools, 2022 U.S. App. LEXIS 624 at 13. Similarly, in Albemarle, the Court considered the dumping margins over time and found they supported a finding that dumping margins have decreased over time and supported relying on the de minimis margin for the separate rate respondents. Albemarle, 821 F.3d at 1357 ("Thus… the history here is one of generally declining dumping margins, and Commerce had no reason to believe that {separate rate respondent} Huahui's margin would not have similarly declined.")

**C. Commerce Failed to Adopt Other Reasonable Methods Proposed by Deosen.**

As discussed above, substantial record evidence shows that the simple average rate of 77.04

percent as applied to Deosen is not reasonable.  In such a case, the SAA directs Commerce to use "other reason reasonable methods."  SAA, at 4201.  Deosen proposed two other reasonable methods, and Commerce failed to adopt either.

First, Commerce should have used the rate calculated for Fufeng as the basis for determining Deosen's separate rate and excluded the total AFA rate from the calculation. No evidence on the record suggests that the dumping rate for Deosen or other cooperating separate rate respondents is not represented by Fufeng's rate alone.  Albemarle, 821 F.3d at 1353 ("The burden is not on the separate respondents to show that their dumping is the same as that of the individually examined respondents. Rather, Commerce must find based on substantial evidence that there is a reasonable basis for concluding that the separate respondents' dumping is different.").  In fact, the transaction-specific pricing information on the record and the results of the immediately three consecutive reviews show that Fufeng's rate is not different than the potential margins of Deosen or other cooperative separate rate respondents.

Commerce's decision to include the AFA rate in the separate rate calculation is inconsistent with its other decisions in similar situations, including the recent preliminary and final results in 2018-2019 antidumping duty review of Multilayered Wood Flooring from the People's Republic of China, A-570-970.  In this proceeding, Commerce calculated a margin of zero percent for the non-examined separate rate companies based on the zero margin calculated for the cooperating mandatory respondent and excluding the AFA rate assigned to the other mandatory respondent. See Preliminary Decision Memorandum accompanying Multilayered Wood Flooring from the People's Republic of China, 86 Fed. Reg. 22,016 (Apr. 26, 2021).  See also Final Decision Memorandum accompanying Multilayered Wood Flooring from the People's Republic of China, 86 Fed. Reg. 59,987 (Oct. 29, 2021).

Based only on a superficial distinction, Commerce declined to adopt its approach from the Multilayered Wood Flooring review to Deosen's case. Commerce reasoned that in Multilayered Wood Flooring, the AFA rate excluded from the separate rate calculation was the China-wide rate because the mandatory respondent there failed to establish its eligibility for a separate rate, whereas in this case, Meihua was eligible for a separate rate and received a total AFA rate. See Final Decision Memo, at 7. Commerce's distinction is superficial at best because in this case, the total AFA rate is the China-wide rate. See the Order, at 43,144. Indeed, in antidumping cases against China, the AFA rate and the China-wide rate is usually the same. 19 U.S.C. § 1677e(b); Bosun Tools, 2022 U.S. App. LEXIS 624 at 4-5. ("The country wide rate {in NME cases} is often based on adverse facts available ('AFA'), which Commerce applies when a company does not act to the best of its ability in complying with information requests.") Accepting Commerce's superficial distinction means that the non-cooperating mandatory respondent's demonstration of its independence of government control not only did nothing to help reduce its total AFA rate but would have a devastating impact on the cooperating non-selected respondents' separate rate. Under Commerce's approach, the separate rate respondents in this case would be better off and would have received a zero margin if the allegedly non-cooperating mandatory respondent could not prove its independence of government control. This is absurd.

Deosen proposed that, alternatively, Commerce should use a rate not higher than 9.3 percent, which was the rate individually calculated for Deosen in the 3rd review. This rate represents the highest individually calculated rate for cooperative respondents in five consecutive reviews, including for separate rate respondents in the prior four reviews. Commerce acknowledged that it is permitted to use rates from prior segments in some circumstances, including "where there is evidence that the overall market and the dumping margins have not

changed from period to period."  Final Decision Memo, at 7; see also Albemarle, 821 F.3d at 1353. Here, Commerce did not find a margin over 10 percent in five consecutive reviews and consistently found a zero margin in the three most recent reviews.  This is substantial evidence of a consistent pattern of lack of dumping in the market and justifies the use of a prior review rate.

Finally, accuracy and fairness warrant rejection of Commerce's separate rate determination in this case in view of the substantial record evidence demonstrating the unreasonableness of Commerce's determination.  Albemarle, 821 F.3d at 1354 ("accuracy and fairness must be Commerce's primary objectives in calculating a separate rate for cooperating exporters," citing Bestpak, 716 F.3d at 1379 ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible."); Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (a rate must be a "reasonably accurate estimate of the respondent's actual rate") (internal quotation marks and citations omitted); SNR Roulements v. United States, 402 F.3d 1358, 1363 (Fed. Cir. 2005) ("Antidumping laws intend to calculate antidumping duties on a fair and equitable basis."); Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (the "basic purpose of the statute" is to "determin[e] current margins as accurately as possible").

### III.    Commerce Erred in not Rescinding the Review of Deosen Biochemical Ltd.

One of the Deosen plaintiffs, Deosen Biochemical Ltd., made no shipments during the POR and timely submitted a No Shipment Certification.  Only Deosen Biochemical (Ordos) Ltd. exported subject merchandise during the POR.  Deosen Case Brief, at 10.  In the review, Deosen offered to provide additional documentation to show that identification of Deosen Biochemical Ltd. as an exporter in the customs data was inaccurate.  Id.  However, Commerce refused to rescind

the review of Deosen Biochemical Ltd. on the grounds that it treated the two companies as a single, collapsed entity in prior reviews.  Final Decision Memo, at 8.

Commerce's refusal to rescind the review is inconsistent with its own regulations and practice.  Namely, the Department normally rescinds a review with respect to a particular exporter or producer, if it concludes that there were no entries, exports, or sales of the subject merchandise. 19 C.F.R. § 351.213(d).  Moreover, Commerce continued to treat the two Deosen entities as a single entity in this review, without conducting any inquiry concerning the relationship of the two Deosen entities in the POR.  It improperly relied solely on its decisions in prior segments of the proceeding, which were based on information not on the record.

**CONCLUSION AND PRAYER FOR RELIEF**

In light of the foregoing, Commerce's Final Results were not supported by substantial evidence or in accordance with law.  Deosen further supports the arguments presented by Meihua and Fufeng.  Deosen respectfully requests that the Court grant judgment on the agency record, remand the case to Commerce, and order Commerce to reconsider Deosen's separate rate.

Respectfully submitted,

/s/ Chunlian (Lian) Yang
Chunlian (Lian) Yang
Lucas Queiroz Pires
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel to Deosen*

Dated: July 19, 2022

16

## <u>Word Count Certificate of Compliance</u>

This brief has been prepared utilizing Microsoft Word using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 4,471 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Respectfully submitted,

/s/ *Lucas Queiroz Pires*
Chunlian (Lian) Yang
Lucas Queiroz Pires
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel to Deosen*

Dated: July 19, 2022