## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE JENNIFER S. CHOE-GROVES, JUDGE

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED, AND XINJIANG MEIHUA AMINO ACID CO., LTD., | ) ) ) ) |
| *Plaintiffs,* | ) ) ) |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY, LTD., | ) ) ) ) ) |
| *Plaintiff-Intervenors,* | ) ) ) |
| v. | )   Consol. Court No. 22-00069 ) |
| UNITED STATES, | ) ) |
| *Defendant.* | ) ) ) ) |

## ORDER

Upon consideration of plaintiffs' and plaintiff-intervenors' motions for judgment upon the agency record, responses thereto, replies, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' motions are DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained in its entirety.


Dated: _____, 2022            _____
        New York, New York                                          Judge

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE JENNIFER S. CHOE-GROVES, JUDGE

|  |  |
|---|---|
| —————————————————————— ) | |
| MEIHUA GROUP INTERNATIONAL ) | |
| TRADING (HONG KONG) LIMITED, AND ) | |
| XINJIANG MEIHUA AMINO ACID CO., LTD., ) | |
| ) | Consol. Court No. 22-00069 |
| *Plaintiffs,* ) | PUBLIC VERSION |
| ) | |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., ) | BUSINESS CONFIDENTIAL |
| DEOSEN BIOCHEMICAL LTD., AND ) | INFORMATION DELETED FROM |
| JIANLONG BIOTECHNOLOGY COMPANY, ) | PAGES: 4, 5, 6, 12. 13, 14, 16, 18 |
| LTD., ) | |
| ) | |
| *Plaintiff-Intervenors,* ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |
| —————————————————————— ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' AND PLAINTIFF-INTERVENORS' MOTIONS FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of this Court's rules, defendant, the United States, respectfully submits this response to the motions for judgment upon the agency record filed by Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd. (plaintiffs), and Deosen Biochemical (Ordos) Ltd. (Deosen), and Jianlong Biotechnology Company, Ltd. (Jianlong) (plaintiffs-intervenor).  ECFs No. 27, 29, and 31.  Plaintiffs challenges certain aspects of the Department of Commerce's final results of the administrative review of the antidumping duty order covering xanthan gum from the People's Republic of China.

## STATEMENT PURSUANT TO RULE 56.2

**I.     Administrative Determination Under Review**

The administrative determination under review is *Xanthan Gum From the People's Republic of China*, 87 Fed. Reg. 7,104 (Dep't of Commerce Feb. 8, 2022) (final results) (*Final Results*), P.R. 311, and accompanying Issues and Decision Memorandum (IDM), P.R. 312.  The period of review is July 1, 2019, to June 30, 2020.

**II.    Issues Presented For Review**

1.   Whether Commerce's application of an adverse inference to Meihua was reasonable and in accordance with law where Meihua knowingly reported inaccurate information regarding its United States sales.

2.   Whether Commerce's calculation of the separate rate was reasonably reflective of the likelihood of dumping by the two companies not individually examined in this review.

3.   Whether Commerce's finding that Deosen had shipments of xanthan gum during the period of review, and subsequent determination not to rescind its review of Deosen, was supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

On September 3, 2020, Commerce published a notice of opportunity to request an administrative review of the antidumping duty order covering xanthan gum from China. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 85 Fed. Reg. 39,531 (Dep't of Commerce Sep. 3, 2020) (Initiation Notice), P.R. XX.  In its initiation notice, Commerce explained that "{f}or any company subject to a review, if Commerce determined, or continued to treat, that company as

collapsed with others, Commerce will assume that such companies continue to operate in the same manner and will collapse them for respondent selection purposes." *Id.* at 39,531-39,532.

Commerce received requests for reviews of five companies, and selected Neimenggu Fufeng Biotechnologies Co., Ltd. (aka Inner Mongolia Fufeng Biotechnologies Co., Ltd.), Xinjiang Fufeng Biotechnologies Co., Ltd., and Shandong Fufeng Fermentation Co., Ltd. (collectively, Fufeng) and Meihua Group International Trading (Hong Kong) Limited, Langfang Meihua BioTechnology Co., Ltd., and Xinjiang Meihua Amino Acid Co., Ltd. (collectively, Meihua) for review.  Respondent Selection Memorandum, P.R. 39.

Deosen Biochemical (Ordos), Ltd. and Deosen Biochemical Ltd. (collectively, Deosen) and Inner Mongolia Jianlong Biochemical Co., Ltd. (IMJ)/ Jianlong Biotechnology Co., Ltd. (Jianlong) were among the companies for which a review was requested but that Commerce did not individually examine.  *Id.* at 2, 6.  Commerce explained that, because Commerce treated Deosen Biochemical (Ordos), Ltd. and Deosen Biochemical Ltd. as a single entity during the investigation of xanthan gum from China, it would continue to do so in the review.  *Id.* at 2 n.3.

On September 15, 2020, Meihua [

]. Meihua's Second Supplemental Section C Questionnaire Response, C.R. 130 at 10.  In its [

]. *Id.* at Exhibit SC2-5.  In doing so, Meihua [

]. *Id.*

On December 11, 2020, Meihua responded to Section C of Commerce's initial questionnaire regarding Meihua's United States sales.  Meihua's Section C Questionnaire

Response, C.R. 37-41.  In pre-preliminary comments, petitioner C.P. Kelco U.S., Inc. brought

Meihua's [                         ] to Commerce's attention.  Petitioner's Pre-prelim Comments, C.R.

166.  In a supplemental questionnaire, Commerce asked that Meihua submit a [

            ].  Commerce's Second Supplemental Section C/D Questionnaire, C.R. 120.  On June

4, 2021, Meihua provided Commerce with a [

                                        ]. C.R. 130.  Meihua

stated that it provided its [                                    ]  *Id.* at 10.  In its [



            ].  *Id.* at Exhibit SC2-5.

On August 5, 2021, Commerce published its preliminary determination.  *See Xanthan*

*Gum From the People's Republic of China*, 86 Fed. Reg. 42,781 (Dep't of Commerce Aug. 5

2021) (preliminary results) (Preliminary Results), and accompanying Issues and Decision

Memorandum (PDM).  Commerce preliminarily found that Meihua "knowingly reported

incorrect sales to Commerce."  PDM at 7.  Commerce specified that Meihua "provided

Commerce with inaccurate data pertaining to certain adjustments needed to calculate an accurate

net U.S. price and an accurate dumping margin" and "withheld relevant information from

Commerce about these adjustments and failed to disclose certain information regarding

documentation for the reported sales…which calls into question the reliability of the sales

information reported by Meihua."  *Id.* at 7-8.  Commerce therefore found that none of the

information reported by Meihua could be relied upon and applied an adverse factual inference

when selecting from among the facts otherwise available on the record to determine Meihua's

dumping margin.  *Id.*  Commerce further explained the basis for its determination in a business

proprietary memorandum, published concurrently with its preliminary results.  *Preliminary Application of Adverse Facts Available to Meihua*, C.R. 175.  In that memorandum, Commerce explained that the incorrect reporting by Meihua affected [            ] reported United States sales.  *Id.* at 3.

Additionally, Commerce preliminarily assigned a dumping margin to separate rate companies not individually examined – Deosen and Jianlong – equal to the simple average of Fufeng's preliminary dumping margin (zero) and Meihua's preliminary dumping margin (154.07 percent), resulting in a preliminary all-others margin of 77.04.  *Preliminary Results*, 86 Fed. Reg. at 42,783.

In its administrative case brief, Meihua challenged Commerce's application of an adverse inference to the totality of Meihua's United States sales reporting, as well as the rate selected by Commerce as an adverse factual inference.  *See* Meihua Case Brief, C.R. 179.  Deosen filed a case brief challenging Commerce's calculation of the separate rate applied to Deosen and Jianlong, and also arguing that Commerce should have rescinded its review of Deosen Biochemical Ltd. for a lack of shipments of xanthan gum during the period of review.  *See* Deosen Case Brief, C.R. 177.  Jianlong did not file an administrative case brief.

On January 31, 2022, Commerce issued its final results.  P.R. 312.

Commerce continued to find that the application of a total adverse factual inference to Meihua's reporting was appropriate, and declined to assign a different rate to Meihua.  IDM at 10-16.  Because Meihua did not provide necessary information in its section C questionnaire response, Commerce found that Meihua withheld relevant information pursuant to 19 U.S.C. § 1677e(2)(A), warranting resort to an adverse inference.  Commerce also found that, in doing so, Meihua prevented Commerce from properly analyzing, and prevented interested parties from

fully analyzing and commenting on, Meihua's United States sales database, thereby impeding Commerce's investigation and failing to provide Commerce information within the deadlines established by Commerce, warranting the selection of facts available on the record pursuant to 19 U.S.C. § 1677e(a)(2)(B) and (C).  IDM at 14; *see also* C.R. 175 at 6.  Commerce incorporated the business proprietary memorandum from its preliminary determination by reference into its final determination.  IDM at 11.

Commerce also found that, because Meihua failed to disclose that the United States sales information originally reported in its response was inaccurate, and withheld relevant information from Commerce, Meihua failed to cooperate by not acting to the best of its ability in responding to Commerce's requests for information, and, thus, using an adverse inference pursuant to 19 U.S.C. § 1677e(b) was warranted.  IDM at 14; *see also* C.R. 175 at 7.

Commerce also explained that it would not rescind the review with respect to Deosen Biochemical because "Commerce has treated" Deosen Biochemical and Deosen Ordos "as a single, collapsed entity in prior reviews."  IDM at 8.  Thus, "any shipments of subject merchandise made by either Deosen Ordos or Deosen Biochemical are ascribed to the collapsed entity, Deosen."  *Id.*

Finally, Commerce continued to calculate a separate rate of 77.04 percent for Deosen based on a simple average of the rates assigned to Meihua and Fufeng.  IDM at 4.  Commerce explained that, where – as here – "the weighted-average dumping margins established for all individually investigated respondents are zero, *de minimis*, or based entirely on facts available" the SAA permits Commerce to "use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated…"  IDM at 4-5, quoting 19 U.S.C. § 1673d(c)(5)(B).  Commerce further explained that, while the statue explicitly gives the

example of using a "weighted average," Courts have found that using a simple average is permissible where "where the volume data on the record with respect to one of the respondents is unavailable or unusable." IDM at 5. Because Meihua submitted incorrect United States sales data, Commerce found that its volume data was "unusable" and determined to instead rely on a simple average. *Id.*

**SUMMARY OF THE ARGUMENT**

Commerce's application of an adverse inference to Meihua is supported by substantial evidence and is in accordance with law. Meihua did not report correct United States sales data when this information was first requested by Commerce, and only eventually provided this information six months after its original questionnaire response. Even though the information provided by Meihua was the amount of duties "paid" to CBP, this amount was incorrect and ultimately subject to revision by CBP at the time of Meihua's original reporting. Meihua thus withheld information requested by Commerce and failed to provide information by the deadline established by Commerce, warranting the selection of facts otherwise available on the record. Because Meihua's failure to report prevented Commerce from calculating an accurate United States price, and therefore an accurate dumping margin, Meihua impeded Commerce's review, and further warranted the selection of facts otherwise available on the record. Moreover, because Meihua could have reported this information, but did not, Meihua failed to cooperate by not acting to the best of its ability in responding to Commerce's request for information, warranting the use of an adverse inference when selecting from among the facts otherwise available on the record.

Commerce did not need to grant Meihua an opportunity to remedy any deficiencies in its reporting, because any "deficiencies" in Meihua's reporting were the result of information

8

knowingly withheld by Meihua, and in any case were unknown to Commerce until late in its review.  Commerce also was not obligated to otherwise use the information provided by Meihua because Meihua did not act to the best of its ability in providing it.  Finally, the dumping margin applied to Meihua as an adverse factual inference is permitted by statute and is reasonable, because it is the highest rate calculated in a previous segment of this proceeding and because it is reflective of the seriousness of Meihua's failure to report.

Commerce's calculation of the separate rate for producers not selected for individual review is also supported by substantial evidence and explicitly permitted by the statute and the SAA.  Indeed, Commerce calculated the separate rate pursuant to the "expected method" prescribed in the SAA – which is to average a *de minimis* rate with a rate derived entirely from an adverse inference.  The rate calculated pursuant to the expected method is also reasonably reflective of the likelihood of potential dumping, as required by the SAA, as it accounts for prior reviews wherein Commerce applied total adverse factual inferences to non-cooperative respondents.

Finally, Commerce's determination to review Deosen Biochemical Ltd. is supported by substantial evidence.  Commerce collapsed Deosen Biochemical Ltd. and Deosen Biochemical (Ordos), Ltd. into a single entity in its investigation of xanthan gum from China.  Deosen had notice that Commerce would do so and did not present evidence indicating that the entities should not be reviewed together.  Because it is uncontested that Deosen had shipments of xanthan gum during the period of review, the single Deosen entity was lawfully reviewed.

## ARGUMENT

### III.    Standard of Review

The Court upholds Commerce's determination if it is supported by "substantial evidence on the record" and otherwise "in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

9

Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to support the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (footnote and internal quotation marks omitted).

That the Court may draw two inconsistent conclusions from the record "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) (citation omitted).  Rather, when Congress has entrusted an agency to administer a statute that demands inherently fact intensive inquiries, such as in this case, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

To comply with the statutory requirement that Commerce's determinations be made "in accordance with law," Commerce must "follow its established practice or explain why it is reasonable for it to deviate from its practice." *United States Steel Corp. v. United States*, 348 F. Supp. 3d 1248, 1260 (Ct. Int'l Trade 2018).  Commerce's actions establish a practice "'when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to' the agency's past action." *Id.* at 1254 (quoting *Mid Continent Steel & Wire, Inc. v. United States*, 203 F. Supp. 3d 1295, 1312 (Ct. Int'l Trade 2017)).

**IV.    Commerce's Application Of An Adverse Factual Inference To Meihua Is Supported By Substantial Evidence And In Accordance With Law**

**A.    Legal Background**

Commerce is entitled to select from facts otherwise available if necessary information is missing from the record.  19 U.S.C. § 1677e(a)(1).  Commerce may also select from facts otherwise available if an interested party:  (A) withholds information that has been requested by Commerce; (B) fails to provide such information by the deadlines for its submission or in the form and manner requested by Commerce; (C) significantly impedes a proceeding; or (D) provides information that cannot be verified.  19 U.S.C. § 1677e(a)(2).

If Commerce finds that an interested party has failed to comply to the best of its ability with Commerce's request for information, Commerce may use an inference adverse to the interests of the party in selecting from the facts available.  19 U.S.C. § 1677e(b)(1).  "While the {best of its ability} standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  To comply with the 'best of its ability' standard, a producer must maintain access to information so long as such information is the sort of information a reasonable producer would have known was required to be maintained.  *Peer Bearing Co. v. United States*, 766 F.3d 1396, 1400 (Fed. Cir. 2014).

When applying an adverse inference, Commerce may rely on any information placed on the record, including the highest rate calculated in a prior segment of the same proceeding.  19 U.S.C. § 1677e(b)(2)(D); 19 U.S.C. § 1677e(d)(1)(B).  To the extent that this information is obtained during an investigation, Commerce need not corroborate information used to support an adverse factual inference.  19 U.S.C. § 1677e(c)(1).

11

When Commerce determines that a response to a request for information is deficient, Commerce must inform the respondent of the deficiency and, to the extent practicable, provide the respondent with an opportunity to remedy or explain the deficiency.  19 U.S.C. §1677m(d). Commerce cannot decline to consider information that is submitted by an interested party and is necessary to the determination, but does not meet all applicable requirements established by Commerce, if:  (1) the information is submitted by the deadline for its submission; (2) the information can be verified; (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching a determination; (4) the interested party has demonstrated that it has acted to the best of its ability in providing the information; and (5) the information can be used without undue difficulties.  19 U.S.C. § 1677m(e).

**B. Commerce's Determination That There Is A Gap In The Record Based On Meihua's Failure To Report Accurate Information Regarding Its United States Sales Is Supported By Substantial Evidence And In Accordance With Law.**

Commerce's determination that there is a gap in the record, necessitating reliance on facts otherwise available, is supported by substantial evidence.  Meihua responded to Commerce's Section C questionnaire regarding its United States sales on December 11, 2020.  C.R. 37-41. As part of its questionnaire response, counsel for Meihua and a Meihua company representative certified that the information contained therein was accurate and complete to the best of their knowledge.  *Id.* at 5-6; *see also* IDM at 11.

On September 15, 2020 – almost three months before responding to the section C questionnaire – Meihua [

].  C.R. 175 at 3.

Therefore, Meihua knowingly reported [

] notwithstanding the [                    ] submitted

12

months before.  IDM at 11.  As Commerce explained, information regarding [

           ] is necessary for Commerce to calculate a net United States price.  *Id.*; *see, e.g.*, 19

U.S.C. § 1677a(c)(2)(A) (providing that the export price calculated by Commerce will be

reduced by the amount of United States import duties).  Therefore, by failing to provide

Commerce with this information, Meihua withheld information requested by Commerce, failed

to provide that information for the deadline established by Commerce, and – by significantly

impeding Commerce's proceeding – Meihua's created a gap in the record that Commerce needed

to fill by reliance on facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(2)(A)-(C).  IDM

at 14; *see also* C.R. 175 at 6.

    Meihua asserts that it did not withhold information requested by Commerce, because

Meihua provided what Commerce requested, *i.e.* the duty amounts *paid* by Meihua.  Meihua Br.

at 20.  Meihua argues that it was not obliged to provide further information regarding its [

      ].  *Id.*  But Meihua fails to acknowledge that the information submitted by Meihua was

incorrect, and, indeed – as indicated in its [                    ] – *not even reflective* of [

                          ].

    Parties must certify that the information contained in their Section C questionnaire

responses is accurate and complete.  P.R. 44 at 5-6; *see also* IDM at 11.  Meihua suggests that

Commerce could have asked for "speculative information" relating to how its United States

duties and section 301 duties may have changed.  Meihua Br. at 21-22.  However, such an

expectation would place an unrealistic burden on Commerce, particularly when, as here, the

information provided by the responding party is inaccurate or incomplete and the accurate

information was in the responding party's command.  *See Tianjin Mach. Imp. & Exp. Corp. v.*

*United States,* 31 C.I.T. 1416 (2007) (finding that respondents are obligated to report

"information over which they had complete command.").

Meihua cites the fact that Commerce asks parties whether they apply for or receive exclusions to their section 232 or 301 duties.  Meihua Br. at 22.  But section 232 and 301 exclusions are predictable, and are granted with regularity – contrarily, Commerce could not have foreseen that Meihua's [

                                              ].  Indeed, that Commerce routinely requests information regarding section 232 and 301 exclusions should have notified Meihua that Commerce's calculations are sensitive to duties that may be [

                              ].

Finally, Meihua argues that, given the question posed by Commerce, Meihua could not have provided more accurate information than what it did provide.  Meihua Br. at 20.  This assertion is incorrect, as evidenced by the information that Meihua eventually reported to Commerce in its second supplemental section C questionnaire response.  *See* C.R. 130.  Even if Meihua's [                                    ] were not finalized, Meihua could have alerted Commerce to the fact that its reported sales were under revision, giving Commerce an opportunity to recognize the deficiency in Meihua's reporting, potentially issue further supplemental questionnaire(s), and adjust its calculations accordingly.  Instead, by reporting United States sales that were incorrect and [                          ], Meihua placed Commerce in a more difficult position than had Meihua been forthcoming in its initial questionnaire response.

Because Meihua only provided its [                  ] to Commerce in its second supplemental section C questionnaire response, only after prompting by Commerce and *six months* after its initial section C questionnaire response, Commerce also found that Meihua failed to respond to Commerce's request for information by the deadline established by

Commerce.  19 U.S.C. § 1677e(a)(2)(B); *see also* IDM at 14.  Meihua argues that it submitted

the documentation requested by Commerce by the established deadlines, and that Commerce had

sufficient time to analyze the information it submitted.  Meihua Br. at 23.  Meihua is correct that

its *initial* questionnaire response was submitted within the deadline established by Commerce.

Meihua Br. at 23; *see also* C.R. 37-41.  However, there is no dispute that that information was

incorrect; it is Meihua's failure to provide the *correct information* by the deadline established by

Commerce that led to Commerce's use of facts otherwise available in reaching the final results.

IDM at 14.

Meihua's argument that Commerce had sufficient time to analyze and seek comment on

its submission is also unavailing and unsupported by binding precedent.  Meihua relies upon

*Goodluck India v. United States*, for the proposition that Commerce cannot decline to consider

"corrective information at a preliminary determination stage (where there are no finality

concerns), provided that the corrections are otherwise justifiably necessary."  Meihua Br. at 24

(citing *Goodluck India v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021) (citing cases)).

The cases cited in *Goodluck* all dealt with information misreported due to innocuous

clerical errors.  *See NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995); *Timken

U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006).  In those circumstances, the

Federal Circuit has held that Commerce abuses its discretion by declining to entertain corrections

where there is time to do so.

The authority more relevant to this case is *Papierfabrik August Koehler SE v. United

States*, where the Federal Circuit held that Commerce is not required to grant parties a chance to

provide corrective information, even when that information is provided in advance of

Commerce's preliminary results, where that information is intentionally withheld from

Commerce.  843 F.3d 1373, 1384 (Fed. Cir. 2016).  There, the court concluded that "Commerce did not abuse its discretion in denying {respondent} a chance to correct data infected by intentional concealment of relevant information."  *Id*.  Because there is no question that Meihua submitted data that it knew at the time to be false to Commerce, it is *Papierfabrik* and not *Goodluck* that controls.

Finally, because Meihua failed to accurately report its [

], Meihua prevented Commerce and interested parties from analyzing Meihua's reported information in a timely manner, thereby impeding Commerce's investigation and warranting the selection of facts otherwise available on the record pursuant to 19 U.S.C. § 1677e(a)(2)(C).  Accordingly, Commerce's application of facts otherwise available to Meihua is supported by substantial evidence and in accordance with law.

## C. In Light Of Meihua's Failure To Cooperate, Commerce's Application Of An Adverse Inference Is Supported By Substantial Evidence And In Accordance With Law

Pursuant to 19 U.S.C. § 1677e(b)(1), if Commerce finds that a party failed to cooperate by not acting to the best of its ability to comply with a request for information from Commerce, Commerce may use an adverse inference in selecting among the facts available.  Because Meihua, notwithstanding its ability to do so, did not report accurate [

], Commerce found that Meihua failed to cooperate in responding to Commerce's requests for information within the meaning of § 1677e(b)(1).  C.R. 175 at 7.  Commerce's conclusion was lawful because "on its face, the statute authorizes Commerce to apply adverse inferences when an interested party…fails to provide requested information."  *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1371 (Fed. Cir. 2014).

16

Meihua argues that Commerce had a statutory duty, pursuant to 19 U.S.C. § 1677m(d), to identify deficiencies in Meihua's response and to grant an opportunity to respond to those deficiencies. Meihua Br. at 27-28. That statutory duty is inapplicable to the facts of this case.

First, Meihua's argument ignores that Commerce had no awareness of the deficiency in Meihua's reporting until that deficiency was brought to its attention by petitioner – months after Meihua initially reported its United States sales. *See* C.R. 166. Second, even if Commerce were aware of the deficiencies in Meihua's reporting, it would not be obliged to remedy them, as they are a product of Meihua's own failure to report. "{N}othing in {19 U.S.C. § 1677m(d)} compels Commerce to treat intentionally incomplete data as a 'deficiency' and then to give a party that has intentionally submitted incomplete data an opportunity to 'remedy' as well as to 'explain.'" *Papierfabrik*, 843 F.3d at 1384. Meihua's interpretation of 19 U.S.C. § 1677m(d) would in effect allow parties to withhold necessary information from Commerce with impunity. The Federal Circuit in *Papierfabrik* recognized that "{t}he consequence of such a reading would be to permit respondents to submit fraudulent data with the knowledge that, should their misconduct come to light, they can demand an opportunity to remedy their intentionally deficient data and avoid the otherwise-authorized adverse inferences" *Id.* at 1384. It is therefore  not a reasonable reading of the statute.

Meihua also argues that 19 U.S.C. § 1677m(e) obligates Commerce to use the information that Meihua reported in its June 4 supplemental questionnaire response, notwithstanding the fact that Meihua did not report this information in its initial section C questionnaire response. Meihua Br. at 29-31. However, Commerce is only required to use record information where an interested party "has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by {Commerce}

with respect to the information."  19 U.S.C. § 1677m(e)(4).  Here, Commerce found that Meihua

did not act to the best of its ability in providing Commerce with an accurate reporting of its

United States sales; Commerce was thus not required to use the information provided by Meihua

in its supplemental questionnaire response.  *See NSK Ltd. v. United States*, 481 F.3d 1355, 1360

n.4 (holding that, where a respondent failed to satisfy the "best of its ability" requirement under

19 U.S.C. § 1677e(b), it also failed to satisfy the same requirement under 19 U.S.C. §

1677m(e)(4)).

### D. Commerce's Selection Of An Adverse Rate Is Supported By Substantial Evidence And In Accordance With Law

Consistent with 19 U.S.C. § 1677e(d)(1)(B), which authorizes Commerce to apply the

highest rate calculated for a respondent in a previous review as an adverse inference, assigned

Meihua the dumping rate from its 2013-2014 and 2014-2015 reviews, where it found dumping to

exist.  IDM at 16.  Meihua argues that this rate is punitive.  Meihua Br. at 35 (citing *BMW of N.

Am LLC v. United* States, 926 F.3d 1291 (Fed. Cir. 2018)).  In *BMW*, the Federal Circuit

cautioned that Commerce must consider the "totality of the circumstances" in selecting an

adverse rate.  *Id*. at 1302.  Commerce did so here and any analogies to the facts of *BMW* are

inapt.

Meihua's failure to report was not the result of procedural anomalies or an unwitting

mistake made by Meihua's counsel, as was the case in *BMW*.  *See* IDM at 16. By contrast,

Meihua was fully aware of the nature of its United States sales, having already [

] months before it responded to Commerce's section C questionnaire.

Indeed, Commerce only learned of the [                    ] because the petitioners reported it, and

– even after Commerce requested that Meihua place its [                    ] on the record, Meihua

only cooperated "under protest."  C.R. 130 at 10; *see* Meihua Br. at 35.  Meihua's

characterization of itself as a fully cooperative respondent is squarely contradicted by the record. Regardless of Meihua's behavior in prior reviews, the seriousness of its failure to cooperate with Commerce's requests for information in the review under question warranted the highest possible application of an adverse factual inference.  *See China Steel Corp. v. United States*, 393 F. Supp. 3d 1322 (Ct. Int'l Trade 2019) ("Commerce must look not only to respondent culpability but also to the seriousness of the uncooperative behavior.") (*citing BMW*, 926 F.3d at 1302).

Commerce's determination is supported by substantial evidence, in accordance with law, and should not be disturbed.

## V.     Commerce's Calculation Of The All-Others Rate Is Supported By Substantial Evidence And In Accordance With Law

### A.     Legal Background

Pursuant to 19 U.S.C. § 1673d(c)(5)(A), Commerce will calculate an all-others rate by taking a weighted average of dumping margins assigned to the mandatory respondents, excluding those margins that are zero, *de minimis*, or determined entirely on the basis of AFA. However, where dumping margins for all individually-examined entities are zero, *de minimis*, or determined based entirely on AFA, Commerce "may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for exporters and producers individually investigated." 19 U.S.C. § 1673d(c)(5)(B).

When the dumping margin for all individually investigated entities are determined entirely on the basis of facts available or are zero or *de minimis*, "{t}he expected method in such cases will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available."  Statement of

Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, at 873 (1994) as reprinted in 1994 U.S.C.C.A.N. 4040 (SAA).

The Federal Circuit has upheld Commerce's application of the expected method in administrative reviews, explaining that the general assumption underlying the statutory framework is that "the individually examined respondents account for a majority of the market during the relevant period, and are representative at the very least in terms of aggregate volume." *Albemarle Corp. & Subsids. v. United States*, 821 F. 3d 1345, 1353 (Fed. Cir. 2016); *see also* 19 U.S.C. § 1677f-1(c)(2) (allowing Commerce to limit its examination exporters or producers, which accounts for the largest volume of subject merchandise that can be reasonably examined, when it is not practicable for Commerce to examine each company individually).

"The very fact that the statute contemplates using data from the largest volume exporters suggests an assumption that those data can be viewed as representative of all exporters." *Albemarle*, 821 F.3d at 1353; *see also Changzhou Hawd Flooring Co. v. United States*, 848 F. 3d 1006, 1012 (Fed. Cir. 2017) ("Thus, the mandatory respondents in this matter are assumed to be representative"). "The statute assumes that, absent such evidence, reviewing only a limited number of exporters will enable Commerce to reasonably approximate the margins of all known exporters." *Albemarle*, 821 F.3d at 1353.

To depart from the expected method, substantial evidence must demonstrate that that the non-examined companies' dumping behavior would be different than that of the mandatory respondents. *Id.*; *see also Changzhou Hawd*, 848 F. 3d at 1012 ("Under *Albemarle*, Commerce could not deviate from the expected method unless it found, based on substantial evidence, that the separate rate firms' dumping is different from that of the mandatory respondents").

**B. Jianlong Failed To Exhaust Its Administrative Remedies**

On appeal, Jianlong attempts to challenge Commerce's calculation of a separate rate. However, as a preliminary matter, Commerce will not specifically address Jianlong's individual arguments because Jianlong failed to exhaust its administrative remedies.  This Court "where appropriate, {shall} require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d). This statute "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (citing *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).  As such, parties must exhaust administrative remedies by raising all issues in their initial case briefs before Commerce.  *See Prime Time Commerce LLC v. United States*, 495 F. Supp. 3d 1308, 1313-14 (Ct. Int'l Trade 2021) (citing *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (internal citation omitted); *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383 (Fed. Cir. 2008); *ABB, Inc. v. United States*, 920 F.3d 811, 818 (Fed. Cir. 2019)).  Commerce's regulations also require parties submit a case brief that contains all the arguments that the submitters view to be relevant to the final determination.  *See* 19 C.F.R. § 351.309(c)(2); *see also See Pakfood Pub. Co. v. United States*, 724 F. Supp. 2d 1327, 1350 (Ct. Int'l Trade 2010) ("Generally the 'prescribed remedy for a party in disagreement with Commerce's Preliminary Results is to file a case brief … and that 'case brief must present *all* arguments that *continue* in the submitter's view to be relevant to {Commerce}'s final determination or final results…") (internal citations omitted and emphasis in original); *see also Zhongce Rubber Grp. Co. v. United States*, Slip. Op. 2018-160, 2018 Ct. Int'l Trade LEXIS 169 (Nov. 20, 2018) (granting a motion to dismiss an

action for failure to state a claim upon which relief can be granted because plaintiff did not file a case brief before the agency).  .

The arguments Jianlong now presents were not raised in any administrative case brief, and therefore not addressed before Commerce in its final results.  As a result, this Court should decline to consider them.

Commerce stated in its preliminary results that Jianlong would receive a separate rate, and provided an explanation of Commerce's separate rate methodology, including the separate rate that Commerce would eventually assign to Jianlong.  PDM at 14-15.  Jianlong had an opportunity to contest the proposed separate rate by filing an administrative case brief.  *See* 19 C.F.R. § 351.309(c)(2).  It failed to do so.  While there are limited exceptions to the exhaustion requirement, Jianlong does not even acknowledge that it failed to exhaust its administrative remedies, let alone argue that this Court should apply one of the narrow exceptions here.  ECF No. 27-2.  Because Jianlong failed to exhaust its administrative remedies – filing no case brief before Commerce – *and* makes no argument as to why this Court should consider its assertions, Jianlong's arguments are waived and this Court should decline to consider them.  28 U.S.C. § 2637(d).

## B.  The All-Others Rate Calculated By Commerce In This Proceeding Is Reasonably Reflective Of Potential Dumping

Consistent with the expected method, Commerce assigned non-selected companies in this review a rate equal to the simple average of the final rates assigned to Meihua (154.08) and Fufeng (zero) for a 77.04 percent rate.  IDM at 5; *see also* SAA at 873.  Where the expected method yields a result that "would not be reasonably reflective of potential dumping margins," Commerce may "use other reasonable methods."  SAA at 873.  Notwithstanding that the expected method calls for a weighted average, Commerce found that a simple average was

  
appropriate for this case, because volume data for Meihua was unavailable. *Id.* (citing *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013)).

Here, Commerce did not find that the separate rate was not reasonably reflective of potential dumping margins of the separate rate respondents in this review such that it may depart from use of the expected method. IDM at 5-6 (citing *Albemarle*). In doing so, Commerce referenced the history of the administration of this antidumping duty order. This Court has previously sustained Commerce's use of prior reviews as substantial evidence as to whether the all-others rate in a current review is reasonably reflective of the likelihood of potential dumping. *See Bosun Tools Co. v. United States*, 2022 U.S. App. LEXIS 624, *10 (Ct. Int'l Trade Jan. 22, 2022). Indeed, Deosen itself received a rate based on adverse facts available in two prior reviews of this order, the 2013-2014 and 2014-2015 reviews. IDM at 6 (citing *Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review*; 2013-2014, 82 Fed. Reg. 11,428 (February 23, 2017); *Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, Final Partial Rescission; 2014-2015*, 82 Fed. Reg. 11,434 (Dep't of Commerce 2017)).

Deosen argues that evidence on the record of this proceeding supports a finding that the determined all-others rate was unreasonable. Deosen Br. at 7-10. From the outset, Deosen disregards evidence on the record of this proceeding that shows that there is a likelihood of potential dumping. Specifically, Deosen fails to acknowledge Meihua's 154.07 rate, which was derived from evidence on the record of the contemporaneous review, and suggests that producers of xanthan gum from China could have been dumping at similar levels during the period of review. Mandatory respondents, being the highest-volume producers of subject merchandise

under review, are assumed to be representative of the rate to be assigned to non-selected

respondents. *See Changzhou Hawd*, 848 F.3d at 1012.  Deosen also fails to acknowledge that the

SAA asks whether the calculated all-others rate is "reasonably reflective of potential dumping

margins for *all* "non-investigated exporters or producers" – not on an entity-by-entity basis.

SAA at 873 (emphasis added).  Any specific evidence presented by Deosen regarding Deosen's

likelihood of dumping is mitigated by the fact that Deosen is only one of two non-reviewed

producers in this proceeding.

Deosen argues that, because the facts of this case are similar to those of *Bestpak*, this

court should reverse Commerce's calculation of the separate rate.  Deosen Br. at 8.  However,

the facts of *Bestpak* are distinguishable; unlike in *Bestpak*, Commerce did not apply an adverse

inference to determine that Meihua was controlled by the Government of China, and did not

apply the China-wide rate to Meihua.  *See* PDM at 14 (unchanged in Final Determination); *but

see Bestpak*, 716 F.3d at 1379 (reversing Commerce's separate rate calculation where it is in part

derived from a producer presumed to be under government control).  Rather, Commerce relied

on an adverse inference to find that, despite being independent of control by the government of

China, Meihua dumped at a rate of 154.07 percent.  In comparison to a producer controlled by

the government of China, Meihua's circumstances here are factually more similar to companies

such as Deosen which have also established eligibility for a separate rate in this proceeding.

Further, unlike in *Bestpak*, Commerce became aware of Meihua's lack of cooperation

relatively late in this proceeding.  *See Bestpak*, 716 F.3d 1370 at 1380 (finding that Commerce

"could have gathered more information" where it became aware of respondent's non-cooperation

earlier in a review).  Here, Commerce only became fully aware of the basis for Meihua's non-

cooperation two months before the deadline for publication of its preliminary results, and did not

have adequate time to seek a new respondent in this review to provide further evidence of the rate of dumping in this case.

Finally, the present case is distinguishable from *Bestpak* insofar as it is an administrative review, and not an investigation.  Commerce, as it did here, may rely on the history of dumping margins in this proceeding to inform its calculation of the separate rate.  *See Bosun Tools Co. v. United States*, 2022 U.S. App. LEXIS 624, *10 (Ct. Int'l Trade Jan. 22, 2022) (distinguishing administrative reviews from investigations because there is "no lack of data" in administrative reviews where Commerce may rely on historical dumping trends).  There is a history of non-cooperative respondents in this case receiving dumping margins based on total adverse inferences.  Indeed, Commerce has calculated rates based on total adverse facts available in two of the six completed reviews of the order covering xanthan gum from China.  *See* IDM at 6.  Deosen itself received a rate based on a total adverse factual inference in two of these reviews.  *Id.*

Deosen misleadingly provides the rates from the third review on, insisting that the third administrative review was the review where Commerce calculated rates "based on {respondents'} actual data rather than total AFA."  Deosen Br. at 11.  But Deosen ignores that "{the statute} and the SAA *explicitly* allow Commerce to factor both *de minimis* and *AFA rates* into the calculation methodology."  *Bosun*, 2022 U.S. App. LEXIS 624 at *10-11 (citing *Bestpak*, 716 F.3d 1370 at 1378) (emphasis in original).  Because the calculation methodology employed by Commerce here is explicitly permitted by the statute and the SAA, and because evidence of non-cooperation from previous reviews of xanthan gum from China show that a dumping margin of 77.04 is reasonably reflective of the potential likelihood of dumping by the companies not selected for individual review in this case, Commerce's calculation of the separate

rate is supported by substantial evidence.

**VI.    Commerce's Determination Not To Rescind Its Review With Respect To Deosen Is Supported By Substantial Evidence And Consistent With Commerce's Practice**

Pursuant to regulation, Commerce "collapses" or treats "affiliated producers as a single entity" in order to prevent the "manipulation of price or production." 19 C.F.R. § 351.401(f). In its original investigation of xanthan gum from China, Commerce collapsed Deosen Biochemical Ltd. and Deosen Biochemical (Ordos), Ltd. Consistent with its practice, Commerce continued to do so in this review. P.R. 39 at 2 n.5; *see also Xanthan Gum From the People's Republic of China,* 78 Fed. Reg. 33,351 (Dep't of Commerce June 4, 2013).

Deosen argues that Deosen Biochemical Ltd. had no shipments during the period of review, and that Commerce must rescind review of a company that has no shipments during a period of review. Deosen Br. at 16. This argument ignores that Commerce did not treat Deosen Biochemical Ltd. as a single entity in this review; Commerce collapsed it with Deosen Biochemical (Ordos), Ltd.

Deosen argues that Commerce erred by collapsing the two entities without conducting a collapsing analysis during this review. Deosen Br. at 16. But Deosen offered *no evidence* to rebut Commerce's presumption that these two entities are collapsed, and, indeed, never argued that the presumption should not apply here. Deosen had ample notice of Commerce's presumption that the two entities remain collapsed for purposes of this review because Commerce said so in its initiation notice. *Initiation Notice*, ## Fed. Reg. at 39,531-39,532; *see also* 44 U.S.C. § 1507 (publication of a document in the Federal Register is sufficient to give notice of its contents to parties affected by it); *Shandong Yongtai Grp. Co. v. United States*, 415 F. Supp. 3d 1303, 1309 (Ct. Int'l Trade 2019). Absent any evidence placed on the record that Deosen Biochemical Ltd. and Deosen Biochemical (Ordos), Ltd. were not a single entity during

the review in question, Commerce's determination to continue to review Deosen Biochemical

Ltd. was supported by substantial evidence.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain the challenged

determination and deny plaintiffs' and plaintiff-intervenors' motions for judgment on the agency

record.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:                          /s/ Kelly A. Krystyniak
                                     KELLY A. KRYSTYNIAK
SPENCER NEFF                         Trial Attorney
Attorney                             Commercial Litigation Branch
Office of the Chief Counsel          Civil Division
  For Trade Enforcement & Compliance U.S. Department of Justice
U.S. Department of Commerce          P.O. Box 480
                                     Ben Franklin Station
                                     Washington, D.C. 20044
                                     (202) 307-0163
                                     Fax: (202) 514-8640
                                     Email: kelly.a.krystyniak@usdoj.gov

Dated: September 27, 2022

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 7,721 words.


                                        s/ Kelly A. Krystyniak

September 27, 2022