UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED, AND XINJIANG MEIHUA AMINO ACID COL., LTD., <br><br>  Plaintiffs, <br><br> DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY LTD., <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Consol. Court No. 22-00069 |

REPLY BRIEF OF CONSOLIDATED PLAINTIFF
JIANLONG BIOTECHNOLOGY CO. LTD.

Submitted by:

Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
Tel.: (202) 223-3760

*Counsel to Consolidated Plaintiff*
*Jianlong Biotechnology Co., Ltd.*

Dated:  November 8, 2022

**TABLE OF CONTENTS**

TABLE OF CONTENTS………………………………………………………………………….i

TABLE OF AUTHORITIES……………………………………………………………………...ii

I.      INTRODUCTION………………………………………………………………………...1

II.     ARGUMENT……………………………………………………………………………...2

        A.      Jianlong Did Not Fail to Exhaust Administrative Remedies..................................2

        B.      Defendant Has Waived Any Defense to Its Illegal Assignment of a
Dumping Rate to Meihua Based on Adverse Facts Available.................................5

        C.      Defendant Has Waived Any Defense to Its Illegal Assignment to Jianlong of a
Dumping Rate Based on the Simple Average of the AFA Rate Assigned to
Meihua and the 0% Rate Assigned to Fufeng………………………….………5

III.    CONCLUSION…………………………………………………………………………..10

# TABLE OF AUTHORITIES

**Judicial Precedent**

Zhaoqing Tifo New Fibre Co., Ltd. v. United States, 60 F. Supp. 3d 1328 (Ct. Int'l Trade 2015)……………………………………………………...……………2, 3, 4

Indiana Utility Regulatory Comm'n v. FERC, 668 F.3d 735 (D.C. Cir. 2012)...............................3

Kessler v. Surface Transportation Board, 635 F.3d 1 (D.C. Cir. 2011) .........................................3

Portland General Electric Co. v. Bonneville Power Administration, 501 F.3d 1009 (9th Cir. 2007).................................................................................................................................3

Ningbo Dafa Chemical Fiber Co. v. United States, 580 F.3d 1247 (Fed. Cir. 2009).....................4

Bosun Tools Co. v. United States, 2022 U.S. App. LEXIS 624 (Ct. Int'l Trade Jan. 22, 2022)……………………………………………………………………………………………7

Bosun Tools Co. v. United States, 463 F. Supp. 3d 1308 (Ct. Int'l Trade 2020) ...........................8

Bosun Tools Co. v. United States, 493 F. Supp. 3d 1351, 1357 (Ct. Int'l Trade 2021) ..................8

**Administrative Determinations**

Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020, 87 Fed. Reg. 7104 (Dep't Commerce February 8, 2022)................................................................................1

Xanthan Gum From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016, 83 Fed. Reg. 6513 (February 14, 2018)……………………………………………………………………7

**Other Authority**

Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103- 316, at 873 (1994) as reprinted in 1994 U.S.C.C.A.N. 4040 (SAA)........................6

**REPLY BRIEF OF CONSOLIDATED PLAINTIFF
JIANLONG BIOTECHNOLOGY CO. LTD.,**

**I.      INTRODUCTION**

Consolidated Plaintiff, Jianlong Biotechnology Co., Ltd. ("Jianlong" or "Consolidated Plaintiff"), submits this reply to the September 27, 2022, brief of Defendant, the United States, which responded to the claims raised by Jianlong in its Rule 56.2 motion for judgment on the agency record.  See Def.'s Resp. Pls.' Mot. J. Upon Agency R. Public Document, September 27, 2022, ECF No. 35 ("Def. Resp. Br.").  Jianlong's motion for judgment on the agency record contested various aspects of the U.S. Department of Commerce's final results of administrative review of the antidumping duty order on xanthan gum from China.  See Pl.'s Rule 56.2 Mot. J. Agency R., July 19, 2022, ECF No. 27, Mem. Supp. Mot. Pl. J. Upon Agency R. Confidential Version, July 19, 2022, ECF No. 27 ("Jianlong's Brief"); see also Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020, 87 Fed. Reg. 7104 (Dep't Commerce February 8, 2022), PR 317 ("Final Results") and accompanying Issues and Decision Memorandum (Jan. 31, 2022) ("IDM"), PR 312.

The Court must remand Commerce's determination to assign a dumping margin to Meihua Group International Trading (Hong Kong)/ Xinjiang Meihua Amino Acid Co., Ltd. ("Meihua") based on facts available with an adverse inference, and the Court must remand Commerce's determination to assign Jianlong a dumping rate that was based on the simple average of (a) the total AFA rate assigned to Meihua; and (b) the calculated margin of 0.00% for Neimenggu Fufeng Biotechnologies Co., Ltd., and its affiliates ("Fufeng").  In this review, qualitative and quantitative record evidence demonstrates that Meihua provided all necessary information and did not withhold any information.  In addition, there is no record evidence that

1

Consol. Court No. 22-00069
Consolidated Plaintiff Jianlong's Reply Brief

the 77.04% dumping margin that Commerce assigned to Consolidated Plaintiffs reflected the potential dumping rate of the cooperative separate rate respondents.

In its response brief, Defendant fails to address that Meihua acted to the best of its ability to comply with all information requests from Commerce. Defendant also fails to address that Commerce did not identify any information that was not provided upon request by Meihua. Nor does Defendant address that the U.S. Court of Appeals for the Federal Circuit has held that a rate that results from a simple average of a total AFA rate and a *de minimis* rate may be unreasonable where data does not support Commerce's determination that the resulting separate rate reasonably reflects the separate rate respondents' dumping margins. Because Defendant misreads the record evidence, ignores portions of the administrative record that significantly undermine Commerce's determination, and repeats Commerce's conclusory remarks, the Court must remand the Final Results with instructions to Commerce not to apply AFA to Meihua and to explain why inclusion of an AFA rate in the calculation of the dumping rate assigned to the separate rate respondents was supported by substantial evidence and in accordance with law.

## II. ARGUMENT

### A. Jianlong Did Not Fail to Exhaust Administrative Remedies

Defendant alleges that "Jianlong failed to exhaust its administrative remedies" and that "the arguments Jianlong now presents were not raised in any administrative case brief." Def. Resp. Br. at 21, 22. As an initial matter, the Court should reject the notion that Jianlong failed to exhaust its administrative remedies.

A well-recognized exception to the doctrine of exhaustion allows a party to litigate an issue that the party did not litigate at the administrative level where the issue nonetheless was raised before the agency by a different party. Zhaoqing Tifo New Fibre Co., Ltd. v. United

2

Consol. Court No. 22-00069
Consolidated Plaintiff Jianlong's Reply Brief

States, 60 F. Supp. 3d 1328, 1344 (Ct. Int'l Trade 2015) ("… the administrative rebuttal brief filed by the Domestic Producer alerted Commerce to the potential for double counting of energy inputs if the agency were to switch to the financial statements … . Commerce thus had sufficient opportunity to address the double counting of energy in the Final Results"), citing Indiana Utility Regulatory Comm'n v. FERC, 668 F.3d 735, 739 (D.C. Cir. 2012) (acknowledging exception to doctrine of exhaustion "when an agency has considered the argument at the urging of another party"); Kessler v. Surface Transportation Board, 635 F.3d 1, 8 (D.C. Cir. 2011) (recognizing exception to exhaustion doctrine allowing a plaintiff to "raise {in litigation} any issue raised by any party to the administrative proceeding"); Portland General Electric Co. v. Bonneville Power Administration, 501 F.3d 1009, 1023-25 (9th Cir. 2007) (explaining that failure to exhaust is excused where issue that plaintiff seeks to raise in litigation "was raised by someone other than the {plaintiff}" at the administrative level).

Before this Court, Jianlong raised two issues: (1) Commerce should not have applied AFA to Meihua, and (2) Commerce should not have assigned to the separate rate respondents a dumping rate that is the simple average of the AFA rate assigned to Meihua and the 0% rate assigned to Fufeng. Both issues were explicitly and extensively argued in the administrative case briefs before Commerce by various parties. See Pl.'s (Deosen's) Br. Public Version at 2-9, September 14, 2022, PR No. 293, Pl's (Deosen's) Br. Confidential Version at 2-9, September 14, 2021, CD No. 177; Pl's (Meihua's) Br. Public Version at 21-40, September 15, 2021, PR No. 294, Pl's (Meihua's) Br. Confidential Version at 21-40, September 15, 2021, CD No. 179; Kelco U.S.'s Br. Public Document at 1-5, October 12, 2021, PD No. 303; IDM at 3-7, 9-16, PD No. 312. In fact, Defendant does not identify a single argument made by Jianlong that was not previously included in an administrative case brief before Commerce. Moreover, the arguments

3

**Consol. Court No. 22-00069**
**Consolidated Plaintiff Jianlong's Reply Brief**

addressed by Jianlong in its brief are identical to those raised by Plaintiff Meihua and Consolidated Plaintiff Deosen in their appellate briefs.  Also, Defendant does not claim that Meihua and Deosen failed to exhaust administrative remedies, which illustrates that Defendant is aware these arguments were addressed in administrative case briefs before Commerce. Defendant's ancillary claims that "Jianlong had an opportunity to contest the proposed separate rate by filing an administrative case brief" and "failed to do so" by "filing no case brief before Commerce," Def. Resp. Br. at 22, do not detract from Defendant's initial false claim that "the arguments Jianlong now presents were not raised in any administrative case brief."  Whether characterized as an exception to the exhaustion requirement or whether characterized as simply exhausting the remedy, as long as one party has raised the issue before the agency, the agency had the opportunity to consider the issue.  In this case, Meihua and Deosen fully briefed before Commerce the issues that Jianlong now is appealing, and exhaustion therefore does not apply.

A second well-recognized exception to the doctrine of exhaustion states that if Commerce in fact had an opportunity to consider the issue, the exhaustion requirement does not bar a party from raising that issue in litigation.  That is, an issue is exhausted when any party raises it before the agency and when the agency in fact considered it, even if the agency handled it incompletely or incorrectly.  See Zhaoqing Tifo New Fibre Co., Ltd. v. United States, 60 F. Supp. 3d 1328, 1355 (Ct. Int'l Trade 2015), citing Ningbo Dafa Chemical Fiber Co. v. United States, 580 F.3d 1247, 1259 (Fed. Cir. 2009) (sustaining Court of International Trade's ruling that plaintiff's litigation of issue was not barred by doctrine of exhaustion when Commerce had opportunity to consider plaintiff's "alternative methodology" in course of agency proceeding).  As indicated above, Jianlong's issues were explicitly raised by other parties in this proceeding, and Commerce extensively considered these issues.  See P.D. 312 at 3-7, 9-16 ("For the reasons above,

Consol. Court No. 22-00069
**Consolidated Plaintiff Jianlong's Reply Brief**

Commerce continues to calculate a simple average of both the mandatory respondents' dumping rates for use as separate rate… . For the above reasons we continue to apply total AFA to Meihua for this administrative review."). Therefore, no part of the exhaustion doctrine bars Jianlong from raising these issues in litigation.

These exceptions to the doctrine of exhaustion are so basic, so obvious, and so well-established that the Court should interpret Defendant's conscientious decision not to "specifically address Jianlong's individual arguments because Jianlong failed to exhaust its administrative remedies," Def. Resp. Br. at 21, as a failure to respond and as a waiver of any defense to Jianlong's arguments. Because Defendant has chosen not to respond to Jianlong's arguments, the Court should deem Commerce's application of AFA to Meihua as unsupported by substantial evidence and also determine that the 77.04% rate assigned to Jianlong – which is far in excess of the 0% rate assigned to Fufeng and half of the total AFA rate assigned to Meihua based on AFA – is not reasonably reflective of Jianlong's actual dumping margin.

**B.  Defendant Has Waived Any Defense to Its Illegal Assignment of a Dumping Rate to Meihua Based on Adverse Facts Available**

As noted above, Defendant has decided not to address Jianlong's arguments with respect to the assignment of a dumping rate to Meihua based on AFA. Because Defendant has chosen not to respond to Jianlong's arguments, Defendant has waived any defense, and the Court should deem Commerce's application of AFA to Meihua as unsupported by substantial evidence.

**C.  Defendant Has Waived Any Defense to Its Illegal Assignment to Jianlong of a Dumping Rate Based on the Simple Average of the AFA Rate Assigned to Meihua and the 0% Rate Assigned to Fufeng**

As noted above, Defendant also has chosen not to address Jianlong's arguments with respect to the assignment of a simple average dumping rate to Jianlong based on the AFA rate assigned to Meihua and the 0.00% rate assigned to Fufeng. Because Defendant has chosen not to

Consol. Court No. 22-00069
Consolidated Plaintiff Jianlong's Reply Brief

respond to Jianlong's arguments, Defendant has waived any defense, and the Court should deem Commerce's rate assignment to Jianlong as unsupported by substantial evidence. Although Defendant has not responded to Jianlong's arguments, we nonetheless reply to Defendant's response to similar arguments made by Deosen to illustrate how Commerce's decision was unsupported by substantial evidence.

At the heart of Defendant's defense of the rate assigned to the separate rate respondents is its claim that "Commerce did not find that the separate rate was not reasonably reflective of potential dumping margins of the separate rate respondents" such that it could depart from the "expected method" of averaging Fufeng's *de minimis* rate with Meihua's rate derived entirely from an adverse inference. Def. Resp. Br. at 23. Defendant bases this argument on its claim that "the rate calculated pursuant to the expected method is reasonably reflective of the likelihood of potential dumping, as required by the SAA, as it accounts for prior reviews wherein Commerce applied total adverse factual inferences to non-cooperative respondents." Def. Resp. Br. at 9. Defendant's argument fails for two reasons.

First, Commerce did not even use the actual "expected method," as Defendant claims. When the dumping margin for all individually investigated entities are determined entirely on the basis of facts available or are zero or *de minimis*, "{t}he expected method in such cases will be to <u>weight-average</u> the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, at 873 (1994) as reprinted in 1994 U.S.C.C.A.N. 4040 (SAA) (emphasis added). In this case, Commerce claims that volume data for Meihua were unavailable, and thus relied instead on a <u>simple</u> average of Fufeng's 0% rate and Meihua's AFA rate. Def. Resp. Br. at 22-23. Thus, contrary to

6

Consol. Court No. 22-00069
Consolidated Plaintiff Jianlong's Reply Brief

Defendant's arguments, Commerce never actually used the "expected method." Thus, regardless of the permissibility of using a simple versus weighted-average approach, Commerce deviated from the "expected method" in this case, and Defendant's repeated statements to the Court of Commerce's reliance on the "expected method" are false.

More important, however, the entire basis for Commerce's justification for reliance on a simple average approach are inapplicable with respect to Jianlong. Defendant claims that Commerce may rely on the history of companies' dumping margins "to inform its calculation of the separate rate," Def. Resp. Br. at 25 (citing Bosun Tools Co. v. United States, 2022 U.S. App. LEXIS 624, *10 (Ct. Int'l Trade Jan. 22, 2022)), and that "Deosen itself received a rate based on a total adverse factual inference" in two of the six completed reviews of the order covering xanthan gum from China. Def. Resp. Br. at 25. While that might be true with respect to Deosen, it is not true with respect to Jianlong. In fact, the only previous administrative review in which Jianlong was assigned a dumping margin was the third administrative review in which Commerce assigned Jianlong a separate rate of 9.30%. See Xanthan Gum From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016, 83 Fed. Reg. 6513 (February 14, 2018). Thus, Commerce never previously determined that Jianlong was uncooperative or subject to government control such that an adverse inference rate or country-wide dumping rate might reflect Jianlong's actual level of dumping. As such, it is apparent why Defendant did not want to "specifically address Jianlong's individual arguments." Def. Resp. Br. at 21. Unlike the other respondents, there is no history of Jianlong ever receiving a dumping margin based on total facts available. There therefore is no basis for Defendant's rationale that "evidence of non-cooperation from previous reviews of xanthan gum from China show that a dumping margin of

Case 1:22-cv-00069-JCG   Document 39   Filed 11/08/22   Page 11 of 14

Consol. Court No. 22-00069
Consolidated Plaintiff Jianlong's Reply Brief

77.04 is reasonably reflecting of the potential likelihood of dumping" with respect to Jianlong.

In <u>Bosun Tools Co. v. United States</u>, 463 F. Supp. 3d 1308, 1318-19 (Ct. Int'l Trade 2020) ("<u>Bosun II</u>"), the Court held that Commerce's use of the expected method was not supported by substantial evidence because Commerce had failed to address evidence suggesting the expected method did not result in a rate reasonably reflective of respondents' dumping. On remand, Commerce considered the calculated rates of individually examined respondents over the preceding reviews. Excluding rates based on AFA, Commerce had calculated rates of 4.65% and 5.06% in a 2011-2012 review; rates of 3.45% and 22.57% in a 2012-2013 review; and a rate of 56.57% in a 2013-2014 review. See <u>Bosun Tools Co. v. United States</u>, 493 F. Supp. 3d 1351, 1357 (Ct. Int'l Trade 2021) ("<u>Bosun III</u>"). Following remand, the Court noted that these calculated rates were both above and below the 41.025% separate rate that Commerce had averaged from a zero and an AFA margin, thus suggesting that the rate was reasonably reflective of potential dumping by the separate rate respondents. In this case, Commerce did not adopt the approach that it took in <u>Bosun II</u> and <u>Bosun III</u>. Although stating that Commerce "may rely on the history of dumping margins in this proceeding to inform its calculation of the separate rate," Def. Resp. Br. at 25, Commerce in fact ignored the calculated antidumping duty rates from previous reviews, <u>see</u>, <u>e.g.</u>, Jianlong Brief, at 12-13, and instead deemed it reasonable to assign to the cooperative rate respondents, including Consolidated Plaintiff Jianlong, a 77.04% average rate based in part on an AFA rate because there was a "history" of non-cooperative respondents in this case.

Simply because the SAA allows for the use of an average of an AFA rate and zero or *de minimis* rates does not absolve Commerce from ensuring that the separate rate assigned to Jianlong reasonably reflects Jianlong's potential dumping margin or from rationally connecting

8

Consol. Court No. 22-00069
Consolidated Plaintiff Jianlong's Reply Brief

the record evidence with its final conclusions. Here, where the 77.04% separate rate assigned by Commerce was exceptionally larger than the zero rate calculated for the lone cooperative mandatory respondent, and previous reviews showed far lower levels of dumping, Commerce should have undertaken a substantially more rigorous examination, especially when Commerce provided no information suggesting that Jianlong had dumped its sales at such a high rate.

  Defendant defends Commerce's less rigorous approach, claiming that "Commerce only became fully aware of the basis for Meihua's non-cooperation two months before the deadline for publication of its preliminary results." Def. Resp. Br. at 24. However, while Commerce might not have had "adequate time to seek a new respondent in this review," Def. Resp. Br. at 25, Commerce certainly had enough time to collect further evidence of Jianlong's rate of dumping in this case. In fact, less than two months before the August 5, 2021, preliminary results publication date, Jianlong submitted to Commerce a 227-page supplemental response containing substantial additional information regarding its period of review ownership, sales, and financial operations. See Jianlong Supplemental Questionnaire Response (June 8, 2021), CR148, PR233. Thus, at the exact same time that Commerce became fully aware of the extent of Meihua's alleged non-cooperation, Commerce was collecting substantial information from Jianlong, and could have requested additional information related specifically to Jianlong's level of dumping if it had chosen to do so.

  Although Commerce may be permitted to use a simple average methodology to calculate the separate rate, the circumstances of this case renders a simple average of a zero and AFA China-wide rate unreasonable, as applied. Similarly, a review of the administrative review record reveals a lack of substantial evidence showing that such a determination reflects Jianlong's potential dumping margin or any economic reality.

Consol. Court No. 22-00069
Consolidated Plaintiff Jianlong's Reply Brief

## III.   CONCLUSION

Defendant's response fails to explain why a 77.04% dumping rate based in part on an AFA rate is reasonably reflective of Jianlong's potential dumping.  Commerce did not base its explanation on record evidence of recent past calculated rates, and by failing to consider and address record evidence that detracted from its determination, Commerce's decision was unreasonable and contrary to law.  For the reasons set forth above, Consolidated Plaintiff Jianlong respectfully requests that the Court grant Jianlong's motion for judgment on the agency record and remand this case to Commerce with instructions to revise the <u>Final Results</u> in a manner consistent with the arguments set forth above and in Jianlong's brief.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
Tel.: (202) 223-3760
*Counsel to Consolidated Plaintiff*
*Jianlong Biotechnology Co., Ltd.*

Dated:  November 8, 2022

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED, AND XINJIANG MEIHUA AMINO ACID COL., LTD., <br><br> Plaintiffs, <br><br> DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY LTD., <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Consol. Court No. 22-00069 |

## CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)

      The undersigned counsel at Trade Pacific PLLC hereby certifies that the accompanying Reply Brief, dated November 8, 2022, complies with the 7,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures.  The memorandum of law contains 2,976 words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

      Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760

*Counsel to Consolidated Plaintiff*
*Jianlong Biotechnology Co., Ltd.*

Dated:  November 8, 2022