# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED AND XINJIANG MEIHUA AMINO ACID CO., LTD., | |
| Plaintiff, | |
| and | |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY, LTD., | Consol. Court No. 22-00069 |
| Consolidated Plaintiffs, | |
| v. | |
| UNITED STATES, | |
| Defendant. | |

## CONSOLIDATED PLAINTIFF DEOSEN'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE AGENCY RECORD

Chunlian (Lian) Yang
Lucas Queiroz Pires

ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel to Deosen*

Dated: November 8, 2022

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 2

   A. Defendant's Claims That Commerce's Separate Rate Is Reasonably Reflective of Deosen's Potential Dumping Margin Lack Merit. ..................................................... 2

   B. Defendant Fails to Justify Commerce's Refusal to Rescind the Review with Respect to Deosen Biochemical Ltd. ............................................................................................ 7

III. CONCLUSION .............................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**COURT CASES**

*Bosun Tools Co., v. United States*,
   2022 U.S. App. LEXIS 624 (Ct. Int'l Trade Jan. 22, 2022) .................................................3, 4

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
   716 F.3d 1370 (Fed. Cir. 2013)......................................................................................4, 5, 6, 7

**STATUTES**

44 U.S.C. 1507..................................................................................................................................8

**PUBLICATIONS**

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 85 FR
   54,983-54,984 (September 3, 2020) ..............................................................................8, 9

*Opportunity to Request Administrative Review,* 85 FR 39,531-39,532 (July 1, 2020)................8, 9

*Xanthan Gum from the People's Republic of China: Final Results of the Antidumping
Duty Administrative Review and Final Determination of No Shipments; 2015-2016,*
   83 FR 6,513 (February 14, 2018)............................................................................................3

*Xanthan Gum from the People's Republic of China: Final Results of the Antidumping
Duty Administrative Review and Final Determination of No Shipments, and Partial
Discontinuation of Antidumping Duty Administrative Review; 2016-2017,* 83 FR
   65,143 (December 19, 2018) ..................................................................................................3

*Xanthan Gum from the People's Republic of China: Final Results of the Antidumping
Duty Administrative Review and Final Determination of No Shipments; 2017-2018,*
   84 FR 64,831 (November 25, 2019) .......................................................................................3

*Xanthan Gum from the People's Republic of China: Final Results of the Antidumping
Duty Administrative Review; 2018-2019,* 86 FR 16,189 (March 26, 2021) ..............................3

*Xanthan Gum from the People's Republic of China: Amended Final Results of
Antidumping Duty Administrative Review; 2016-2017,* 86 FR 26,905 (May 18, 2021) ...........3

*Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty
Administrative Review and Final Determination of No Shipments; 2019–2020,* 87 FR
   7,104 (February 8, 2022) ....................................................................................................1, 3

I.  **<u>INTRODUCTION</u>**

Consolidated Plaintiff, Deosen Biochemical (Ordos) Ltd. and Deosen Biochemical Ltd. (collectively "Deosen"), respectfully submits this reply to defendant's response (Defendant Br.), ECF Nos. 35 and 36, in support of its challenge of the U.S. Department of Commerce's ("Commerce's") final determination in the 7th antidumping duty administrative review of Xanthan Gum from the People's Republic of China (Case No. A-570-985) covering the time period of July 1, 2019 through June 30, 2020 ("POR"). *See Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 87 Fed. Reg. 7,104 (Dep't of Commerce, February 8, 2022) ("Final Results"), P.R. 317,[1] incorporating Issues and Decision Memorandum for the Final Results of the 2019-2020 Antidumping Duty Administrative Review of Xanthan Gum from the People's Republic of China (January 31, 2022), P.R. 312 ("Final Decision Memo").

Deosen demonstrates in its opening brief that the separate rate of 77.04 percent that Commerce assigned to Deosen, based on a simple average of one mandatory respondent's[2] total AFA rate (at 154.07 percent) and the other mandatory respondent's[3] zero percent rate, is not reasonably reflective of Deosen's potential dumping margin as a fully cooperative separate rate respondent. Defendant argues that the separate rate is reasonably reflective of the potential dumping margin because it accounts for the first two reviews wherein Commerce applied total

---

[1] Citations to the administrative record are to the public record document number ("P.R.") followed by the page or exhibit number based on the May 19, 2022, administrative index list filed with this court. *See* ECF No. 23.

[2] Namely, Neimenggu Fufeng Biotechnologies Co., Ltd. (aka Inner Mongolia Fufeng Biotechnologies Co., Ltd.)/Shandong Fufeng Fermentation Co., Ltd./ Xinjiang Fufeng Biotechnologies Co., Ltd. (collectively "Fufeng").

[3] Namely, Meihua Group International Trading (Hong Kong) Limited/ Langfang Meihua BioTechnology Co., Ltd./ Xinjiang Meihua Amino Acid Co., Ltd. (collectively "Meihua").

1

adverse inferences to non-cooperative respondents. The justification reflects defendant's continued failure to ignore substantial and more contemporaneous evidence on the record that shows the separate rate is unreasonable.

Similarly, defendant's argument that Commerce properly declined to rescind the review with respect to Deosen Biochemical Ltd. despite its no shipment certification lacks merit. Defendant incorrectly claims Commerce gave notice that it would collapse Deosen Biochemical Ltd. and Deosen Biochemcial (Ordos) Ltd. for the purposes of the review.

II.  **ARGUMENT**

    A.  **Defendant's Claims That Commerce's Separate Rate Is Reasonably Reflective of Deosen's Potential Dumping Margin Lack Merit.**

Defendant does not dispute that the separate rate must be reasonably reflective of separate respondents' potential dumping margin. However, defendant argues that Commerce did not find the separate rate to be not reasonably reflective of Deosen's potential dumping margins in view of the history of the antidumping duty order. Defendant Br. at 23. Essentially, defendant focuses on the results of the first and second administrative review of the antidumping order in which Deosen received an AFA rate. Defendant Br. at 23. However, defendant fails to confront Deosen's main contention in this regard. Namely, in the four subsequent and thus more timely reviews (the third through the sixth review), the highest margin Commerce ever found for any respondent was 9.3 percent, in the third review. Deosen Opening Br. at 11. The separate rate of 77.04 percent in the present review, for cooperative separate rate respondents, is more than eight times higher. Moreover, in the three reviews immediately before the present review

(the fourth through the sixth review), Commerce did not find any respondent to have made sales at less than fair value. *Id*.

To justify its primary reliance on the first two review results, defendant cites *Bosun Tools Co., v. United States*, 2022 U.S. App. LEXIS 624 (Ct. Int'l Trade Jan. 22, 2022) to support its position that the Court has approved Commerce's use of prior reviews as substantial evidence as to whether the all-others rate in a current review is reasonably reflective of the likelihood of potential dumping. Defendant Br. at 23. However, a close examination of the Court's opinion in *Bosun Tools* only confirms that Commerce inappropriately disregarded the more contemporaneous rates from the most recent reviews. In *Bosun Tools*, the government defended the 39.66% rate assigned to Bosun as reasonable "given the general upward <u>trend</u> in dumping rates over time." *Bosun Tools*, 2022 U.S. App. LEXIS 624, *12. In the present review, Commerce failed to consider a clear downward trend in the dumping rates over time.[4] In *Bosun*

---

[4] See the rate table presented in Deosen's Opening Brief on page 11, replicated below, showing the dumping margins in all previously reviews where Commerce determined the dumping margins for mandatory respondents based on their actual data:

| Administrative Review (AR) | FR Notice | Mandatory Respondent 1 | Mandatory Respondent 2 | Separate Rate | Separate Rate Companies |
|---|---|---|---|---|---|
| AR3, 15-16 | 83 FR 6,513, 2/14/2018 | **Deosen: 9.3%** | Fufeng: 0% | 9.3% | CP Kelco, Shanghai Smart, Jianlong, Meihua |
| AR4, 16-17 | 83 FR 65,143, 12/19/2018; 86 FR 26,905, 5/18/2021 (pertaining to Fufeng) | Meihua: 0% | Fufeng: 0% | 0% | CP Kelco, Deosen, Shanghai Smart |
| AR5, 17-18 | 84 FR 64,831, 11/25/2019 | Meihua: 0% | **Deosen: 0%** | 0% | CP Kelco |
| AR6, 18-19 | 86 FR 16,189, 3/26/2021 | Meihua: 0% | N/A | 0% | CP Kelco (Deosen not reviewed) |
| AR7, 19-20 | 87 FR 7,104, 2/8/2022 | Meihua: 154.07% | Fufeng: 0% | 77.04% | Deosen, Jianlong |

3

*Tools*, the Court found Commerce to have appropriately weighted the 39.66% rate the most heavily "because it was derived from the most recent review in which the "separate rate for non-selected respondents was based on calculated rates above de minimis." *Bosun Tools*, *13. In the present review, instead of considering the more contemporaneous results in the more recent reviews, defendant justifies the reasonableness of the separate rate based on the AFA rate assigned to Deosen in the first two reviews, which are no longer in effect and therefore hardly relevant. *See id.* at *14 (finding several of the lower rates were "hardly relevant" to Commerce's analysis because among other things, one of the rates was no longer in effect when Commerce conducted its analysis.)

Defendant further argues that Deosen fails to acknowledge that the SAA asks whether the all-others rate is reasonably reflective of potential dumping margins for <u>all</u> non-investigated exporters or producers, not just Deosen, one of the two non-investigated exporters in this review. Defendant Br. 24. First, the SAA states, if the expected method "results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods." H.R. DOC. No. 103-316 (1994) ("SAA"), reprinted in 1994 U.S.C.C.A.N. 4040, 4201. The emphasis on "all" is apparently an emphasis that defendant adds because the SAA statement does not even use this word. Even assuming the reference to exporters or producers in the plural suggests it must mean "all," it does not lift Commerce's obligation to ensure that the separate rate as applied to Deosen as a cooperating respondent is reasonable. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) ("Bestpak") (finding Commerce's separate rate determination was inconsistent with the law because the circumstances of the case rendered the method "unreasonable as applied" to Bestpak.) Contrary to defendant's argument, the presence

of another non-reviewed separate rate respondent does not "mitigate" the specific record evidence concerning Deosen's likelihood of dumping. Defendant Br. at 24. Indeed, Commerce did not consider the other separate rate respondent at all in justifying its separate rate determination for Deosen. Final Decision Memo at 6. Instead, Commerce categorically dismissed the record evidence specific to Deosen's sales for a lack of data to assess potential similarities between Deosen and Fufeng, which received a zero rate, *id.*, whereas such a lack results directly from Commerce's own decision to limit its individual examination to two mandatory respondents.

Defendant tries to distinguish *Bestpak* from the present review, arguing that, unlike *Bestpak*, Commerce did not apply an adverse inference to determine that Meihua was controlled by the Government of China and did not apply the China-wide rate to Meihua. Defendant Br. 24. This distinction is futile. As Deosen pointed out in its opening brief, Commerce has been making a superficial distinction between the AFA rate and China-wide rate in antidumping proceedings involving China, when in fact these two rates are mostly the same. Deosen Opening Br. 13-14. These two rates have been the same (154.08 percent) for the entire history of the antidumping duty order at issue. In the present review, if Meihua had not submitted sufficient questionnaire response to demonstrate its independence from the government of China after being selected a mandatory respondent, it would have received a same 154.08 percent, with the only difference being that the rate would have been described as a China-wide rate rather than an AFA rate. And in such a case, Commerce would have disregarded the China-wide rate for the determination of the separate rate and Deosen would have received a zero rate based on the zero rate assigned to Fufeng under Commerce's practice. In other words, the China-wide rate and the AFA rate are the same throughout this proceeding but the superficial distinction that Commerce

5

made has resulted in a difference between a rate zero percent and a prohibitively high rate of 77.04 percent for Deosen. It is arbitrary and not in accordance with the law.

Defendant elaborates on the above distinction between *Bestpak* and the facts of this case, stating that "{i}n comparison to a producer controlled by the government of China, Meihua's circumstances here are factually more similar to the companies such as Deosen which have also established eligibility for a separate rate in this proceeding." Defendant Br. at 24. This rationale directly contradicts Commerce's outright refusal to consider Deosen's and Fufeng's shared status as independent of government control and fully cooperating with Commerce's review and to evaluate their similarities. Final Decision Memo at 6.

Defendant further distinguishes *Bestpak* from the present case, arguing that unlike in *Bestpak*, Commerce became aware of Meihua's lack of cooperation relatively late in the proceeding and therefore did not have adequate time to seek a new respondent to gather additional evidence. Defendant Br. at 24-25 (noting the court in *Bestpak* found that Commerce "could have gathered more information" where it became aware of respondent's non-cooperation earlier in a review. *Bestpak*, 716 F.3d 1370 at 1380). Defendant's attempted distinction fails for multiple reasons. First, this argument is <u>irrelevant</u> as Commerce already had substantial evidence on the administrative record to find that the 77.04 percent rate is not reasonably reflective of Deosen's potential dumping margin, and Deosen does not argue that Commerce should have sought a new mandatory respondent to properly calculate the separate rate. Second, the timing argument is not convincing. According to defendant, Commerce became aware of Meihua's alleged non-cooperation two months before the deadline for publication of its preliminary results, i.e., approximately in early June 2021. Two months are more than the amount of time that Commerce initially gave to the mandatory respondents to respond to the

entire antidumping duty questionnaire. *See* Initial Questionnaire Issued to Fufeng, P.R. 40. *See also* Initial Questionnaire Issued to Meihua, P.R. 44. Also, in the review, while Commerce claimed that Meihua failed to submit certain U.S. sales information "early in the proceeding" in its Section C questionnaire, the effect, as Commerce articulated, was that it "prevented Commerce from properly analyzing, and prevented interested parties from fully analyzing and commenting on, Meihua's U.S. sales database." Final Decision Memo at 14. In other words, in connection with Meihua's allegedly late submission of information, Commerce did not show intention or sign of thwarted efforts to gather data from any additional respondent. In fact, there were over eight months between when Commerce became aware of Meihua's sales reporting issue and when Commerce issued the final results of the review. The available time would not have prevented Commerce from requesting additional data from respondents if it wished to. Thus, defendant fails to distinguish *Bestpak* from the current review based on timing.

In conclusion, defendant fails to defend Commerce's separate rate determination as reasonable. On remand, Commerce should either exclude any AFA rate from the separate rate calculation or adopt Deosen's alternative proposal to use a rate not higher than 9.3 percent, which was the rate individually calculated for Deosen in the 3rd review and represents the highest individually calculated rate for cooperative respondents in five consecutive reviews, including for separate rate respondents in the prior four reviews.

**B.     Defendant Fails to Justify Commerce's Refusal to Rescind the Review with Respect to Deosen Biochemical Ltd.**

Commerce should have rescinded the review with respect to Deosen Biochemical Ltd., which did not ship subject merchandise during the period of review. Defendant argues that Commerce's decision not to rescind the review is correct because it collapsed Deosen

7

Biochemical Ltd. and Deosen Biochemical (Ordos) Ltd. in the original investigation, it gave Deosen notice it would do the same in this review and Deosen did not submit evidence to refute Commerce's presumption that the two entities are collapsed. Defendant Br. at 26. Defendant states:

> Deosen had ample notice of Commerce's presumption that the two entities remain collapsed for purposes of this review because Commerce said so in its initiation notice. *Initiation Notice*, ## Fed. Reg. at 39,531-39,532; *see also* 44 U.S.C. § 1507 (publication of a document in the Federal Register is sufficient to give notice of its contents to parties affected by it)…

Defendant Br. at 26.

Defendant appears to intend to reference Commerce's notice of initiation of the current review, published in Federal Register on September 3, 2020, *see Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 54,983 (September 3, 2020) ("Notice of Initiation), or Commerce's notice of opportunity to request administrative review, published in the Federal Register on July 1, 2020, *see Opportunity to Request Administrative Review*, 85 Fed. Reg. 39,531-39,532 (July 1, 2020) ("Opportunity to Request Review"). In either notice, however, Commerce did not give notice to Deosen that the two Deosen entities would remain collapsed for the purposes of this review. Instead, in both notices, Commerce discusses the treatment of collapsed companies only for the purposes of respondent selection.[5] Opportunity to

---

[5] For example, the notice of opportunity to request administrative review states (emphasis added):

> Accordingly, Commerce will not conduct collapsing analyses <u>at the respondent selection phase of a review</u> and will not collapse companies <u>at the respondent selection phase</u> unless there has been a determination to collapse certain companies in a previous segment of this antidumping proceeding (i.e., investigation, administrative review, new shipper review or changed circumstances review). For any company subject to a review, if Commerce determined, or continued to treat, that company as collapsed with others,

8

Request Review at 39,531-39,532; Notice of Initiation at 54,983-54,984. In the Notice of Initiation, Commerce discusses the treatment of collapsed entities for respondent selection purposes under the "Respondent Selection" and does not mention collapsed entities at all under the separate "Notice of No Sales" section. Notice of Initiation at 54,983. The notice concerning collapsed entities clearly pertains to respondent selection only, not broadly for the purposes of the review as defendant claims.

III. <u>CONCLUSION</u>

    For these reasons, Deosen respectfully requests that the Court grant Deosen's motion for judgment on the agency record and order Commerce to reconsider Deosen's separate rate.

    Respectfully submitted,

/*s/ Chunlian (Lian) Yang*
Chunlian (Lian) Yang
Lucas Queiroz Pires
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com
*Counsel to Deosen*

Dated: November 8, 2022

---

Commerce will assume that such companies continue to operate in the same manner and will collapse them <u>for respondent selection purposes</u>. Otherwise, Commerce will not collapse companies <u>for purposes of respondent selection</u>.

85 Fed. Reg. 39,531-39,532 (Int'l Trade Adm. July 1, 2020). The Notice of Initiation contains identical statements.

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 2,583 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Respectfully submitted,

/*s/ Lucas Queiroz Pires*
Chunlian (Lian) Yang
Lucas Queiroz Pires
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel to Deosen*

Dated: November 8, 2022