# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED and XINJIANG MEIHUA AMINO ACID CO., LTD., | |
| Plaintiffs, | |
| And | Consol. Ct. No. 22-00069 |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., and JIANLONG BIOTECHNOLOGY COMPANY, LTD., | **PUBLIC VERSION** (Business Proprietary Information removed from pages 2, 4-11, 13, 17 |
| Consolidated Plaintiffs, | |
| v. | |
| UNITED STATES, | |
| Defendant. | |

## MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED AND XINJIANG MEIHUA AMINO ACID CO., LTD., REPLY BRIFE IN SUPPORT OF ITS MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Law Offices of David L. Simon, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, DC 20036
Tel.: 202.642.4850
Email: MarkLehnardt@DLSimon.com

Date: November 8, 2022

*Counsel to Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

ARGUMENT ................................................................................................................. 2

   I.  Commerce's Resort To Facts Available Must Be Remanded
      Because It Is Unsupported By Substantial Evidence And Otherwise
      Not In Accordance With Law .................................................................... 2

      A.    Meihua Did Not Withhold Information Requested By
            Commerce Or Submit Requested Information After The
            Deadlines ............................................................................... 2

      B.    Miehua Did Not Significantly Impede The Review ......................... 8

      C.    Commerce Failed In Its Statutory Duty To Identify What It
            Believed To Be Deficiencies And To Provide Meihua And
            Opportunity To Remedy Any Such Deficiency ............................... 11

   II.  Commerce's Application Of AFA Was Unsupported By Substantial
      Evidence And Not In Accordance With Law ........................................... 12

      A.    Meihua Fully Cooperated To The Best Of Its Ability ..................... 12

      B.    Commerce Failed To Conduct An Analysis Of The Situation
            That Could Justify Imposition Of Total AFA ................................. 14

CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

### Cases

*BMW of N. Am. LLC v. United States*, 437 F. Supp. 3d 1336 (Ct. Int'l Trade 2020)................15

*China Steel Corp. v. United States*, 393 F. Supp. 3d 1322 (Ct. Int'l Trade 2019) ....................16

*Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365 (Fed. Cir. 2014) ...................13

*Goodluck India v. United States*, 11 F.4th 1335 (Fed. Cir. 2021) .........................................6, 11

*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 2022 (Fed. Cir. 2022) ................1, 11

*Mannesmannrohren-Werke AG & Mannesmann Pipe & Steel Corp. v. United
    States*, 23 CIT 826, 77 F. Supp. 2d 1302 (1999)......................................................................13

*Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530 (Fed. Cir. 2019) ..................17

*NSK Ltd. v. United States*, 481 F.3d 1355 (Fed. Cir. 2007)........................................................11

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995).........................................6

*Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565 (Fed. Cir. 1990)......................3, 7, 13

*Outokumpu Copper Rolled Products AB v. United States*, 17 CIT 848, 829 F.
    Supp. 1371 (1993).....................................................................................................................13

*Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373 (Fed. Cir. 2016) ..........6, 7, 12

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990)....................................17

*Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006) .........................................6

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir.
    2013)...........................................................................................................................................17

### Statutes

19 U.S.C. § 1677e(a)(2)(A) .....................................................................................................2, 8

19 U.S.C. § 1677e(a)(2)(C).........................................................................................................9

19 U.S.C. §§ 1677e(a)(2)(B)........................................................................................................8

**Other Authorities**

*Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com* ......................................................................................................................... 9

Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. Rep. No. 103-316, vol. 1 (1994), reprinted in 1994 U.S.C.C.A.N. 4040 .......................................................................................................... 14

**Administrative Determinations**

*Certain Softwood Lumber Products From Canada: Preliminary Results, Partial Rescission, and Preliminary Intent To Rescind, in Part, the Countervailing Duty Administrative Review, 2020*, 87 Fed. Reg. 6500 (Dep't of Commerce Feb. 4, 2022) ............................................................................................................... 9

*Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 87 Fed. Reg. 7104 (Dep't of Commerce Feb. 8, 2022) ..................... 1

Plaintiffs Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd. ("Meihua"), by and through their undersigned counsel, hereby submit this reply brief in support of its memorandum in support of its challenge to a decision by the U.S. Department of Commerce ("Commerce"), *Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 87 Fed. Reg. 7104 (Dep't of Commerce Feb. 8, 2022).

In its response brief, Commerce concedes that Meihua responded to Commerce's precise request for information: "the information provided by Meihua was the amount of duties 'paid' to CBP": the precise information Commerce requested. *See* US Br. at 8. Further, Commerce concedes that it did not provide Meihua the opportunity required by 19 U.S.C. § 1677m(d) to remedy any deficiency Commerce saw it its response (which means that it failed to articulate the deficiency to Meihua). *Id.*; *see Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1375, 1384 (Fed. Cir. 2022). Commerce's arguments rely on its claim that the information Meihua submitted was knowingly incorrect. *Id.* Commerce is wrong. Meihua provided complete and accurate information that fully responded to Commerce's request for information, and there was no other information that was more accurate. *See Meihua Case Br.*, CR179/PR294, at 5-20. Further, Commerce accepted the only other possible dataset onto the record; thus there could be no gap in the record that required filling. *See id.*, CR179, at 21-26. Meihua fully cooperated in this review. Commerce has no valid defense for its decision to apply total adverse facts available to Meihua.

Meihua timely submitted all information requested by Commerce. To the extent Commerce believed information submitted by Meihua was deficient, Commerce failed its statutory duty to identify deficiencies in Meihua's responses and provide Meihua an opportunity

to remedy whatever Commerce believed to be a deficiency. Commerce's failures mean that it improperly ignored information Meihua had submitted that could have been used and improperly resorted to facts available.

Even had Commerce's resort to facts available been justified, its decision to apply total adverse facts available (AFA) was not. Any gap in the record was not caused by Meihua, which cooperated to the best of its ability, thus total AFA was not warranted. Further, the AFA rate Commerce selected is not supported by substantial evidence because Commerce failed to conduct the statutorily required evaluation of circumstances leading to its use of AFA. Thus, Commerce was without statutory authority to select the highest prior rate.

This Court should remand this case to Commerce with instructions to accept Meihua's filings and calculate Meihua's antidumping duty rate using the information Meihua submitted.

## ARGUMENT

### I. Commerce's Resort To Facts Available Must Be Remanded Because It Is Unsupported By Substantial Evidence And Otherwise Not In Accordance With Law

Commerce ignored Meihua's submissions and resorted to facts available on the basis of three false premises. Contrary to Commerce's arguments, Meihua provided all information Commerce requested, timely provided information by the established deadlines, and Meihua's honesty in relation to its [          ] sales affirmed the reliability of the information Meihua reported. Other required elements for resorting to total AFA are absent here.

### A. Meihua Did Not Withhold Information Requested By Commerce Or Submit Requested Information After The Deadlines

Meihua provided complete and accurate responses to each of Commerce's requests for information. Commerce bases its AFA call, in part, on 19 U.S.C. § 1677e(a)(2)(A), which faults

a respondent for withholding information "that has been requested" by Commerce. A necessary corollary of this subsection is that Commerce "is only entitled to receive what it actually requests." *See JSW Steel*, 315 F. Supp. 3d at 1383 (*citing Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565, 1572-75 (Fed. Cir. 1990) ("a submitter need only provide complete answers to the questions presented in an information request").

Here, Commerce requested in section C of its questionnaire that Meihua report what it *paid* to CBP: "If terms of sale included this charge, report the unit amount of any customs duty *paid* on the merchandise under consideration. Include in the unit cost the U.S. customs processing fee and the U.S. harbor maintenance fee." *Meihua Questionnaire*, PR44 at C-19 to -20 (emphasis added). It is not contested that Meihua provide a complete and accurate response of exactly what it actually paid to CBP for duties, MPF, HMT, and 301 duties upon entry of the merchandise, as reported (and is verifiable) on Meihua's entry papers. *See Meihua Sec. C QR*, CR36-42/PR71-74 at C-30 to -31, -48; *Meihua Br.*, CR179/PR294, at 5-20, 22. Commerce is simply wrong when it claims the opposite, "there is no dispute that the information was incorrect." US Br. at 15. Meihua's reported exactly what it paid CBP, exactly as Commerce requested.

Commerce claims Meihua should have voluntarily reported information that Commerce did not request. *See Dec. Mem.*, PR278 at 7-9; *AFA Memo*, CR175/PR285, at 5-6; *Final Dec. Mem.*, PR312 at 9-16. Commerce uses variations of the word "accurate" 11 times in the *AFA Memo*, and 17 times in its response brief, attempting to describe Meihua's responses as inaccurate. *See Dec. Mem.*, PR278; US Br. This simply is not true. Commerce requested that Meihua report what Meihua paid to CBP, and Meihua reported these amounts with scrupulous accuracy based upon the entry forms submitted to CBP.

Although Meihua found what it believed were [                    ], there was no better dataset that Meihua could have provided in response to Commerce's request for information about what Meihua paid CBP. *See Meihua Case Br.*, CR179/PR294, at 5-15. Moreover, contrary to Commerce's claims that Meihua [                    ] and that information [                    ], *see* US Br. at 12, 14, the data [                    ] and reported with Meihua's second supplemental section C questionnaire response was not better because it was non-final and incomplete at the time Meihua submitted its Section C questionnaire response. *Compare Meihua Sec C-D SQR*, CR130, Ex.SC2-5, at 3-4 ([

]), with *Meihua Sec. C QR*, CR36-42/PR71-74, and *AFA Memo*, CR175/PR285, at 3 ("According to Meihua, the [

] and [                    ].

Commerce acknowledges that the [                    ] data is "ultimately subject to revision by CBP at the time of Meihua's original reporting." US Br. at 8. Meihua was grappling with its discovery while completing its Section C Response, and still won't know precise amounts or [                    ] until after administrative review is final. *See Meihua Case Br.*, CR179/PR294, at 11-13.

Commerce's request for information did not ask about possible changes to amounts reported beyond possible changes for 232 or 301 duties. *See Questionnaire*, PR44-45, Appx.V. The inquiries into 232 and 301 duties establish that Commerce knows how to ask about potential changes to values in its questionnaires. It simply didn't ask about other possible changes. Commerce claims there is a difference in that 232 and 301 duties allegedly are "predictable, and granted with regularity," asserting that Commerce could not have foreseen [

]. *See* US Br. at 14. But Commerce makes this assertion without any evidence about either claim. The fact is that [                    ] have been around much longer than 232 and 301 duties, even prompting publication [

]. *See Meihua Sec. C-D SQR*, CR130, Ex.SC2-6 at 2 ("[                    ]"). For Commerce to claim ignorance to the possibility that such changes may arise in the context of AD/CVD proceedings is not believable. *See* US Br. at 14. Commerce knew how to ask for such information and simply has chosen not to.

Further, Meihua timely submitted its questionnaire responses. Commerce does not contest that Meihua submitted its responses within the applicable deadlines, and provided a full copy of the [                    ] when requested, within the deadline for the relevant supplemental questionnaire. *See Extension Mem.*, PR56 (extending the deadline for Meihua's Sec.C&D QR to Dec. 11, 2020); *Meihua Sec.C QR*, CR036-047/PR071-074 (filed on Dec. 11, 2020); *Extension Mem.*, PR215 (extending the deadline for Meihua's 2nd Supp. Sec.C-D QR to June 4, 2021); *Meihua 2nd Supp. Sec.C-D QR*, CR130-142/PR230 (filed on June 4, 2021); *Meihua Br.*, CR179/PR294, at 23-24.

Despite record facts establishing that Meihua timely reported what was requested, including a second dataset related to Meihua's submission months before the preliminary results, Commerce claims an inapplicable exception. Commerce attempts to avoid the principle described in *Goodluck India* and cases cited therein that before the preliminary results, Commerce must accept corrective information. Commerce acknowledges that "the Federal Circuit has held that Commerce abuses its discretion by declining to entertain corrections where there is time to do so," but claims *Goodluck India* and cases cited therein are "all {dealing} with information misreported due to innocuous clerical errors." US Br. at 15. Those cases were not

about innocuous clerical errors. *Goodluck India* explains that in the tension between finality and accuracy before preliminary results issues, "there are no finality concerns." *Goodluck India v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021) ("Commerce cannot reject corrective information at a *preliminary* determination stage (where there are no finality concerns)" (*citing Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1384 (Fed. Cir. 2016) (*discussing NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207-08 (Fed. Cir. 1995), and *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006). Commerce asserts that *Goodluck India* does not provide factual circumstances similar to those here. *See* US Br. at 15. To the extent *Goodluck India* is not sufficiently clear about the overriding principles, however, the Federal Circuit addressed the issue in its 2006 decision in *Timken*.

In *Timken*, in the context of a post-preliminary-results request to correct errors, the Federal Circuit looked at a prior decision explaining that there was no tension between accuracy and finality in the prior case "because {the respondent} requested corrections to be made at the preliminary results stage." *Timken*, 434 F.3d at 1353. Regarding corrections of error, Commerce's claim is contradicted by the Federal Circuit's explanation that the principles apply to much more than innocuous clerical errors: "most such errors are methodological, substantive or, as in this case, errors of judgment, rather than 'clerical' errors." *Id.* Further in *Timken*, the Federal Circuit approved the correction because it was raised after the preliminary results but before the final results. *Id.* at 1353-54. *Timken* was about the timing when corrective information is placed on the record and applied the principles to all types of errors. Here, to the extent Commerce believed Meihua had committed an error in judgment in deciding that the [                    ] was not relevant to the review, Commerce had all the information in

Meihua's possession two full months before the preliminary results. Contrary to Commerce's claims, there were no concerns for finality at that point. *Id.* at 1353-54

Commerce argues that *Papierfabrik August Hoehler* applies to this case, absolving Commerce of the responsibility to identify any deficiencies and provide an opportunity to remedy any deficiencies. US Br. at 15-16. Commerce claims that *Papierfabrik* stands for the proposition that "Commerce is not required to grant parties a chance to provide corrective information . . . where that information is intentionally withheld from Commerce." US Br. at 15. But this is wrong. *Papierfabrik* is inapposite because it involves a pre-meditated fraud where the respondents planned how to evade duties, carried out the plan, then attempted to conceal the fraud from Commerce. *See Papierfabrik*, 843 F.3d at 1376-77; *BMW of N.Am. LLC v. United States*, 926 F.3d 1291, 1300-01 (Fed. Cir. 2019) (describing misconduct by the respondent in *Papierfabrik Aug. Koehler* as "deliberate falsity and intentional concealment"). Simply withholding information is not enough: information must be information that is requested. Respondents intentionally withhold information from Commerce all the time – with Federal Circuit approval: "a submitter need only provide complete answers to the questions presented in an information request." *Olympic Adhesives*, 899 F.2d at 1572-75.

Commerce wrongfully asserts that Meihua's initial reporting is like Papierfabrik's actions, claiming Meihua knew at the time it submitted its Section C response that some data was false. US Br. at 16. But Commerce's assertion completely misses the mark: Papierfabrik's premeditated fraudulent activity and active attempt to conceal the fraud through intentional misreporting is nothing like Meihua's attempts to [                                        ]. In the midst of reviewing its data in preparation for the administrative review, Meihua found what it believed to be [

**]**.  Further, Meihua believed it **[                                                    ]**, which would – if

it was correct – have the effect lowering (ever so slightly) any above *de minimis* dumping margin

Commerce would calculate.  *See Meihua Case Br.*, CR179/PR294, at 30-32.  **[**

                                                    **]**.  *See id.*, at  ; US Br. at 8 (stating, the **[**

            **]** data is "ultimately subject to revision by CBP at the time of Meihua's original

reporting").  When Meihua filed its **[                    ]**, the extent of **[**

            **]**, and they still are.  *See id.*, at 9-16 & n.24.  Commerce acknowledged that the data

reported to **[          ]** in the **[                    ]** may not be "accurate, complete, and finalized."

*AFA Memo* at 5, CR175/PR285.  Further, record information confirms that **[**

                                                    **]**, such that

information provided cannot be relied upon as final until **[                                        ]**.

*See Meihua Sec C-D SQR*, CR130, Ex.SC2-6 at 9-10.

Thus, Commerce incorrectly claims that information is missing from the record for

timeliness or inadequacy of response.  Meihua provided information responding to each request

for information and provided requested information timely.  There is nothing else Meihua could

have submitted.

## B.      Miehua Did Not Significantly Impede The Review

Meihua's timely and complete responses provided all the information Commerce needed

to calculate Meihua's antidumping duty margin.  *See Meihua Br.*, CR179/PR294, at 21-25.

Commerce's true complaint isn't about whether Meihua withheld information that was *requested*

or whether requested information was filed timely. 19 U.S.C. §§ 1677e(a)(2)(A)-(B).  It is

entirely inaccurate and disingenuous of Commerce to claim that Meihua failed in either of these

two regards.  Commerce's true complaint is that Meihua didn't immediately tell Commerce that

Meihua had [                                        ] that could, eventually, affect slightly how

much Meihua would ultimately have to pay in duties, MPF, and HMT.  That is, Commerce's

only real complaint is about whether Meihua "significantly impede{d}" the review.  19 U.S.C. §

1677e(a)(2)(C).

Meihua did not significantly impede the review.  *See Meihua Case Br.*, CR179/PR294, at

24-25.  The word "impede" means "interfere with or slow the progress of"; and "significant"

means "of a noticeably or measurably large amount."  *See "Impede" and "significant,"*

*Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-*

*webster.com/dictionary/impede* <<accessed 6 Nov. 2022>>.  Meihua did not interfere with or

slow the progress of the review to a noticeably or measurably large amount because it accurately

provided amounts paid to CBP (which Commerce does not contest), and provided a full copy of

the [                    ], a full two months before the preliminary results and eight months before

the final results.  Counsel is unaware of any investigation or review where Commerce has been

fully satisfied with the initial questionnaire response of any mandatory or voluntary respondent.

Commerce issues supplemental questionnaires in every proceeding to every respondent and does

so up to and even after the preliminary results are issued.  *See* Meihua Br. at 24-25 (*citing*

*Certain Softwood Lumber Products From Canada: Preliminary Results, Partial Rescission, and*

*Preliminary Intent To Rescind, in Part, the Countervailing Duty Administrative Review, 2020*, 87

Fed. Reg. 6500, 6503-04 (Dep't of Commerce Feb. 4, 2022).  Here, Commerce issued two

supplemental questionnaires *after* it received a full copy of the [                    ] on June 4,

2021:  the June 10, 2021 third section C-D supplemental questionnaire, PR237, and a June 29,

2021 supplemental questionnaire asking further information about surrogate values and Meihua's

section C responses.  PR249.

Commerce misleadingly claims that it only learned much later, on July 15, 2021: "{i}n pre-preliminary comments, petitioner … brought Meihua's [          ] to Commerce's attention." US Br. at 4-5 (citing "*Petitioner's Pre-prelim Comments*, C.R. 166," which were submitted on July 15, 2021), 17 ("Meihua's argument ignores that Commerce had no awareness of the deficiency in Meihua's reporting until that deficiency was brought to its attention by petitioner – months after Meihua initially reported its United States sales," also citing CR166, the July 15, 2021 *Petr's Pre-pelim Comments*."). This is incorrect. Meihua discussed the [

         ] in its March 31, 2021 *Response to Petitioner's Letter*. *See Meihua Resp. to Petr's Letter.*, CR115 at 3-9. Commerce issued a supplemental questionnaire on May 19, 2021, and Meihua submitted its response with the complete [             ] on June 4, 2021 – a full 6 weeks before Commerce claims in its brief to have received it. *See Commerce's 2nd Supp. Questionnaire*, CR120; *Meihua's 2nd Supp. QR*, CR130, Ex.SC2-6. Commerce acknowledges the date of Meihua's submission, so Commerce's claim that petitioner "brought … to {its} attention" the [          ] less than three weeks before the preliminary results is incomprehensible. US Br. at 5, 17. Contrary to Commerce's claim, it had the [

         ] two full months before the preliminary results.

Commerce stated that Meihua's timing in providing information in response to Commerce's requests caused Commerce to, "

Commerce makes much ado about its belief that Meihua should have submitted the [             ], asserting that not providing that information with its initial section C questionnaire response "prevented Commerce from properly analyzing, and prevented interested parties from fully analyzing and commenting on, Meihua's U.S. sales database." *Final Dec. Mem.*, PR312, at 14. But this rationale cannot be called a significant impediment because

Meihua did provide the information a full two months before the preliminary results, allowing significant time for any additional analyzing or commenting. Any deficiency Commerce may have claimed was remedied with Meihua's June 4, 2021 submission. Commerce cannot claim finality concerns with Meihua's submissions because they were all prior to the preliminary results. *Goodluck India*, 11 F.4th at 1343; *Timken*, at 1353-54.

Thus, none of the three claims Commerce makes to justify resort to facts available supports its reliance upon facts available.

### C. Commerce Failed In Its Statutory Duty To Identify What It Believed To Be Deficiencies And To Provide Meihua And Opportunity To Remedy Any Such Deficiency

Commerce's application of AFA cannot be sustained because Commerce did not identify a deficiency and provide Meihua an opportunity to remedy any such deficiency as required by 19 U.S.C. § 1677e(a) and 19 U.S.C. § 1677m(d). Commerce satisfies its obligation under sections 1677e(a) and 1677m(d) when it specifically points out the perceived deficiency and requests clarification. *See NSK Ltd. v. United States*, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007) ("Commerce . . . satisfied its obligations under section 1677m(d) when it issued a supplemental questionnaire specifically pointing out and requesting clarification of {the} deficient responses."). Moreover, the Federal Circiut recently clarified that a respondent like Meihua has an unqualified statutory entitlement, under section 1677m(d), to notice from Commerce of any such deficiency and an opportunity to remedy the deficiency. *See Hitachi Energy*, 34 F.4th at 1384. Commerce's failure to provide Meihua with that notice and opportunity was "a violation of § 1677m(d)." *Hyundai Steel*, 282 F. Supp. 3d at 1349.

Commerce cites *Papierfabrik*, claiming that Meihua's argument could lead to the consequence of submitting fraudulent data and brazen attempts to misleads Commerce, only to

demand an opportunity to correct it if caught.  US Br. at 17 (*citing Papierfabrik*, 843 F.3d at 1384).  But *Papierfabrik* is a very different case.  There, Papierfabrik was found to have premediated fraudulent conduct including active attempts to conceal information from Commerce.  *Papierfabrik*, 843 F.3d at 1376-77.  Here, Meihua did not premeditate anything less than full cooperation in the administrative review and provided all information upon request.  Commerce cannot equate with Papierfabrik's premeditated fraud the attempts Meihua made to accurately respond to Commerce's precise information request.  *See* US Br. at 17.  Accordingly, Commerce is not excused from its obligation to provide a description of deficiencies and an opportunity to remedy an deficiency.

## II.    Commerce's Application Of AFA Was Unsupported By Substantial Evidence And Not In Accordance With Law

As we have demonstrated, Commerce improperly resorted to facts available and improperly ignored record information submitted by Meihua that should have been used to calculate Meihua's antidumping duty margin.  To the extent this Court were to affirm Commerce's resort to facts available, the Court must reject Commerce's use of AFA and its decision to apply the 154.07% rate because Commerce failed to conduct an analysis of the situation that led to its imposition of AFA, and because the 154.07% rate is disproportionate and punitive.

### A.  Meihua Fully Cooperated To The Best Of Its Ability

As demonstrated above, Meihua timely, completely, and accurately responded to all of Commerce's requests for information, fully cooperating to the best of its ability.  Commerce's decision to apply total AFA is based entirely upon its unsupported, unlawful decision that Meihua had withheld relevant information from Commerce (also characterizing this as

knowingly failing to disclose that certain reported information was inaccurate). *See Dec. Mem.*, PR278, at 8; *AFA Memo*, CR175/PR285 at 7; *Final Dec. Mem.*, PR312 at 9-16. Both bases are invalid and cannot support applying an adverse inference when selecting among facts available under 19 U.S.C. § 1677e(b).

As demonstrated above, Meihua did not withhold information that had been requested. Meihua provide timely, complete, and accurate responses to the requests for information that Commerce issued. Commerce "is only entitled to receive what it actually requests." *See JSW Steel Ltd. v. United States*, 315 F. Supp. 3d 1379, 1383 (Ct. Int'l Trade 2018) (*citing Olympic Adhesives*, 899 F.2d at 1572-75). Meihua provided exactly what Commerce requested. *See Meihua Br.*, CR179/PR294, at ii-iii. Further, Meihua provided all the relevant information that existed: reporting based upon the CF-7501s provided to CBP, and the [                    ], which contained another dataset. There was nothing else. This court has previously held that Commerce's use of AFA is "arbitrary and an abuse of discretion where a respondent failed to give information that did not exist, or where Commerce did not adequately request the information at issue. *See Mannesmannrohren-Werke AG & Mannesmann Pipe & Steel Corp. v. United States*, 23 CIT 826, 849, 77 F. Supp. 2d 1302,1321 (1999) (*citing Outokumpu Copper Rolled Products AB v. United States*, 17 CIT 848, 867-68, 829 F. Supp. 1371, 1386-87 (1993)).

Commerce incorrectly claims that it is justified resorting to AFA based upon the Federal Circuit's decision in *Fine Furniture*. US Br. at 16. There, the Federal Circuit held that "the statute authorizes Commerce to apply adverse inference when an interested party … fails to provide requested information." US Br. at 16 (*quoting Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1371 (Fed. Cir. 2014)). But *Fine Furniture* approved the use of AFA against the government of China when the government of China refused to respond at all to

Commerce's questionnaire.  *Id.*  In contrast, Meihua here provided a complete and timely response to all of Commerce's specific requests for information.

Further, in *Fine Furniture*, the court highlighted one of the underlying purposes of AFA, "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."  *Id.*, 748 F.3d at 1373 (*citing Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H.R. Doc. Rep. No. 103-316, vol. 1, at 870 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4198).  This purposes is not applicable here, where the original reporting based upon actual amounts paid to CBP was conservative, as the revised data would have resulted in a lower margin for Meihua.  *See Meihua Case Br.*, CR179/PR294, at 30-32, Meihua Br. at 34.  *Fine Furniture* is inapposite.

### B.  Commerce Failed To Conduct An Analysis Of The Situation That Could Justify Imposition Of Total AFA

To the extent this Court affirms Commerce's use of AFA, Commerce's selection of the highest prior margin is not supported by an analysis of the situation that led Commerce to apply total AFA, and thus cannot be affirmed.  Because Commerce failed to conduct the analysis, this Court must remand to Commerce with instructions to conduct the analysis or abandon its use of total AFA.

Commerce has both a statutory duty and a duty under circuit case law to consider the totality of the circumstances before selecting the highest prior rate as the AFA rate.  The statute permits Commerce to select the highest prior rate only after an "evaluation by the administering authority of the situation that resulted in the administering authority using an adverse inference in selecting among the facts otherwise available."  19 U.S.C. § 1677e(d)(2).  Commerce did not conduct this evaluation.  The requirement of an evaluation ensures that the worst behavior is rewarded with the worst justifiable rate, and that lesser transgressions are met with a more

understanding hand.  *See BMW*, 926 F.3d at 1301 n.3 ("the amended version of the statute further supports our view that Commerce should consider the level of culpability of the uncooperative party").

Commerce incorrectly claims that *BMW* was merely about "procedural anomalies or an unwitting mistake made by … counsel."  US Br. at 18 (*citing BMW*, 926 F.3d at 1301).  *BMW* clarified statutory responsibilities Congress imposed on Commerce.  There, BMW requested an administrative review, which was later discontinued when the order was revoked pursuant to a sunset review, but then reinstated when the sunset review revocation was reversed on appeal.  *BMW*, 926 F.3d at 1294-95.  When the administrative review resumed – with Commerce publishing notice in the Federal Register, sending emails to counsel, and providing an opportunity for parties to withdraw their requests for review, BMW did not participate or withdraw its request for review.  *Id.*  For its non-cooperation, BMW was given the highest rate available – 254.25%.  *Id.* at 1295.  The Court of International Trade found that this rate was not corroborated, and Commerce reduced to the margin to 126.44% after remand.  *Id.* at 1296-97.  The Federal Circuit found this 126.44% rate (half of the highest rate available) could not be evaluated because Commerce had failed to articulate its rationale for finding that the 126.44% rate was not unduly punitive.  *Id.* at 1302.  The Federal Circuit also noted the new statutory requirement that Commerce evaluate "the situation that resulted in" Commerce applying AFA.  *Id.* at 1301 n.3.  Upon further remand, Commerce applied the new statutory requirement and set the AFA rate at 61.14%, about one quarter the highest rate available.  *BMW of N. Am. LLC v. United States*, 437 F. Supp. 3d 1336, 1346-47 (Ct. Int'l Trade 2020).

While *BMW* involved unique procedural circumstances and counsel there conceded inattention to the matter, *BMW*, 926 F.3d at 1296-97, the case illustrates the evaluation

Commerce is required to make. A review of the level of culpability BMW's circumstances led

Commerce to select a rate that was at 61.14%, one quarter of the 254.25% highest-available rate.

*Id.* Had the circumstances been different, Commerce still would have been required to conduct

an analysis of the circumstances and assigned a commensurate rate.

Commerce maligns Meihua, observing that Meihua only provided certain information

"under protest." US Br. at 18. But preserving one's rights and ability to appeal from what one

believes is outside the scope of Commerce's authority is normal assertion of legal rights and is

not something that can be viewed in a negative light for purposes of determining the AFA rate.

Thus, the assertions Commerce makes that Meihua failed to cooperate to such a culpable degree

that it deserved the highest possible margin are without stated rationale, and thus cannot be

affirmed.

Finally, Commerce points to *China Steel Corp. v. United States*, 393 F. Supp. 3d 1322

(Ct. Int'l Trade 2019), to argue that it can ignore Meihua's prior good behavior. US Br. at 19.

*China Steel* is a good example of what Commerce should do. There, the respondent timely

submitted its cost database, then, in response to a supplemental questionnaire, submitted a

revised (second version) database with more changes than Commerce requested. *China Steel*,

393 F. Supp. 3d at 1330-31. Commerce rejected the October 11, 2016 changes as unsolicited

and too close to the deadline for the November 14, 2016 preliminary results, and thus issued the

preliminary results based upon partial AFA. *Id.* at 1328, 1331. But Commerce said it would

issue another supplemental questionnaire after the preliminary results to provide China Steel an

opportunity to explain the changes. *Id.*, at 1332. China Steel's response to that supplemental

questionnaire provided an explanation, but also a new (third version) cost database with

additional changes, that Commerce rejected. *Id.* 1333. At verification, Commerce found errors

in the second version of the cost database, and thus applied AFA for the final results. *Id.* at 1333-34. Although China Steel explained that three typhoons had disrupted its attempts to provide complete and accurate information to Commerce; while Commerce argued that the typhoons did not disrupt the initial response. *Id.* at 1342. Commerce would have allowed the second cost database, arguing, "'{h}ad China Steel undertaken a more careful review of its {cost} data prior to its initial submission, or even prior to submission of the corrected database, China Steel could have identified these additional errors for correction in a timely manner." *Id.*

The facts of *China Steel* demonstrate that Commerce fell short here. Meihua submitted the [                              ] earlier than *China Steel*, but Commerce refused to consider any information Meihua submitted despite having more time and all the information Meihua possessed. Commerce did not issue a supplemental questionnaire after the preliminary results, despite the six month period between the preliminary and the final results, and didn't otherwise attempt to pursue its obligation to calculate margins as accurately as possible. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) (*citing Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)); *see also Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 542 (Fed. Cir. 2019). Commerce only addressed circumstances it wanted to address, but failed in its statutory duty to consider the complete circumstances: Meihua's timely responses to Commerce's precise information requests and complete information on the record two months before the preliminary results. To the extent this Court believes Commerce was justified in applying total AFA, it still must remand this case for Commerce to complete the evaluation required by 19 U.S.C. § 1677e(d)(2).

## CONCLUSION

Meihua provided timely and complete responses to Commerce's requests for information. Commerce wrongly ignored Meihua's submitted information and unlawfully applied total AFA and the highest prior rate to Meihua's entries. For the reasons described above, this Court should remand this case to Commerce for calculation of Meihua's antidumping duty rate based upon the information Meihua submitted.

Respectfully submitted,

/s/ *Mark B. Lehnardt*

Mark B. Lehnardt
Email: MarkLehnardt@DLSimon.com

November 8, 2022

## CERTIFICATE OF COMPLIANCE

      1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains **5,281** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities).

      2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

/s/ Mark B. Lehnardt
Mark B. Lehnardt

Date: November 8, 2022

*Counsel to Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd.*