## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED and XINJIANG MEIHUA AMINO ACID CO., LTD., <br><br>     Plaintiffs, <br><br> And <br><br> DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., and JIANLONG BIOTECHNOLOGY COMPANY, LTD., <br><br>     Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br>     Defendant. | Consol. Ct. No. 22-00069 |

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

Plaintiffs Meihua Group International Trading (Hong Kong) Limited and Xinjiang

Meihua Amino Acid Co., Ltd. ("Meihua"), respectfully provide the Court with this notice of

supplemental authority issued by this Court after the close of briefing.  *See* **Attachment**, *Saha*

*Thai Steel Pipe Public Co., Ltd. v. United States*, Slip Op. 22-134 (Ct. Int'l Trade Dec. 2, 2022).

Meihua argued in its briefing that "Commerce's application of {adverse facts available

("AFA")} cannot be sustained because Commerce did not identify a deficiency and provide

Meihua an opportunity to remedy any such deficiency as required by 19 U.S.C. § 1677e(a) and

19 U.S.C. § 1677m(d)."  *See Meihua Reply Br.*, ECF 41 at 11-12; *Meihua Br.*, ECF 31 at 27-28.

Meihua's arguments are based, in part, on the Federal Circuit's recent holding that, "the statutory

entitlement to notice and opportunity to remedy any deficiency is unqualified."  *Hitachi Energy*

*USA Inc. v. United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022); *id.*, ("Commerce's failure to

timely notify a party of deficiency 'is itself a violation of § 1677m(d).'" (*Quoting Hyundai Steel*

*Co. v. United States*, 282 F. Supp. 3d 1332, 1349 (Ct. Int'l Trade 2018)).

      *Saha Thai* addresses nearly identical facts as here:  Commerce applying total AFA

without providing the respondent notice of a deficiency and opportunity to remedy or explain.  In

*Saha Thai*, this Court relied upon *Hitachi* for the same reasons put forth by Meihua: that

Commerce is required to provide notice of deficiency and an opportunity to remedy the

deficiency.  *Saha Thai*, Slip Op. 22-134 at 25-31.  The Court further explained, "{a} mistake or

misunderstanding still requires notice of the deficiency and an opportunity to cure."  *Saha Thai*,

Slip Op. 22-134 at 39 (*citing Shelter Forest International Acquisition, Inc. v. United States*, 2022

U.S. App. LEXIS 16491, 2022 WL 215596 at *5–6 (Fed. Cir. June 15, 2022)).

      The Court in *Saha Thai* also noted that Commerce's and Defendant-Intervenors case in

chief, *Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373, 1384 (Fed. Cir. 2016), is

limited to its specific facts by the Federal Circuit's opinions in both *Papierfabrik* itself and

*Shelter Forest*.  In both cases, the Federal Circuit noted that *Papierfabrik* is limited to instances

of "outright and admitted fraud."  *See Saha Thai*, Slip Op. 22-134 at 34-35, 38 (*quoting*

*Papierfabrk*, 843 F.3d at 1384); *see also Shelter Forest*, 2022 U.S. App. LEXIS 16491 at *15,

2022 WL 215596 at *6 ("The fraudulent nature of the respondent's previous submission formed

the underlying rationale for our decision that § 1677m(d) did not apply….  Here, on the other

hand, the Coalition does not allege that Shelter Forest submitted fraudulent information to Commerce.").

The Court in *Saha Thai* noted how Commerce's reliance on *Papierfabrik* was misplaced: "Commerce attempts to wedge this case into *Papierfabrik*'s framework through overreliance on the Federal Circuit's use of the phrase 'intentionally incomplete,'" but without a finding of outright fraud. *See Saha Thai*, Slip Op. 22-134 at 34-35.

Finally, the Court in *Saha Thai* highlighted that in *Shelter Forest*, the Federal Circuit found the failure to provide notice of deficiency and an opportunity to remedy was an abuse of discretion:

> Commerce {had} faulted the respondent for not supplying that information "even though Commerce had never requested such information from Shelter Forest and refused to accept that information when Shelter Forest attempted to provide it." {} The Federal Circuit concluded that Commerce "abused its discretion in the original proceeding by failing" to provide notice or an opportunity to remedy the deficiency "as required by 19 U.S.C. § 1677m(d)."

*Saha Thai*, Slip Op. 22-134 at 36 (*quoting Shelter Forest*, 2022 U.S. App. LEXIS 16491, 2022 WL 215596).

Respectfully submitted,

/s/ Mark B. Lehnardt

Mark B. Lehnardt, Esq.
Law Offices of David L. Simon, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, DC 20036
Tel.:  202.642.4850
Email:  MarkLehnardt@DLSimon.com

Date: December 22, 2022                    *Counsel to Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd.*

# ATTACHMENT

***Saha Thai Steel Pipe Public Co., Ltd. v. United States*, Slip Op. 22-134**
**(Ct. Int'l Trade Dec. 2, 2022)**

Slip Op. No. 22-134

## UNITED STATES COURT OF INTERNATIONAL TRADE

SAHA THAI STEEL PIPE PUBLIC CO., LTD,

         *Plaintiff,*

v.

UNITED STATES,

         *Defendant,*

   and

WHEATLAND TUBE CO.,

         *Defendant-Intervenor.*

Before: Stephen Alexander Vaden, Judge

Court No. 1:21-00049

## <u>OPINION</u>

[Granting Plaintiff's Motion for Judgment on the Agency Record and remanding to Commerce with instructions.]

Dated: December 2, 2022

*Daniel L. Porter*, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for Plaintiff. With him on the brief was *James C. Beaty*.

*Claudia Burke* and *In K. Cho*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With them on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, Commercial Litigation Branch, *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch, and *JonZachary Forbes*, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Luke A. Meisner*, Schagrin Associates, of Washington, DC, for Defendant-Intervenor. With him on the brief were *Roger B. Schagrin* and *Kelsey M. Rule*.

**Vaden, Judge:** Saha Thai Steel Pipe Public Company, Ltd. (Saha Thai) filed this case under Section 516A of the Tariff Act of 1930, as amended.  Saha Thai challenges the final determination issued by the U.S. Department of Commerce (Commerce) after Commerce conducted an administrative review of its 1986 antidumping duty order (Thailand Order) on circular welded carbon steel pipes and tubes (CWP) imported from Thailand (Case No. A-549-502).  Saha Thai challenges Commerce's decision to apply adverse inferences drawn from facts otherwise available (AFA) and the resulting 37.55 percent dumping margin.  *See* Compl. ¶¶ 15–19, ECF No. 6; 19 U.S.C. § 1677e(b)(1)(A).  Before the Court is Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record.  Pl.'s Mot. for J. on the Agency R. (Pl.'s Mot.), ECF No. 22.  For the reasons set forth below, the Court finds that Commerce's decision to apply adverse inferences drawn from facts otherwise available is not supported by substantial evidence, **GRANTS** the Plaintiff's Motion, and **REMANDS** the Final Determination to Commerce to render a redetermination consistent with the Court's opinion.

## BACKGROUND

Saha Thai is a foreign producer and exporter of circular welded steel pipes and tubes.  *See* Compl. ¶ 3, ECF No. 6.  The facts in this case are intertwined with those in a recent scope inquiry case involving the same parties.  *See Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 547 F. Supp. 3d 1278 (CIT 2021) (*Saha Thai I*); *Saha*

*Thai Steel Pipe Pub. Co., Ltd. v. United States*, 592 F. Supp. 3d 1299 (CIT 2022) (*Saha Thai II*). As noted in the Court's earlier opinion:

> Saha manufactured standard pipes, dual-stenciled pipes imported as line pipe, and line pipe, all produced in Thailand for importation into the United States. The International Trade Commission (ITC) has provided a concise and useful explanation of the differences between line pipe and standard pipe. The ITC's description, from its preliminary injury determination published before Commerce's antidumping order imposing duties on standard pipe imported from Thailand, is as follows:

>> We have addressed the like product question regarding standard pipes and tubes (standard pipe) and line pipes and tubes (line pipe) in prior investigations. In those investigations, the Commission recognized distinctions between standard pipe and line pipe. Standard pipe is manufactured to American Society of Testing and Materials (ASTM) specifications and line pipe is manufactured to American Petroleum Institute (API) specifications. Line pipe is made of higher grade steel and may have a higher carbon and manganese content than is permissible for standard pipe. Line pipe also requires additional testing. Wall thicknesses for standard and line pipes, although similar in the smaller diameters, differ in the larger diameters. Moreover, standard pipe (whether imported or domestic) is generally used for low-pressure conveyance of water, steam, air, or natural gas in plumbing, air-conditioning, automatic sprinkler and similar systems. Line pipe is generally used for the transportation of gas, oil, or water in utility pipeline distribution systems.

> *Certain Welded Carbon Steel Pipes and Tubes from Thailand and Venezuela,* Inv. Nos. 701-TA-242 and 731-TA-252 and 253 (Preliminary), USITC Pub. 1680 (Apr. 1985), Joint Appendix (J.A.) at 1094-96, ECF No. 42. So-called dual-stenciled pipe has received both an American

> Society of Testing and Materials (ASTM) stencil and an American Petroleum Institute (API) stencil, indicating that it meets the minimum requirements for both standards. *See* J.A. at 1563 (providing a definition for dual-stenciled pipe).

*Saha Thai I*, 547 F. Supp. 3d at 1281–82. This description and the facts therein recounted remain the same in this case.

## I.   The Recent Scope Inquiry

It is important to note that, although many of the facts of the separate scope inquiry proceedings before the Court are relevant to this administrative review, each case rises and falls on its own merits; the legal issues are independent. Because many of the misunderstandings in this case are predicated on disagreements over the scope of the order, however, a brief summary of the recent scope inquiry is necessary.

On November 22, 2019, Commerce initiated a scope inquiry, examining whether dual-stenciled pipe imported as line pipe from Thailand was covered by the scope of the antidumping duty order on circular welded carbon steel pipes and tubes from Thailand. Commerce Letter Rejecting Inquiry with Administrative Review (Commerce Rejection Letter) at 1 (Feb. 24, 2020), J.A. at 4,414, ECF No. 37 (noting the date the scope inquiry began). Commerce ultimately concluded that the scope of the order did include dual-stenciled pipe. It came to this determination despite the fact that, in each of the four prior sunset reviews of the order, dual-stenciled pipe imported as line pipe was not considered within the scope of the Thailand Order. *See Saha Thai I*, 547 F. Supp. 3d at 1282–86; *see also Saha Thai II*, 592 F. Supp. 3d at

1305. Commerce issued its final scope determination on June 30, 2020. *Saha Thai I*, 547 F. Supp. 3d at 1284; *Saha Thai II*, 592 F. Supp. 3d at 1302. Saha Thai challenged those results, initiating proceedings at the Court of International Trade on July 17, 2020. *Saha Thai I*, 547 F. Supp. 3d at 1287.

On October 6, 2021, this Court remanded Commerce's scope inquiry results. *Id.* at 1292. The Court found that "Commerce lack[ed] substantial evidence for its position that dual-stenciled pipe imported as line pipe is included within the Scope of the Thailand Order" and that Commerce "unlawfully sought to expand the scope of its original order." *Id.* As the Court explained,

> First, Thailand did not produce dual-stenciled pipe at the time of the original investigation and order, and the request was effectively withdrawn from consideration by the petitioners themselves. Second, the (k)(1) materials show that the ITC made no injury determination as to dual-stenciled or mono-stenciled line pipe from Thailand; therefore, antidumping duties cannot be imposed on those types of pipes when imported from Thailand. Third, Commerce and the ITC throughout the (k)(1) materials consistently treat dual-stenciled pipe as line pipe when imported into the United States.

*Id.* The Court remanded the case to Commerce to make a redetermination in compliance with the Court's opinion and order; Commerce filed those remand results on January 4, 2022. *Id.* at 1299. Commerce reconsidered the evidence in light of the Court's opinion and came to the conclusion that dual-stenciled line pipe is not included in the scope of the Thailand Order. This Court affirmed Commerce's remand results on August 25, 2022. *Saha Thai II*, 592 F. Supp. 3d at 1313. Whether or not

Commerce's second determination in the scope inquiry is sustained after any appeal as being supported by substantial evidence is largely immaterial to this case, but the dispute about the scope is important context in the present investigation under review.

## II.     The Disputed Final Determination

The action challenged in this case is the final determination issued in the 2018–19 administrative review of the antidumping duty order on circular welded carbon steel pipes and tubes from Thailand. *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments, In Part; 2018-2019*, 86 Fed. Reg. 7,259 (Jan. 27, 2021) (Final Results). The original order was issued in January 1986, when Commerce determined that standard pipe from Thailand was "being, or [was] likely to be, sold in the United States at less than fair value." *Circular Welded Carbon Steel Pipes and Tubes from Thailand; Final Determination of Sales at Less Than Fair Value*, 51 Fed. Reg. 3,384 (Jan. 27, 1986). That original Final Determination described its scope as encompassing "certain circular welded carbon steel pipes and tubes, also known as '*standard pipe*' or 'structural tubing.'" *Saha Thai I*, 547 F. Supp. 3d at 1283 (emphasis in original).

Each year since 1998, the antidumping order has undergone an administrative review to "determine . . . the rate of any antidumping duty." 19 U.S.C. § 1675(a)(1)(B); *see* Pl.'s Mot. at 2–3 n.3, ECF No. 22 (listing each yearly administrative review). On

March 5, 2019, Commerce published a notice of opportunity to request an administrative review for the period from March 1, 2018, through February 28, 2019. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 84 Fed. Reg. 7,877 (Mar. 5, 2019). Wheatland Tube, other domestic producers, and Saha Thai all requested an administrative review on March 29, 2019.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 24,743 (May 29, 2019). Commerce then published its notice initiating the review on May 29, 2019.  *Id.*  Two months later, Commerce separately announced its intent to reconsider the scope of the Thailand Order regarding line pipe on July 29, 2019.  *Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Scope Inquiry on Line Pipe* (July 29, 2019), J.A. at 1,115, ECF No. 37.

Saha Thai was selected as the sole mandatory respondent for this administrative review on October 18, 2019, and Commerce issued its initial questionnaire a few days later.  *See Administrative Review of the Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Respondent Selection* (Oct. 18, 2019), J.A. at 1,131, ECF No. 37; *Initial Antidumping Duty Questionnaire* (Oct. 21, 2019), J.A. at 1,140, ECF No. 37.  In that initial questionnaire, Commerce told Saha Thai that "[t]his section of the questionnaire provides instructions for reporting your sales of the **subject merchandise**" and asked Saha Thai to report "each U.S. sale of merchandise entered for consumption during the

POR."[1] *Initial Antidumping Duty Questionnaire* (Oct. 21, 2019) at C-2, J.A. at 1,200–

01, ECF No. 37 (emphasis in original). Commerce initiated the separate scope inquiry

thirty-two days later on November 22, 2019. Commerce Rejection Letter at 1 (Feb.

24, 2020), J.A. at 4,414, ECF No. 37.

Over the course of the following month, Saha Thai timely submitted its initial

questionnaire responses in the administrative review. J.A. at 1,305–1,903, 1,915–

2,269, 2,280–2,458, ECF No. 36 (Saha Thai's Section A, Section B & C, and Section D

Questionnaire Responses). In those responses, Saha Thai submitted what it asserted

was a complete U.S. sales database for subject merchandise during the period of

review based on its understanding that the order covered only standard pipe and not

dual-stenciled line pipe. Saha Thai Responses to Questionnaire Section A (November

26, 2019), J.A. at 1,314, ECF No. 37. To clarify its submitted data, Saha Thai included

an explanatory footnote where it outlined the approach it had taken given the ongoing

scope inquiry. *Id.* at 3 n.3. Saha Thai explained that, during the period of review, it

also sold pipes manufactured to API 5L specifications, or line pipe.[2] *Id.* However,

---

[1] Period of review.

[2] The full text of the relevant footnote is as follows: "Saha Thai has reported subject merchandise and foreign like product as standard pipe. During the POR, Saha Thai also sold API 5L pipes ("Line Pipe"). Based on the scope of this administrative review and the Department's practice, these products have not been reported as subject merchandise. Petitioner has claimed that Line Pipe is included within the scope of the Order on standard pipe from Thailand. The Department has initiated a scope inquiry to determine whether Line Pipe is subject merchandise. *See* Letter from the Department entitled, 'Circular Welded Carbon Steel Pipes and Tubes from Thailand: Scope Inquiry on Line Pipe,' dated July 29, 2019. However, as of the date of the filing of this response, the Department has not determined whether Line Pipe is included within the scope of this administrative review. Thus, Saha Thai has only reported standard pipe in its volume and value of subject merchandise and foreign like product." *Id.*

based on past practice and its understanding of the scope in previous administrative reviews with Commerce, Saha Thai did not report the line pipe because Saha Thai did not consider those products to be subject merchandise. *Id.* Commerce had only requested sales of "subject merchandise" during the period of review. *See Initial Antidumping Duty Questionnaire* (Oct. 21, 2019) at C-2, J.A. at 1,200–01, ECF No. 37. There is no evidence on the record that Commerce ever sought to clarify the footnote or asked for additional details regarding the information Saha Thai did not submit in that questionnaire response.

On December 18, 2019, Wheatland Tube submitted a letter requesting that Commerce conjoin the administrative review and scope proceedings. Wheatland Tube Request to Conduct Scope Inquiry in Conjunction with Administrative Review (Dec. 18, 2019), J.A. at 2,270, ECF. No. 37. Saha Thai submitted its own letter objecting to the proposal on December 30, 2019. Its response noted that, because the November 2019 scope inquiry was initiated after the March 2018 to February 2019 period of review, "combining the two proceedings w[ould] have no practical effect on the consequences of the AD review" and that "it would be illogical and unreasonable to burden Saha Thai and the Department by including U.S. sales of line pipe in the ongoing AD review of CWP." Saha Thai Objection to Petitioner's Scope Inquiry Request at 2 (Dec. 30, 2019), J.A. at 2,453, ECF No. 37. Commerce agreed on February 24, 2020, explaining that because Commerce "initiated the scope inquiry on November 22, 2019 . . . any finding that we make regarding whether line pipe or

dual[-]stenciled standard and line pipe is covered by the scope of the order would not be effective during the period of review (i.e., March 1, 2018 thorugh [*sic*] February 28, 2019) of the instant administrative review." Commerce Rejection Letter at 1 (Feb. 24, 2020), J.A. at 4,414, ECF No. 37. That same day, Commerce separately issued a preliminary ruling in the scope inquiry, finding that dual-stenciled pipe was included in the scope of the order. *Notice of Scope Rulings*, 85 Fed. Reg. 35,261–62 (June 9, 2020).

Commerce sent Saha Thai the First Supplemental Questionnaire for the administrative review on March 6, 2020, to which Saha Thai responded on March 20, 2020. First Supplemental Questionnaire (Mar. 6, 2020), J.A. at 4,465, ECF No. 37; Saha Thai First Supplemental Questionnaire Response (Mar. 20, 2020), J.A. at 4,502, ECF No. 37. Commerce sent Saha Thai a Second Supplemental Questionnaire on March 23, 2020. In that questionnaire, Commerce requested that Saha Thai send information listing "the sales of all merchandise (subject and non-subject) during the POR" to just two of its home market customers. Second Supplemental Questionnaire at 3–4 (Mar. 23, 2020), J.A. at 4,581–82, ECF No. 37. Commerce did not request in the Second Supplemental Questionnaire or at any point thereafter a complete revised U.S. sales database including *all* non-subject merchandise.

Commerce then issued its Preliminary Determination on April 2, 2020, relying on the data already submitted and preliminarily finding no indication of dumping. *Circular Welded Carbon Steel Pipes and Tubes from Thailand: Preliminary Results*

*of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2018-2019*, 85 Fed. Reg. 18,552-01 ("Saha Thai Steel Pipe (Public) Co., Ltd. (collectively, Saha Thai), as well as 28 non-examined companies, did not make sales of subject merchandise at less than normal value during the period of review (POR) March 1, 2018 through February 28, 2019.").   Later in April, Saha Thai submitted its Second Supplemental Questionnaire Response, including "a schedule of sales of all merchandise in the POR made to" the two requested customers that detailed "the date of sale, description of merchandise, indication of dual stenciling or line pipe sales, ultimate destination of merchandise, and invoice number." Saha Thai Second Supplemental Questionnaire Response at 2 (Apr. 20, 2020), J.A. at 804,092, ECF No. 36.[3]  Commerce requested no further information, and the administrative record closed.

The separate scope inquiry concluded before Commerce announced the final determination of the administrative review.  On June 30, 2020, Commerce issued its final scope ruling finding that the scope of the Thailand Order included dual-stenciled pipe on June 30, 2020.  *2018-2019 Antidumping Duty Administrative Review of Circular Welded Carbon Steel Pipes and Tubes from Thailand: Application of Adverse Facts Available* at 3 n.10 (Jan. 19, 2021) (AFA Memorandum), J.A. at 804,705, ECF No. 36 (referencing the Final Scope Ruling Memorandum).  Saha Thai initiated

---

[3] The confidential joint appendix in this case was mistakenly numbered by the parties beginning at 800,000.

proceedings objecting to the scope ruling results at the Court of International Trade

on July 17, 2020. *Saha Thai I*, 547 F. Supp. 3d at 1287.

In an unexpected turn of events, Wheatland Tube submitted new factual

information (NFI) on September 18, 2020, making fresh allegations. Circular Welded

Carbon Steel Pipes and Tubes from Thailand: New Factual Information (Sept. 18,

2020) (Wheatland's NFI), J.A. at 10,574, ECF No. 37. Wheatland Tube advanced

claims, based on a Customs and Border Protection (CBP) Enforce and Protect Act

(EAPA) Report, that Saha Thai had colluded with Blue Pipe (an unaffiliated entity)

to evade antidumping duties.[4] *Id.* The findings in the report indicated that, from the

start of the period of review in March 2018, until October 2018, Saha Thai sold

standard pipe into the United States. AFA Memorandum at 4, J.A. at 804,703, ECF

No. 36. It reported those sales to Commerce accordingly. *Id.* However, in October

2018, the cash deposit rate for standard pipe covered by the antidumping order

increased substantially from 0.69 percent to 28 percent. *Id.* At that time, Saha Thai

switched and began selling dual-stenciled pipe to a Thai buyer with those sales

ultimately ending up in the United States. *Id.* Wheatland Tube asserted that Saha

Thai remained aware of this alleged subterfuge. Wheatland's NFI at 2, J.A. at 10,576,

---

[4] The Court notes for the sake of thoroughness that Wheatland Tube had previously submitted new factual information making similar allegations on February 18, 2020, before Commerce's Preliminary Determination. Preliminary Decision Memorandum at 3–4, J.A. at 4,604–05, ECF No. 37. Commerce accepted that information on March 10, 2020. *Id.* Commerce did not fully analyze these allegations in its Preliminary Determination; however, in the Final Determination, it relied on Wheatland Tube's later-filed new factual information. Accordingly, the Court does not consider it necessary to further analyze the earlier-submitted information.

ECF No. 37.  Wheatland Tube supported its allegation of the transshipment scheme through Blue Pipe with evidence from testing Wheatland Tube had conducted.  That testing allegedly found that the dual-stenciled pipes produced by Saha Thai did not meet line pipe specifications and were nothing more than standard pipes with a line pipe stencil applied.  Wheatland Administrative Case Br. at 14–15, J.A. at 10,701–02, ECF No. 37.  Wheatland Tube argued that Saha Thai was deliberately mislabeling the pipe it sold into the United States in order to evade the antidumping duties that had recently increased.  *Id.; cf. Saha Thai I*, 547 F. Supp. 3d at 1286–87 (describing Wheatland Tube's accusations during the scope inquiry that Saha Thai was selling "minorly-altered standard pipe" to avoid higher duties).

On September 25, 2020, seven days after Wheatland Tube's submission, Saha Thai responded to Wheatland Tube's allegations, requesting that Commerce reject Wheatland's submission of new factual information as untimely and irrelevant.  Saha Thai's Request for Rejection of Petitioner's September 18, 2020 NFI and to Accept Rebuttal Factual Information (Sept. 25, 2020), J.A. at 10,591, ECF No. 37.  If Commerce accepted Wheatland Tube's new factual information, however, Saha Thai requested that Commerce also accept rebuttal factual information from Saha Thai consisting of Saha Thai's appeal of the scope results to the CIT.  *Id.* at 10,594.  Instead, on November 25, 2020, Commerce decided to accept new factual information from both Wheatland Tube and Saha Thai, reopened the administrative record, and extended the administrative briefing schedule to allow comment on the new

information. *Circular Welded Carbon Steel Pipes and Tubes from Thailand – 2018-2019 Administrative Review:  Acceptance of New Factual Information* (Nov. 25, 2020), J.A. at 10,642–43, ECF No. 37.

The parties debated the new factual information in the administrative case briefs a month after Commerce's decision to accept the information.  Wheatland Tube submitted its administrative case brief on December 18, 2020, reemphasizing its allegations that Saha Thai had evaded the antidumping duties by engaging in a transshipment scheme with other Thai buyers, mislabeling its standard pipe products as dual-stenciled, and arguing that Commerce should therefore rely on facts otherwise available with an adverse inference. Wheatland Administrative Case Br. at 3–30, J.A. at 10,690–717, ECF No. 37.  Saha Thai then submitted its rebuttal case brief on December 28, 2020, arguing that Wheatland Tube's new factual information was untimely and should not be the basis for Commerce to draw an adverse inference. Saha Thai Rebuttal Case Br. at 1–4, J.A. at 10,738–41, ECF No. 37.  The extended administrative briefing was completed by the end of December 2020.

On January 19, 2021, Commerce issued a memorandum explaining its use of adverse inferences drawn from facts otherwise available.  Commerce found "Saha Thai did not provide requested information with respect to a substantial portion of its U.S. sales" because it did not include dual-stenciled pipe sales in its initial U.S. database.  AFA Memorandum at 2, J.A. at 804,703, ECF No. 36. Commerce published its Final Issues and Decision Memorandum and accompanying Final Results on

January 21, 2021, and February 2, 2021, respectively, assigning a 37.55 percent dumping margin to Saha Thai. *Circular Welded Carbon Steel Pipes and Tubes from Thailand: Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review and Final No Shipment Determination, In Part; 2018-2019 (Jan. 19, 2021), Issues and Decision Memorandum*, J.A. at 10,778, ECF No. 37; *Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments, In Part; 2018-2019*, 86 Fed. Reg. 7,259, 7,260 (Jan. 27, 2021).

Despite Wheatland Tube and other domestic parties' arguments that Saha Thai intentionally mislabeled its pipe and that "all of Saha Thai's dual-stenciled pipe sales should have been classified as standard pipe subject to the Order when it entered the United States," Commerce concluded, based on CBP testing, that there was "insufficient information on the record to find that all of the dual[-]stenciled pipe produced by Saha Thai and sold by [another Thai buyer] to the United States during the POR did not meet API 5L standards." AFA Memorandum at 6, J.A. at 804,708, ECF No. 36. Indeed, all the pipe CBP tested met the "requirements of ASTM A53 Grade A and API 5L PSL 1 Pipe Grade A," meaning it was truly dual-stenciled line pipe. *Id.* In short, no clear record evidence indicated deliberate product mislabeling by Saha Thai. Commerce found that the evidence did not support a conclusion the company was simply relabeling its standard pipe as "dual-stenciled" to avoid the higher cash deposits without making actual changes to the product. *Id.* Accordingly,

Commerce based its decision to rely on facts otherwise available with an adverse inference solely on the missing dual-stenciled pipe sales information. *Id.* at 2–5.

Saha Thai filed suit on February 2, 2021, objecting to the assigned dumping margin as unlawful and unsupported by substantial evidence. *See* Compl. ¶¶ 15–19, ECF No. 6. Saha Thai articulated its claims more fully in its Motion for Judgment on the Agency Record on June 16, 2021. It argued that (1) its dual-stenciled pipe sales were not "necessary" information sufficient to trigger reliance on facts otherwise available, (2) Commerce failed to comply with its statutory obligation to notify Saha Thai of the deficiency, and (3) Commerce's reliance on the Customs and Border Protection report was unreasonable and unlawful. Pl.'s Mot. at 1–5, ECF No. 22. Commerce and Wheatland Tube filed their responses on September 16, 2021. Def.'s Resp. to Rule 56.2 Mot. for J. on the Agency R., ECF No. 29 (Def.'s Resp.); Def.-Int.'s Resp. to Rule 56.2 Mot. for J. on the Agency R., ECF No. 26 (Def.-Int.'s Resp.). Commerce countered that dual-stenciled line pipe sales were necessary information, that Commerce had properly notified Saha Thai of the deficiencies in its information, and that its determination was supported by substantial evidence and in accordance with law. Def.'s Resp. at 9–10, ECF No. 29. Wheatland Tube similarly argued that dual-stenciled line pipe sales were "necessary" information, that Saha Thai had been notified of the deficiencies in its data but that Saha Thai was not entitled to such notice because its withholding of information was intentional, and that Commerce was fully justified in relying on the CBP report. Def.-Int.'s Resp. at 1–3, ECF No. 26.

On October 6, 2021, this Court entered a judgment in the separate scope inquiry case, remanding for Commerce to reconsider the inclusion of dual-stenciled pipe in the scope of the order. *Saha Thai I*, 547 F. Supp. 3d at 1281. Commerce returned its remand redetermination of the scope inquiry on January 4, 2022. The Court affirmed the remand redetermination on August 25, 2022. *Saha Thai II*, 592 F. Supp. 3d at 1301.

The Court held oral argument regarding the administrative review on January 11, 2022. ECF No. 44. There, the Court confirmed that Commerce's bases for applying "facts otherwise available" under 19 U.S.C. § 1677e(a)(1)–(2) were only (a)(1) — that necessary information was not on the record — and (a)(2)(c) — that Saha Thai significantly impeded the investigation — thus eliminating the other three statutory predicates on which Commerce could have relied. First Tr. 59:22–25, 60:1–13, ECF No. 46. Separately, Saha Thai argued that it did not submit a revised U.S. sales database after the February 24, 2020, preliminary scope ruling because the questions in the Second Supplemental Questionnaire were "company-specific" and therefore did not impose a duty on Saha Thai to submit a revised sales database. First Tr. 67:13–16, 25, ECF No. 46.[5] Regarding the notice issue, the Court queried where, if anywhere, in its seven-page rebuttal Saha Thai had responded to Wheatland Tube's allegations at the administrative briefing stage by arguing that Commerce had not

---

[5] When Commerce was asked about question 5 in the Second Supplemental Questionnaire, Commerce incorrectly characterized it as "a general question" rather than "company-specific." First Tr. 48:17–18, ECF No. 46.

adequately notified it of its deficient submissions.  First Tr. 78:10–24, ECF No. 46.

Saha Thai responded that, because it could not know the basis on which Commerce

would use alternative facts, it had no reason to raise the notice defense.  First Tr.

80:17–24, 81:21–24, ECF No. 46 ("[W]ithout the specific basis for Commerce's finding

about other facts available and adverse inference, Saha Thai couldn't make a very

specific argument about the failure to meet 1677m because it hadn't occurred yet.").

Following oral argument, the Court issued a minute order requesting the

parties file supplemental briefs.  These briefs were to address "(1) the application of

the Supreme Court's interpretation of the word 'necessary,' if any, to 19 U.S.C. §

1677e(a)(1) and/or to this case" and "(2) what remains on the record to support

Commerce's determination given the Court's October 6, 2021 order (Slip Op. 21-135)

in the related case, No. 20-133, in which the Court found that the scope of the relevant

order did not include dual-stenciled line pipe."  ECF No. 43.

Commerce responded that the scope remand outcome should not affect the

outcome of this case and that Saha Thai's footnote was not transparent in signaling

to Commerce that Saha Thai was omitting sales of dual-stenciled pipe.  Def.'s Suppl.

Br. at 8–9, ECF No. 47.  Wheatland Tube concurred with Commerce and presented a

timeline of events by which Saha Thai should have known to give a more forthcoming

response.  Def.-Int.'s Suppl. Br. at 4–5, ECF No. 49.  Saha Thai made several

arguments regarding the definition of the word "necessary" and argued that the

Court's decision on the scope of the Thailand Order was fatal to Commerce's decision in this review. *See* Pl.'s Suppl. Br., ECF No. 51.

The Court held a second oral argument on May 18, 2022. ECF No. 55. There, the Government characterized Saha Thai's assertion that its footnote had put Commerce on notice as "a little too cute," arguing that "they knew exactly what they were doing." Second Tr. 34:5, 34:12–13, ECF No. 57. Separately, in response to a question from the Court, Wheatland Tube acknowledged that Commerce had been somewhat terse in its explanation in its administrative review final determination: "I would agree with Your Honor that [Commerce] didn't elaborate on all the different ways that impeding behavior took place." Second Tr. 68:1–3, ECF No. 57. The Court now examines the merits of the parties' arguments.

## JURISDICTION AND STANDARD OF REVIEW

19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c) grant the Court authority to review actions contesting antidumping determinations described in an antidumping order. The Court must remand Commerce's "determinations, findings, or conclusions" when they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). This standard requires that Commerce thoroughly examine the record and "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted);

*accord Tianjin Magnesium Int'l Co. v. United States*, 722 F. Supp. 2d 1322, 1328 (CIT 2010). "[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *New Am. Keg v. United States*, No. 20-00008, 2021 WL 1206153, at *6 (CIT Mar. 23, 2021).

When reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). The Federal Circuit has described "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## DISCUSSION

### I.      Summary

Saha Thai's Motion for Judgment on the Agency Record presents one primary issue: Whether Commerce's use of adverse inferences drawn from facts otherwise available is supported by substantial evidence and otherwise in accordance with law. Pl.'s Mot. at 4, ECF No. 22. Saha Thai claims that Commerce failed to notify it of the

deficiency in its submission. *Id.* at 5. Saha Thai also argues that Commerce lacked

substantial evidence to support its claim that dual-stenciled line pipe sales data was

necessary information for the antidumping margin calculation. *Id.* at 4–5.

Commerce responds that the application of adverse inferences drawn from

facts otherwise available was supported by substantial evidence for several reasons.

Def.'s Resp. at 9–10, ECF No. 29. First, it argues that the procedure was justified

because dual-stenciled line pipe sales data was necessary information for calculating

the margin. *Id.* at 12. Second, it argues that Saha Thai knew or should have known

that dual-stenciled pipe was included in the scope of the term "subject merchandise"

and that, by failing to provide the information, Saha Thai failed to cooperate to the

best of its ability. *Id.* at 18. Third, Commerce asserts that it informed Saha Thai of

the deficiencies in the databases Saha Thai submitted, a problem that Plaintiff failed

to cure. *Id.* at 21. Finally, Commerce claims Saha Thai's failure to raise the lack-of-

notice argument during the administrative briefing precludes Saha Thai's arguing it

here. *Id.*

In support of Commerce's determination, Defendant-Intervenor Wheatland

Tube argues that (1) Saha Thai's participation in an evasion scheme justified the

application of adverse inferences; (2) the omitted dual-stenciled pipe sales data was

necessary information; and (3) Commerce's decision not to conjoin the scope ruling

and administrative review affected only the liquidation of entries, not the historical

scope of the order. Def.-Int.'s Resp. at 1–3, ECF No. 26.

The Court's consideration of this case is wholly independent of the results in the related scope inquiry case, *Saha Thai I*. Even if Commerce misunderstood the scope, a respondent has a duty to provide all necessary information Commerce requests. Thus, regardless of whether the scope of the Thailand Order includes dual-stenciled line pipe, Saha Thai may still have been obligated to give Commerce dual-stenciled line pipe sales information *if* Commerce had requested it.

The legal test at issue here contains three steps. First, to rely on facts otherwise available, Commerce must identify why it is doing so. *See* 19 U.S.C. § 1677e(a). Then Commerce must "promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency . . . ." 19 U.S.C. § 1677m(d). Commerce may only apply an adverse inference if it finds that a respondent failed to cooperate to the best of its ability. 19 U.S.C. § 1677e(b)(1).

Commerce identified two reasons for its use of facts otherwise available: that necessary information is missing from the record and that Saha Thai significantly impeded the investigation. *See* 19 U.S.C. §§ 1677e(a)(1), 1677e(a)(2)(C). Having identified these claimed deficiencies, Commerce was immediately confronted with its statutory obligation under 19 U.S.C. § 1677m(d) to provide Saha Thai notice and an opportunity to cure. Because the Court holds that Commerce failed to meet this statutory obligation, it need not reach whether substantial evidence supports

Commerce's decision to apply adverse inferences drawn from facts otherwise available.

## II.    Analysis

### A.  Facts Otherwise Available and Notice

Commerce conducts administrative reviews — if requested — once a year to set the duty rate for products covered by antidumping orders.  19 U.S.C. § 1675(a)(1)(B).  These reviews determine "the normal value and export price (or constructed export price) of each entry of the *subject merchandise*, and (ii) the dumping margin for each such entry."  19 U.S.C. § 1675(a)(2)(A)(i)–(ii) (emphasis added).  In antidumping reviews and determinations, "[t]he term 'subject merchandise' means the class or kind of merchandise that is within the scope of an investigation, a review, a suspension agreement, [or] an order."  19 U.S.C. § 1677(25).

Commerce collects information from respondents to calculate and support its antidumping determinations.  However, when (1) "necessary information is not available on the record, or" an interested party (2) "withholds information that has been requested," (3) "fails to provide such information by the deadlines for submission of the information or in the form and manner requested," (4) "significantly impedes a proceeding . . . or," (5) "provides such information but the information cannot be verified," then Commerce "shall, *subject to section 1677m(d) of this title*, use the facts otherwise available in reaching the applicable determination."  19 U.S.C. § 1677e(a)(1)–(2) (emphasis added).  When any one of those five preconditions is

satisfied, the use of "facts otherwise available" is triggered.  *Id.*  Then Commerce must, pursuant to § 1677m(d), "promptly inform the person submitting the information of the nature of the deficiency" and "provide that person with an opportunity to remedy or explain the deficiency." 19 U.S.C. § 1677m(d).  If further responses are also unsatisfactory or untimely, Commerce may disregard the information respondents have provided and shall "use the facts otherwise available in reaching the applicable determination."  19 U.S.C. §§ 1677m(d), 1677e(a); *see also Diamond Sawblades Mfrs.' Coal. v. United States*, 986 F.3d 1351, 1362–64 (Fed. Cir. 2021) (analyzing the statutory framework).

To use adverse inferences drawn from facts otherwise available, Commerce must begin by identifying which of the five preconditions support its choice.  On the record here, Commerce primarily identified § 1677e(a)(1), necessary information missing from the record, as the trigger:  "Saha Thai did not provide requested information with respect to a substantial portion of its U.S. sales.  Such information is necessary for Commerce to calculate an accurate weighted-average dumping margin for Saha Thai in this review."  IDM at 4, J.A. at 10,781, ECF No. 37.  Commerce also appears to rely on § 1677e(a)(2)(C), "significantly imped[ing] a proceeding."  First Tr. 59:22–60:13, ECF No. 46; AFA Memorandum at 5, J.A. at 804,707, ECF No. 36 ("[B]y not reporting a substantial portion of its U.S. sales, Saha Thai has failed to cooperate to the best of its ability and impeded Commerce's ability to conduct this administrative review.").

Having identified preconditions, Commerce next must demonstrate it provided notice of and an opportunity to remedy any deficiencies in a respondent's submissions.  In *Hitachi Energy*,[6] the Federal Circuit explained the role § 1677m(d) plays in the use of adverse inferences drawn from facts otherwise available.  *Hitachi Energy USA Inc. v. United States,* 34 F.4th 1375, 1384 (Fed. Cir. 2022).  *Hitachi Energy* concerned the second administrative review of an antidumping order and the actions of Hyundai, which had participated in both the original investigation and the first administrative review.  *Id.* at 1379.  As a respondent in the second review, Hyundai included service-related revenue in the gross unit price of its large power transformers, which was the methodology Commerce had asked Hyundai to use and had accepted during the original investigation and the first review.  *Id.* at 1378–79.  Hitachi objected to Hyundai's procedure, claiming that it overstated the prices of Hyundai's United States sales.  *Id.* at 1379.  Hitachi brought this claim to the Court of International Trade, which granted Commerce's request for a voluntary remand to reconsider its practice.  *ABB, Inc. v. United States*, 273 F. Supp. 3d 1200, 1205 (CIT 2017).

On remand, Commerce changed its practice and began requiring data that separated service-related revenue from gross unit price to allow for further calculations.  *Hitachi Energy*, 34 F.4th at 1380.  With the change in practice,

---

[6] The Federal Circuit later amended its opinion.  *See Hitachi Energy USA Inc. v. United States*, No. 20-2114, 2022 WL 17175134 (Fed. Cir. Nov. 23, 2022).  That amendment does not impact the portions of the opinion quoted herein.

Commerce now considered Hyundai's submissions deficient because service-related revenue was not broken out from the gross unit price. *Id.* Hyundai immediately requested permission to provide additional information to cure the new deficiency, but Commerce refused to reopen the factual record to allow it to do so. *Id.* Hyundai appealed that decision, stating that "the Department's conclusions rest on the unreasonable assertion that Hyundai should have known that the Department would retroactively revise its test with respect to service-related revenue two years after it issued the Final Results." *Id.* at 1381.

The Federal Circuit held that Commerce had failed to comply with its statutory mandate under § 1677m(d). *Id.* at 1383–84. In doing so, it quoted extensively and approvingly from *SKF USA, Inc. v. United States*, 391 F. Supp. 2d 1327, 1336–37 (CIT 2005), to note two points of law. First, "[c]larity regarding what information is requested by Commerce is important, especially in cases such as this where there was confusion as to whether or not requests for data were made and whether or not these requests were refused." *Hitachi Energy*, 34 F.4th at 1384 (quoting *SKF USA*, 391 F. Supp. 2d at 1336). Commerce must clearly and definitively ask for what it wants. Second, "if the Department wished to place the burden of error on [the respondent], it had to make clear and give [the respondent] a chance to correct the error prior to the issuance of a final decision." *Id.* (quoting *SKF USA*, 391 F. Supp. 2d at 1336–37). When Commerce changes tack and decides that it will apply adverse inferences drawn from facts otherwise available, it must *then* provide the respondent with notice

and an opportunity to remedy.  Commerce may not simply proceed without providing an opportunity for remedy before the final decision.  As the Federal Circuit summarized, "Commerce's failure to timely notify a party of deficiency 'is itself a violation of § 1677m(d).'"  *Id.* (quoting *Hyundai Steel Co. v. United States*, 282 F. Supp. 3d 1332, 1349 (CIT 2018)).

Commerce makes three arguments with respect to notice.  First, it argues that Saha Thai failed to raise this argument during the administrative proceedings and therefore failed to exhaust its administrative remedies.  Def.'s Resp. at 21, ECF No. 29.  Second, Commerce asserts that § 1677m(d) does not apply given Saha Thai's intentional failure to provide the information.  *Id.*  And third, it claims that it did notify Saha Thai of the deficiencies.  *Id.*  The Court will address each argument in turn.

## 1. Commerce's Failure to Provide Notice is Properly Before the Court

Commerce claims that Saha Thai failed to exhaust its administrative remedies because it did not raise the issue of notice in its administrative briefing.  Def.'s Resp. at 21, ECF No. 29.  Saha Thai responds that Commerce's Preliminary Results did not use adverse inferences drawn from facts otherwise available and so Saha Thai had no opportunity to respond to Commerce's first use of adverse inferences in the Final Results.  Meanwhile, Saha Thai did respond directly to petitioner Wheatland Tube's argument that Commerce should apply adverse inferences drawn from facts otherwise available.  Pl.'s Reply at 18–19, ECF No. 35.  Saha Thai is correct that the

question whether Commerce complied with § 1677m(d)'s notice requirement is properly preserved for review by the Court for three reasons. First, Saha Thai had no opportunity to raise objections to Commerce's failure to provide notice at the administrative level because Commerce's first use of adverse inferences drawn from facts otherwise available came in the Final Results. Second, the burden lies with Commerce to provide notice, not with Saha Thai to object to the lack of notice. *See Hitachi Energy*, 34 F.4th at 1384. Third, the issue before the Court here is a pure question of law, exempt from the administrative exhaustion requirement.

### a. Saha Thai Had No Opportunity to Raise Objections to Commerce

Saha Thai had no opportunity to object to Commerce's failure to provide notice at the administrative level. Thus, Saha Thai properly brought its claim to this Court because it was its first opportunity to protest the violation. A party "may seek judicial review of an issue that it did not raise in a case brief if Commerce did not address the issue until its final decision, because in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the administrative level." *Qingdao Taifa Group Co., Ltd. v. United States*, 637 F. Supp. 2d 1231, 1236 (CIT 2009), *aff'd without opinion*, 467 F. App'x 887 (Fed. Cir. 2012) (citing *LTV Steel Co. v. United States*, 985 F. Supp. 95, 120 (CIT 1997)).

In *Qingdao Taifa*, Commerce's Preliminary Results assigned a relatively low duty rate of 3.82% to respondent Taifa and did not use adverse inferences drawn from facts otherwise available. 637 F. Supp. 2d at 1236. Taifa did not file a case brief or

rebuttal brief following the preliminary results, as it was satisfied with the assigned duty rate.  *Id.*  But in the Final Results, Commerce decided to apply adverse inferences drawn from facts otherwise available to Taifa and assigned it the country-wide duty rate of 383.60%.  *Id.*  Taifa, having no opportunity remaining at the administrative level to object, appealed this decision to the CIT.  *Id.* at 1234.  The CIT held that the exhaustion requirement did not preclude Taifa's claim because (1) "Taifa did not have a fair opportunity to challenge these issues at the administrative level," and (2) "Taifa [was] not required to predict that Commerce would accept other parties' arguments and change its decision."  *Id.* at 1237 (citing *Saha Thai Steel Pipe Co. v. United States*, 828 F. Supp. 57, 59–60 (CIT 1993)).

     *Qingdao Taifa* mirrors the present case, as does its holding on exhaustion. Here, just as in *Qingdao Taifa*, Commerce's Preliminary Results did not apply adverse inferences drawn from facts otherwise available to Saha Thai.  Wheatland Tube argued that Commerce should apply adverse inferences to Saha Thai, and Saha Thai — unlike Taifa — responded to Wheatland Tube's argument.  *See* Saha Thai Rebuttal Case Br. at 1, J.A. at 10,738, ECF No. 37.  Commerce then surprised Saha Thai by applying adverse inferences drawn from facts otherwise available in the Final Results with no warning given by Commerce and no opportunity to protest the decision.  *Cf. Qingdao Taifa*, 637 F. Supp. 2d at 1237.  Saha Thai "did not have a fair opportunity to challenge these issues at the administrative level."  *Id.*  Additionally, Saha Thai was "not required to predict that Commerce would accept [Wheatland

Tube's] arguments and change its decision." *Id.* It would make little sense to find that a Plaintiff that did more than the minimum is somehow barred from seeking review when one like Taifa that literally did nothing in the same circumstance was afforded a chance to appeal. *Cf. id.* at 1236 (noting that Taifa failed to file any brief addressing potential alternative results). For these reasons, exhaustion doctrine does not preclude the Court from hearing Saha Thai's claim regarding lack of notice.

### b.  The Burden to Provide Notice Lies with Commerce

The burden to provide timely notice before issuance of the final results under § 1677m(d) lies with Commerce, and Commerce may not shift that statutory burden to Saha Thai. With respect to notice under § 1677m(d), the Federal Circuit has said it is "impermissible for Commerce to delay reporting that a respondent has provided insufficient information until it is too late to correct." *Hitachi Energy*, 34 F.4th at 1384 (citing *SKF USA*, 391 F. Supp. 2d at 1336–37). "If the Department wished to place the burden of error on [the respondent], it had to make clear and give [the respondent] a chance to correct the error prior to the issuance of a final decision." *Id.* (quoting *SKF USA*, 391 F. Supp. 2d at 1336–37). "Commerce's failure to timely notify a party of deficiency 'is itself a violation of § 1677m(d).'" *Id.* (quoting *Hyundai Steel*, 282 F. Supp. 3d at 1349).

Commerce attempts to escape its statutory obligation by shifting the agency's burden to notify onto the Plaintiff. Commerce claims that, because Saha Thai failed to inform the agency of the agency's duty to provide notice of any deficiencies, the

agency is absolved of its responsibility. Def.'s Resp. at 22, ECF No. 29. The Court is not persuaded by that line of reasoning. Under § 1677m(d), Commerce had an obligation to notify Saha Thai of the alleged deficiencies in its U.S. sales database and provide an opportunity to remedy. Commerce's reasoning would require a respondent to object that it did not have proper notice *before* Commerce has taken any action for which notice might be required. The law requires respondents to be diligent, not clairvoyant. *Sigma Corp. v. United States*, 841 F. Supp. 1255, 1267 (CIT 1993) ("Commerce cannot expect a respondent to be a mind-reader."). Commerce's proposal would also perversely have respondents assume the agency will act in violation of its legal obligations. *Cf. FCC v. Schreiber*, 381 U.S. 279, 296 (1965) (noting the presumption that agencies "will act properly and according to law"). The agency's failure to notify Saha Thai "is itself a violation of § 1677m(d)"; and, as in *Hitachi Energy*, Commerce delayed notifying Saha Thai that it "ha[d] provided insufficient information until after it [was] too late to correct." *Hitachi Energy*, 34 F.4th at 1384. Because the burden to provide notice here lies with Commerce, it may not shirk its burden by arguing that respondents must assume Commerce will act illegally and object to an error that has yet to occur.

### c. Whether Commerce Followed § 1677m(d) Is a Pure Question of Law

Absent the circumstances noted above, it would still be proper for the Court to consider whether Commerce complied with § 1677m(d), as that is a pure question of law. The pure-question-of-law exception to administrative exhaustion applies "when

(1) plaintiff raises a new argument; (2) this argument is of a purely legal nature; (3) the inquiry requires neither further agency involvement nor additional fact finding or opening up the record; and (4) the inquiry neither creates undue delay nor causes expenditure of scarce party time and resources." *Zhongce Rubber Group Co. Ltd. v. United States*, 352 F. Supp. 3d 1276, 1279 (CIT 2018), *aff'd without opinion*, 787 F. App'x 756 (Fed. Cir. 2019) (citing *Consol. Bearings Co. v. United States*, 166 F. Supp. 2d 580, 587 (CIT 2001)).

All four requirements of the pure-question-of-law exception are met here. All parties agree that this is the first time Saha Thai has disputed whether notice was provided. Whether Commerce complied with the notice requirement is a purely legal question, and the facts relevant to that inquiry are present on the record. No further agency involvement is required for the Court to consider the question. And the Court's inquiry into the question — now fully briefed — neither unduly delays justice nor expends scarce party time and resources.

The three foregoing reasons are each independently sufficient for the Court to consider Saha Thai's objections. The Court is satisfied that hearing Saha Thai's objection is well within the discretion granted by statute to judges of the Court of International Trade in applying exhaustion principles to trade cases. 28 U.S.C. § 2637(d); *see Corus Staal BV v. United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007).

### 2.  Saha Thai's Data Was Not Submitted Fraudulently So That Notice Was Required

Commerce claims that Saha Thai's data was intentionally incomplete; therefore, Commerce had no obligation to provide notice.  Def.'s Resp. at 22–23, ECF No. 29.  Saha Thai responds that it told Commerce in a footnote what data it was and was not providing, and any allegations of intentional incompleteness or fraud are baseless.  *See* Pl.'s Reply at 16–18, ECF No. 35.  Further, Saha Thai notes that it responded in full to every request Commerce made; and none of those requests asked for data about *all* dual-stenciled pipe sales during the relevant period.  *Id.*  Commerce may refuse to provide notice when it can demonstrate bad faith on the respondent's part, not merely when it alleges that some information it wanted was not provided. *See Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373, 1384 (Fed. Cir. 2016).  Because Commerce did not find Saha Thai acted fraudulently, Commerce violated § 1677m(d) when it did not provide notice and an opportunity to cure before applying an adverse inference to the facts available.

In *Papierfabrik*, a respondent admitted — after substantial delays and being confronted with an affidavit — that it had engaged in a pattern of fraudulent trans-shipment and misreporting.  *Id.* at 1376–77.  Commerce refused to accept the respondent's attempts to correct the error and instead used adverse inferences drawn from facts otherwise available.  *Id.*  The Federal Circuit upheld Commerce's decision to deny the respondent an opportunity to remedy, holding that § 1677m(d) did not require Commerce "to treat intentionally incomplete data as a 'deficiency' and then

to give a party that has intentionally submitted incomplete data an opportunity to 'remedy' as well as to 'explain.'" *Id.* at 1384.  However, the Federal Circuit based its holding on the exact circumstances of the case:  "Commerce 'emphasize[d]' that 'the "deficiency" at issue did not come about because [the respondent] inadvertently omitted a number of sales,' 'due to an unintentional computer programming error,' or '*because of a misunderstanding of the Department's questionnaire instructions.*'" *Id.* (emphasis added).  "Rather, '[t]he "deficiency" in [the respondent's] questionnaire responses occurred because [the respondent] intended to submit deficient, incomplete, *and fraudulent* questionnaire responses to the Department.'" *Id.* (emphasis added).  Thus, § 1677m(d) does not "permit respondents to submit *fraudulent data* with the knowledge that, should their misconduct come to light, they can demand an opportunity to remedy their intentionally deficient data and avoid the otherwise-authorized adverse inferences." *Id.* (emphasis added).  It, however, does not give Commerce *carte blanche* to omit notice whenever a party fails to submit information because of a misunderstanding regarding what information Commerce requires.  *See id.* (holding that notice *is* required when there is a "misunderstanding of the Department's questionnaire instructions").

*Papierfabrik* is distinct from the present case.  Commerce does not allege that Saha Thai engaged in outright fraud.  Rather, Commerce attempts to wedge this case into *Papierfabrik*'s framework through overreliance on the Federal Circuit's use of the phrase "intentionally incomplete." *See* Def.'s Resp. at 22, ECF No 29.  The Federal

Circuit was discussing outright and admitted fraud. *See Papierfabrik*, 843 F.3d at 1384 (declaring the data "fraudulent"). There is no finding of fraud in this case. Instead, what has happened could — most charitably to Commerce's position — be characterized as "a misunderstanding of the Department's questionnaire instructions." *Cf. id.* ("Accordingly, we find [Papierfabrik's] arguments that the Department 'unlawfully denied [it] an opportunity to remedy its deficiency . . .' to be disingenuous. [Papierfabrik] did not need the Department to 'promptly inform [it] of the nature of the deficiency'" because it was a result of knowing and purposeful fraud) (quoting Commerce). Indeed, it would be hard to call the omission of data on dual-stenciled pipe "fraudulent" when (1) the omission was transparently disclosed at the time of the submission, *see supra* at 8 n.2; (2) Commerce asked for the missing data with regard to two specific customers — demonstrating it knew Saha Thai had not provided it — but never asked for the data for any other customers, *see supra* at 10; and (3) Saha Thai immediately provided the company-specific data for which Commerce asked, *see supra* at 11.

A more recent case, *Shelter Forest International Acquisition, Inc. v. United States*, is much more analogous than *Papierfabrik* to the case at bar. No. 2021-2281, 2022 WL 2155965 (Fed. Cir. June 15, 2022). There, Commerce issued a preliminary determination finding in part that a respondent did not provide documentation to support one of its claims. *Id.* at *3. When the respondent then attempted to submit additional information addressing Commerce's concern, Commerce rejected the new

submission and denied the respondent's formal request that Commerce solicit that information. *Id.* In its final determination, however, Commerce faulted the respondent for not supplying that information "even though Commerce had never requested such information from Shelter Forest and refused to accept that information when Shelter Forest attempted to provide it." *Id.* The Federal Circuit concluded that Commerce "abused its discretion in the original proceeding by failing" to provide notice or an opportunity to remedy the deficiency "as required by 19 U.S.C. § 1677m(d)." *Id.* at *5. It distinguished *Papierfabrik* on the basis that, there, the respondent had knowingly submitted fraudulent data to Commerce. *Id.* at *6.

Commerce's own citations do it no favors. *Fengchi Import and Export Company* only serves to bolster Saha Thai's argument. *See* Def.'s Suppl. Br. at 5–8, ECF No. 47. During the administrative review at issue in *Fengchi*, Commerce conducted a separate scope inquiry, which resulted in the inclusion of a new product in the scope. *Fengchi Imp. & Exp. Co.*, 70 F. Supp. 3d 1255, 1258 (CIT 2015). At the conclusion of the scope inquiry, Commerce sent Fengchi a supplemental questionnaire that specifically asked it to confirm if it had reported the newly-included product and, if not, to now include it in its response to the questionnaire. *Id.* Fengchi refused to respond with the information Commerce requested and instead protested the request. *Id.* Despite multiple follow-ups from Commerce, Fengchi never answered the questionnaire, leaving Commerce no choice but to apply adverse inferences drawn from facts otherwise available. *Id.* When the Federal Circuit eventually overturned

the scope inquiry, Fengchi argued that there was no longer any basis for Commerce to apply adverse inferences. *Id.* at 1260. The Court disagreed, holding Commerce could still do so. *Id.*

*Fengchi* thus is distinct from the present case both in how the respondent behaved and in how Commerce communicated its requests for information. The respondent in *Fengchi* refused to provide the information Commerce had repeatedly requested. *Id.* at 1258 (noting that Commerce specifically asked Fengchi to "confirm whether it had reported all sales of subject merchandise, *including [the newly included product]*, in its initial questionnaire response") (emphasis added). Saha Thai, on the other hand, complied with Commerce's requests. In *Fengchi*, Commerce asked the respondent to supplement the record after the scope review added a new product to the relevant "subject merchandise." Here, Commerce never asked for a completely new data set and limited its requests to data about sales of dual-stenciled pipe to two companies. *Compare id.*, *with* Second Supplemental Questionnaire at 3–4, J.A. at 4,579, ECF No. 37.

The other cases Commerce cites are similarly unhelpful. *See* Def.'s Suppl. Br. at 5–7, ECF No. 47. For example, in *Deacero S.A.P.I. de CV v. United States*, Deacero submitted a cost database that it stated was based on actual costs. 996 F.3d 1283, 1290 (Fed. Cir. 2021). Later, Deacero submitted an unsolicited and substantially revised database with little explanation provided. *Id.* Commerce sent a second supplemental questionnaire, which served as notice, asking that Deacero explain the

revisions. *Id.* at 1298. Deacero did so, but Commerce found its explanation unsatisfactory and applied adverse inferences drawn from facts otherwise available. *Id.* In *Essar Steel Ltd. v. United States*, the Court finds much the same story. 721 F. Supp. 2d 1285 (CIT 2010). Commerce asked for subsidy benefit information about both unfulfilled and fulfilled export licenses. *Id.* at 1290. Essar provided only information about unfulfilled export licenses. *Id.* Commerce sent a new supplemental questionnaire asking again as notice, and Essar did not provide the requested information in response. *Id.* at 1298–99. Having provided notice, Commerce applied adverse inferences drawn from facts otherwise available. *Id.* Lastly, Commerce cites *Shandong Huarong Machinery Co. v. United States*, in which Commerce alleged that a respondent "continually misrepresented" its affiliation with another business. 435 F. Supp. 2d 1261, 1275 (CIT 2006). Despite that, Commerce issued the respondent *three* separate supplemental questionnaires that served as notice and requested further information. *Id.*

As the previous examples show, Commerce has consistently followed § 1677m(d) by providing notice and an opportunity to cure to parties who acted far less diligently than Saha Thai. *Cf., e.g.*, *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 536 (2009); *State Farm*, 463 U.S. at 42 ("[A]n agency changing its course . . . is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance."). The Federal Circuit has provided Commerce a limited exception when dealing with outright fraud. *See Papierfabrik*,

843 F.3d at 1384.   A mistake or misunderstanding still requires notice of the deficiency and an opportunity to cure.  *See Shelter Forest*, 2022 WL 2155965, at *5–6.   Commerce's final decision in this matter does not rely on allegations of fraud for its application of adverse inferences.  *See* IDM, J.A. at 10,778–94; AFA Memorandum, J.A. at 10,795–803.   Consequently, federal statute and Federal Circuit precedent require Commerce to have provided notice and an opportunity to cure to Saha Thai before it may act — the same notice and opportunity to cure it has routinely provided to less transparent and less cooperative entities in the past.  19 U.S.C. § 1677m(d); *see Deacero S.A.P.I.*, 996 F.3d at 1298; *Fengchi Imp. & Exp. Co.*, 70 F. Supp. 3d at 1258; *Essar Steel*, 721 F. Supp. 2d at 1299; *Shandong Huarong*, 435 F. Supp. 2d at 1275.  It is to the question of whether Commerce gave notice to which the Court next turns.

### 3.  Commerce Failed to Provide Notice

Although Commerce now claims it did provide Saha Thai with notice and an opportunity to remedy, that claim is contrary to the record evidence in this case. Commerce argues that it provided Saha Thai notice and an opportunity to remedy in its Second Supplemental Questionnaire issued on March 23, 2020.  Def.'s Resp. at 23–24, ECF No. 29.  Saha Thai replies that the referenced questionnaire does not provide notice that Commerce wanted the data for *all* sales of dual-stenciled pipe in the period of review and instead only asked for specific information about sales to a subset of Saha Thai's customers.  Pl.'s Reply at 21–23, ECF No. 35.  Because the

record evidence does not support Commerce's claim that it asked for all dual-stenciled pipe sales, the Court concludes that Commerce did not provide notice.

To provide adequate notice under § 1677m(d), Commerce must give the respondent "[c]larity regarding what information is requested by Commerce . . . especially in cases such as this where there was confusion as to whether or not requests for data were made and whether or not these requests were refused." *Hitachi Energy*, 34 F.4th at 1384 (quoting *SKF USA*, 391 F. Supp. 2d at 1336). As discussed above, Commerce provided no indication that it intended to use adverse inferences drawn from facts otherwise available until the Final Results. The Preliminary Results did not use adverse inferences drawn from facts otherwise available. Thus, Commerce should have provided Saha Thai with clear notice that it required the data on all sales of dual-stenciled pipe between the Preliminary Results and the Final Results when Commerce decided it would apply adverse inferences drawn from facts otherwise available.

Commerce alleges it did so via the Second Supplemental Questionnaire, issued to Saha Thai on March 23, 2020. Def.'s Resp. at 24, ECF No. 29. This cannot be correct. The contents of the Second Supplemental Questionnaire and Saha Thai's responses demonstrate that the questionnaire could not have provided the requisite notice.

The questionnaire asked Saha Thai to provide information about subject and non-subject merchandise sales to two specific customers. Commerce does not dispute

Saha Thai did so satisfactorily. Second Supplemental Questionnaire at 3–4, J.A. at 4,581–82, ECF No. 37 (requesting Saha Thai "[p]rovide a schedule that lists the sales of all merchandise (subject and non-subject) during the POR to [Customer 1]," and, in a separate question, the same for "[Customer 2]"). Commerce did not request in the Second Supplemental Questionnaire or any point thereafter a revised U.S. sales database including all non-subject merchandise — much less inform Saha Thai that it believed it had previously asked for the information and not received it. Yet that information is what Commerce now claims Saha Thai failed to provide. The Second Supplemental Questionnaire demonstrates that Commerce knew how to ask for sales of both subject and non-subject merchandise; it simply chose not to do so regarding all of Saha Thai's sales. Saha Thai is left in much the same position as the appellant in *Hitachi Energy* — forced to have clairvoyance in order to avoid an adverse inference. *See Hitachi Energy*, 34 F.4th at 1381 (faulting Commerce for requiring the respondent to know "that the Department would retroactively revise its test" to avoid an adverse inference); *Sigma Corp.*, 841 F. Supp. at 1267 ("Commerce cannot expect a respondent to be a mind-reader.").

Recognizing this at oral argument, the Court asked Commerce to further clarify where in the record it had requested the information about dual-stenciled pipe earlier in the investigation: "[C]an you point to me a specific question in either the initial questionnaire, the first supplemental questionnaire, or the second supplemental questionnaire where you asked for some specific information regarding

dual-stenciled pipe and they didn't give it to you?" First Tr. 47:7–12, ECF No. 46. Commerce responded by once again highlighting question five of the Second Supplemental Questionnaire. *Compare* First Tr. 48:17–19, ECF No. 46 (pointing to question five and describing it as "a general question . . . not specific to a particular client"), *with* Second Supplemental Questionnaire at 3, J.A. at 4,581, ECF No. 37 (contradicting statement at oral argument by requesting in question five only that Saha Thai "[p]rovide a schedule that lists the sales of all merchandise (subject and non-subject) during the POR to" two specific customers). Further, Commerce acknowledged that it did not rely on Saha Thai's failure to respond to question five in that questionnaire in either the Issues and Decision Memorandum or the Adverse Facts Available Memorandum. First Tr. 47–49, ECF No. 46.[7] Thus, even were question five adequate notice — it is not — Commerce would have failed to explain its reasoning in the record. *Compare* First Tr. 48:25–50:4, ECF No. 46 (asking Government counsel directly where Commerce explained its reasoning and receiving no clear answer), *and* Second Tr. 68:1–3, ECF No. 57 (Counsel for Defendant-Intervenor Wheatland Tube: "I would agree with Your Honor that [Commerce] didn't elaborate on all the different ways that impeding behavior took place."), *with State*

---

[7] The Court asked government counsel on what Commerce relied in its written decision to apply adverse inferences drawn from facts otherwise available. Mr. Cho: "So what we relied on was the initial questionnaire." Court: "So you didn't rely on [question five in the second supplemental questionnaire]." Mr. Cho: "That's correct." First Tr. 47–49, ECF No. 46. Commerce did not further address or clarify its understanding of question five of the Second Supplemental Questionnaire during the second oral argument despite multiple invitations from the Court to do so. *See* Second Tr. 39:11–45:19, ECF No. 57.

*Farm*, 463 U.S. at 50 ("[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962), *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), and *American Textile Manufacturers Institute, Inc. v. Donovan*, 452 U.S. 490, 539 (1981)). Either failure alone would be fatal to Commerce's decision. Combined, the procedural error of failing to give notice of the deficiency and the lack of an adequate explanation make remand inevitable.

## CONCLUSION

Commerce failed to provide notice and an opportunity to remedy as § 1677m(d) requires. It also failed to explain adequately in the record the reason it chose to draw an adverse inference. Having failed at both prerequisites, its current decision is not supported by substantial evidence nor in accordance with the law. *Cf.* 19 U.S.C. § 1516a(b)(1)(B)(i). The Court states no position whether on remand Commerce may draw adverse inferences or use facts otherwise available. If it does so, Commerce must provide an adequate explanation in the record supported by substantial evidence and ensure that it properly complies with the notice requirement of § 1677m(d).

Thus, on consideration of Plaintiff's Motion for Judgment on the Agency Record, all papers and proceedings had in relation to this matter, and on due deliberation, it is hereby:

**ORDERED** that Plaintiff's Motion for Judgment on the Agency Record is **GRANTED**;

**ORDERED** that Commerce, no later than 120 days from the date of issuance of a final mandate in *Saha Thai Steel Pipe Public Co. Ltd. v. United States*, No. 22-2181 (Fed. Cir.), shall submit a Remand Redetermination in compliance with this Opinion and Order.  It is Commerce's option whether to wait for the mandate to issue before submitting its Remand Redetermination in this case; and it is further

**ORDERED** that, within 14 days of Commerce's filing the Remand Redetermination, Commerce shall supplement the administrative record and joint appendix with all documents not already included that Commerce considered in reaching its remand results;

**ORDERED** that Plaintiff shall have 28 days from the filing of the supplement to the administrative record to submit comments to the Court;

**ORDERED** that Defendant shall have 14 days from the date of Plaintiff's filing of comments to submit a reply; and

**ORDERED** that Defendant-Intervenor shall have 14 days from the date of Defendant's filing of comments to submit its reply.

/s/      Stephen Alexander Vaden
Stephen Alexander Vaden, Judge

Dated: December 2, 2022
      New York, New York