Slip Op. 23-53

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED and XINJIANG MEIHUA AMINO ACID CO., LTD.,**<br><br>  **Plaintiffs,**<br><br>**and**<br><br>**DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., and JIANLONG BIOTECHNOLOGY COMPANY, LTD.,**<br><br>  **Consolidated Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>  **Defendant.** | Before: Jennifer Choe-Groves, Judge<br><br>Consol. Court No. 22-00069 |

## <u>OPINION AND ORDER</u>

[Remanding the final results of the U.S. Department of Commerce, following the final determination in the antidumping duty investigation of xanthan gum from the People's Republic of China.]

Dated: April 19, 2023

Consol. Court No. 22-00069                                    Page 2

Mark B. Lehnardt, Law Offices of David L. Simon, PLLC, of Washington, D.C.,
for Plaintiffs Meihua Group International Trading (Hong Kong) Limited and
Xinjiang Meihua Amino Acid Co., Ltd.

Chunlian (Lian) Yang, and Lucas Querioz Pires, Alston & Bird LLP, of
Washington, D.C., for Consolidated Plaintiffs Deosen Biochemical (Ordos) Ltd.
and Deosen Biochemical Ltd.

Robert G. Gosselink, Jonathan M. Freed, and Kenneth N. Hammer, Trade Pacific
PLLC, of Washington, D.C., for Consolidated Plaintiff Jianlong Biotechnology
Company, Ltd.

Tara K. Hogan, Assistant Director, and Kelly A. Krystyniak, Trial Attorney,
Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of
Washington, D.C., for Defendant United States.  With them on the brief were
Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M.
McCarthy, Director.  Of Counsel was Spencer Neff, Attorney, Office of the Chief
Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

      Choe-Groves, Judge: This action concerns the import of xanthan gum from

the People's Republic of China ("China"), subject to the administrative

determination by the U.S. Department of Commerce ("Commerce") in Xanthan

Gum From the People's Republic of China ("Final Results"), 87 Fed. Reg. 7104

(Dep't of Commerce Feb. 8, 2022) (final results of antidumping duty

administrative review and final determination of no shipments; 2019–2021); see

also Issues and Decision Memorandum for the Final Results of the 2019-2020

Antidumping Duty Administrative Review of Xanthan Gum from the People's

Republic of China ("Final IDM"), ECF No. 23-3.

Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd. (collectively, "Meihua") challenge Commerce's Final Results in its Motion of Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd., for Judgment on the Agency Record and the Memorandum of Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd., in Support of its Motion for Judgement upon the Agency Record. Pls.' Mot. J. Agency R., ECF No. 30-2; Mem. Pls.' Supp. Mot. J. Agency R. ("Pls.' Br."), ECF Nos. 30-4, 31. Consolidated Plaintiff Jianlong Biotechnology Co., Ltd. ("Jianlong") contests Commerce's Final Results in Consolidated Plaintiff's Rule 56.2 Motion for Judgement upon the Agency Record and Memorandum in Support of the Rule 56.2 Motion of Consolidated Plaintiff Jianlong Biotechnology Co. Ltd., for Judgment upon the Agency Record. Consol. Pl.'s R. 56.2 Mot. J. Agency R., ECF Nos. 27, 28; and Mem. Supp. Consol. Pl.'s R. 56.2 Mot. J. Agency R. ("Jianlong's Br."), ECF Nos. 27-2, 28-2. Deosen Chemical (Ordos) Ltd. and Deosen Biochemical Ltd. (collectively, "Deosen") challenge Commerce's Final Results in Consolidated Plaintiff Deosen's Motion for Summary Judgment on the Agency Record and Consolidated Plaintiff Deosen's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment on the Agency Record. Consol. Pl.'s R. 56.2 Mot. J. Agency R. ("Deosen's Br."), ECF No. 32. Defendant United States

("Defendant") filed Defendant's Response to Plaintiffs' and Plaintiff-Intervenors'

Motions for Judgment Upon the Agency Record.[1]  Def.'s Resp. Br. Opp'n Pls.' R.

56.2 Mots. J. Agency R. ("Def.'s Resp. Br."), ECF Nos. 35, 36.[2]  Meihua,

Jianlong, and Deosen filed reply briefs. See Pl.'s Reply Br. Supp. R. 56.2 Mot. J.

Agency R. ("Meihua's Reply"), ECF Nos. 41, 42; Consol. Pl.'s Reply Br.

("Jianlong's Reply"), ECF No. 39; Consol. Pl.'s Reply Supp. Mot. Summary J.

Agency R. ("Deosen's Reply"), ECF No. 40.

For the reasons discussed below, the Court remands Commerce's <u>Final</u>

<u>Results</u>.

## ISSUES PRESENTED

The Court reviews the following issues:

1. Whether Commerce's application of facts otherwise available to

    Meihua was in accordance with the law and supported by substantial

    evidence;

---

[1]  Defendant incorrectly identified Consolidated Plaintiffs Deosen Biochemical (Ordos) Ltd., Deosen Biochemical Ltd., and Jianlong Biotechnology Company, Ltd. as Plaintiff-Intervenors.

[2]  Plaintiffs Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd. submitted Plaintiffs' Unopposed Motion for Oral Argument, ECF No. 43, which was granted by the Court.  See Order, ECF No. 46.  Because some of the Parties were unavailable for a substantial period of time, the Court decides this case without oral argument.

2.  Whether failure to exhaust administrative remedies prevents

    Jianlong's arguments before the Court;

3.  Whether Commerce's application of the separate rate to Jianlong and

    Deosen was supported by substantial evidence and in accordance with

    the law; and

4.  Whether Commerce's determination not to rescind Deosen's review

    was supported by substantial evidence.

## PROCEDURAL HISTORY

On July 19, 2013, Commerce published an antidumping duty order on

xanthan gum from China.  Xanthan Gum From the People's Republic of China, 78

Fed. Reg. 43,143 (Dep't of Commerce July 19, 2013) (amended final

determination of sales at less than fair value and antidumping duty order).

Commerce published a notice of opportunity to request an administrative review of

the antidumping duty order on xanthan gum from China for the period of July 1,

2019 through June 30, 2020.  Antidumping or Countervailing Duty Order, Finding,

or Suspended Investigation, 85 Fed. Reg. 39,531 (Dep't of Commerce July 1,

2020) (opportunity to request administrative review).  Commerce initiated an

administrative review of the antidumping duty order Xanthan Gum From the

People's Republic of China.  Initiation of Antidumping and Countervailing Duty

Consol. Court No. 22-00069                                                                 Page 6

Administrative Reviews ("Initiation Notice"), 85 Fed. Reg. 54,983, 54,990 (Dep't

of Commerce Sep. 3, 2020).

Commerce received requests for reviews of several companies and selected

Neimenggu Fufeng Biotechnologies Co., Ltd., Xinjiang Fufeng Biotechnologies

Co., Ltd., and Shandong Fufeng Fermentation Co., Ltd. (collectively, "Fufeng"),

and Meihua Group International Trading (Hong Kong) Limited, Langfang Meihua

BioTechnology Co., Ltd., and Xinjiang Meihua Amino Acid Co., Ltd. for review.

Memo From USDOC to Office Director Pertaining to Interested Parties

Respondent Selection, PR 39.[3]  Commerce explained that because Commerce

treated Deosen Chemical (Ordos), Ltd. and Deosen Biochemical Ltd. as a single

entity during the investigation, it would continue to do so in the 2019–2020

administrative review.  Id. at 2 n.5.  Commerce published its Seventh Antidumping

Duty Administrative Review of Xanthan Gum from the People's Republic of

China: Preliminary Application of Adverse Facts Available to Meihua on July 30,

2021.  Seventh Antidumping Duty Administrative Review of Xanthan Gum from

the People's Republic of China: Preliminary Application of Adverse Facts

Available to Meihua ("AFA Memo"), PR 285.  Commerce published its

preliminary results and accompanying issues and decision memorandum on August

_____

[3]  Citations to the administrative record reflect the public administrative record
("PR") document numbers.  ECF No. 45.

5, 2021. <u>Xanthan Gum From the People's Republic of China</u>, 86 Fed. Reg. 42,781

(Dep't of Commerce Aug. 5, 2021) (preliminary results of the antidumping duty

administrative review, partial recission of the antidumping duty administrative

review, and preliminary determination of no shipments; 2019–2020); <u>see also</u>

Decision Memorandum for the Preliminary Results of the Seventh Antidumping

Duty Administrative Review of Xanthan Gum from the People's Republic of

China, PR 278.  Meihua and Deosen filed administrative case briefs.  Brief From

Craven Trade Law LLC to Sec of Commerce Pertaining to Meihua ("Meihua's

Admin. Case Br."), PR 294; Brief from Alston & Bird, LLP to Sec of Commerce

Pertaining to Deosen ("Deosen's Admin. Case Br."), PR 293.  Jianlong did not file

an administrative case brief.  Commerce issued its <u>Final Results</u> and Final IDM on

February 8, 2022.  <u>Final Results</u>, 87 Fed. Reg. 7104; Final IDM.  Commerce

determined that Meihua provided inaccurate data and withheld information, and

Commerce applied an adverse inference when selecting from facts otherwise

available on the record to determine Meihua's dumping margin.  Final IDM at 11–

16.  Commerce assigned a dumping margin to separate rate companies not

individually investigated (collectively, "Separate Rate Respondents") (including

Deosen and Jianlong) of 77.04%, based on the simple average of the alternative

facts available rate of 154.07% assigned to Meihua and the 0% rate assigned to

Fufeng.  <u>Final Results</u>, 87 Fed. Reg. at 7105.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and

28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting

the final results of an administrative review of a countervailing duty order.  The

Court shall hold unlawful any determination found to be unsupported by

substantial evidence on the record or otherwise not in accordance with the law.  19

U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.      Commerce's Application of Facts Otherwise Available to Meihua

Section 776 of the Tariff Act provides that if "necessary information is not

available on the record" or if a respondent "fails to provide such information by the

deadlines for submission of the information or in the form and manner requested,"

then the agency shall "use the facts otherwise available in reaching" its

determination.  19 U.S.C. § 1677e(a)(1), (a)(2)(B).  If Commerce determines that a

response is deficient, 19 U.S.C. § 1677e(a)(1) permits Commerce to select from

facts otherwise available if necessary information is missing from the record.  19

U.S.C. § 1677e(a)(2) permits Commerce to select from facts otherwise available if

an interested party (A) withholds information, (B) fails to provide such information

by the deadlines for submission, or in the form and manner requested, (C)

significantly impedes a proceeding, or (D) provides such information but the information cannot be verified.  19 U.S.C. § 1677e(a)(2).

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has interpreted 19 U.S.C. § 1677e(a)(1) and (a)(2)(B) to have different purposes.  See Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States, 753 F.3d 1227, 1232 (Fed. Cir. 2014).  Subsection (a) applies "whether or not any party has failed to cooperate fully with the agency in its inquiry."  Id. (citing Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1346 (Fed. Cir. 2011)).  Subsection (b) applies only when the Department makes a separate determination that the respondent failed to cooperate "by not acting to the best of its ability."  Id. (quoting Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381 (Fed. Cir. 2003)).

When determining whether a respondent has complied to the "best of its ability," Commerce "assess[es] whether [a] respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation."  Nippon Steel, 337 F.3d at 1382.  This determination requires both an objective and subjective showing.  Id. at 1382–83.  First, Commerce must determine objectively "that a reasonable and responsible importer would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations."  Id. (citing Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1336 (Fed. Cir. 2002)).  Next,

Commerce must demonstrate subjectively that the respondent's "failure to fully

respond is the result of the respondent's lack of cooperation in either: (a) failing to

keep and maintain all required records, or (b) failing to put forth its maximum

efforts to investigate and obtain the requested information from its records." Id. at

1382–83.  Adverse inferences are not warranted "merely from a failure to

respond," but rather in instances in which the Department reasonably expected that

"more forthcoming responses should have been made." Id. at 1383.  "The

statutory trigger for Commerce's consideration of an adverse inference is simply a

failure to cooperate to the best of respondent's ability, regardless of motivation or

intent." Id.

    Meihua argues that Commerce's use of facts otherwise available should be

remanded because Commerce's determination is not supported by substantial

evidence and is not in accordance with the law.  Pls.' Br. at 19–20.  Meihua

contends that it did not withhold information requested by Commerce, that it

timely submitted all information requested by Commerce, and that its submission

of incorrect information did not call into question the reliability of the information

reported by Meihua. Id.  In the alternative, Meihua asserts that even if

Commerce's determination that the application of an adverse inference to Meihua

was justified, "its decision to apply total [alternative facts available] was not." Id.

at 19.  Meihua contends that it cooperated to the best of its ability and that

Commerce failed to conduct the statutorily required evaluation of circumstances leading to its use of alternative facts available.  <u>Id.</u>

Defendant argues that Commerce's determination that there is a "gap in the record based on Meihua's failure to report accurate information" regarding United States sales is supported by substantial evidence and in accordance with the law because Meihua knowingly reported inaccurate information that was vital to Commerce's calculation of a U.S. price, and thus Commerce's ultimate duty rate calculation.  Def.'s Resp. Br. at 12–13.  Defendant asserts that "by failing to provide Commerce with [necessary information], Meihua withheld information requested by Commerce, failed to provide that information for the deadline established by Commerce, and—by significantly impeding Commerce's proceeding—Meihua's [sic] created a gap in the record that Commerce needed to fill by reliance on facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(2)(A)–(C)."  <u>Id.</u> at 13 (citing Final IDM at 14).

Commerce's Section C Questionnaire requested information about amounts of duties paid: "Field Number 29.0: U.S. Customs Duty . . . Description: If terms of sale included this charge, report the unit amount of any customs duty paid on the merchandise under consideration. . . . Narrative: Describe how you calculated the unit cost of U.S. customs duties and customs fees, and include your worksheets as attachments to the narrative response."  Letter from USDOC to Grunfeld,

Consol. Court No. 22-00069                                    Page 12

Desiderio Pertaining to Meihua Questionnaire; Appendix VIII, Appendix VII,

Appendix X ("Section C Questionnaire") at C-19–C-20, PR 44–47.  Meihua

contends that it provided the information requested by Commerce when Meihua

submitted calculations of the unit amounts of customs duty paid, including the

amounts of Harbor Maintenance Tax, Merchandise Processing Fee, and ordinary

duty due at the time of entry.  Pls.' Br. at 8.  Meihua asserts that it also provided

Section 301 duties paid by Meihua and explained its methodology for reporting the

Section 301 duties as follows:

> [B]ecause in the accounting system of Meihua Hong Kong, there is
> [not] any sub-account to catch these duties (the Section 301 duty, the
> normal duty, ocean freight and ocean insurance expense as well as
> [Merchandise Processing Fee/Harbor Maintenance Tax] expenses are
> deducted from the gross sales revenue to arrive at a net sales revenue).
> In other words, because of the terms of sale, Meihua began with the sale
> price and backed out customs duties, 301 duties, ocean freight and
> insurance, and [Merchandise Processing Fee/Harbor Maintenance Tax]
> to arrive at the net sales price. . . .
>
> Meihua reported the actual amounts paid to [Customs] upon entry of
> the merchandise for regular customs duties, [Harbor Maintenance Tax],
> and [Merchandise Processing Fee]—not any more or less. . . .  Meihua
> had not paid, or been refunded, any amounts; and the amounts it would
> eventually need to pay or that it would be reimbursed were not final.
> There was no other number that Meihua could report.

Id. at 8–9 (citing Response from Craven Trade Law LLC to Sec of Commerce

Pertaining to Meihua Sec C QR ("Meihua's Section C Questionnaire Response") at

C-48, C-31, Exhibit C-5, PR 71–74; Letter from Craven Trade Law LLC to Sec of

Commerce Pertaining to Meihua Rebuttal to Pre-Prelim Cmts, PR 274; Meihua's Admin. Case Br. at 9–13).

Approximately three months prior to filing Meihua's Section C Questionnaire Response, Meihua filed a document with the U.S. Department of Customs and Border Protection ("Customs") containing certain information that arguably differed from the information in Meihua's Section C Questionnaire Response (specific differences included the identity of the consignee provided to Customs as well as information related to Meihua's methodology for reporting to Customs entered values for certain sales). Id. at 5–6, 10. Meihua explained that it "reported to [Customs] all the errors it had found, but stated that it would perfect (or complete) the disclosure in near the future." Id. at 6. Meihua did not initially report the corrected information regarding entered values to Commerce, but in supplemental filings to Commerce, Meihua provided the documents that Meihua had submitted previously to Customs regarding these corrections to information about consignees and reported value for certain sales.

Meihua contends that the information initially provided to Commerce was accurate and answered Commerce's specific question about "duties paid" to Customs. Meihua argues that it accurately "reported the actual amounts paid" to Customs upon entry, and that "the amounts it would eventually need to pay or that it would be reimbursed were not final" due to ongoing Section 301 exclusion

requests.  Id. at 9.  Notably, Meihua asserts that "Commerce provided no indication

that it believed Meihua's submissions were deficient in any way."  Id. at 11.

Meihua contends that it first learned of any purported deficiency when it received

the AFA Memo on July 30, 2021:

> Meihua was flabbergasted. . . . Commerce hadn't seemed to disagree
> that the information was not relevant to the calculation of duties, and
> Commerce certainly hadn't pointed out a deficiency and provided
> Meihua an opportunity to remedy a deficiency.

Id. at 14.

Defendant does not dispute that Commerce failed to provide notice of a

deficiency, instead blaming Meihua for Commerce's lack of knowledge:

> Meihua could have alerted Commerce to the fact that its reported sales
> were under revision, giving Commerce an opportunity to recognize the
> deficiency in Meihua's reporting, potentially issue further supplemental
> questionnaire(s), and adjust its calculations accordingly."

Def.'s Resp. Br. at 14.  Commerce determined that:

> Meihua withheld relevant information about these adjustments and
> failed to disclose certain information concerning the documentation for
> these reported sales.  Meihua was aware that the duties and entered
> values that it reported to Commerce were incorrect at the time it filed
> its Section C Questionnaire Response and should have informed
> Commerce about the inaccuracy of the sales adjustments and other
> relevant information about the sales at issue early in the proceeding.
> Meihua's actions call into question the reliability of its reported sales
> information and prevented Commerce (and interested parties) from
> fully analyzing and commenting on Meihua's sales data and calculating
> an accurate dumping margin.

Final IDM at 11.  Commerce determined that Meihua's dumping margin should be

based on facts otherwise available because:

> (1) Information necessary to calculate an accurate dumping margin for
> Meihua is not available on the record; (2) Meihua did not fully disclose
> information regarding the U.S. sales data that it reported and thus, in
> that sense, it withheld information that had been requested; (3) Meihua
> failed to provide information within the deadlines established, or in the
> form and manner requested by Commerce; and (4) Meihua significantly
> impeded this proceeding.  We also used adverse inferences in selecting
> from the facts otherwise available because Meihua did not act to the
> best of its ability because it withheld information and knowingly failed
> to disclose that certain reported information was inaccurate.

Id. at 11–12.

With respect to Meihua's allegation that Commerce's determination to use

facts otherwise available was not in accordance with the law, Meihua argues that it

provided all of the information that Commerce requested, and that Meihua was not

provided with sufficient notice or an opportunity to remedy any deficiencies in its

filing pursuant to 19 U.S.C. § 1677m(d).  This statutory provision states in relevant

part:

> If the administering authority or the Commission determines that a
> response to a request for information under this subtitle does not
> comply with the request, the administering authority or the Commission
> (as the case may be) shall promptly inform the person submitting the
> response of the nature of the deficiency and shall, to the extent
> practicable, provide that person with an opportunity to remedy or
> explain the deficiency in light of the time limits established for the
> completion of investigations or reviews under this subtitle.  If that
> person submits further information in response to such deficiency and
> either—

(1) the administering authority or the Commission (as the case may be) finds that such response is not satisfactory, or

(2) such response is not submitted within the applicable time limits, then the administering authority or the Commission (as the case may be) may, subject to subsection (e), disregard all or part of the original and subsequent responses.

19 U.S.C. § 1677m(d).

The Court concludes that Commerce failed to fulfill its statutory obligation under 19 U.S.C. § 1677m(d) because Commerce did not "promptly inform the person submitting the response of the nature of the deficiency and . . . to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency." See id. Here, Commerce neither notified Meihua of any deficiencies in its provision of information, nor provided Meihua with an opportunity to correct such deficiencies before Commerce determined that Meihua failed to cooperate to the best of its ability and drew adverse inferences against Meihua. To the extent that Defendant argues that Commerce could not have known about any deficiencies because the information was solely in Meihua's possession, the Court observes that Commerce was aware of potential discrepancies when Meihua provided copies of its prior filings to Customs in Meihua's supplemental responses to Commerce. See Def.'s Resp. Br. at 4–5 (acknowledging the timeline upon which Meihua submitted copies of its prior filings).

Because Commerce failed to satisfy its statutory obligation to provide notice and an opportunity to remedy any deficiency under 19 U.S.C. § 1677m(d), the Court concludes that Commerce has no authority to apply adverse facts and inferences under 19 U.S.C. § 1677e.  See Maverick Tube Corp. v. United States, 857 F.3d 1353, 1360 (Fed. Cir. 2017) (quoting NSK Ltd. v. United States, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007) ("Commerce . . . satisfied its obligations under section 1677m(d) when it issued a supplemental questionnaire specifically pointing out and requesting clarification of [the] deficient responses.") (internal quotation omitted); Hitachi Energy USA Inc. v. United States, 34 F.4th 1375, 1384–85 (Fed. Cir. 2022) ("Commerce's denial of [movant's] request to provide any necessary information was contrary to the statute, which states . . . that Commerce 'shall promptly inform the person submitting the response of the nature of the deficiency and shall . . . provide that person with an opportunity to remedy or explain the deficiency.'").  The Court does not reach the substantive analysis of whether Commerce's determination to use an adverse inference was supported by substantial evidence.  The Court remands Commerce's application of adverse facts available and the application of the highest rate in a prior proceeding to Meihua for further consideration in accordance with this Opinion.

## II.      Exhaustion of Administrative Remedies by Jianlong

Jianlong argues that Commerce's determination to assign Separate Rate

Respondents the simple average of the alternative facts available rate of 154.07%

assigned to Meihua and the 0% rate assigned to Fufeng is not supported by

substantial evidence because the rate of 77.04% assigned to the cooperating

Separate Rate Respondents is not reasonably reflective of the non-investigated

respondents' potential dumping.  Jianlong's Br. at 9–17.

Defendant argues that Jianlong failed to exhaust its administrative remedies

because Jianlong did not file an administrative case brief addressing the issues it

now seeks to argue before the Court.  Def.'s Resp. Br. at 21–22.

Before commencing suit in the U.S. Court of International Trade, an

aggrieved party must exhaust all administrative remedies available to it.  "In any

civil action . . . the Court of International Trade shall, where appropriate, require

the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  The court

"generally takes a 'strict view' of the requirement that parties exhaust their

administrative remedies[.]"  Yangzhou Bestpak Gifts & Crafts Co. v. United

States, 716 F.3d 1370, 1381 (Fed. Cir. 2013).

19 C.F.R. § 351.309(c)(2) requires that, "[t]he case brief must present all

arguments that continue in the submitter's view to be relevant to the . . . final

determination or final results."  19 C.F.R. § 351.309(c)(2).  There are limited

exceptions to the exhaustion requirement.  See Pakfood Pub. Co. v. Unites States, 34 CIT 1122, 1145, 1147, 724 F. Supp. 2d 1327, 1351, 1352 (2010) (listing "futil[ity] for the party to raise its argument at the administrative level" and issues "fully considered by Commerce" as two generally recognized exceptions to the exhaustion doctrine); see also Holmes Prod. Corp. v. United States, 16 CIT 1101, 1104 (1992) ("[E]xhaustion may be excused if the issue was raised by another party, or if it is clear that the agency had an opportunity to consider it.").

The Court concludes that the limited exception to the exhaustion requirement applies here because even though Jianlong did not file an administrative case brief, Jianlong now seeks to raise an identical issue addressed in an administrative case brief filed by Consolidated Plaintiff Deosen, arguing that Commerce's determination did not reasonably reflect the dumping margin assigned to the Separate Rate Respondents.  See Jianlong's Br. at 5–6.  Incorporation by reference to another party's administrative argument is among the exceptions this court has recognized to the exhaustion requirement.  See Holmes Prod. Corp., 16 CIT at 1104.  The Court will allow Jianlong to proceed with its arguments before this Court.

### III.   Commerce's Application of the Separate Rate

Jianlong and Deosen argue that the separate rate of 77.04% assigned to the cooperating Separate Rate Respondents, based on the simple average of the

alternative facts available rate of 154.07% assigned to Meihua and the 0% rate

assigned to Fufeng, is not reasonably reflective of the Separate Rate Respondents'

potential dumping. Deosen's Br. at 5–15; Jianlong's Br. at 9–17. Defendant

argues that the separate rate calculated by Commerce is reasonably reflective of

potential dumping in light of the history of the administrative reviews and because

Commerce assigned non-selected companies a rate equal to the simple average of

the final rates assigned to Meihua and Fufeng pursuant to the relevant statutory

framework. Def.'s Resp. Br. at 22–23 (citing Final IDM at 5; the Uruguay Round

Agreement Act, H.R. Doc. No. 103-316 at 873 (1994), as reprinted in 1994

U.S.C.C.A.N. 4040, 4201). Commerce applied the expected method and

determined that the rate of 77.04%, based on the simple average of the alternative

facts available rate of 154.07% assigned to Meihua and the 0% rate assigned to

Fufeng, reasonably reflected the potential dumping margins. Final IDM at 4–7;

Final Results, 87 Fed. Reg. at 7105.

The Court is remanding Commerce's application of adverse facts against

Meihua due to Commerce's failure to provide notice and an opportunity to cure

any deficiencies under 19 U.S.C. § 1677m(d), and therefore does not reach the

issue of Commerce's calculation of the separate rate. The Court remands

Commerce's Final Results for further consideration or explanation regarding the

applicable rate for the Separate Rate Respondents based on any changes that Commerce may make to Meihua's rate on remand.

### IV. Commerce's Determination Not to Rescind its Review of Deosen

Deosen alleges that, "[o]ne of the Deosen plaintiffs, Deosen Biochemical Ltd., made no shipments during the [period of review] and timely submitted a No Shipment Certification. Only Deosen Biochemical (Ordos) Ltd. exported subject merchandise during the [period of review]." Deosen's Br. at 15. Deosen argues that because Deosen Biochemical Ltd. made no shipments of xanthan gum during the period of review, Commerce's refusal to rescind its review of Deosen Biochemical Ltd. was an abuse of discretion and was inconsistent with Commerce's regulations. Deosen's Br. at 15–16.

Defendant argues that Commerce properly collapsed Deosen Biochemical (Ordos) Ltd. and Deosen Biochemical Ltd. into a single entity. Def.'s Resp. Br. at 26–27 (citing 19 C.F.R. § 351.401(f)). Pursuant to 19 C.F.R. § 351.401(f), Commerce collapsed Deosen Biochemical (Ordos) Ltd. and Deosen Biochemical Ltd. in its original investigation of xanthan gum from China. Memo From USDOC to Office Director Pertaining to Interested Parties Respondent Selection at 2 n.5, PR 39. Commerce continued to treat the individual companies as a collapsed entity in this review. Final IDM at 8.

19 C.F.R. § 351.401(f) governs the treatment of affiliated producers in

antidumping proceedings and provides:

(1) In general.   In an antidumping proceeding under this part, [Commerce] will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and [Commerce] concludes that there is a significant potential for the manipulation of price or production.

(2) Significant potential for manipulation.   In identifying a significant potential for the manipulation of price or production, the factors [Commerce] may consider include:

    (i)  The level of common ownership;

    (ii) The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and

    (iii)   Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

19 C.F.R. § 351.401(f).

19 C.F.R. § 351.213(d) provides in relevant part:

(3) No shipments.  [Commerce] may rescind an administrative review, in whole or only with respect to a particular exporter or producer, if [Commerce] concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise, as the case may be.

19 C.F.R. § 351.213(d)(3).

Commerce's regulations permit Commerce to treat two or more affiliated

producers as a single entity under a "collapsing analysis" when those producers

have production facilities for similar or identical products that would not require substantial retooling of either facility in order to shift manufacturing priorities and Commerce concludes that there is a significant potential for manipulation of price or production. 19 C.F.R. § 351.401(f). In determining whether there is significant potential for manipulation, Commerce analyzes: (1) the level of common ownership, (2) the extent of managerial crossover between the affiliated firms, and (3) whether the affiliated firms' operations are intertwined through information sharing, facilities, employee crossover, and production and pricing decisions. Id. § 351.401(f)(2).

Deosen argues that Commerce failed to conduct a collapsing analysis pursuant to 19 C.F.R. § 351.401(f), improperly rejected Deosen's timely submitted No Shipment Certification, and should have rescinded its review of Deosen Biochemical Ltd. Deosen's Br. at 15–16. Deosen alleges that it offered to submit additional documentation to show Commerce that Deosen Biochemical Ltd. should not have been identified as an exporter. Id. The Court agrees with Deosen that there is no evidence on the record that Commerce conducted a collapsing analysis pursuant to 19 C.F.R. § 351.401(f) for the relevant period of review. The Court observes that apparently Commerce relied on the past collapsing of the two Deosen entities from the previous investigation, without considering whether any factors had changed during the relevant period of review.

The Court concludes that Commerce's failure to conduct a collapsing analysis for the period of review was an abuse of discretion, particularly because Commerce rejected Deosen Biochemical Ltd.'s No Shipment Certification and its offer to submit additional documents demonstrating no shipments of xanthan gum during the period of review.  The Court observes that Commerce's error was further compounded by Commerce's apparent determination that Customs data may have attributed shipments of subject merchandise to Deosen Biochemical Ltd. rather than Deosen Biochemical (Ordos) Ltd. because the two companies were "registered under the same company-specific case number because Commerce has treated the two companies as a single, collapsed entity in prior reviews."  Final IDM at 8.  At the very least, the Court holds that Commerce should perform a collapsing analysis pursuant to 19 C.F.R. § 351.401(f) to reexamine the record evidence and determine whether Deosen Biochemical Ltd. was an exporter with any shipments during the period of review, whether Deosen Biochemical Ltd. should have been collapsed into a single entity with Deosen Biochemical (Ordos) Ltd., and whether Deosen Biochemical Ltd.'s review should have been rescinded.

The Court remands this issue for Commerce to reconsider its determinations with respect to Deosen Biochemical Ltd. and Deosen Biochemical (Ordos) Ltd.

## CONCLUSION

For the foregoing reasons, the Court remands the <u>Final Results</u>.

Accordingly, it is hereby

**ORDERED** that the <u>Final Results</u> are remanded to Commerce to reconsider the application of adverse facts available to Meihua, the calculation of the separate rate, and whether Deosen Biochemical Ltd. and Deosen Biochemical (Ordos) Ltd. should be collapsed into a single entity consistent with this opinion; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1)   Commerce shall file the remand determination on or before June 20, 2023;

(2)   Commerce shall file the administrative record on or before July 5, 2023;

(3)   Comments in opposition to the remand determination shall be filed on or before August 4, 2023;

Consol. Court No. 22-00069                                              Page 26

      (4)     Comments in support of the remand determination shall be filed

on or before September 5, 2023; and

      (5)     The joint appendix shall be filed on or before October 6, 2023.

 /s/ Jennifer Choe-Groves

Jennifer Choe-Groves, Judge

Dated:    April 19, 2023

New York, New York