# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |  |
|---|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED, AND XINJIANG MEIHUA AMINO ACID COL., LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY LTD., | ) ) ) ) | Consol. Court No. 22-00069 |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

## COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND OF CONSOLIDATED PLAINTIFF JIANLONG BIOTECHNOLOGY CO. LTD.

Submitted by:

**Robert G. Gosselink**
**Jonathan M. Freed**
**Kenneth N. Hammer**
**TRADE PACIFIC PLLC**
**700 Pennsylvania Avenue, SE**
**Suite 500**
**Washington, D.C.  20003**
**Tel.: (202) 223-3760**

*Counsel to Consolidated Plaintiff*
*Jianlong Biotechnology Co., Ltd.*

**Dated:  August 11, 2023**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………………i

TABLE OF AUTHORITIES……………………………………………………………………...ii

I.      INTRODUCTION…………………………………………………………………...1

II.     ARGUMENT………………………………………………………………………...1

      A.      Standard of Review………………………………………........................2

      B.      Commerce's Redetermination Should Be Remanded............................................2

III.    CONCLUSION……………………………………………………………………….6

# **TABLE OF AUTHORITIES**

**Judicial Precedent**

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938)........................................................................2

Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927 (Fed. Cir. 1984)................................2

Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States, 716 F.3d 1370 (Fed. Cir. 2013)…………………………………………………………...…………………………………….4

Bosun Tools Co. v. United States, 2022 U.S. App. LEXIS 624 (Ct. Int'l Trade Jan. 22, 2022)…………………………………………………………………………………………………3

Meihua Group International Trading (Hong Kong) Limited v. United States, 633 F. Supp. 3d 1203 (Ct. Int'l Trade 2023).............................................................................................................1

Nakornthai Strip Mill Public Co. v. United States, 587 F. Supp. 2d 1303 (Ct. Int'l Trade 2008)) .2

Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) ............................................................................................................................................2

**Administrative Determination**

Xanthan Gum From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016, 83 Fed. Reg. 6513 (February 14, 2018)…………………………………………………………………………3

**COMMENTS ON FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND
OF CONSOLIDATED PLAINTIFF JIANLONG BIOTECHNOLOGY CO. LTD.**

## I.      INTRODUCTION

On behalf of Consolidated Plaintiff, Jianlong Biotechnology Co., Ltd. ("Jianlong"), we comment on the U.S. Department of Commerce's ("Commerce's") Final Results of Redetermination, June 27, 2023 ("Remand Results"), ECF No. 52-1, which Commerce prepared pursuant to the Opinion and Order issued by this Court remanding the final results of the seventh administrative review of the antidumping duty order of xanthan gum from the People's Republic of China.  See Meihua Group International Trading (Hong Kong) Limited v. United States, 633 F. Supp. 3d 1203 (Ct. Int'l Trade 2023) ("Meihua Group").  Commerce's Remand Results do not change the separate rate assigned to Jianlong, are not supported by substantial evidence and are not in accordance with law, and should be remanded again for the agency to take such further actions as required by the Court.

## II.      ARGUMENT

Jianlong disagrees with Commerce's decision in the Remand Results not to recalculate the separate rate.  In Meihua Group, the Court stated that it was "remanding Commerce's application of adverse facts against Meihua due to Commerce's failure to provide notice and an opportunity to cure any deficiencies," and therefore did "not reach the issue of Commerce's calculation of the separate rate" that was the focus of Jianlong's appeal.  633 F. Supp. 3d at 1213. Nonetheless, the Court remanded "for further consideration or explanation regarding the applicable rate for the Separate Rate Respondents based on any changes that Commerce **may** make to Meihua's rate on remand."  Meihua Group, 633 F. Supp. 3d at 1213 (emphasis added). The Court's "may" instruction contemplated possible, not permissive, changes to Meihua's rate.

1

Consol. Court No. 22-00069
Consolidated Plaintiff Jianlong's Comments on Remand Redetermination

As such, Commerce should have reconsidered the recalculation of Jianlong's separate rate based on any changes that Commerce **might or might not** have made to Meihua's rate.  Commerce claimed, however, that "{b}ecause we have made no changes to Meihua's rate on remand, no change to the separate rate calculated in the underlying review (*i.e.*, 77.04 percent) is warranted." But Commerce's decision not to change Meihua's rate did not relieve Commerce from the obligation of reconsidering the calculation of Jianlong's separate rate, and the Remand Results thus do not comply with the Court's remand order.

## A.   Standard of Review

Commerce's determinations in administrative reviews, including determinations made pursuant to a court-ordered remand, are unlawful if they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations omitted); see also Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984).  "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's order.'"  Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008)).

## B.   Commerce's Redetermination Should be Remanded

At the heart of Defendant's previous defense brief of the rate assigned to the separate rate respondents (including Jianlong) was its claim that "Commerce did not find that the separate rate was not reasonably reflective of potential dumping margins of the separate rate respondents" such that it could depart from the "expected method" of averaging Fufeng's *de minimis* rate with

Meihua's rate derived entirely from an adverse inference.  Defendant Response Brief, at 23.

This argument was based on Defendant's claim that "the rate calculated pursuant to the expected

method is reasonably reflective of the likelihood of potential dumping, as required by the SAA,

as it accounts for prior reviews wherein Commerce applied total adverse factual inferences to

non-cooperative respondents."  Defendant Response Brief, at 9.  This argument was misplaced

because Commerce's justification for reliance on an average approach was inapplicable with

respect to Jianlong.

Specifically, Defendant claimed that Commerce could rely on the history of companies'

dumping margins "to inform its calculation of the separate rate," Defendant Brief, at 25 (citing

Bosun Tools Co. v. United States, 2022 U.S. App. LEXIS 624, *10 (Ct. Int'l Trade Jan. 22,

2022)), and that "Deosen itself received a rate based on a total adverse factual inference" in two

of the six completed reviews of the order covering xanthan gum from China.  Defendant

Response Brief, at 25.  While such rates might be true with respect to Deosen, they are not true

with respect to Jianlong.  The only previous administrative review in which Jianlong received a

dumping margin was the third administrative review in which Commerce assigned Jianlong a

separate rate of 9.30%.  See Xanthan Gum From the People's Republic of China: Final Results

of the Antidumping Duty Administrative Review and Final Determination of No Shipments;

2015-2016, 83 Fed. Reg. 6513 (February 14, 2018).  Thus, Commerce never previously

determined that Jianlong was uncooperative or subject to government control such that an

adverse inference rate or country-wide dumping rate might reflect Jianlong's actual level of

dumping.  Unlike any other respondents, there is no history of Jianlong ever receiving a dumping

margin based on total facts available.  There therefore was no basis for Commerce's rationale

that "evidence of non-cooperation from previous reviews of xanthan gum from China show that

**Consol. Court No. 22-00069**
**Consolidated Plaintiff Jianlong's Comments on Remand Redetermination**

a dumping margin of 77.04 is reasonably reflecting of the potential likelihood of dumping" with

respect to Jianlong.  Defendant Response Brief, at 23.

Although Commerce did not address the separate rate calculation directly in its <u>Remand</u>

<u>Results</u>, Commerce claimed in response to comments by Jianlong that "the separate rate in the

underlying administrative review applies to both Jianlong and Deosen" and "{a}ccordingly,

Commerce must consider the dumping history of all separate rate companies."  <u>Remand Results</u>,

at 28.  This justification fails for two reasons.  First, despite referencing the dumping history of

"all separate rate companies," Commerce never in fact identified, addressed, or considered the

9.30% dumping rate previously assigned ***to Jianlong***.  Thus, Commerce did not do what it said it

did; Commerce did ***not*** consider the dumping history of ***all*** separate rate companies.  Second,

Commerce's approach essentially attributed to Jianlong AFA rates that Commerce previously

assigned to Deosen, thus contravening <u>Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United</u>

<u>States</u>, where the Court held that a rate that results from a simple average of a total AFA rate and

a *de minimis* rate may be unreasonable where data does not support Commerce's determination

that the resulting separate rate is reasonably reflective of the separate rate respondents' dumping

margins.  <u>See</u> 716 F.3d 1370, 1378 (Fed. Cir. 2013).  Under the particular circumstances of this

case, where no data supports the 77.04% rate as a reasonable approximation of Jianlong's

potential dumping rate, Commerce failed to rationally connect the record evidence with

Commerce's final conclusion.

Commerce also erred in the <u>Remand Results</u> where it stated that it only had the previous

margin history of other separate rate companies to consider because "there is a lack of record

evidence regarding Jianlong's actual selling experience in the United States."  <u>Remand Results</u>,

at 28.  Contrary to Commerce's assertion, there is significant evidence on the record of

Consol. Court No. 22-00069
Consolidated Plaintiff Jianlong's Comments on Remand Redetermination

Jianlong's selling activity in the United States.  Importantly, Commerce collected information

from U.S. Customs and Border Protection regarding *all* of Jianlong's period of review U.S. sales.

See Memorandum to the File Re. Automated Commercial System Shipment Query (September

23, 2020), PR 19, CR 1 (containing complete CBP entry information for all entries of Jianlong's

subject merchandise during the period of review).  In addition, Jianlong not only submitted a

separate rate application to Commerce, which provided substantial information and sample

documentation regarding its period of review sales to the United States, but Jianlong also

provided a complete response to Commerce's separate rate application supplemental

questionnaire in which it provided follow-up answers to Commerce's questions regarding its

U.S. sales.  Commerce's claim that the record contained *no* evidence of Jianlong's U.S. sales

activity thus is demonstrably false.

Finally, Commerce claims in the Remand Results that "if Jianlong wanted a rate other

than that established for the separate rate companies, it could have requested voluntary treatment

and supplemented the record with information with which Commerce could calculate a

company-specific separate rate."  Remand Results, at 28.  But the issue on appeal is not whether

Jianlong qualified for an individual company-specific margin, but whether the separate rate

assigned to Jianlong as a separate rate applicant was supported by substantial evidence.  The

Court should disregard Commerce's "blame-the-victim" strategy when it was Commerce that

failed to assign Jianlong a legally permissible separate rate company dumping margin.

As demonstrated in Jianlong's previous briefs to the Court, judicial precedent establishes

that while the use of an average of an AFA rate and zero or *de minimis* rates is appropriate in

some instances, this does not absolve Commerce from ensuring that the separate rate assigned to

Jianlong reasonably reflected Jianlong's potential dumping margin or from rationally connecting

**Consol. Court No. 22-00069**
**Consolidated Plaintiff Jianlong's Comments on Remand Redetermination**

the record evidence with Commerce's final conclusions.  In this review, where the 77.04%

separate rate that Commerce assigned to Jianlong was exceptionally larger than the zero rate

calculated for the lone cooperative mandatory respondent, and where the calculated results of

previous administrative reviews showed far lower levels of dumping, Commerce should have

undertaken a substantially more rigorous examination, especially when no record evidence

suggested that Jianlong had dumped its sales at such a high rate.

**III.     CONCLUSION**

       For the reasons presented above, Commerce's <u>Remand Results</u> should be remanded to

the agency again for further proceedings.

                             Respectfully submitted,

                             <u>/s/ Robert G. Gosselink</u>
                             Robert G. Gosselink
                             Jonathan M. Freed
                             Kenneth N. Hammer

                             TRADE PACIFIC PLLC
                             700 Pennsylvania Avenue, SE, Suite 500
                             Washington, D.C.  20003
                             Tel.: (202) 223-3576
                             *Counsel to Consolidated Plaintiff*
                             *Jianlong Biotechnology Co., Ltd.*

Dated:  August 11, 2023

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED, AND XINJIANG MEIHUA AMINO ACID COL., LTD., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY LTD., | ) ) ) |
| Plaintiff-Intervenors, | ) ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

Consol. Court No. 22-00069

## CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)

The undersigned counsel at Trade Pacific PLLC hereby certifies that the foregoing Comments on Remand Redetermination, dated August 11, 2023, complies with the 10,000 word-count limitation described in part 2(B)(1)(b) of the Court's Chambers Procedures. The memorandum of law contains 1589 words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760

*Counsel to Consolidated Plaintiff*
*Jianlong Biotechnology Co., Ltd.*

Dated: August 11, 2023