UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |  |
|---|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED AND XINJIANG MEIHUA AMINO ACID CO., LTD., | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| and | ) ) ) | |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY, LTD., | ) ) ) ) ) | Consol. Court No. 22-00069 |
| Consolidated Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

## CONSOLIDATED PLAINTIFF DEOSEN'S COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

Chunlian (Lian) Yang
Lucas Queiroz Pires

ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel to Deosen*

Dated: August 11, 2023

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT....................................................................................................................... 1

    A.    Commerce Failed to Comply with the Court's Order to Conduct an Appropriate Collapsing Analysis.................................................................................................................. 2

    B.    Commerce Failed to Comply with the Court's Order to Determine Whether Deosen Biochemical Ltd. Was an Exporter with any Shipments During the Period of Review. ............ 4

    C.    Commerce Failed to Comply with the Court's Order to Recalculate the Separate Rate . 6

III. CONCLUSION ................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*China First Pencil Co. Ltd. v. United States*,
 427 F.Supp.2d. 1236 (CIT 2006) ..................................................................................4

REGULATIONS

19 CFR § 351.401(f) .............................................................................................1, 2, 3, 6

19 CFR § 351.213(d) ......................................................................................................5

PUBLICATIONS

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
 85 FR 54,983 (Sept. 3, 2020) ........................................................................................3

*Xanthan Gum From the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review*, Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2021-2022, 88 Fed. Reg. 51,286 (Aug. 3, 2023) ................................................................7

*Certain Quartz Surface Products From India: Final Results of Antidumping Duty Administrative Review*, 2019– 2021, 88 Fed. Reg. 1,188 (Jan. 9, 2023) ...................7

I. **INTRODUCTION**

Consolidated Plaintiff, Deosen Biochemical (Ordos) Ltd. and Deosen Biochemical Ltd. (collectively "Deosen"), hereby comments on the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand. ECF No. 52 ("Remand Results"). Commerce issued the Remand Results pursuant to the remand order of the U.S. Court of International Trade ("the Court").[1] ECF No. 49 ("Remand Order"). In the Remand Results, Commerce found that (1) Commerce's application of AFA to mandatory respondent Meihua was appropriate; (2) because Deosen remains a single entity, Commerce's decision not to rescind its review of Deosen Biochemical Ltd. was proper; and (3) consequently, Commerce need not recalculate the separate rate. Remand Results at 29.

Deosen opposes the Remand Results because Commerce failed to follow the Court's Remand Order and to adequately justify its unchanged decision with respect to Deosen. Specifically, Commerce did not comply with the Court's explicit instructions that it should (1) perform a collapsing analysis pursuant to 19 CFR § 351.401(f); (2) determine whether Deosen Biochemical Ltd. was an exporter with no shipments during the period of review ("POR"), and accordingly, whether the review of Deosen Biochemical Ltd. should have been rescinded; and (3) recalculate the separate rate.

II. **ARGUMENT**

Commerce failed to comply with the Court's Order in the Remand Results with respect to Deosen. Deosen agrees with the Court's earlier conclusion that Commerce's failure to conduct a

---

[1] *See* Meihua Group International (Hong Kong) v. United States, Consol. Court No. 22-00069, Slip Op. 23-53 (CIT April 19, 2023).

1

collapsing analysis for the two Deosen entities for the POR was an abuse of discretion, particularly because Commerce rejected Deosen Biochemical Ltd.'s No Shipment Certification and its offer to submit additional documents demonstrating no shipments of subject merchandise during the POR. Remand Order at 24. The Court ordered Commerce to perform a collapsing analysis pursuant to 19 CFR § 351.401(f) and reconsider its determination not to rescind the review with respect to Deosen Biochemical Ltd. *Id.* at 24-25.

Maintaining its initial decision with respect to Meihua's AFA rate, Commerce declined to recalculate the separate rate for Deosen on remand. As Deosen elaborated in its case brief, this rate is not reasonably reflective of Deosen's potential dumping margin, and the Court should order Commerce to recalculate a separate rate that is consistent with the law.

### A. Commerce Failed to Comply with the Court's Order to Conduct an Appropriate Collapsing Analysis.

The Court ruled that Commerce at the very least should have performed a collapsing analysis pursuant to 19 CFR § 351.401(f)[2] to determine whether Deosen Biochemical Ltd. should have been collapsed into a single entity with Deosen Biochemical (Ordos) Ltd.

---

[2] *19 CFR § 351.401(f):* **Treatment of affiliated producers in antidumping proceedings —**
*(1) In general. In an antidumping proceeding under this part, the Secretary will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and the Secretary concludes that there is a significant potential for the manipulation of price or production.*
*(2) Significant potential for manipulation. In identifying a significant potential for the manipulation of price or production, the factors the Secretary may consider include:*
  *(i) The level of common ownership;*
  *(ii) The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and*
  *(iii) Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.*

In the Remand Results, Commerce insisted it had no obligation to conduct a collapsing analysis for the POR, stating that:

> Absent record evidence and argument, Commerce was under no statutory or regulatory obligation to revisit its collapsing determination. And most significantly, given these facts, there is no evidence on the record of the underlying proceeding to allow for Commerce to conduct its analysis anew.

Remand Results at 15-16.

Instead, Commerce simply relied on a collapsing analysis it conducted in 2019 in the Fifth Administrative Review (POR 7/1/2017 – 6/30/2018) for the purposes of the remand, "under protest." *Id.* at 14. But this approach fails to address the key point of the Court's Order to conduct a collapsing analysis under 19 CFR § 351.401(f) for the relevant POR (7/1/2019 – 6/30/2020). Specifically, the Court noted that "Commerce relied on the past collapsing of the two Deosen entities from the previous investigation, without considering whether any factors had changed during the relevant period of review." Remand Order at 23. Disregarding the Court's instruction, Commerce continued to rely on a collapsing analysis from several years ago and incorrectly claimed it is consistent with 19 CFR § 351.401(f), which requires examination of various factors in the relevant POR.

In the Remand Results, Commerce continued to justify its decision of not revising the prior collapsing determination based on a paragraph from the Initiation Notice. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 85 FR 54,983 (Int'l Trade Adm. September 3, 2020) ("Initiation Notice"). *See also* Remand Results at 15. Commerce raised this same argument earlier, and the Court was unconvinced. As Deosen emphasized to the Court, the notice concerning collapsed entities clearly pertains to respondent selection only, not broadly for the purposes of the review or whether Commerce should rescind the review of a company without shipment. ECF 40 ("Deosen's Reply Brief"). Contrary to Commerce's claim, it did not

3

give notice to Deosen that the two Deosen entities would remain collapsed for the purposes of this review.

Commerce's reliance on *China First Pencil Co. Ltd. v. United States* to maintain its position that Commerce need not have revisited their collapsing determination is misplaced. In that case, the Court found that plaintiffs failed to exhaust administrative remedies and that they should have challenged Commerce's collapsing decision during the administrative comment period following publication of the preliminary results. *China First Pencil Co. Ltd. v. United States,* 427 F.Supp.2d. 1236, 1239-41 (CIT 2006). This case presents different facts and issues. In its Preliminary Results of the underlying review, Commerce specifically addressed Fufeng and Meihua's status as collapsed entities but did not state that it would continue to consider Deosen Biochemical Ltd. and Deosen Biochemical (Ordos) Ltd. as collapsed entities. Preliminary Decision Memo, P.R. 278.[3] More importantly, Deosen timely challenged Commerce's preliminary decision of continuing to include Deosen Biochemical Ltd. in the review following Commerce's Preliminary Results, and offered to provide additional information on Deosen Biochemical Ltd., which Commerce did not entertain. Deosen's Case Brief, P.R. 293 at 10. *See also* Deosen's No Shipment Certification, P.R. 30, and ECF 29 ("Deosen's Motion for Summary Judgment").

    **B.**    **Commerce Failed to Comply with the Court's Order to Determine Whether Deosen Biochemical Ltd. Was an Exporter with any Shipments During the Period of Review.**

---

[3] Citations to the administrative record are to the public record document number ("P.R.") followed by the page or exhibit number based on the May 19, 2022, administrative index list filed with this court. See ECF No. 23.

The Court specifically ordered Commerce to determine whether Deosen Biochemical Ltd. was an exporter with any shipments during the POR, and whether Deosen Biochemical Ltd.'s review should have been rescinded. Remand Order at 24. However, in the Remand Results, Commerce simply stated:

> Consistent with the *Remand Order,* we have reconsidered Commerce's decision: (1) to collapse Deosen Ordos with Deosen Biochemical; and (2) not to rescind the review of Deosen Biochemical. As detailed below, given that Deosen Ordos and Deosen Biochemical comprise the Deosen single entity, it would be inappropriate to rescind the review of Deosen Biochemical.
>
> Remand Results at 14.

In other words, Commerce's redetermination disregards the Court's instruction entirely. This is concerning considering that, as the Court noted, Commerce rejected Deosen Biochemical Ltd.'s No Shipment Certification and its offer to submit additional documents demonstrating no shipments of xanthan gum during the POR. Remand Order at 24. The Court pointed out that:

> The Court observes that Commerce's error was further compounded by Commerce's apparent determination that Customs data may have attributed shipments of subject merchandise to Deosen Biochemical Ltd. rather than Deosen Biochemical (Ordos) Ltd. because the two companies were "registered under the same company-specific case number because Commerce has treated the two companies as a single, collapsed entity in prior reviews." Final IDM at 8.
>
> *Id.*

Additionally, Commerce failed to justify why it can ignore its regulations and practice under which Commerce rescinds review when an exporter had no shipments during the POR. 19 CFR § 351.213(d).[4] This is particularly troublesome because the collapsing analysis (Commerce's

---

[4] *19 CFR § 351.213(d) Rescission of administrative review —*
*(...)*

5

basis not to rescind the review of Deosen Biochemical Ltd.) focuses on companies as producers (based on the plain language of the regulations, 19 CFR § 351.401(f)), whereas in administrative reviews, Commerce's focus is on determining the dumping margins of exporters.[5]

### C. Commerce Failed to Comply with the Court's Order to Recalculate the Separate Rate.

Commerce declined to recalculate the separate rate of 77.04 percent because it maintained Meihua's AFA rate on remand. Regardless of its decision with respect to Meihua, the law requires Commerce to assign a separate rate that is reasonably reflective of respondents' potential dumping margin. The 77.04 percent rate is not reasonable with respect to Deosen. The Remand Results do not comport with the law and must be rejected.

The 77.04 percent is not reasonably reflective of Deosen's potential dumping margin because (1) Deosen and Fufeng are similarly situated regarding factors of production, independent of government control, and fully cooperative with Commerce's review; (2) the record showed that Deosen exported limited quantities of subject merchandise to the United States during the POR and was a relatively small exporter in comparison to the mandatory respondents; thus it had no

---

*(3) No shipments. The Secretary may rescind an administrative review, in whole or only with respect to a particular exporter or producer, if the Secretary concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise, as the case may be.*
*(4) Notice of rescission. If the Secretary rescinds an administrative review (in whole or in part), the Secretary will publish in the Federal Register notice of "Rescission of Antidumping (Countervailing Duty) Administrative Review" or, if appropriate, "Partial Rescission of Antidumping (Countervailing Duty) Administrative Review."*
[5] *See* the People's Republic of China Separate Rate Application at 2 posted on the International Trade Administration's available at: https://enforcement.trade.gov/nme/sep-rate-files/app-20190221/prc-sr-app-022119.pdf ("In determining whether companies should receive separate rates, Commerce focuses its attention on the exporter rather than the producer. See Notice of Final Determination of Sales at Less Than Fair Value: Manganese Metal from the People's Republic of China, 60 FR 56,045 (November 6, 1995). Consequently, in this proceeding, Commerce will limit its consideration of separate-rate applications to firms that exported the merchandise to the United States").

incentive to sell its products at lower prices than before or its competitors; and (3) Commerce should not penalize Deosen for Commerce's own decision to limit the individual examination to only two respondents. Deosen's Motion for Summary Judgment at 8-9.

Further, the contested separate rate is not reasonable in view of the history of this proceeding and with Commerce's practice in other proceedings. *Id.* at 10-11 (showing that in the 3rd review, concluded in 2018, Commerce individually examined Deosen and assigned a 9.3 percent margin to Deosen; in the subsequent three consecutive reviews, including in the 5th review in which Deosen was individually examined, Commerce found a zero margin for **all** respondents). *Id*. at 10-12. On that note, in the ongoing 9th review at Commerce, Deosen received a preliminary separate rate of 4.76%. *Xanthan Gum From the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review*, Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2021-2022, 88 Fed. Reg. 51,286 (Aug. 3, 2023). *See also Certain Quartz Surface Products From India: Final Results of Antidumping Duty Administrative Review*; 2019– 2021, 88 Fed. Reg. 1,188 (Jan. 9, 2023) ("Final Results"), incorporating Issues and Decision Memorandum for the Final Results of the 2019-2021 Antidumping Duty Administrative Review of Certain Quartz Surface Products from India (December 30, 2022) at 54 (finding that the margin assigned to the non-selected companies based on a simple average of the zero margin of one mandatory respondent and the AFA rate of another respondent at the Preliminary Results were not reasonably reflective as contemplated by the SAA, based on a review of "the history of rates" in the immediately preceding investigation).

Commerce also failed to adopt other reasonable methods proposed by Deosen, such as using the rate calculated for Fufeng as the basis for determining Deosen's separate rate and excluding the total AFA rate from the calculation, or a rate not higher than 9.3 percent, which was

the rate individually calculated for Deosen in the third review.  Deosen's Motion for Summary Judgment at 13.

## III. CONCLUSION

Thus, for these reasons, we respectfully request that the Court remand the case to Commerce for further reconsideration of separate rate determination with respect to Deosen.

Respectfully submitted,

/*s/ Chunlian (Lian) Yang*
Chunlian (Lian) Yang
Lucas Queiroz Pires
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com
*Counsel to Deosen*

Dated: August 11, 2023

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 2,192 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Respectfully submitted,

/*s/ Lucas Queiroz Pires*
Chunlian (Lian) Yang
Lucas Queiroz Pires
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel to Deosen*

Dated: August 11, 2023