UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED and XINJIANG MEIHUA AMINO ACID CO., LTD.,<br><br>Plaintiffs,<br><br>And<br><br>DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., and JIANLONG BIOTECHNOLOGY COMPANY, LTD.,<br><br>Consolidated Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Consol. Ct. No. 22-00069<br>**PUBLIC VERSION** |

**COMMENTS OF
MEIHUA GROUP INTERNATIONAL TRADING (HONG KONG) LIMITED
AND XINJIANG MEIHUA AMINO ACID CO., LTD.,
ON REMAND REDETERMINATION**

                                                    Law Offices of David L. Simon, PLLC
                                                    1025 Connecticut Ave., N.W., Ste. 1000
                                                    Washington, DC 20036
                                                    Tel.: 202.642.4850
                                                    Email: MarkLehnardt@DLSimon.com

Date: August 11, 2022                     *Counsel to Meihua Group International Trading
                                                    (Hong Kong) Limited and Xinjiang Meihua Amino
                                                    Acid Co., Ltd.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................ 1

    I.   Commerce Ignored This Court's Remand Order ....................................................... 2

    II.  Commerce Reargues The Same Arguments This Court Already
        Rejected ....................................................................................................... 5

    III. Commerce Relies Upon Inapposite Case Law .......................................................... 9

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Deacero S.A.P.I. De C.V. v United States*, 996 F.3d 1283 (Fed. Cir. 2021) ................................. 9

*Meihua Group International Trading (Hong Kong) Limited v. United States*, Slip Op. 23-53 (Ct. Int'l Trade April 19, 2023) ....................................................................................... passim

*Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373 (Fed. Cir. 2016) ...................... 9

**Statutes**

19 U.S.C. § 1677e ............................................................................................................... 2, 3

19 U.S.C. § 1677m(d) ..................................................................................................... 2, 3, 11

**Administrative Determinations**

*Steel Concrete Reinforcing Bar From Mexico: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 37,849 (Dep't of Commerce June 9, 2023) ........................ 4

*Xanthan Gum From the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2019–2020*, 86 Fed. Reg. 42,781 (Dep't of Commerce Aug. 5, 2021) ........................................................................................ 7

Plaintiffs Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd. ("Meihua"), by and through their undersigned counsel, hereby submit these comments on the remand redetermination ("*Redetermination*") submitted by the U.S. Department of Commerce ("Commerce"), pursuant to this Court's remand opinion, *Meihua Group International Trading (Hong Kong) Limited v. United States*, Slip Op. 23-53 (Ct. Int'l Trade April 19, 2023).

## ARGUMENT

This Court's opinion rejected, as a matter of law, Commerce's ability to apply adverse facts available ("AFA"), pursuant to 19 U.S.C. § 1677e(b), to Meihua under the facts of this case. *Meihua*, Slip Op. 23-53 at 16-17. The Court then remanded to Commerce for "further consideration in accordance with this Opinion." *Id.* at 17. Commerce ignored this Court's remand order, however, stating, "Commerce continues to find that its application of AFA to Meihua is appropriate." ECF 52, *Redetermination* at 18. But Commerce in the *Redetermination* merely reargues the same arguments that this Court rejected. Commerce contests the scope of this Court's remand order; argues it has no need to provide Meihua with notice of any deficiencies or an opportunity to remedy or explain any such deficiencies despite this Court's conclusion to the contrary; and relies upon inapposite case law that, in fact, supports this Court's earlier opinion. Accordingly, this Court should reiterate its conclusion that the record of this review does not support the application of AFA to Meihua and remand to Commerce with instructions for Commerce to calculate Meihua's margin using information available on the record.

**I.       Commerce Ignored This Court's Remand Order**

This Court's remand opinion concluded, as a matter of law, that the record of this review does not support imposing AFA on Meihua. Thus, the Court specifically held that Commerce is not authorized under the facts of this review to impose AFA. Commerce claims that this Court's remand had "no instruction precluding Commerce from assigning an AFA rate to Meihua." On the same facts, however, Commerce cannot reach the same decision and still claim to follow this Court's remand order.

This Court found that the administrative record does not support imposing AFA on Meihua because Commerce failed to complete the statutory prerequisites of promptly informing Meihua of perceived deficiencies in Meihua's responses and providing Meihua an opportunity to explain or remedy any such deficiency:

> The Court concludes that Commerce failed to fulfill its statutory obligation under 19 U.S.C. § 1677m(d) because Commerce did not "promptly inform the person submitting the response of the nature of the deficiency and . . . to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency." *See id*. Here, Commerce neither notified Meihua of any deficiencies in its provision of information, nor provided Meihua with an opportunity to correct such deficiencies before Commerce determined that Meihua failed to cooperate to the best of its ability and drew adverse inferences against Meihua. To the extent that Defendant argues that Commerce could not have known about any deficiencies because the information was solely in Meihua's possession, the Court observes that Commerce was aware of potential discrepancies when Meihua provided copies of its prior filings to Customs in Meihua's supplemental responses to Commerce. *See* Def.'s Resp. Br. at 4–5 (acknowledging the timeline upon which Meihua submitted copies of its prior filings).
>
> Because Commerce failed to satisfy its statutory obligation to provide notice and an opportunity to remedy any deficiency under 19 U.S.C. § 1677m(d), the Court concludes that Commerce has no authority to apply adverse facts and inferences under 19 U.S.C. § 1677e.

*Meihua*, Slip Op. 23-53 at 16-17; *see also, id.*, at 10-16 (summarizing the arguments of the parties and rejecting Commerce's arguments). Commerce incorrectly argues in the *Redetermination* that the Court's remand order that this Court's remand order "contains no instruction precluding Commerce from assigning an AFA rate to Meihua." ECF 52, *Redetermination* at 18. Commerce further claims in the *Redetermination* that the remand order from the Court was "to reconsider its: (1) application of adverse facts available (AFA) to Meihua." *Id.,* at 1. While Commerce's restatement of the remand order in the *Redetermination* tracks part of the Conclusion section of the Court's opinion, the *Redetermination* omits the key phrase: "consistent with this opinion," which is elsewhere stated as "in accordance with this opinion." *Meihua*, Slip Op. 23-53 at 17, 25.

The Court plainly stated, however, the legal conclusion it reached under the facts of this case: "the Court concludes that Commerce has no authority to apply adverse facts and inferences under 19 U.S.C. § 1677e." *Id.* at 17. This Court concluded that Commerce was required by statute, but failed, to provide Meihua with notice of deficiencies and an opportunity to remand any such deficiencies. *Id.* at 16 ("The Court concludes that Commerce failed to fulfill its statutory obligation under 19 U.S.C. § 1677m(d) because Commerce did not "promptly inform the person submitting the response of the nature of the deficiency and . . . to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency.""). Thus, the Court remanded not for a new justification for applying AFA, but for reconsideration of its decision in light of the Court's ruling that Commerce has no authority to apply AFA: "The Court remands Commerce's application of adverse facts available and the application of the highest rate in a prior proceeding to Meihua for further consideration *in accordance with this Opinion*." *Id.* (emphasis added). That is, Commerce was ordered to reconsider the final results

with the backdrop of "no authority to apply adverse facts and inferences under 19 U.S.C. § 1677e." *Id.*, at 17.

Court further ruled that Commerce could not point to any delay by Meihua as a reason not follow the commands of section 1677m(d): "Commerce was aware of potential discrepancies when Meihua provided copies of its prior filings to Customs in Meihua's supplemental responses to Commerce." *Id.* In fact, two months before the preliminary determination, Commerce had received complete information from Meihua which Commerce later claimed was deficient, and Commerce had sufficient time to provide notice and an opportunity to Meihua for further explanation or for remedying any deficiency. *Id.*

Even had Commerce not received the information until closer to the preliminary determination, Commerce is not constrained by the deadline for the preliminary determination in seeking clarification by providing an opportunity to remedy perceived deficiencies. Commerce has completed investigation and analysis in post-preliminary results memoranda in other proceedings, and there was no bar to Commerce doing the same in this review. *See, e.g., Steel Concrete Reinforcing Bar From Mexico: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 37,849 (Dep't of Commerce June 9, 2023), *and accompanying* Dec. Mem. at 1 n.5 (noting post-preliminary supplemental questionnaire); *Certain Lined Paper Products From India: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2021*, 88 Fed. Reg. 21,971 (Dep't of Commerce April 12, 2203), *and accompanying* Dec. Mem. at 7 (same); *Certain Softwood Lumber Products From Canada: Final Affirmative Countervailing Duty Determination, and Final Negative Determination of Critical Circumstances*, 82 Fed. Reg. 51,814 (Dep't of Commerce Nov. 8,

2017), *and accompanying* Dec. Mem. at 314-316, 318 (listing several post-preliminary supplemental questionnaires).

Moreover, Commerce took no action on remand to provide Meihua with an opportunity to explain or remedy any perceived deficiencies. To the extent Commerce believed there was any deficiency in the information provided by Meihua or that the record was incomplete in any way, Commerce was required – during the remand proceeding – to provide Meihua notice of what Commerce believed to be deficient, and to provide Meihua an opportunity to remedy that deficiency on remand. *See Meihua*, Slip Op. 23-53 at 16 (noting Commerce's awareness of potential deficiencies and discrepancies). Commerce did not seek additional information from Meihua during the remand proceeding, thus confirming that the administrative record is sufficient for purposes of calculating an AD margin for Meihua and waiving any claim Commerce could have asserted otherwise.

Thus, the *Redetermination* simply disregards the Court's remand order in favor of what Commerce wishes the outcome would have been. This Court should remand this case with instructions for Commerce to calculate Meihua's dumping margin given that Commerce has, by its inaction, conceded and waived argument challenging the sufficiency of the record to calculate an accurate dumping margin.

## II. Commerce Reargues The Same Arguments This Court Already Rejected

Rather than calculate an AD margin for Meihua, Commerce followed the old refrain, "second verse, same as the first." The discussion in the redetermination merely rehashes the same rationale found in the decision memorandum accompanying the final results and briefing before the Court, all of which the Court both acknowledged and rejected. *Meihua*, Slip Op. 23-53 at 10-17. Meihua addressed and rebutted these arguments in its opening and reply briefs, an

incorporates those arguments by reference here. *See* ECF 30/31, Meihua Opening Br.; ECF 41/42, Meihua Reply Br. Meihua addresses some of these rehashed arguments below.

Commerce attempts to excuse itself from the need to provide notice of deficiencies and an opportunity to explain or remedy by arguing that "it is unclear how Commerce could have investigated the nature of deficiencies in Meihua's reporting when such deficiencies were only known to the company." EDF 52, *Redetermination* at 21. But this Court already rejected this precise line of argument that Commerce rehashes in the *Redetermination*. In its earlier opinion, this Court held that "{t}o the extent that Defendant argues that Commerce could not have known about any deficiencies because the information was solely in Meihua's possession, the Court observes that Commerce was aware of potential discrepancies when Meihua provided copies of its prior filings to Customs in Meihua's supplemental responses to Commerce." *Meihua*, Slip Op. 23-53 at 16. Commerce fails to explain why it ignored this Court's ruling on this specific line of argument.

Citing a page from Meihua's case brief entitled, "Meihua's Reporting Was Accurate," and stating, "there is no question that the data reported by Meihua was correct," Commerce wrongly claims that "Meihua concedes that it did not possess accurate U.S. duty information during the POR." *Redetermination*, at 7 (*citing* Meihua Case Br. at i, ii, and 9). Commerce had raised this argument previously. ECF 36/37, Def.Br. at 12-16. As this Court ruled previously, however, this argument fails because Commerce did not follow statutorily-mandated procedures: "Commerce neither notified Meihua of any deficiencies in its provision of information, nor provided Meihua with an opportunity to correct such deficiencies before Commerce determined that Meihua failed to cooperate to the best of its ability and drew adverse inferences against Meihua." *Meihua*, Slip Op. 23-53 at 16.

6

Commerce also reaches beyond the administrative record, incorrectly attempting to justify ignoring this Court's remand order by claiming that Meihua was "reluctan{t} to cooperate from the very beginning of the segment of the proceeding, through the impending deadline for the fully extended preliminary results."  ECF 52, *Redetermination*, at 8; *see also*, *id.*, at 13.  This claim is false.  Meihua provided accurate, complete, and timely responses to all of Commerce's requests for information, fully cooperating throughout this review as it had in three previous reviews, even when Meihua believed Commerce's requests were improper.  *See* ECF 52/53, *Redetermination*, at 7-8; *see also Xanthan Gum From the People's Republic of China: Final Results of 2013 Antidumping Duty New Shipper Review*,  80 Fed. Reg. 29,615 (Dep't of Commerce, May 22, 2015) (calculating a 0.00% margin); *Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and  Partial Discontinuation of Antidumping Duty Administrative Review; 2016–2017*, 83 Fed. Reg. 65,143 (Dep't of Commerce Dec. 19, 2018) ("*16-17 Review*") (calculating a 0.00% margin); *Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2018-2019*, 86 Fed. Reg. 16,189 (Dep't of Commerce, Mar. 26, 2021) ("*18-19 Review*") (calculating a 0.00% margin).

Commerce fails to point to any specific request Commerce made for information that Meihua failed to answer with complete and accurate information.  For example, when Commerce asked for "a copy of any **[**

**]** entered in the United States during the POR," Meihua responded timely stating, "Meihua is supplying this **[**                                                           **]**."  P.R.230/C.R.130, *Meihua 2nd Sec.C-D SQR*, at 10.  There is no reluctance in timely submission of information in response to Commerce's requests for information.  And no requirement that respondents volunteer

information Commerce has not asked for.  Further, before Commerce articulates a specific request for information, Meihua is not required to read Commerce's mind and provide information that has not been requested.  Commerce "is only entitled to receive what it actually requests." *See JSW Steel Ltd. v. United States*, 315 F. Supp. 3d 1379, 1383 (Ct. Int'l Trade 2018). (*citing Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565, 1572-75 (Fed. Cir. 1990) ("a submitter need only provide complete answers to the questions presented in an information request").  At no point did Meihua exhibit any reluctance because it timely provided complete and accurate responses to the precise requests for information issued by Commerce.

Commerce contradicts itself when it claims that Meihua did not "justify or rectify its actions, when given the opportunity to do so," but conceded that Meihua did provide information in response to Commerce's follow-up specific requests for information "in its June 4, 2021, supplemental questionnaire response," two months before the preliminary determination. *Redetermination* at 8; *see Xanthan Gum From the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2019–2020*, 86 Fed. Reg. 42,781, 42,782 (Dep't of Commerce Aug. 5, 2021) ("*Prelim. Results*").  Two full months before Commerce published the *preliminary* results in the Federal Register, Meihua provided full information, in an 802-page filing that included the 130-page **[**

**]** with a Microsoft Excel spreadsheet with the complete **[**

**]**.  P.R.230/C.R.130, *Meihua 2nd Sec.C-D SQR*, at 10, Ex. SC2-5; C.R.143 (MS Excel spreadsheet).

Commerce repeats the incorrect claim that "Meihua knew at the time of its initial questionnaire response that its reported U.S. duties were incorrectly reported to Commerce."

*Redetermination*, at 8. This claim inaccurately reflects record evidence. Commerce requested that Meihua report what it paid in U.S. duties, and Meihua reported exactly that. While Meihua had [

], and – most importantly – they did not reflect amounts "paid" to CBP. *See Meihua Questionnaire*, PR44 at C-19 to -20. Commerce recognized that Meihua could not provide any other data, because "it {was} unclear whether the [                                                                                                                                  ] that Meihua reported in the [                    ] are accurate, complete, and finalized." ECF 30/31, Meihua Br. at 12 (*citing AFA Memo*, CR175/PR285, at 5).

Commerce's arguments are further contradicted by this acknowledgment. Commerce asked for amounts "paid" to Customs, and Commerce recognizes that other amounts [

] were not final. ECF 52, *Redetermination* at 7. Meihua provided Commerce with what it asked for: amounts that were "paid" to Customs. Thus, Commerce presents only false accusations that Meihua knew its initial reporting was inaccurate, that Meihua misrepresented that payment information, or that Meihua withheld accurate information.

Meihua provide complete and accurate information to Commerce's precise requests for information. To the extent Commerce believed the information was deficient, Commerce was statutorily required to notify Meihua of deficiencies and provide an opportunity to remedy or explain. Commerce did not provide the notice or opportunity, and thus – as this Court ruled – cannot resort to AFA.

### III. Commerce Relies Upon Inapposite Case Law

With Commerce's rehashed arguments, described above, Commerce also repeats legal arguments it raised in its response brief based on inapposite case law, and Commerce adds some

discussion of other inapposite case law that Commerce could have raised, but did not raise in its initial briefing before this Court. Neither the reargued case nor the new inapposite case advance Commerce's cause.

First, Commerce reargues for the application of *Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373 (Fed. Cir. 2016), necessarily implying that Meihua committed fraud like Papierfabrik had, and claiming that Meihua did not rebut the application of *Papierfabrik* here. But Commerce ignores the briefing before this Court and does not itself make any finding of fraud. ECF 52, *Redetermination* at 9-11, 21. Commerce argued that *Papierfabrik* applied to justify its refusal to follow the statutory requirement to provide notice of perceived deficiencies and an opportunity to remedy any such deficiencies. ECF 36/37, Def.Br. at 15-16. Meihua addressed Commerce's arguments head on, pointing out that *Papierfabrik* is inapposite because it involved pre-meditated fraud, whereas there was no fraud practiced on Commerce here. ECF 30/31, Meihua Reply Br. at 7-8. Meihua provided complete and accurate responses to the precise information Commerce requested. To the extent Commerce believed otherwise, it had a statutory duty to apprise Miehua and provide an opportunity for Meihua to remedy any such deficiency. *Meihua*, Slip Op. 23-53 at 16 (*citing* 19 U.S.C. § 1677m(d)).

Second, Commerce argues that *Deacero S.A.P.I. De C.V. v United States*, 996 F.3d 1283 (Fed. Cir. 2021) justifies its decision not to follow the statutory command of 19 U.S.C. § 1677m(d). ECF 52, *Redetermination* at 11-12, 18-20. *Deacero*, however, is inapposite because it stands for the principle that Commerce can decline to accept a respondents alleged corrective information after Commerce provides notice of deficiencies and an opportunity to explain or remedy the deficiencies, and when the respondent fails to provide sufficient justification for the

need for that corrective information. Commerce failed to provide that notice and opportunity, thus *Deacero* does not support Commerce's action here.

In *Deacero*, Deacero, which had been found circumventing the order, added unsolicited information in a supplemental questionnaire response, describing the unsolicited information as "minor corrections to {its} sales and cost databases." *Deacero*, 996 F.3d at 1289-90. These "minor corrections" made significant changes to the vast majority of Deacero's US sales databases without explanation. *Id.*, 996 F.3d at 1290. The petitioner there asked Commerce to issue another supplemental questionnaire to clarify the response, despite the looming deadline for the preliminary results. *Id.*, 996 F.3d at 1290-91. Commerce agreed but issued a post-preliminary supplemental questionnaire – that is, after the preliminary results issued – for Deacero to explain the changes. *Id.*, 996 F.3d at 1291.

Deacero's explanation in its supplemental questionnaire response contradicted information it had provided in its initial questionnaire response. *Id.*, 996 F.3d at 1291. In the initial questionnaire response, Deacero had certified that its costs were based upon *actual costs*, while in the supplemental questionnaire Deacero explained that the unsolicited changes were necessary because it had prepared its initial questionnaire response on the basis of *planned* production, *not actual* production. *Id.*, 996 F.3d at 1291. Commerce found that the contradicting explanation was connected to significant and disproportional changes to costs submitted without sufficient explanation, and that it was just learning – after the preliminary results – that Deacero had misrepresented the basis for its reporting in the initial questionnaire response. *Id.*, 996 F.3d at 1291-92.

In contrast to the circumventer's misleading, misrepresenting, and contradicting explanations in *Deacero*, here, Meihua provided complete and accurate responses to

11

Commerce's precise requests for information. The court in *Deacero* affirmed Commerce's decision not to accept the unsolicited corrective information Deacero attempted to sneak onto the record spcifically because "Deacero failed to timely notify Commerce of the nature and import of those corrections, and failed to adequately explain the corrections when given the opportunity to do so." *Id.*, 996 F.3d at 1298. Importantly, the Federal Circuit noted that "{a}fter receiving Deacero's unsolicited, revised Section D database, Commerce 'promptly inform{ed}' Deacero 'of the nature of {its} deficienc{ies}' and provided Deacero 'with an opportunity to remedy or explain th{ose} deficienc{ies},' through its post-preliminary supplemental questionnaire." *Id.* (*quoting* 19 U.S.C. § 1677m(d)) (alterations in original). After providing Deacero with notice of deficiencies and an opportunity to remedy the deficiency, Commerce found that the contradictory explanation was "'not satisfactory'… and that Deacero had not acted to the best of its ability in providing its response." *Id.* And because Commerce had followed the statutory procedure by providing notice of deficiencies and an opportunity to remedy the deficiencies, the Federal Circuit affirmed Commerce's resort to AFA. *Id.* Thus, *Deacero* stands for the principle that when Commerce follows the statutory procedure and makes appropriate findings, it may resort to AFA.

*Deacero* is inapposite because Commerce did not promptly inform Meihua of the nature of any deficiency or provide Meihua with an opportunity to remedy or explain those deficiencies in a supplemental questionnaire. This Court found that the record of the proceeding underlying this action established that Commerce did not identify any deficiencies and did not provide Meihua an opportunity to remedy any perceived deficiencies. *Meihua*, Slip Op. 23-53 at 16-17.

Commerce fails in its attempt to liken *Deacero* to this case, claiming "as with the respondent in Deacero, Meihua failed to timely notify Commerce that it had filed a **[**

**]**." *Redetermination* at 19.  But the defendant in *Deacero* did not file a **[**

**]**, and *Deacero* is factually distinct, as described above.  Thus, the *Redetermination* fails to provide any new information or argument that could justify Commerce's refusal to follow the Court's clear order on remand.

## CONCLUSION

In sum, the *Redetermination* ignores the Court's remand instructions, rehashes arguments that have been rebutted by Meihua and rejected by the Court, and adds only inapposite case law (which supports this Court's earlier conclusion).  This Court should remand this case with instructions for Commerce to calculate Meihua's dumping margin using the information Meihua has already submitted record of the underlying review.

        Respectfully submitted,

        /s/ *Mark B. Lehnardt*

        Mark B. Lehnardt
        Email: MarkLehnardt@DLSimon.com

August 11, 2022

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains **3,659** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

<u>/s/ Mark B. Lehnardt</u>
Mark B. Lehnardt

Date: August 11, 2022

*Counsel to Meihua Group International Trading (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd.*