IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| MEIHUA GROUP INTERNATIONAL (HONG KONG) LIMITED AND XINJIANG MEIHUA AMINO ACID CO., LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | Court No. 22-00069 |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY, LTD., | ) ) ) ) | |
| Plaintiffs-Intervenor, | ) ) | |
| v. | ) | |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' AND PLAINTIFFS-INTERVENORS' COMMENTS REGARDING THE REMAND REDETERMINATION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:
Spencer Neff
Attorney
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Benjamin Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7568
Email: sosun.bae@usdoj.gov

September 12, 2023

*Attorneys for Defendant United States*

:

## **TABLE OF CONTENTS**

**PAGE**

BACKGROUND ................................................................................................... 2

    I.    Administrative Proceedings ................................................................ 2

    II    The Court's Remand Order ................................................................. 4

    III.    Commerce's Remand Results ............................................................. 5

ARGUMENT ...................................................................................................... 6

    I.    Standard Of Review ........................................................................... 6

    II.    Commerce's Determination To Base Meihua's Dumping Margin
        Entirely On An Adverse Factual Inference Is Supported By Substantial
        Evidence And Does Not Violate Court's Remand Order ...................... 7

    III.    Commerce's Determination To Treat Deosen As A Single Entity Is Supported
         by Substantial Evidence And Complies With The Remand Order ...................... 13

    IV.    Commerce's Calculation Of The Separate Rate Is Supported By
        Substantial Evidence And In Accordance With Law ........................... 17

CONCLUSION ................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*ABB, Inc. v. United States,*
   273 F.Supp.3d 1186 (Ct. Int'l Trade 2017) ............................................................... 8

*Ad Hoc Shrimp Trade Action Committee v. United States,*
   515 F.3d 1372 (Fed. Cir. 2008) ............................................................................... 9

*Albemarle Corp. & Subsids. v. United States,*
   821 F. 3d 1345 (Fed. Cir. 2016) ............................................................................. 17

*China First Pencil Co., Ltd. v. United States,*
   427 F. Supp. 2d 1236 (C.I.T. 2006)......................................................................... 15

*Deacero S.A.P.I. De C.V., Deacero USA, Inc., v United States,*
   996 F.3d 1283 (Fed. Cir. 2021) ............................................................................. 11

*DynaEnergetics U.S., Inc. v. United States,*
   298 F. Supp. 3d 1363 (Ct. Int'l Trade 2018) ........................................................... 6

*Meihua Group Int'l Trading (Hong Kong) Ltd. v. United States,*
   633 F.Supp.3d 1203 (Ct. Int'l Trade 2023) ...................................................... 1, 4, 5

*Nan Ya Plastics Corp., Ltd. v. United States,*
   810 F.3d 1333 (Fed. Cir. 2016) ............................................................................. 10

*Nippon Steel Corp. v. United States,*
   337 F.3d 1373 (Fed. Cir. 2003) ............................................................................. 11

*Papierfabrik August Koehler SE v. United States,*
   843 F.3d 1373 (Fed. Cir. 2016) ...................................................................... passim

*Tianjin Mach. Imp. & Exp. Corp. v. United States,*
   31 C.I.T. 1416 (2007) ........................................................................................... 10

*Xinjiamei Furniture (Zhangzhou) Co. v. United States,*
   968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) ........................................................... 6

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B) .................................................................................. 6

19 U.S.C. §§ 1677m(a) and (b)............................................................................. 2

19 U.S.C. § 1677m(d).................................................................................. 4, 7, 8

## REGULATIONS

19 C.F.R. § 351.401(f) ............................................................................................ 5, 14

19 C.F.R. § 351.401(f)(1) ............................................................................................ 13

19 C.F.R. § 351.401(f)(2) ............................................................................................ 13

H.R. Rep. No. 103-316, at 873 (1994) *as reprinted in* 1994 U.S.C.C.A.N. 4040 ........................ 7

## OTHER AUTHORITIES

*Xanthan Gum From the People's Republic of China*,
    88 Fed. Reg. 51,286 (Dep't of Commerce Aug. 3, 2023) ....................................... 18

*Steel Concrete Reinforcing Bar From Mexico*,
    88 Fed. Reg. 37,849 (Dep't of Commerce June 9, 2023) ........................................ 12

*Certain Lined Paper Products From India*,
    88 Fed. Reg. 21,971 (Dep't of Commerce Apr. 12, 2023) ....................................... 12

*Xanthan Gum from the People's Republic of China*,
    87 Fed. Reg. 7,104 (Dep't of Commerce Feb. 8, 2022) ........................................... 2

*Xanthan Gum From the People's Republic of China*,
    86 Fed. Reg. 42,781 (Dep't of Commerce Aug. 5, 2021) ......................................... 2

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation;*
*Opportunity to Request Administrative Review*,
    85 Fed. Reg. 39,531, 39,532 (Dep't of Commerce Sep. 3, 2020) ............................. 13

*Xanthan Gum from the People's Republic of China*,
    84 Fed. Reg. 26813 (Dep't of Commerce Jun. 10, 2019) ......................................... 6

*Certain Softwood Lumber Products From Canada*,
    82 Fed. Reg. 51,814 (Dep't of Commerce Nov. 2017) ............................................. 12

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MEIHUA GROUP INTERNATIONAL (HONG KONG) LIMITED AND XINJIANG MEIHUA AMINO ACID CO., LTD.,<br><br>Plaintiffs,<br><br>DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY, LTD.,<br><br>Plaintiffs-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Court No. 22-00069<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' AND PLAINTIFFS-INTERVENORS' COMMENTS REGARDING THE REMAND REDETERMINATION**

Defendant, the United States, respectfully submits these comments in support of the Department of Commerce's remand redetermination; *see* Final Results of Remand Redetermination, ECF Nos. 52-53 (June 27, 2023) (remand results); filed in accordance with this Court's decision and remand order in *Meihua Group Int'l Trading (Hong Kong) Ltd. v. United States*, 633 F.Supp.3d 1203 (Ct. Int'l Trade 2023) (remand order).

Plaintiffs, Meihua Group International (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd. (collectively, Meihua), and plaintiffs-intervenors, Deosen Biochemical (Ordos) Ltd. and Deosen Biochemical Ltd. (collectively, Deosen) and Jianlong Biotechnology Company, Ltd. (Jianlong), filed comments concerning Commerce's remand results. *See*

1

*generally* Meihua Cmts., ECF No. 57; Deosen Cmts., ECF No. 56; Jianlong Cmts., ECF No. 55. Because the remand results are lawful and supported by substantial evidence, we respectfully request that the Court sustain the remand results and enter judgment for the United States.

## BACKGROUND

### I.   Administrative Proceedings

This case involves certain challenges to the final results of Commerce's administrative review of the antidumping duty order covering xanthan gum from China. *See Xanthan Gum from the People's Republic of China*, 87 Fed. Reg. 7,104 (Dep't of Commerce Feb. 8, 2022) (final results), and accompanying Issues and Decision Memorandum (IDM) (P.R. 312).

Commerce selected Meihua and Neimenggu Fufeng Biotechnologies Co., Ltd. (aka Inner Mongolia Fufeng Biotechnologies Co., Ltd.)/Shandong Fufeng Fermentation Co., Ltd./Xinjiang Fufeng Biotechnologies Co., Ltd. (collectively, Fufeng), for individual review. *See Xanthan Gum From the People's Republic of China*, 86 Fed. Reg. 42,781 (Dep't of Commerce Aug. 5, 2021) (preliminary results), and accompanying Issues and Decision Memorandum (PDM). Commerce preliminarily assigned Meihua a weighted-average dumping margin of 154.07 percent, based entirely on facts available with an adverse inference (AFA), pursuant to 19 U.S.C. §§ 1677m(a) and (b). *See* PDM at 6-9; Memorandum, Preliminary Application of Adverse Facts Available to Meihua (July 30, 2021) (C.R. 175) (Meihua AFA Memo). Commerce preliminarily assessed AFA to Meihua because it had "knowingly reported incorrect sales information to Commerce, despite certifying to the accuracy of such information." PDM at 7. Specifically, Meihua, prior to filing its Section C Questionnaire Response[1] with Commerce, had filed a ███

---

[1] Section C requires the respondent to report all sales of subject merchandise to the United States made during the period of review. *See* Questionnaire at C-1 (Oct. 28, 2020) (P.R. 44) (Initial Questionnaire). Commerce typically requests that respondents respond to the Section C Questionnaire with a database of U.S. sales containing information pertaining to several fields.

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████. *See* Response to Second Supplemental

Section C/D Questionnaire (Jun. 4, 2021) (P.R. 230, C.R. 130-142) at Exhibit SC2-6 (Meihua

Second Supplemental Questionnaire Response).  As a result, the information which Meihua

initially reported in its U.S. sales database was unusable for the purposes of calculating an

accurate dumping margin.  Commerce was not made aware of the existence of Meihua's ████

██████ until Meihua reported it June 4, 2021—56 days before Commerce's preliminary

determination.  *See* Meihua AFA Memo at 6 n.31.  Commerce found that Meihua's misreporting

affected approximately ████ percent of Meihua's sales made during the period of review.  *Id.* at

3.

       Commerce preliminarily calculated a weighted-average dumping margin of zero percent

for the other examined respondent, Fufeng.  *See* Preliminary Results, 86 Fed. Reg. at 42,783.

Commerce assigned the separate rate for non-examined separate rate respondents, including

Deosen and Jianlong, by calculating a simple average of Fufeng's and Meihua's dumping

margins:  77.04 percent.  *Id.* at 42,782-3; *see also* PDM at 14-15.

       Prior to issuance of the preliminary results, Deosen Biochemical Ltd. had filed a

certification claiming that it had no shipments of xanthan gum during the period of review.  *See*

No Shipment Certification (Oct. 2, 2020) (P.R. 30)  Commerce, however, preliminarily found

that other information on the record demonstrated that Deosen Biochemical Ltd. had made

---

*See generally id.* at Section C.  Among the fields for which Commerce requests information are
the ████████████████████████████████████████████████████
██████████████.  *Id.* at C-19, C-28.

shipments of xanthan gum to the United States during the period of review.  *See* PDM at 5

(citing CBP Data (Sep. 3, 2020) (P.R. 19/C.R. 1)).

For the final results, Commerce made no changes with respect to the dumping margin

calculated for Meihua, the separate rate assigned to Deosen and Jianlong, and the issue of

whether Deosen Biochemical, Ltd. had no shipments during the period of review.  *See* Final

Results, 87 Fed. Reg. 7,104; *see also* IDM at Cmts. 1, 2, and 4.  With respect to its finding that

Deosen Biochemical Ltd. had made shipments of xanthan gum to the United States during the

period of review, Commerce explained that it had treated Deosen Biochemical Ltd. and Deosen

Biochemical (Ordos) Ltd. as a single, collapsed entity in previous reviews and would continue to

do so in the 2019-2020 review, consistent with its practice.  *See* IDM at Cmt. 2.  Meihua,

Deosen, and Jianlong appealed Commerce's determination to this Court.

**II**      **The Court's Remand Order**

The Court held that Commerce failed to fulfill its statutory obligation under 19 U.S.C.

§ 1677m(d) to inform Meihua of the nature of the deficiencies in its reporting and provide it with

an opportunity to remedy such deficiencies.  *See* Remand Order, 663 F. Supp. 3d at 1212.  The

Court did not decide whether Commerce's application of AFA was supported by substantial

evidence, but remanded Commerce's application of AFA to Meihua for further consideration in

accordance with its opinion.  *Id*.  The Court also declined to consider Commerce's separate rate

calculation, but remanded the issue for further consideration or explanation based on any

changes to the Meihua's dumping margin on remand.  *Id.* at 1213.

The Court further held that Commerce had abused its discretion by failing to conduct a

collapsing analysis for Deosen specific to the 2019-20 period of review, "particularly because

Commerce rejected Deosen Biochemical Ltd.'s No Shipment Certification and its offer to submit

4

additional documents demonstrating no shipments of xanthan gum during the period of review."

*Id.* at 1215.  The Court thus remanded, stating:

> {a}t the very least … Commerce should perform a collapsing analysis pursuant to 19 C.F.R. § 351.401(f) to reexamine the record evidence and determine whether Deosen Biochemical Ltd. was an exporter with any shipments during the period of review, whether Deosen Biochemical Ltd. should have been collapsed into a single entity with Deosen Biochemical (Ordos) Ltd., and whether Deosen Biochemical Ltd.'s review should have been rescinded.

*Id.*

## III.  <u>Commerce's Remand Results</u>

On remand, Commerce reconsidered its determination to base Meihua's dumping margin entirely on AFA, and continued to find that such a determination was warranted.  *See* Remand Results at 7-13, 18-22.  Specifically, Commerce found that granting an opportunity to remedy its actions on remand would be inappropriate, because the deficiency inherent in Meihua's reporting "was not due to an error or misunderstanding, but a result of Meihua's intentional misconduct— the company knowingly certified and submitted inaccurate information, which made it impossible for Commerce to conduct its review."  *Id.* at 11.  Commerce additionally found that giving Meihua an opportunity to remedy its action would have been fruitless, as Meihua had conceded that it did not possess accurate U.S. duty information during the actual period of review.  *Id.* at 7.  Commerce then explained, in further detail, why application of AFA to Meihua was appropriate.

Commerce also reconsidered its decision to collapse Deosen Biochemical Ltd. and Deosen Biochemical (Ordos) Ltd., and continued to find that the two Deosen iterations comprised a single entity, and therefore Commerce should not rescind the review of Deosen Biochemical Ltd.  *Id.* at 14-16, 23-25.  In doing so, and under protest, Commerce adopted its

collapsing analysis for Deosen from the 2017-18 administrative review of the same proceeding, reiterating that analysis for the record. *Id.* at 14 (citing *Xanthan Gum from the People's Republic of China*, 84 Fed. Reg. 26813 (Dep't of Commerce Jun. 10, 2019) (preliminary results), and accompanying Issues and Decision Memorandum at 6). Commerce explained that its practice was to presume that companies continue to comprise a single entity when that finding has been made in a prior segment of the proceeding (as was the case here), and that its collapsing determination from the earlier review established a presumption of Deosen as a single entity. Commerce stated further that no party, including Deosen, had requested that Commerce revisit its collapsing determination for the current review. *Id.* at 15-16. Commerce also explained, in reiterating its prior collapsing analysis, that no record information specific to the current review existed to allow Commerce to conduct a new collapsing analysis. *Id.*

Finally, because Commerce made no changes to Meihua's rate, it did not make any changes to the separate rate calculated in its review. *Id.* at 16, 27-29. Commerce nonetheless addressed the parties' arguments concerning the separate rate. *Id.* at 27-29.

## ARGUMENT

### I. Standard Of Review

The Court sustains any determination, finding, or conclusion by Commerce unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B). This standard applies equally to remand redeterminations. *See DynaEnergetics U.S., Inc. v. United States*, 298 F. Supp. 3d 1363, 1367 (Ct. Int'l Trade 2018). Remand redeterminations are also reviewed for compliance with the Court's order. *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014).

II.     **Commerce's Determination To Base Meihua's Dumping Margin Entirely On An Adverse Factual Inference Is Supported By Substantial Evidence And Does Not Violate Court's Remand Order**

Commerce's determination to continue basing Meihua's margin entirely on AFA is supported by substantial evidence and in accordance with the law.  Meihua contends that Commerce failed to comply with the Court's remand order in which the Court held that Commerce did not provide Meihua with notice of its deficiency pursuant to 19 U.S.C. § 1677m(d).  *See* Meihua Cmts. at 2-5.  We respectfully submit that, in fully reconsidering the issue remanded, Commerce complied with the law.

Pursuant to 19 U.S.C. § 1677m(d), where it identifies a deficiency in a response to a request for information, Commerce is required to "promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews."  The legislative history accompanying the Uruguay Round Agreements Act provides that "19 U.S.C. § 1677m(d) is not intended to override the time-limits for completing investigations or reviews, nor to allow parties to submit continual clarifications or corrections of information or to submit information that cannot be evaluated adequately within the applicable deadlines."  Statement of Administrative Action accompanying the Uruguay Round Agreements Act (SAA), H.R. Rep. No. 103-316, at 4195 (1994) *as reprinted in* 1994 U.S.C.C.A.N. 4040 at 865.

Importantly, the Court of Appeals for the Federal Circuit has also held that Commerce is not obliged to treat information which was intentionally misreported as a deficiency warranting an opportunity to remedy.  *See Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1384 (Fed. Cir. 2016) ("{N}othing in {19 U.S.C. § 1677m(d)} compels Commerce to treat

intentionally incomplete data as a 'deficiency' and then to give a party that has intentionally submitted incomplete data an opportunity to 'remedy' as well as to 'explain.'").

Thus, 19 U.S.C. § 1677m(d) does not impose an absolute requirement on Commerce to permit parties to correct *any* inaccurate reporting. As explained above, there are at least two circumstances in which Commerce may decline to permit a party to remedy deficiencies: where doing so would compromise Commerce's ability to complete its review within the statutory timeframe, and where such deficiencies are the product of a party's intentional failure to report complete information. Upon reconsideration on remand, Commerce found that both circumstances are present here. First, Commerce found, based on substantial evidence, that Meihua had intentionally and knowingly submitted an inaccurate U.S. sales database. Second, Commerce found that the nature of the inaccuracies only became known to Commerce shortly before issuance of the preliminary results. *See* Remand Results at 7-13, 18-22.

In addition, Commerce is afforded broad discretion to reconsider issues on remand. *See, e.g., ABB, Inc. v. United States*, 273 F.Supp.3d 1186, 1199 n.14 (Ct. Int'l Trade 2017) ("{u}nless specifically directed by the court, Commerce has broad discretion to fully consider the issues remanded."). Commerce thoroughly reconsidered its determination in light of the Court's holding, explaining why allowing Meihua to remedy its deficiencies in this proceeding would not only be inconsistent with the purpose of the statute, but futile, given Meihua's concession that it did not possess the relevant information during the period of review. *See* Remand Results at 7-13, 18-22. Importantly, Commerce also relied upon *Papierfabrik*, which holds that Commerce is not required to allow parties to remedy deficiencies when the respondent knowingly misreported information. *Id.* at 11, 21. As the Court's order did not specifically address the exception set forth in *Papierfabrik*, Commerce was not precluded from considering it on remand.

Meihua complains that Commerce reached the same result on remand as it did in the final results. But Commerce's finding also significantly expands upon the relatively brief explanation with respect to this issue in the IDM, therefore complying with the Court's order to reconsider the issue on remand. *See* IDM at 14-15; *see also Ad Hoc Shrimp Trade Action Committee v. United States*, 515 F.3d 1372 (Fed. Cir. 2008) (regarding a remand for further consideration with the Court's opinion, "there is nearly always the possibility that the same result will be reached but on different grounds."). In sum, Commerce complied with the Court's order to reconsider its determination to apply AFA to Meihua in accordance with its opinion.[2]

Commerce's decision to continue applying an adverse inference to Meihua is also supported by substantial evidence and in accordance with law, and Meihua's attempts to show otherwise are unpersuasive. First, Meihua contests Commerce's conclusion that Meihua knowingly reported incorrect and incomplete U.S. sales. *See* Meihua Cmts. at 7-9. But Meihua's only challenge to Commerce's finding is that it should only have been required to report amounts "paid" to CBP and was thus absolved from reporting the existence of its ███ ███████ because the ███████████████████ contained therein were not accurate, complete, or finalized. *See id.* at 8-9 (citing Initial Questionnaire at C-19-C-20). But this argument disregards the undisputed fact that the information which it *did* report to Commerce was still inaccurate and would, accordingly, be of no use to Commerce in calculating an accurate dumping margin. Even if Meihua was not aware of the final ████████████ at the time of reporting, it was obligated to inform Commerce of the inaccuracies in its response. *See* Remand

---

[2] Meihua also posits that Commerce's determination to provide further explanation on remand, and not reopen the record, serves as an implicit finding that the record lacks deficiencies. *See* Meihua Cmts. at 5. This is belied by Commerce's statements on remand, where it clearly explained that Meihua's inaccurate reporting in this review left the record bereft of accurate data with which Commerce could calculate a margin. *See* Remand Results at 10, 18.

Results at 10, 21 (citing *Nan Ya Plastics Corp., Ltd. v. United States*, 810 F.3d 1333, 1337 (Fed. Cir. 2016)).

Meihua argues that it is not "required to read Commerce's mind," or "volunteer information Commerce has not asked for."  Meihua Cmts. at 7-8.  But it does not take a mind reader to know that a party should not report inaccurate information to Commerce, or to know that Commerce cannot calculate an accurate margin without reliable, sufficient data.  Meihua should not benefit from its unreasonably narrow reading of Commerce's request when it has complete control of its own information, and where the information withheld would have been vital to the calculation of an accurate margin.  *See Tianjin Mach. Imp. & Exp. Corp. v. United States*, 31 C.I.T. 1416, 1423 (2007) (finding that respondents are obligated to report "information over which they had complete command.").  Commerce's determination that Meihua was aware at the time of reporting that its data were inaccurate and incomplete is reasonable and supported by substantial evidence, and Commerce was not obligated to provide Meihua an opportunity to remedy its failure to accurately report that information.  *See Papierfabrik*, 843 F.3d 1373 at 1384.

Meihua claims that the cases cited in the remand results are inapposite, but its reasoning fails.  *See* Meihua Cmts. at 9-13.  Meihua first argues that the Federal Circuit's holding in *Papierfabrik* is inapplicable because Commerce did not make a finding that Meihua committed fraud.  *See id.* at 10.  But Meihua espouses an overly narrow reading of *Papierfabrik*.  The Federal Circuit held that "nothing in that language compels Commerce to treat intentionally incomplete data as a 'deficiency' and then to give a party that has intentionally submitted incomplete data an opportunity to 'remedy' as well as to 'explain.'"  *Papierfabrik*, 843 F.3d 1373, 1383-4.  This holding is not restricted to circumstances that might meet a legal definition

of fraud, but means exactly what it says: that a "party that has intentionally submitted incomplete data" is not owed an opportunity to remedy the deficiencies of its own creating. *Id*.

The Federal Circuit also held that the consequence of permitting parties to remedy their intentionally incomplete or inaccurate filings would be that parties can "submit fraudulent data with the knowledge that, should their misconduct come to light, they can demand an opportunity to remedy their intentionally deficient data and avoid the otherwise-authorized adverse inferences." *Id*.  While the court used the term "fraudulent," the concern it voiced applies equally to respondents who report intentionally inaccurate or incomplete information to Commerce, regardless of whether such misreporting meets the definition of fraud.

Meihua argues that Commerce's reliance on *Deacero S.A.P.I. De C.V., Deacero USA, Inc., v United States*, 996 F.3d 1283 (Fed. Cir. 2021), is unwarranted because that case is distinguishable from the present review.  Specifically, Meihua points out that, in *Deacero*, Commerce provided the respondent with an opportunity to remedy deficiencies in its initial reporting.  *See* Meihua Cmts. at 10-12.  But Commerce did not rely on *Deacero* for that point; rather, it relied on ***Papierfabrik*** in determining that it was not required to allow Meihua to remedy its intentional submission of deficient information.

The respondent in *Deacero* had reported a factually incorrect database, and only submitted a corrected database later in the proceeding.  996 F.3d at 1290.  In holding that Commerce was not obliged to use the respondent's corrected database where the respondent failed to adequately explain its corrections, the Federal Circuit stated that an adverse inference was appropriate where "it is reasonable for Commerce to expect that more forthcoming responses should have been made."  *Id*. (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1383 (Fed. Cir. 2003)).  *Deacero* thus supports Commerce's finding in this review in two

respects, neither of which are predicated on whether Commerce allowed the respondent to remedy its defects.  First, Commerce was not required to accept Meihua's corrected database when it was presented to Commerce far after Commerce's initial request for information.  Second, and more importantly, Commerce's reliance on an adverse inference was appropriate because it reasonably expected Meihua to be more transparent and forthcoming in its responses.

Moreover, Meihua had several opportunities to clarify the inaccuracies in its *initial* reporting, and indeed took steps on its own to clarify other matters with Commerce.  *See* Meihua Sections C and D Supplemental Questionnaire (Feb. 16, 2021) (P.R. 114) (Meihua First Supplemental Questionnaire); *see also* Memorandum, Phone Call With Meihua (Dec. 1, 2020) (P.R. 61); Memorandum, Phone Call With Meihua (Feb. 16, 2021) (P.R. 115).  Commerce reasonably found that, by the time Meihua had reported its revised U.S. sales database, and it became clear that the information initially reported to Commerce was inaccurate, any further opportunity for Meihua to correct the information which it had reported to that point would be inappropriate.  *See* Remand Results at 11.  Until that point, Commerce could not have even identified the particular deficiencies in Meihua's corrected database, as it was not aware of the full scope of Meihua's failure to report.

Meihua also contends that Commerce could have issued a post-preliminary questionnaire to clarify deficiencies in its reporting, citing several administrative decisions in which Commerce had done so.  *See* Meihua Cmts. at 4-5 (citing *Steel Concrete Reinforcing Bar From Mexico*, 88 Fed. Reg. 37,849 (Dep't of Commerce June 9, 2023) (final results), and accompanying Issues and Decision Memorandum at 1 n.5; *Certain Lined Paper Products From India*, 88 Fed. Reg. 21,971 (Dep't of Commerce Apr. 12, 2023) (final results), and accompanying Issues and Decision Memorandum at 7; *Certain Softwood Lumber Products From Canada*, 82 Fed. Reg.

12

51,814 (Dep't of Commerce Nov. 8, 2017), and accompanying Issues and Decision Memorandum at 314-316, 318. But Meihua does *not* cite a proceeding in which Commerce issued a post-preliminary questionnaire where it also found that respondent had intentionally failed to report accurate and complete information. Commerce's willingness to allow parties to remedy potentially unintentional deficiencies is evident from the record of the underlying review, given it did just that when it identified what it believed were deficiencies in Meihua's initial section C questionnaire. As explained above, because Commerce found that Meihua had intentionally reported inaccurate information, it was not required to issue a post-preliminary questionnaire or otherwise allow Meihua to remedy the deficiencies.

**III.  Commerce's Determination To Treat Deosen As A Single Entity Is Supported by Substantial Evidence And Complies With The Remand Order**

Commerce's determination to continue treating Deosen as a single entity and not rescind the review is supported by substantial evidence, and in accordance with Commerce's past practice and the law. Moreover, Commerce cited its previous collapsing analysis, determining that no information on the record of the review contravened its findings in that analysis.

Commerce "collapses," or treats as a single entity, companies that it determines have production facilities for similar or identical products and for which there is a significant potential for the manipulation of price or production. *See* 19 C.F.R. § 351.401(f)(1); *see also* 19 C.F.R. § 351.401(f)(2) (identifying factors which Commerce may consider when determining whether significant potential for manipulation exists). Commerce's practice, as explicitly stated in the initiation notice, is to presume that a company which was collapsed in a previous review will remain collapsed in successive reviews, absent a request and a submission of factual information indicating that circumstances have changed such that a company should no longer be treated as a single entity. *See Antidumping or Countervailing Duty Order, Finding, or Suspended*

13

*Investigation; Opportunity to Request Administrative Review*, 85 Fed. Reg. 39,531, 39,532

(Dep't of Commerce Sep. 3, 2020) (Initiation Notice).

On remand, Commerce adopted by reference its collapsing analysis in the 2017-18

administrative review, in which it found that Deosen Biochemical Ltd. and Deosen Biochemical

(Ordos) Ltd. are a single entity.  *See* Remand Results at 14.  Deosen has not contested

Commerce's determination, from the prior review, to collapse the two Deosen entities into one.

Commerce then considered whether the factors set forth in 19 C.F.R. § 351.401(f) had changed

with respect to Deosen, and found that no record evidence existed to indicate that they had.  *See*

Remand Results at 16 ("{M}ost significantly … there is no evidence on the record of the

underlying proceeding to allow for Commerce to conduct its analysis anew.").  Under

Commerce's practice, no further analysis was warranted, or even possible, because Deosen did

not timely place evidence on the record to support a finding that the previous collapsing analysis

was no longer accurate.

Deosen argues that Commerce's collapsing practice applies only to Commerce's

respondent selection, and not "broadly for the purposes of the review or whether Commerce

should rescind the review of a company without shipment."  Deosen Cmts. at 3-4.  This

argument runs contrary to the plain language of Commerce's initiation notice, in which it stated:

> In general, Commerce finds that determinations concerning
> whether particular companies should be "collapsed" (*i.e.,* <u>treated as
> a single entity for purposes of calculating antidumping duty rates</u>)
> require a substantial amount of detailed information and analysis,
> which often require follow-up questions and analysis.
> Accordingly, Commerce will not conduct collapsing analyses at
> the respondent selection phase of a review and will not collapse
> companies at the respondent selection phase unless there has been
> a determination to collapse certain companies in a previous
> segment of this antidumping proceeding (*i.e.,* investigation,
> administrative review, new shipper review or changed
> circumstances review).  <u>For any company subject to a review, if</u>

14

> <u>Commerce determined, or continued to treat, that company as</u>
> <u>collapsed with others, Commerce will assume that such companies</u>
> <u>continue to operate in the same manner</u> and will collapse them for
> respondent selection purposes.  Otherwise, Commerce will not
> collapse companies for purposes of respondent selection.  Parties
> are requested to (a) identify which companies subject to review
> previously were collapsed, and (b) provide a citation to the
> proceeding in which they were collapsed.  Further, if companies
> are requested to complete a Quantity and Value Questionnaire for
> purposes of respondent selection, in general each company must
> report volume and value data separately for itself.  Parties should
> not include data for any other party, even if they believe they
> should be treated as a single entity with that other party.  If a
> company was collapsed with another company or companies in the
> most recently completed segment of a proceeding where
> Commerce considered collapsing that entity, complete quantity and
> value data for that collapsed entity must be submitted.

*Initiation Notice*, 85 Fed. Reg. at 39,532 (emphasis added).  The initiation notice clearly states

that whether a company is treated as a single entity is an issue that affects Commerce's entire

dumping calculation, and not just respondent selection.  And, as explained in the remand results,

the respondent selection stage is when Commerce makes a collapsing determination—a

determination which is intended to stay in effect throughout a review.  *See* Remand Results at 25.

Because respondent selection is used to gauge which companies will be subject to individual

review, it makes little sense that Commerce would treat a respondent as a single entity solely for

the purposes of respondent selection and not for the entirety of the review.  *Id.*  Even assuming,

*arguendo*, that Deosen thought Commerce's presumption of single-entity treatment only for the

purposes of respondent selection, Deosen still failed to provide evidence to rebut the

presumption.  Commerce found that Deosen had multiple opportunities to timely provide

evidence indicating that it was no longer a single entity, and at every opportunity decided not to

do so; nor did Deosen timely request a new collapsing analysis.  *See* Remand Results at 23.

Deosen alleges that Commerce's citation to *China First Pencil Co., Ltd. v. United States,* 427 F. Supp. 2d 1236 (C.I.T. 2006), is misplaced because the Court in that case had held that the respondent had failed to exhaust its administrative remedies. *See* Deosen Cmts. at 4.  In *China First Pencil*, the Court sustained Commerce's decision to continue collapsing companies which had been collapsed in a previous review, where plaintiff "failed to meet its burden of establishing that the facts and circumstances had changed sufficiently to warrant a re-examination of Commerce's decision." *Id.*, 427 F. Supp. 2d at 1239-41.  Commerce cited this case to demonstrate that this Court has previously sustained Commerce's practice regarding the continuing presumption of single-entity treatment. *See* Remand Results at 16 ("{a}bsent record information and argument, Commerce was under no statutory or regulatory obligation to revisit its collapsing determination.").  Deosen provides no legal argument demonstrating why Commerce's presumption is unlawful and, again, fails to point to any instance on the record below where it requested that Commerce conduct a new collapsing analysis or even put timely evidence on the record to demonstrate that the presumption was rebutted.

Deosen additionally claims that Commerce's preliminary results did not state that it would consider Deosen a single entity in the preliminary results, *see* Deosen Cmts. at 4, but Commerce's treatment of Deosen as a single entity was obvious, given that Commerce regularly referred to Deosen as a single entity, and granted a single rate to the entity.  *See* Preliminary Results, 86 Fed. Reg. at 42,783; PDM at 3 ("Deosen Biochemical (Ordos) Ltd. (Deosen Ordos)/Deosen Biochemical Ltd. (Deosen Biochemical) (collectively, Deosen)").

Finally, Deosen argues that, following the preliminary results, it challenged Commerce's preliminary determination not to rescind its review of Deosen Biochemical Ltd.  *See* Deosen Cmts. at 4.  But that decision flowed directly from Commerce's continued finding that Deosen

16

constitutes a single entity.  Because Deosen Biochemical Ltd. and Deosen Biochemical (Ordos)

Ltd. are a single entity, Commerce cannot rescind its review with respect to one but not the other.

IV.     **Commerce's Calculation Of The Separate Rate Is Supported By Substantial**
        **Evidence And In Accordance With Law**

In its remand order, the Court directed Commerce to further consider or explain "the

applicable rate for the Separate Rate Respondents based on any changes that Commerce *may*

make to Meihua's rate on remand." *Remand Order*, 663 F. Supp. 3d at 1213.  Because

Commerce did not make any changes to Meihua's rate on remand, Commerce did not reconsider

the rate for separate rate respondents. *See* Remand Results at 16, 27.  Nonetheless, Commerce

addressed the parties' arguments concerning the separate rate calculation, more than satisfying

the remand order.  In addition, we respectfully submit that the arguments made in our Rule 56.2

response brief demonstrate that Commerce's calculation of the separate rate is supported by

substantial evidence and in accordance with law. *See* Govt. 56.2 Br. at 22-26.

Deosen continues to argue that the record and the history of dumping margins calculated

in the proceeding show that the separate rate calculated in this review was not reasonably

reflective of the likelihood of dumping. *See* Deosen Cmts. at 8-10; *see also* SAA at 873.  This

argument ignores record evidence that one of the mandatory respondents was dumping at a level

of 154.07 percent. *See* Govt. 56.2 Br. at 23-24.  Indeed, the Federal Circuit has held that, for the

purposes of calculating a separate rate, the largest exporters are assumed to be representative of

the likelihood of dumping for separate rate companies. *See Albemarle Corp. & Subsids. v.*

*United States*, 821 F. 3d 1345, 1353 (Fed. Cir. 2016).  And, importantly, Deosen *itself* was

assigned rates based on AFA in the first two reviews of the order—something Commerce

explicitly considered in its final results.  IDM at 6.  Deosen's selective reading of the evidence of

the history of dumping in the proceeding does not demonstrate that the separate rate is not reasonably reflective.

Deosen also cites the separate rate preliminarily calculated in a subsequent review, but Commerce is not required to consider this information because it was not before Commerce at the time of this proceeding.  Such information would therefore be prospective in nature and not representative of the *history* of dumping; in any event, the cited rate is only preliminary and may change.  *See* Deosen Cmts. at 10 (citing *Xanthan Gum From the People's Republic of China*, 88 Fed. Reg. 51,286 (Dep't of Commerce Aug. 3, 2023) (preliminary results).

Jianlong also notes the history of dumping margins in the proceeding, complaining that the only rate it had received was 9.30 percent, and claiming that though the prior rates in the proceeding may support a higher rate with regard to Deseon, they should not apply to Jianlong. Jianlong Cmts. at 3-4.  But this argument ignores that Commerce must calculate one separate rate for *all* non-examined separate rate respondents, and therefore must consider the history of dumping in a proceeding in its entirety, rather than with regard to individual non-examined respondents.  The fact that Commerce has calculated dumping rates for respondents, including Deosen, higher than the 77.04 percent rate, supports Commerce's calculation of the separate rate here.  *See* Remand Results at 28.

Jianlong additionally argues that the record evidence of this review supports a finding that the separate rate was not reasonably reflective of the likelihood of dumping.  *See* Jianlong Cmts. at 4-5.  Specifically, Jianlong references the CBP data, which contains entry information for each of Jianlong's entries, as well as its separate rate application and response to Commerce's supplemental questionnaire.  *Id.*  But, as Commerce explained on remand, the record lacks information pertaining to Jianlong's *actual U.S. sales activities*; the information cited by

18

Jianlong does not approach the level of information needed to calculate a dumping margin.  *See* Remand Results at 28.  Furthermore, Jianlong failed to file an administrative case brief or otherwise participate in the proceeding after submitting its response to Commerce's separate rate application supplemental questionnaire.  *See* Govt. 56.2 Br. at 21.  Accordingly, Commerce would not necessarily have known during the proceeding which information submitted by Jianlong might be relevant to the likelihood of dumping in this proceeding by the non-examined respondents.  As Commerce explained, *see* Remand Results at 28, Jianlong could have requested treatment as a voluntary respondent and filed questionnaire responses.  Doing so would have enabled Commerce to fully consider whether the separate rate was reasonably reflective of the likelihood of dumping.  Jianlong's failure does not entitle it to an individual rate, rather than the separate rate assigned to all non-examined separate rate companies.

## **<u>CONCLUSION</u>**

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter judgment in favor of the United States.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:                                     /s/Sosun Bae
Spencer Neff                                    SOSUN BAE
Attorney                                        Senior Trial Counsel
Office of the Chief Counsel                     Commercial Litigation Branch

  for Trade Enforcement and Compliance  Civil Division
U.S. Department of Commerce  U.S. Department of Justice
  P.O. Box 480, Benjamin Franklin Station
  Washington, D.C. 20044
  Telephone: (202) 305-7568
  Email: sosun.bae@usdoj.gov

September 12, 2023  *Attorneys for Defendant United States*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that the foregoing complies with the word-count limitation.  In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare the brief. According to the word count, the brief contains 5,586 words.


/s/Sosun Bae

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |
|---|---|
| MEIHUA GROUP INTERNATIONAL (HONG KONG) LIMITED AND XINJIANG MEIHUA AMINO ACID CO., LTD., | ) ) ) ) |
| Plaintiffs, | ) ) |
| DEOSEN BIOCHEMICAL (ORDOS) LTD., DEOSEN BIOCHEMICAL LTD., AND JIANLONG BIOTECHNOLOGY COMPANY, LTD., | ) ) ) ) |
| Plaintiffs-Intervenor, | ) ) |
| v. | ) Court No. 22-00069 |
| UNITED STATES, | ) ) |
| Defendant. | ) ) |

## **ORDER**

Upon consideration of the remand redetermination, the comments filed by the parties, the administrative record, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand results are sustained in all respects, and it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____          _____
      New York, NY                                                    JUDGE