Slip Op. 24-21

## UNITED STATES COURT OF INTERNATIONAL TRADE

MEIHUA GROUP
INTERNATIONAL TRADING
(HONG KONG), LIMITED and
XINJIANG MEIHUA AMINO ACID
CO., LTD.,

              Plaintiffs,

and

DEOSEN BIOCHEMICAL
(ORDOS), LTD., DEOSEN
BIOCHEMICAL, LTD., and
JIANLONG BIOTECHNOLOGY
COMPANY, LTD.,

              Consolidated Plaintiffs,

v.

UNITED STATES,

              Defendant.

Before:  Jennifer Choe-Groves, Judge

Consol. Court No. 22-00069

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's Final Results of Redetermination Pursuant to Court Order in the antidumping duty administrative review of xanthan gum from the People's Republic of China].

Dated: February 22, 2024

Mark B. Lehnardt, Law Offices of David L. Simon, PLLC, of Washington, D.C., for Plaintiffs Meihua Group International Trading (Hong Kong), Limited and Xinjiang Meihua Amino Acid Co., Ltd.

Consol. Court No. 22-00069                                                  Page 2

Chunlian (Lian) Yang and Lucas Queiroz Pires, Alston & Bird, LLP, of
Washington, D.C., for Consolidated Plaintiffs Deosen Biochemical (Ordos), Ltd.
and Deosen Biochemical, Ltd.

Robert G. Gosselink, Jonathan M. Freed, and Kenneth N. Hammer, Trade Pacific,
PLLC, of Washington, D.C., for Consolidated Plaintiff Jianlong Biotechnology
Company, Ltd.

Sosun Bae, Senior Trial Attorney, Commercial Litigation Branch, Civil Division,
U.S. Department of Justice, of Washington, D.C., for Defendant United States.
With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney
General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director.
Of Counsel was Spencer Neff, Attorney, Office of the Chief Counsel for Trade
Enforcement and Compliance, U.S. Department of Commerce.

Choe-Groves, Judge:  Before the Court is the U.S. Department of

Commerce's ("Commerce") remand redetermination in the administrative review

of the antidumping duty order on xanthan gum from the People's Republic of

China ("China") covering the period of review from July 1, 2019 through June 30,

2020.  See Final Results of Redetermination Pursuant to Court Remand ("Remand

Redetermination"), ECF Nos. 52-1, 53-1, pursuant to the Court's Opinion and

Order in Meihua Group International Trading (Hong Kong), Ltd. v. United States

("Meihua I"), 47 CIT __, 633 F. Supp. 3d 1203 (2023); see also Xanthan Gum

from the People's Republic of China ("Final Results"), 87 Fed. Reg. 7104 (Dep't

of Commerce Feb. 8, 2022) (final results of antidumping duty administrative

review and final determination of no shipments; 2019–2020); see also Issues and

Decision Memorandum for the Final Results of the 2019–2020 Antidumping Duty

Administrative Review of Xanthan Gum from the People's Republic of China ("IDM"), ECF No. 23-3.

The Court reviews Commerce's determination to apply total adverse facts available to Meihua Group International Trading (Hong Kong), Limited and Xinjiang Meihua Amino Acid Co., Ltd. (collectively, "Meihua"). In summary, Commerce requested that Meihua provide information about what duties it paid, and Meihua reported the duties paid to the U.S. Department of Customs and Border Protection ("Customs"). IDM at 9, 12. It became apparent later that Meihua's duties paid to Customs are subject to change due to ongoing Section 301 exclusion requests, and the duties already paid might be potentially adjusted in the future. Id. at 10, 12–13. Meihua provided updated information requested by Commerce, but Commerce continues to fault Meihua and apply total adverse facts available for failing to provide accurate information about its U.S. duties and sales database.

In Meihua I, the Court remanded for Commerce to reconsider the application of total adverse facts available and the highest dumping margin rate to Meihua because the Court concluded that Commerce failed to satisfy its statutory obligation under 19 U.S.C. § 1677m(d). Meihua I, 47 CIT at __, 633 F. Supp. 3d at 1212. The Court directed Commerce to reconsider the applicable separate rate for Consolidated Plaintiffs Jianlong Biotechnology Co., Ltd. ("Jianlong") and Deosen Biochemical

(Ordos), Ltd. and Deosen Biochemical, Ltd. (collectively, "Deosen") if Commerce made any changes to Meihua's rate.  Id. at __, 633 F. Supp. 3d at 1213.  The Court also directed Commerce to perform a collapsing analysis pursuant to 19 C.F.R. § 351.401(f) to determine whether Deosen Biochemical, Ltd. was an exporter with shipments of subject merchandise during the period of review, whether the Deosen entities should have been collapsed, and whether Commerce should have rescinded Deosen Biochemical, Ltd.'s review.  Id. at __, 633 F. Supp. 3d at 1215.

Meihua filed Comments of Meihua Group International Trading (Hong Kong), Limited and Xinjiang Meihua Acid Co., Ltd., on Remand Redetermination. Meihua's Cmts. Remand Redetermination ("Meihua's Cmts."), ECF Nos. 57, 58. Jianlong filed Comments on Final Results of Redetermination Pursuant to Court Remand of Consolidated Plaintiff Jianlong Biotechnology Co., Ltd.  Jianlong's Cmts. Final Results Redetermination Pursuant Court Remand ("Jianlong's Cmts."), ECF No. 55.  Deosen filed Consolidated Plaintiff Deosen's Comments in Opposition to the Final Results of Redetermination Pursuant to Court Remand. Deosen's Cmts. Opp'n Final Results Redetermination Pursuant Court Remand ("Deosen's Cmts."), ECF No. 56.  Defendant United States ("Defendant" or "the Government") filed Defendant's Response to Plaintiffs' and Plaintiff-Intervenors' Comments Regarding the Remand Redetermination.  Def.'s Resp. Pls.' Pl.-Intervs.' Cmts. Regarding Remand Redetermination ("Def.'s Resp."), ECF Nos.

59, 60.  For the reasons discussed below, the Court remands Commerce's <u>Remand</u>

<u>Redetermination</u>.

## ISSUES PRESENTED

The Court reviews the following issues:

1.    Whether Commerce's determination to apply total adverse facts

available to Meihua is supported by substantial evidence and in

accordance with law;

2.    Whether Commerce's determination to apply the separate rate to

Jianlong and Deosen is supported by substantial evidence; and

3.    Whether Commerce's determination not to conduct a collapsing

analysis of Deosen and rescind Deosen Biochemical, Ltd.'s review is

supported by substantial evidence.

## BACKGROUND

The Court presumes familiarity with the underlying facts and procedural

history of this case as set forth in <u>Meihua I</u>, 47 CIT at __, 633 F. Supp. 3d at 1207–

08.

On September 3, 2020, Commerce initiated an administrative review of an

antidumping duty order on xanthan gum from China.  <u>Initiation of Antidumping</u>

<u>and Countervailing Duty Administrative Reviews</u> ("<u>Initiation Notice</u>"), 85 Fed.

Reg. 54,983 (Dep't of Commerce Sept. 3, 2020).  Commerce selected Meihua as

one of the mandatory respondents.  Commerce's Mem. Re: Selection Resps. 2019–2020 Admin. Rev. Antidumping Duty Order Xanthan Gum People's Rep. China at 1, PR 39.[1]  During the investigation, Commerce treated Deosen Biochemical (Ordos), Ltd. and Deosen Biochemical, Ltd. as a single entity and continued to do so during the administrative review.  Id. at 2 n.5

In its Final Results, Commerce applied total adverse facts available to Meihua after concluding that Meihua should have communicated to Commerce that the duties it paid and the entered values on its Customs entry forms were incorrect.  IDM at 12.  Commerce applied a dumping margin rate of 154.07% to Meihua.  Final Results, 87 Fed. Reg. at 7105.  With respect to Deosen, Commerce rejected Deosen Biochemical, Ltd.'s offer to provide additional documents and did not rescind the review of Deosen Biochemical, Ltd.  IDM at 7–8; See Deosen's Case Br. ("Deosen's Admin. Case Br.") at 10, PR 293.  Deosen and Jianlong (collectively, "Separate Rate Respondents") were assigned a dumping margin rate of 77.04% for separate companies not individually investigated.  Final Results, 87 Fed. Reg. at 7105.  Commerce calculated the separate rate using the simple average of Meihua's adverse facts available rate of 154.07% and the 0% rate assigned to Neimenggu Fufeng Biotechnologies Co., Ltd., Xinjiang Fufeng

---

[1]  Citations to the administrative record reflect the public record ("PR") and public remand record ("PRR") numbers filed in this case, ECF Nos. 45, 62.

Biotechnologies Co., Ltd., and Shandong Fufeng Fermentation Co., Ltd.  Id.; IDM at 5.

The Court held in Meihua I that Commerce failed to satisfy its statutory obligation under 19 U.S.C. § 1677m(d) when Commerce did not notify Meihua of any deficiencies in its submissions or provide Meihua with an opportunity to remedy the deficiencies.  Meihua I, 47 CIT at __, 633 F. Supp. 3d at 1212.  The Court remanded for Commerce to reconsider the application of total adverse facts available and the highest dumping margin rate to Meihua, the applicable rate for the Separate Rate Respondents, and the collapsing analysis for Deosen.  Id. at __, 633 F. Supp. 3d at 1215.

On remand, Commerce did not provide Meihua with an opportunity to remedy any deficiencies and determined that Meihua submitted inaccurate data and misrepresented information.  Remand Redetermination at 7.  As a result, Commerce continued to apply total adverse facts available and made no changes to the dumping margin rates of Meihua and the Separate Rate Respondents.  Id. at 14, 18–21.  Commerce did not conduct a collapsing analysis of the Deosen entities based on Commerce's prior determination that the collapsed entities comprised a single entity.  Id. at 23–25.

Consol. Court No. 22-00069                                                    Page 8

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and

28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting

the final determination in an antidumping duty investigation.  The Court shall hold

unlawful any determination found to be unsupported by substantial evidence on the

record or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

The Court also reviews determinations made on remand for compliance with the

Court's remand order.  <u>Ad Hoc Shrimp Trade Action Comm. v. United States</u>, 38

CIT 727, 730, 992 F. Supp. 2d 1285, 1290 (2014), <u>aff'd</u>, 802 F.3d 1339 (Fed. Cir.

2015).

## DISCUSSION

### I.    Commerce's Continued Application of Total Adverse Facts Available and the Highest Dumping Margin Rate to Meihua

Section 776 of the Tariff Act provides that if necessary information is not

available on the record, or an interested party withholds information that

Commerce has requested, fails to submit the requested information by the

deadlines imposed by Commerce, significantly impedes the administrative review,

or provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i),

then Commerce shall use facts otherwise available in reaching its determination.

19 U.S.C. § 1677e(a).  Commerce's authority to use facts otherwise available

under 19 U.S.C. § 1677e(a) is subject to 19 U.S.C. § 1677m(d), which states that:

> If the administering authority or the Commission determines that a
> response to a request for information under this subtitle does not
> comply with the request, the administering authority or the Commission
> (as the case may be) shall promptly inform the person submitting the
> response of the nature of the deficiency and shall, to the extent
> practicable, provide that person with an opportunity to remedy or
> explain the deficiency in light of the time limits established for the
> completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d).  After being given an opportunity to remedy or explain, if

the interested party or person submits a response that Commerce determines to be

unsatisfactory or untimely, Commerce may disregard all or part of the original and

subsequent responses.  Id.

After Commerce determines that the use of facts otherwise available is

warranted, Commerce may apply adverse inferences if Commerce finds that an

interested party has failed to cooperate by not acting to the best of its ability to

comply with a request for information.  19 U.S.C. § 1677e(b)(1); Nippon Steel

Corp. v. United States ("Nippon Steel"), 337 F.3d 1373, 1383 (Fed. Cir. 2003).  A

determination that a party has failed to comply to the best of its ability requires an

objective and subjective showing that a party has not put forth its maximum effort

to provide Commerce with full and complete answers to all inquiries in an

investigation.  Nippon Steel, 337 F.3d at 1382–83.  An objective determination

requires Commerce to show that a reasonable and responsible importer would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations.  Id. at 1382 (citing Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1336 (Fed. Cir. 2002)). A subjective determination requires Commerce to show that the respondent's failure to fully respond is the result of a lack of cooperation indicated by not putting forth maximum effort in producing the requested information or maintaining all required records.  Id. at 1382–83.  A mere failure to respond does not warrant adverse inferences.  Id. at 1383.  Rather, Commerce must show that the situation called for more forthcoming responses than what a party provided.  Id.  In the event that a respondent possesses relevant information but does not provide it, such behavior cannot be considered maximum effort to provide Commerce with full and complete answers.  Maverick Tube Corp. v. United States, 857 F.3d 1353, 1361 (Fed. Cir. 2017) (quoting Nippon Steel, 337 F.3d at 1382).

### A.    Commerce's Use of Facts Otherwise Available

#### 1.    Necessary Information Not Available on the Record Pursuant to 19 U.S.C. § 1677e(a)(1)

Commerce determined that the use of facts otherwise available was appropriate because necessary information was missing regarding Meihua's U.S. sales database.  Remand Redetermination at 6, 19–20.  Commerce determined that

"Meihua failed to provide a reliable U.S. sales database, claiming instead, that the information would not be finalized until after [Customs] completed its review, which, according to Meihua, would be well after the Final Results." Id. at 6 (citing Brief from Craven Trade Law LLC to Sec of Commerce Pertaining to Meihua Case Brief ("Meihua's Admin. Case Br."), at 9, PR 294); see also id. at 19–20. Commerce explained that it needed finalized information about Meihua's U.S. sales database to calculate Meihua's dumping margin rate. Id. at 19–20.

In Meihua I, this Court noted that Meihua contended that the information initially provided to Commerce was accurate and answered Commerce's specific question about duties paid to Customs, but the potential adjusted amounts that Meihua might eventually need to pay or that might be reimbursed were not final due to ongoing Section 301 exclusion requests. Meihua I, 47 CIT at __, 633 F. Supp. 3d at 1210; Meihua's Cmts. at 9. Commerce noted on remand that the finalized information about Meihua's U.S. sales database would not be available until after Customs completed its review, which could be after Commerce issued its Final Results. Remand Redetermination at 6. Nonetheless, Commerce recognized that Meihua provided the requested information to Commerce fifty-six days before the signature date of the preliminary results. Id. Thus, record evidence demonstrates that Meihua provided the information requested by Commerce, and Commerce's determination that necessary information was

missing from the record pursuant to 19 U.S.C. § 1677e(a)(1) is not supported by

substantial evidence.

### 2.      Information Pursuant to 19 U.S.C. § 1677e(a)(2)

With respect to its statutory obligations under 19 U.S.C. § 1677e(a)(2),

Commerce continued to determine on remand that Meihua withheld accurate

information about its U.S. duties and sales database, failed to timely notify

Commerce of the information it had submitted to Customs, and significantly

impeded the administrative review by misrepresenting the values of its U.S. duties

and sales database.  Remand Redetermination at 12.

The Court first reviews Commerce's determination that Meihua withheld

accurate information about its U.S. duties and sales database.  In summary,

Commerce requested that Meihua provide information about what duties it paid,

and Meihua reported the duties paid to Customs.  IDM at 9, 12.  Later, it became

apparent that the duties paid to Customs were subject to change due to ongoing

Section 301 exclusion requests.  Id. at 10; 12–13.

Meihua argues that "Commerce requested that Meihua report what it paid in

U.S. duties, and Meihua reported exactly that."  Meihua's Cmts. at 9.  Meihua

highlights evidence on the record with respect to the first questionnaire.  Id.

Commerce's Section C Questionnaire specifically requested that Meihua provide

information about the amount of U.S. duties it paid:

> Field Number 29.0: U.S. Customs Duty . . . .  Description: If terms of
> sale included this charge, report the *unit amount of any customs duty
> paid* on the merchandise under consideration.  Include in the unit cost
> the U.S. customs processing fee and the U.S. harbor maintenance fee."

Commerce's Questionnaire; Appendix VIII, Appendix VII, Appendix X ("Initial

Questionnaire") at C-19–C-20, PR 44–47 (emphasis added).  In response, Meihua

explained that it calculated the unit amount of Customs duties paid and attached a

calculation package and other supporting documents.  Meihua's Resp. Section C

Commerce's Initial Questionnaire ("Meihua's Initial Section C Questionnaire

Resp.") at C-31, Ex. C-5, PR 71–74.

The Government argues that Meihua's submission was not responsive to the

Initial Questionnaire because Meihua misrepresented the values of its U.S. duties

and did not provide Commerce with information submitted to Customs that

affected its U.S. duties and sales database.  Def.'s Resp. at 9; see also Remand

Redetermination at 7–8.  19 U.S.C. § 1677e(a) applies when a party "*withholds

information* that has been *requested*."  19 U.S.C. § 1677e(a)(2)(A) (emphasis

added).  The Initial Questionnaire only requested that Meihua provide information

about the U.S. duties it *paid*, and Meihua answered the question about what duties

were paid.  As discussed during oral argument, Commerce did not ask initially if

the duty amount would change, or whether the amounts paid were incorrect.  Oral

Arg. at 21:25–21:58; 25:06–26:03; 67:28–68:30, Dec. 13, 2023, ECF No. 66.  The

Court observes that the question was poorly worded if Commerce intended to elicit whether the amounts paid would change or whether the amounts paid were correct, when the actual question asked how much duties were paid.  It is clear to the Court, however, that Meihua answered the question that was asked by Commerce in the Initial Questionnaire about what it paid and included a calculation package. Commerce's determination that Meihua withheld information or significantly impeded the proceeding by failing to answer the Initial Questionnaire differently is unreasonable and not supported by substantial evidence.

Commerce also determined that Meihua failed to provide supplemental information on a timely basis because Meihua submitted the information addressing the deficiencies "less than two months before the preliminary results." Remand Redetermination at 12.  Meihua submitted the supplemental information requested, albeit under protest, and included an 802-page filing with a Microsoft Excel Spreadsheet and complete information related to Meihua's submissions to Customs.  Commerce's Second Supplemental Section C & D Qnaire ("Second Suppl. Section C Questionnaire") at 6, PR 211; Meihua's Resp. Second Suppl. Section C/D Questionnaire ("Meihua's Resp. Second Suppl. Section C Questionnaire") at 10–11, Ex. SC2-5, PR 230; Meihua's Cmts. at 8.  The fact that Meihua submitted the requested supplemental information under protest is not relevant to the fact that Meihua eventually complied and provided the

supplemental information.  Commerce did not determine on remand that Meihua failed to provide the requested information in the Second Supplemental Section C Questionnaire.

Moreover, the Court concludes that Commerce's determination is unreasonable that Meihua's provision of supplemental information approximately two months before the preliminary results were issued was untimely.  Commerce has discretion to fashion its time limits concerning the submission of written information and data, but such time limits must still be reasonable.  Commerce alleges that Meihua's submission of supplemental information approximately two months prior to the preliminary results date was "uncooperative" behavior, rendering Commerce "unable to analyze record evidence and develop a methodology that would allow for the accurate calculation of U.S. duties."  Remand Redetermination at 10.  The Court notes that this is not a case in which a respondent failed completely to provide the requested information, or provided the information after the preliminary results were issued.  Meihua provided the requested supplemental information approximately two months prior to the preliminary results being issued, which allowed Commerce reasonable time to analyze the information rather than disregard it and apply total adverse facts available to Meihua.  Notably, the Remand Redetermination does not cite any evidence demonstrating that Meihua missed any deadlines set by Commerce.

Commerce merely states that "it was not unreasonable for Commerce to expect

Meihua to have been more forthcoming with its responses; the company should

have provided a full and detailed explanation of how it reported U.S. duties *well*

*before the preliminary results*." Id. at 12 (emphasis added).  The Court concludes

that Meihua did not make an untimely filing when it provided the information

asked by Commerce in the Initial Questionnaire, nor did Meihua make an untimely

filing when it provided supplemental information approximately two months prior

to the issuance of the preliminary results ("well before the preliminary results"),

leaving time for interested parties to comment and for Commerce to arrive at a

methodology with which to calculate export prices using the information available.

"Well before the preliminary results" is a vague deadline, and not enough to show

that a party failed to provide information by a required deadline under 19 U.S.C.

§ 1677e(a)(2)(B).  The Court observes that approximately two months prior to the

preliminary results would seem to satisfy this vague standard.  Absent record

evidence demonstrating that Meihua missed any specific deadlines, Commerce's

determination that Meihua filed untimely information is not supported by

substantial evidence.

   Substantial evidence on the record does not support Commerce's

determination that Meihua withheld information that Commerce requested, failed

to submit requested information by the deadlines set by Commerce, or submitted

inaccurate information that significantly impeded the review pursuant to 19 U.S.C. § 1677e(a)(2).

### B.    Notice and Opportunity to Remedy or Explain a Deficiency

Commerce's authority under 19 U.S.C. § 1677e(a) to use facts otherwise available is subject to a statutory obligation under 19 U.S.C. § 1677m(d) to promptly notify a respondent of the nature of a deficiency in the record and to provide the respondent with an opportunity to remedy or explain the deficiency. 19 U.S.C. § 1677e(a); 19 U.S.C. § 1677m(d).  If the party submits a response that Commerce finds to be unsatisfactory or the response is not filed by the deadline set by Commerce, then Commerce may disregard all or part of the original and subsequent responses.  19 U.S.C. § 1677m(d).

The Court determined in Meihua I that "Commerce failed to fulfill its statutory obligation under 19 U.S.C. § 1677m(d) because Commerce did not 'promptly inform the person submitting the response of the nature of the deficiency and . . . to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency.'"  Meihua I, 47 CIT at __, 633 F. Supp. 3d at 1212.  This Court noted that "Commerce neither notified Meihua of any deficiencies in its provision of information, nor provided Meihua with an opportunity to correct such deficiencies before Commerce determined that Meihua failed to cooperate to the best of its ability and drew adverse inferences against Meihua."  Id.

On remand, Commerce declined to provide notice and an opportunity for

Meihua to remedy any deficiency because Commerce determined that "the

statutory directive of section 782(d) [of] the [Tariff] Act cannot apply where '[the]

deficiency was not due to an error or misunderstanding, but to intentional

misconduct.'"  Remand Redetermination at 11 (quoting Papierfabrik August

Koehler SE v. United States ("Papierfabrik"), 843 F.3d 1373, 1378 (Fed. Cir.

2016)).  The Government argues that even though Commerce has a statutory

obligation under 19 U.S.C. § 1677m(d), Commerce was relieved of this obligation

because it concluded that Meihua submitted "intentionally incomplete"

information.  Def.'s Resp. at 10 (citing Papierfabrik, 843 F.3d at 1383–84); see

also Remand Redetermination at 21 (citing Papierfabrik, 843 F.3d at 1379).

Papierfabrik is inapplicable to the facts of this case because the "intentionally

incomplete" language of Papierfabrik addressed fraudulent activity of the

respondent.  Papierfabrik, 843 F.3d at 1384; see Shelter Forest Int'l Acquisition,

Inc. v. United States, 2022 WL 2155965 at *6 (Fed. Cir. June 15, 2022) ("The

'intentionally incomplete data' language from [Papierfabrik] stems from the fact

that the respondent there submitted fraudulent sales data to Commerce. . . .  The

fraudulent nature of the respondent's previous submission formed the underlying

rationale for our decision that [19 U.S.C.] § 1677m(d) did not apply. . . .") (internal

citation omitted).

Here, unlike Papierfabrik, there are no allegations of fraud. The Remand Redetermination does not mention Meihua engaging in fraudulent activity in making its submissions to Commerce, and the record demonstrates no evidence of fraud. Commerce's determination that it was relieved of its statutory obligation under 19 U.S.C. § 1677m(d) to promptly notify Meihua of the nature of any deficiencies on the record and to provide Meihua with an opportunity to remedy any deficiencies is not supported by substantial evidence and not in accordance with law.

As noted previously, Meihua provided the information asked in Commerce's Initial Questionnaire about the amount of duties paid. Meihua also provided supplemental information, including an 802-page spreadsheet, in response to Commerce's subsequent inquiries. Commerce did not cite any record evidence demonstrating that Meihua's supplemental information was deficient in any way. Because Commerce failed to notify Meihua of any deficiencies in its reported supplemental information and failed to give Meihua an opportunity to remedy or explain the deficiencies before determining that the use of facts otherwise available or adverse inferences was warranted, Commerce did not fulfill its statutory obligations under 19 U.S.C. § 1677e(a) and 19 U.S.C. § 1677m(d).

Consequently, the Court concludes that Commerce has no authority to apply facts otherwise available under 19 U.S.C. § 1677e(a) or adverse inferences under

19 U.S.C. § 1677e(b) until Commerce meets its statutory obligations under 19

U.S.C. § 1677e(a) and 19 U.S.C. § 1677m(d).  The Court does not reach the

substantive analysis of whether Commerce's determination to apply total adverse

facts available was supported by substantial evidence.  The Court remands

Commerce's application of total adverse facts available and the application of the

highest rate in a prior proceeding to Meihua for further consideration in accordance

with this Opinion.

## II.    Commerce's Continued Application of the Separate Rate to the Separate Rate Respondents

The Court previously ordered Commerce to recalculate the separate rate for

the Separate Rate Respondents based on any changes applied to Meihua's rate.

Meihua I, 47 CIT at __, 633 F. Supp. 3d at 1213.  On remand, Meihua's rate

remained unchanged, and the separate rate was calculated based on an average that

included Meihua's current dumping rate.  The Court again directs Commerce to

reconsider the separate rate in light of any changes made to Meihua's dumping

margin rate on second remand.

## III.    Commerce's Determination Not to Rescind the Review of Deosen Biochemical, Ltd. and Failure to Conduct a New Collapsing Analysis of Deosen

Under 19 U.S.C. § 1675(a)(2)(B), if Commerce receives a request from an

exporter or producer of subject merchandise establishing that the exporter or

producer did not export the subject merchandise during the period of investigation, and establishing that the exporter or producer is not affiliated, as defined in 19 U.S.C. § 1677(33), with any exporter or producer who exported the subject merchandise during the period of review, Commerce "shall conduct a review under this subsection to establish an individual weighted average dumping margin or an individual countervailing duty rate (as the case may be) for such exporter or producer." 19 U.S.C. § 1675(a)(2)(B)(i). Under 19 U.S.C. § 1677(33), exporters and/or producers are considered to be "affiliated" if they are "[t]wo or more persons directly or indirectly controlling, controlled by, or under common control with, any person." Id. § 1677(33)(F). An exporter or producer is determined to control another if such exporter or producer is "legally or operationally in a position to exercise restraint or direction over the other person." Id. § 1677(33).

"[Commerce] may rescind an administrative review, in whole or only with respect to a particular exporter or producer, if [Commerce] concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise, as the case may be." 19 C.F.R. § 351.213(d)(3). "Where sales can be linked to customs entries, it is only entries within the period of review that are examined and used to calculate the cash deposit rates." Allegheny Ludlum Corp. v. United States, 346 F.3d 1368, 1371 (Fed. Cir. 2003) (citing Antidumping

Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,314 (Dep't of Commerce

May 19, 1997)).

      If two or more producers are affiliated and share "production facilities for

similar or identical products that would not require substantial retooling of either

facility in order to restructure manufacturing priorities" and Commerce determines

"that there is a significant potential for the manipulation of price or production,"

Commerce will treat such producers as a single entity.  19 C.F.R. § 351.401(f)(1).

In reaching the conclusion that there is a significant potential for price or

production manipulation, Commerce considers:

> (i)    The level of common ownership;
> (ii)   The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and
> (iii)  Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

Id. § 351.401(f)(2).

      Deosen Biochemical, Ltd. argues that it met the requirement of 19 U.S.C.

§ 1675(a)(2)(B)(i)(I) by sending a letter notifying Commerce that Deosen

Biochemical, Ltd. "had no exports, shipments, sales or entries of subject

merchandise to the United States during the review period of July 1, 2019–June 30,

2020."  Deosen's Letter Re: No Shipment Certification ("No Shipment

Certification Letter") at 1, PR 30.  During the administrative review, Deosen

offered to provide additional documents so that Commerce could confirm that

Deosen Biochemical, Ltd. did not make any shipments during the period of review.

Deosen's Admin. Case Br. at 10.  Commerce rejected Deosen Biochemical, Ltd.'s

No Shipment Certification and offer to submit additional documents because

Commerce relied on its prior collapsing analysis from 2017–2018 in which

Commerce determined that under 19 U.S.C. § 1677(33)(F), Deosen Biochemical,

Ltd. was affiliated with Deosen Biochemical (Ordos), Ltd.  Remand

Redetermination at 13.  As a result, Commerce determined not to rescind Deosen

Biochemical, Ltd.'s review.

The Court held in Meihua I that Commerce's failure to conduct a collapsing

analysis for the period of review was an abuse of discretion, in light of

Commerce's rejection of Deosen Biochemical, Ltd.'s No Shipment Certification

and its offer to submit additional documents demonstrating no shipments of subject

merchandise during the period of review.  Id. at __, 633 F. Supp. 3d at 1215.

On remand, Commerce did not rescind Deosen Biochemical, Ltd.'s review

or conduct a new collapsing analysis of Deosen.  Remand Redetermination at 14.

Instead, Commerce "adopted by reference its collapsing analysis in the 2017–2018

administrative review, in which it found that Deosen Biochemical[,] Ltd. and

Deosen Biochemical (Ordos)[,] Ltd. are a single entity."  Def.'s Resp. at 14 (citing

Remand Redetermination at 14).

The United States Court of Appeals for the Federal Circuit ("CAFC") has held in the context of a collapsing analysis that, "Commerce must consider the 'totality of circumstances' between all entities when it evaluates whether, for purposes of collapsing entities, there is significant potential for manipulation of price or production to circumvent antidumping duties." Prosperity Tieh Enterprises Co., Ltd. v. United States ("Prosperity Tieh"), 965 F.3d 1320, 1326 (Fed. Cir. 2020) (citing Antidumping Duties; Countervailing Duties, 62 Fed. Reg. at 27,346 (noting that collapsing determinations "are very much fact-specific in nature, requiring a case-by-case analysis")). An analysis of the totality of circumstances requires an evaluation of all pertinent evidence. Id. at 1327.

Commerce's determination is not supported by substantial evidence under the totality of circumstances test set forth in Prosperity Tieh because Commerce did not examine whether any facts had changed during the current period of review that would alter the conclusion that a significant potential for manipulation of price or production to circumvent antidumping duties existed between the Deosen entities during the relevant period of 2019–2020.

At the very least, Deosen Biochemical, Ltd.'s letter (rejected by Commerce) stating that it did not ship subject merchandise during the period of review from 2019–2020 was an indication of pertinent evidence that some facts had changed and that Deosen Biochemical, Ltd. had taken some actions separate from Deosen

Biochemical (Ordos), Ltd. (perhaps relevant to whether the entities' operations were intertwined).  As stated in Meihua I, the Court concludes that Commerce abused its discretion by rejecting Deosen Biochemical, Ltd.'s No Shipment Certification, which is enough to warrant a new fact-specific collapsing analysis examining the totality of circumstances.  To comply with Prosperity Tieh, Commerce must conduct a fact-specific, case-by-case analysis based on all pertinent evidence from the relevant timeframe of 2019–2020 to determine whether the Deosen entities should be collapsed during the period of review.

The Court holds that Commerce's determination on remand that the Deosen entities should be collapsed during the period of review of 2019–2020 is not supported by substantial evidence because it is based on outdated factual information from the 2017–2018 collapsing analysis, several years prior to the relevant period of review.

The Court next considers whether Commerce's determination not to collapse the Deosen entities is supported by substantial evidence and in accordance with law because Deosen failed to provide updated information to Commerce.  The Government argues that Deosen is at fault for failing to provide evidence to rebut Commerce's presumption of single-entity treatment, noting that "Commerce found that Deosen had multiple opportunities to timely provide evidence indicating that it was no longer a single entity, and at every opportunity decided not to do so; nor

did Deosen timely request a new collapsing analysis."  Def.'s Resp. at 15.  The

Government asserts that, "Commerce's practice as explicitly stated in the

[Initiation Notice], is to presume that a company which was collapsed in a previous

review will remain collapsed in successive reviews, absent a request and a

submission of factual information indicating that circumstances have changed such

that a company should no longer be treated as a single entity."  Id.

On remand, Commerce justified its determination to not conduct a new

collapsing analysis on its practice of not revisiting an initial collapsing of entities

absent a party's request and submission of factual information.  Remand

Redetermination at 14–15.  Commerce explained that Deosen was put on notice at

the beginning of the period of review and was "reasonably aware" that it would

remain collapsed during the review.  Id. at 15 (citing Initiation Notice, 85 Fed.

Reg. at 54,983).

Commerce's Initiation Notice stated that:

In general, Commerce has found that determinations concerning
whether particular companies should be "collapsed" (e.g., treated as a
single entity for purposes of calculating antidumping duty rates) require
a substantial amount of detailed information and analysis, which often
require follow-up questions and analysis.  Accordingly, Commerce will
not conduct collapsing analyses at the respondent selection phase of this
review and will not collapse companies at the respondent selection
phase unless there has been a determination to collapse certain
companies in a previous segment of this [antidumping] proceeding
(e.g., investigation, administrative review, new shipper review, or
changed circumstances review).  For any company subject to this

review, if Commerce determined, or continued to treat, that company
as collapsed with others, Commerce will assume that such companies
continue to operate in the same manner and will collapse them for
respondent selection purposes.  Otherwise, Commerce will not collapse
companies for purposes of respondent selection.

Initiation Notice, 85 Fed. Reg. at 54,983.  The Initiation Notice stated multiple

times that at the respondent selection phase, Commerce would not conduct any

collapsing analyses.  Id.

When a party is subject to a presumption, it has a right to attempt to rebut it.

Transcom, Inc. v. United States, 182 F.3d 876, 883 (Fed. Cir. 1999).  If that party

does not have notice that its interests are at stake in an administrative review,

however, the party does not have a meaningful opportunity to rebut the

presumption.  Id.  Commerce may be free to choose the means by which it gives

reasonable notice that an exporter's or producer's goods are subject to an

administrative review, but before taking action that significantly affects such

exporter or producer, Commerce must provide some form of notice that the

administrative review may affect its interests.  Id. at 884.

Commerce cites the Initiation Notice as evidence that Deosen knew that it

would remain collapsed throughout the review and was "reasonably aware" of the

need to request a reevaluation of the prior collapsing determination.  Remand

Redetermination at 15; Def.'s Resp. at 15.  The Court observes that the Initiation

Notice did not mention any deadlines or procedures for a party to request a new

collapsing analysis during the relevant period of review, but only mentioned that

Commerce would not conduct any collapsing analyses during the respondent

selection phase.  Other than the Initiation Notice, the Government does not cite to

any record evidence showing that Commerce communicated the deadlines for a

party to request a collapsing analysis after the respondent selection period was

completed, nor evidence that Deosen missed any such deadlines to request a

collapsing analysis.  The Government seems to suggest that putting parties on

notice that they would remain collapsed during respondent selection is the same as

providing notice that parties could request a new collapsing analysis during the

administrative review.  The Court does not agree that these are synonymous.

Because Commerce fails to cite any record evidence to support its

determination that Deosen knew of the need to request a new collapsing analysis

and missed the deadlines by which such requests needed to be filed, the Court

remands this issue for Commerce to conduct a new collapsing analysis based on

information specific to the relevant period of review or to provide further

explanation consistent with this Opinion.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that the Remand Redetermination is remanded to Commerce to

reconsider the application of facts otherwise available and total adverse facts

available to Meihua, the calculation of the separate rate, whether Deosen

Biochemical, Ltd. and Deosen Biochemical (Ordos), Ltd. should be collapsed into

a single entity, and whether the review of Deosen Biochemical, Ltd. can be

rescinded consistent with this Opinion; and it is further

> **ORDERED** that this case shall proceed according to the following schedule:

(1)  Commerce shall file the remand determination on or before April 22,
    2024;

(2)  Commerce shall file the administrative record on or before May 6, 2024;

(3)  Comments in opposition to the remand determination shall be filed on or
    before June 18, 2024;

(4)  Comments in support of the remand determination shall be filed on or
    before July 18, 2024; and

(5) The joint appendix shall be filed on or before July 29, 2024.


                                            /s/ Jennifer Choe-Groves
                                          Jennifer Choe-Groves, Judge


Dated:    February 22, 2024
        New York, New York