A-570-985<br>
Remand<br>
Slip Op. 24-21<br>
POR:  07/01/2019 – 06/30/2020<br>
~~Business Proprietary Document~~<br>
**Public Version**<br>
E&C/OIV:  SMB

***Meihua Group International Trading (Hong Kong) Limited v. United States*,**
**Consol. Court No. 22-00069, Slip Op. 24-21 (CIT February 22, 2024)**
**Xanthan Gum from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the second opinion and remand order of the U.S. Court of International Trade (CIT) in *Meihua Group International (Hong Kong) v. United States*, Consol. Court No. 22-00069, Slip Op. 24-21 (CIT February 22, 2024) (*2024 Remand Order*).  This litigation pertains to certain issues in the final results of the administrative review of the antidumping duty (AD) order on xanthan gum from the People's Republic of China (China), covering the July 1, 2019, through June 30, 2020 period of review (POR).[1]

The CIT remanded for Commerce to reconsider:  (1) the application of facts otherwise available and total facts available to Meihua Group International Trading (Hong Kong), Limited and Xinjiang Meihua Amino Acid Co., Ltd. (collectively, Meihua); (2) the calculation of the separate rate in light of any changes made to Meihua's dumping margin rate; (3) whether Deosen Biochemical, Ltd. (Deosen Biochemical) and Deosen Biochemical (Ordos), Ltd. (Deosen Ordos) should be collapsed into a single entity; and (4) whether the review of Deosen Biochemical can

---

[1] *See Xanthan Gum from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 FR 7104 (February 8, 2022) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

be rescinded consistent with the CIT's opinion.[2] Consistent with the CIT's opinion, on remand, and under respectful protest,[3] we find that: (1) a rate of zero percent is appropriate for Meihua for the POR; (2) the separate rate is now calculated at zero percent for the POR; (3) Deosen Biochemical and Deosen Ordos did not comprise a single entity during the POR; and (4) the 2019-2020 administrative review for Deosen Biochemical should be rescinded.

## II. BACKGROUND

On February 8, 2022, Commerce published the *Final Results* of the underlying administrative review.[4] Commerce assigned a dumping margin of 154.07 percent, based entirely on adverse facts available (AFA), to Meihua, a mandatory respondent to the review. Deosen, a company that was not selected for individual examination as a mandatory respondent in the review, was assigned the separate rate, which was based on a simple average of the AFA-based rate assigned to Meihua and the zero rate assigned to Neimenggu Fufeng Biotechnologies Co., Ltd. (aka Inner Mongolia Fufeng Biotechnologies Co., Ltd.); Shandong Fufeng Fermentation Co., Ltd.; and Xinjiang Fufeng Biotechnologies Co., Ltd. (collectively, Fufeng), the other mandatory respondent to this review. Meihua, Deosen, and Jianlong Biotechnology Co., Ltd. (formerly, Inner Mongolia Jianlong Biochemical Co., Ltd) (Jianlong) subsequently challenged Commerce's *Final Results* at the CIT. On April 19, 2023, the CIT remanded for Commerce to reconsider its: (1) application of AFA to Meihua; (2) decision not to rescind the review of Deosen Biochemical, and, in doing so, reconsider whether Deosen Biochemical and Deosen Ordos should be collapsed into a single entity; and (3) calculation of the separate rate.[5]

---

[2] *See 2024 Remand Order* at 28-29.
[3] *See Viraj Group, Ltd. v. United States*, 343 F.3d 1371, 1376-77 (Fed. Cir. 2003) (*Viraj*).
[4] *See Final Results*, 87 FR at 7104.
[5] *See Meihua Group Int'l Trading (Hong Kong) Ltd. v. United States*, 633 F. Supp. 3d 1203, 1215-16 (CIT 2023) (*2023 Remand Order*).

2

On July 28, 2023, Commerce released its *First Final Remand*, where it found that: (1) Commerce's application of AFA to Meihua was warranted; (2) because Deosen remained a single entity, Commerce's decision not to rescind its review of Deosen Biochemical was proper; and (3) consequently, Commerce did not need to recalculate the separate rate.[6] As stated above, on February 22, 2024, the CIT, again, remanded for Commerce to reconsider its: (1) application of facts otherwise available and total facts available to Meihua; (2) the calculation of the separate rate in light of any changes made to Meihua's dumping margin rate; (3) whether Deosen Biochemical and Deosen Ordos should be collapsed into a single entity; and (4) whether the review of Deosen Biochemical can be rescinded consistent with the CIT's opinion.[7]

## III. DISCUSSION

### A. Commerce's Application of AFA to Meihua

**Background**

On September 3, 2020, Commerce initiated the underlying administrative review.[8] On October 28, 2020, Commerce issued the initial questionnaire to Meihua,[9] to which the company timely responded in November 2020 (response to section A) and December 2020 (response to sections C and D).[10] On December 20, 2020, Commerce officials spoke with Meihua's counsel regarding the company's request for clarification of Appendix V of the Initial Questionnaire dealing with section 301 duties.[11] On February 12, 2021, Commerce issued a section C and D

---

[6] *See First Final Results of Redetermination Pursuant to Court Remand, Meihua Group International Trading (Hong Kong) Limited v. United States*, Court No. 22-00069, Slip Op. 23-53 (CIT April 19, 2023), dated July 28, 2023 (*First Final Remand*), available at https://access.trade.gov/Resources/remands/23-53.pdf.
[7] *See 2024 Remand Order* at 28-29.
[8] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 FR 54983 (September 3, 2020).
[9] *See* Commerce's Letters, "Request for Information," dated October 28, 2020 (Initial Questionnaire).
[10] *See* Meihua's Letters, "Response to Section A of Initial Questionnaire," dated November 18, 2020; "Response to Section C of the Department's Initial Questionnaire," dated December 11, 2020; and "Response to Section D of the Department's Initial Questionnaire," dated December 18, 2020.
[11] *See* Memorandum, "Phone Call with Meihua," dated December 20, 2020.

supplemental questionnaire to Meihua.[12]  On February 16, 2021, Commerce officials spoke with Meihua's counsel regarding the company's request for clarification of question 18 of the section C and D supplemental questionnaire relating to overhead inputs the company provided in Exhibit D-12 of its section D initial questionnaire response.[13]  On March 8, 2021, Meihua responded to Commerce's February 12, 2021 section C and D supplemental questionnaire.[14]

On March 23, 2021, the petitioner[15] submitted rebuttal factual information comprised of consignees, including vessel manifest data provided by U.S. Customs and Border Protection (CBP), and CBP guidelines for reporting consignees.[16]  The petitioner later clarified that its submission revealed discrepancies, which called into question the fundamental nature of Meihua's U.S. sales reporting.[17]

On March 31, 2021, Meihua submitted surrebuttal information, arguing that the petitioner's attempt to report the consignee name used by Meihua at the time of entry was not relevant.  In doing so, Meihua divulged that the company:  (1) [



]; (2) [




]; and (3)

---

[12] *See* Commerce's Letter, "Meihua Sections C and D Supplemental Questionnaire," dated February 12, 2021.
[13] *See* Memorandum, "Clarification on Question 18 of the Sections C and D Supplemental Questionnaire," dated February 16, 2021.
[14] *See* Meihua's Letter, "Response to Supplemental Section C/D Questionnaire," dated March 8, 2021 (Meihua's March 8 CDSQR).
[15] The petitioner is CP Kelco U.S., Inc. (the petitioner).
[16] *See* Petitioner's Letter, "Factual Information to Rebut, Clarify, or Correct," dated March 23, 2021.
[17] *See* Petitioner's Letter, "Resubmission of Meihua Deficiency Comments," dated April 30, 2021.

4

[



].[18] As Meihua later explained, the consignee information reported to Commerce was the same erroneous consignee information initially reported to CBP.[19]

On May 18, 2021, Commerce issued a second section C and D supplemental questionnaire to Meihua, which included several questions concerning [

].[20] Commerce also requested that Meihua provide all [                                                                ].[21] In its submission, Meihua responded that it had [

], and provided [                                                  ]. Meihua also clarified certain issues with respect to its named consignees.[22]

Meihua's [



]. According to Meihua:

[

---

[18] *See* Petitioner's Letter, "Response to Petitioner's Letter of March 23, 2021," dated March 31, 2021.
[19] *See* Meihua's Letter, "Response to Petitioner's Comments of April 8, 2021," dated April 14, 2021.
[20] *See* Commerce's Letter, "Meihua Second Supplemental Sections C and D Questionnaire," dated May 18, 2021.
[21] *Id.*
[22] *See* Meihua's Letter, "Response to Second Supplemental Section C/D Questionnaire," dated June 4, 2021 (Meihua's June 4 CDSQR2).

5

].²³

Despite conceding [                                                                                      ],²⁴ Meihua: (1) concealed this fact from Commerce in its initial section A questionnaire response; and (2) included erroneous information (*i.e.*, [

]) in its supplemental section C questionnaire response.²⁵  Additionally, despite its disclosure to Commerce more than 190 days later, Meihua withheld [

], submitting [              ] 262 days later.²⁶  Commerce's lack of access to necessary information resulted in further inquiry by the agency; Meihua's responses, however, were submitted 56 days before the fully extended signature date of the preliminary results of the review.  Of note, Meihua failed to provide a reliable U.S. sales database.  Meihua claimed, instead, that the information would not be finalized until after CBP completed its review, which, according to Meihua, would be well after the *Final Results*.²⁷

In the *Preliminary Results*, Commerce found that necessary information, such as [                                                                                      ], was missing from the record that we needed to calculate an accurate dumping margin for Meihua, and that Meihua: (1) withheld information requested by Commerce; (2) failed to provide that information for the deadline

---

²³ *Id.*
²⁴ *Id.*
²⁵ *See* Meihua's March 8 CDSQR.
²⁶ *See* Meihua's June 4 CDSQR2.
²⁷ *See* Meihua's Letter, "Case Brief," dated September 14, 2021, at 9.

established by Commerce; and (3) significantly impeded Commerce's proceeding.[28] Commerce, therefore, found that the application of a factual inference was necessary, pursuant to sections 776(a)(1) and 776(a)(2)(A)-(C) of the Tariff Act of 1930, as amended (the Act). Commerce also found that Meihua failed to act to the best of its ability in responding to Commerce's requests for information, warranting the application of total AFA pursuant to section 776(b) of the Act.[29] Therefore, and because Meihua's failure to accurately report requested information impacted the entirety of its reported U.S. sales data, Commerce applied an adverse inference to calculate a dumping margin for Meihua. Commerce selected, as AFA, the highest rate on the record of the proceeding, 154.07 percent, as Meihua's dumping margin.[30]

The CIT remanded for Commerce to reconsider its application of AFA to Meihua, holding that Commerce failed to grant the respondent an opportunity to address deficiencies in its reporting pursuant to section 782(d) of the Act.[31] After addressing the *2023 Remand Order*, the CIT remanded for Commerce to reconsider its application of AFA to Meihua.[32] Specifically, the CIT held that the record did not support Commerce's application of AFA to Meihua, and held again that Commerce failed to notify Meihua of deficiencies in its reporting prior to applying AFA.[33]

---

[28] *See Xanthan Gum from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2019–2020*, 86 FR 42781 (August 5, 2021) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM) at 7-9, unchanged in *Final Results*.
[29] *Id.*
[30] *Id.*
[31] *See 2023 Remand Order*, 633 F. Supp. 3d at 1212 and 1215.
[32] *See 2024 Remand Order* at 8-20 and 28-29.
[33] *Id.* at 10-20.

**Analysis**

Consistent with the *2024 Remand Order*, and under respectful protest,[34] we calculated a zero percent weighted-average dumping margin for Meihua using the information reported in the company's June 16, 2021 third supplemental questionnaire.[35] Given Meihua's explanation that its U.S. duties and section 301 duties are subject to a possible recalculation,[36] Commerce cannot ensure the accuracy or reliability of the company's U.S. sales database. As part of calculating the U.S. net price, Commerce subtracts international movement expenses, which include U.S. duties.[37] Thus, an incorrectly calculated U.S. duty and section 301 duty expense results in a margin calculation that, by its nature, is flawed. Additionally, for calculating an *ad valorem* assessment rate for importer-specific liquidation instructions, Commerce relies on entered values reported by the respondent.[38]

However, because the time constraints inherent in a remand preclude Commerce from calculating Meihua's dumping margin based on an alternate source of information, we are relying on the final usable U.S. sales database reported by Meihua, which is the database contained in the Meihua's June 4 CDSQR2.

---

[34] *See Viraj*, 343 F.3d at 1376-77.
[35] *See* Meihua's Letter, "Response to Third Supplemental Section C/D Questionnaire," dated June 16, 2021. Although Meihua reported U.S. duties and section 301 duties, Commerce did not use this database in the underlying review because these values are based on estimated rather than actual amounts.
[36] *See* Meihua's June 4 CDSQR2 at Exhibit SC2-6; *see also* Memorandum, "Preliminary Application of Adverse Facts Available to Meihua," dated June 30, 2021, at 5-7.
[37] *See* section 772(c)(2)(A) of the Act (instructing Commerce to deduct United States import duties from export price).
[38] *See* 19 CFR 351.212(b)(1) ("The Secretary normally will calculate the assessment rate by dividing the dumping margin found on the subject merchandise examined by the entered value of such merchandise for normal customs duty purposes").

### B. Commerce's Calculation of the Separate Rate Applicable to Deosen and Jianlong

The statute and Commerce's regulations do not address what dumping margin to apply to respondents that are not selected for individual examination in an administrative review pursuant to section 777A(c)(2) of the Act. Generally, Commerce looks to section 735(c)(5) of the Act, which provides instructions for calculating the all-others rate in an investigation, for guidance when calculating the dumping margin for respondents that are not individually examined in an administrative review. Under section 735(c)(5)(A) of the Act, the all-others rate is normally "equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and *de minimis* dumping margins, and any dumping margins determined entirely {on the basis of facts available}." When the weighted-average dumping margins established for all individually examined respondents are zero, *de minimis*, or based entirely on facts available, section 735(c)(5)(B) of the Act permits Commerce to "use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated."

**Analysis**

Consistent with Commerce's practice,[39] we determine that a reasonable method would be to assign a dumping margin to the non-individually examined separate rate companies equal to the zero percent dumping margin now calculated for both the mandatory respondents.

---

[39] *See Wooden Cabinet and Vanities and Components Thereof from the People's Republic of China: Final Results and Partial Rescission of the Antidumping Duty Administrative Review; 2019-2021*, 87 FR 67674 (November 9, 2022), and accompanying IDM at Comment 5.

### C. Commerce's Decision to Collapse Deosen Biochemical and Deosen Ordos

**Background**

In the underlying review, Deosen provided evidence that Deosen Biochemical had no shipments during the POR.[40] Rather than contesting this fact, Commerce explained that, because the company was found to comprise the single entity Deosen, consistent with agency practice, it would not rescind the review of the Deosen Biochemical.[41] In its *2023 Remand Order*, the CIT remanded for Commerce to reconsider the decision not to rescind the review of Deosen Biochemical, holding that the agency abused its discretion by failing to conduct a collapsing analysis.[42]

In the *First Final Remand*, Commerce, under protest, placed the collapsing criteria and analysis for Deosen as first detailed in its fifth administrative review of the proceeding, covering the 2017-2018 period, of the Deosen entities on the record of the review.[43] Because no interested party, including Deosen, requested Commerce to revisit its prior collapsing determination for Deosen, Commerce, consistent with its practice, maintained the presumption that Deosen Biochemical and Deosen Ordos comprised a single entity during the POR.[44] The CIT remanded for Commerce to conduct a new collapsing analysis based on information specific to the relevant POR or to provide further explanation consistent with the *2024 Remand Order*.[45] On March 6

---

[40] *See* Memorandum, "Antidumping Duty Administrative Review of Xanthan Gum from the People's Republic of China: Automated Commercial System Shipment Query," dated September 23, 2020 (CBP Data).
[41] *See Final Results* IDM at Comment 2; *see also* Memorandum, "Deosen Biochemical Ltd. and Deosen Biochemical (Ordos) Ltd. Affiliation and Single Entity Status," dated June 4, 2019 (Deosen Collapsing Memorandum).
[42] *See 2023 Remand Order*, 633 F. Supp. 3d at 1214-15.
[43] *See First Final Remand* at 14; *see also Xanthan Gum from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2017-2018*, 84 FR 26813 (June 10, 2019), and accompanying PDM at 6 (citing Deosen Collapsing Memorandum), unchanged in *Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 84 FR 64831 (November 25, 2019).
[44] *See First Final Remand* at 14-16.
[45] *See 2024 Remand Order* at 28.

and 21, 2024, Commerce issued requests for Deosen to identify record information and provide new factual information, respectively, regarding the collapsed status of Deosen Biochemical and Deosen Ordos.[46] Deosen responded on March 12 and April 2, 2024, respectively.[47] On April 8, 2024, Commerce issued a supplemental questionnaire to Deosen regarding its previous responses to requests for information.[48] On April 16, 2024, Deosen responded to Commerce's supplemental questionnaire.[49]

**Analysis**

Consistent with the *2024 Remand Order*, and under respectful protest,[50] on remand we conducted a new collapsing analysis for Deosen based on information specific to the 2019-2020 POR. Additionally, consistent with the *2024 Remand Order*, we considered Deosen Biochemical's no-shipment certification as part of our analysis.[51] As detailed below, given that Deosen Biochemical has now provided sufficient evidence that it was not capable of producing xanthan gum or similar like product during the POR, we find that Deosen Biochemical and Deosen Ordos were separate entities during the POR.

In March and April 2024, Deosen provided additional information to the record regarding their collapsed status during the POR.[52] Deosen explained that, although Deosen Biochemical and Deosen Ordos continued to be affiliated companies throughout the POR, they were not

---

[46] *See* Commerce's Letter, "Request to Identify Record Information Regarding Collapsing Criteria," dated March 6, 2024; *see also* Commerce's Letter, "Request to Identify Record Information Regarding Collapsing Criteria," dated March 21, 2024.
[47] *See* Deosen's Letters, "Resubmission of Response to Collapsing Criteria Information Request," dated March 12, 2024 (Deosen First Questionnaire Response); and "Supplemental Response to Collapsing Criteria Information Request," dated April 2, 2024 (Deosen Second Questionnaire Response).
[48] *See* Commerce's Letter, "Supplemental Questionnaire on Response to Collapsing Criteria Information Request," dated April 8, 2024.
[49] *See* Deosen's Letter, "Second Supplemental Response to Collapsing Criteria Information Request," dated April 16, 2024 (Deosen Third Questionnaire Response).
[50] *See Viraj*, 343 F.3d at 1376-77.
[51] *See* Deosen Biochemical's Letter, "No Shipment Certification," dated October 2, 2020.
[52] *See* Deosen First Questionnaire Response; *see also* Deosen Second Questionnaire Response; and Deosen Third Questionnaire Response.

11

eligible for single entity status during that time, because the former was "no longer a producer of xanthan gum and did not have facilities for producing xanthan gum or similar products during the POR."[53]  As a result, Deosen Biochemical did not qualify as a producer under 19 CFR 351.401(f)(1)(a) and (b), and therefore, would not be eligible to be collapsed as a single entity with Deosen Ordos, which continued to produce xanthan gum during the POR.

To support its argument, Deosen Biochemical provided receipts of payment for sales of manufacturing equipment from Deosen Biochemical to Deosen Ordos, evidence of worker's termination fees and compensation, a dismantling contract for Deosen Biochemical's manufacturing facilities, and a government notice of the closure of Deosen Biochemical's plant.[54]  Deosen adequately clarified discrepancies in its dismantling contract and the [

] it provided in its 2019-2020 POR separate rate application (SRA), as well as its [

].[55]

Given the new factual information on the record, including Deosen's 2019-2020 POR SRA,[56] Deosen Biochemical's 2019-2020 POR no-shipments certification, and Deosen's responses to Commerce's requests for information in this remand proceeding, we find that Deosen has provided sufficient evidence that Deosen Biochemical was not capable of producing xanthan gum or similar like product during the POR without substantial retooling.  Therefore, we determine that Deosen Biochemical should not be collapsed with Deosen Ordos for the POR under 19 CFR 351.401(f)(1).

---

[53] *See* Deosen Second Questionnaire Response at 3.
[54] *Id.* at Exhibits 1-4.
[55] *See* Deosen Third Questionnaire Response at 1-2.
[56] *See* Deosen's Letter, "Separate Rate Application," dated October 14, 2020.

### D. The Rescission of the Review of Deosen Biochemical

In the underlying review, Deosen provided evidence that Deosen Biochemical had no shipments during the POR.[57] Rather than contesting this fact, Commerce explained that, because Deosen Biochemical, Ltd. was previously found to be part of the single entity Deosen, consistent with agency practice, it would not rescind the review of the company.[58] In its *2023 Remand Order*, the CIT remanded for Commerce to reconsider its decision not to rescind the review of Deosen Biochemical, holding that the agency abused its discretion by failing to conduct a collapsing analysis.[59] On remand, despite continuing to find Deosen Biochemical and Deosen Ordos to comprise a single entity, Commerce did not rescind the review of Deosen Biochemical.[60] The CIT subsequently remanded Commerce to reconsider whether the review of Deosen Biochemical should be rescinded.[61]

**Analysis**

Consistent with the *2024 Remand Order*, we have reconsidered Commerce's decision to rescind the review of Deosen Biochemical. On remand, we have determined that, despite being affiliated during the POR, Deosen Biochemical and Deosen Ordos did not comprise a single collapsed entity. This decision is, now, supported by the administrative record – showing that Deosen Biochemical did not produce, and was not capable of producing, subject merchandise or similar like product based on the analysis above.[62] Consequently, the 2019-2020 administrative review of Deosen Biochemical should be rescinded. We note that Deosen Ordos remains a part of the underlying administrative review. We further note that any Deosen Biochemical

---

[57] *See* CBP Data.
[58] *See Final Results* IDM at Comment 2; *see also* Deosen Collapsing Memorandum.
[59] *See 2023 Remand Order* at 9.
[60] *See First Final Remand* at 14.
[61] *See 2024 Remand Order* at 29.
[62] *See* Deosen Second Questionnaire Response at 2-5 and Exhibits 1-4; *see also* Deosen Third Questionnaire Response at 1-2 and Exhibit SQR-1.

shipments to the United States of subject merchandise will result in CBP applying the China-wide entity rate (*i.e.*, 154.07 percent) to those shipments.[63]

## IV.    INTERESTED PARTY COMMENTS

On May 7, 2024, Commerce released the draft results of redetermination to all interested parties and invited parties to comment.[64]  No parties submitted comments.

---

[63] *See Final Results* at 87 FR 7105.
[64] *See* Draft Results of Remand Redetermination Pursuant to Court Remand, *Meihua Group International (Hong Kong) v. United States*, Consol. Court No. 22-00069, Slip Op. 24-21 (CIT February 22, 2024), dated May 7, 2024.

## V. FINAL RESULTS OF REDETERMINATION

Consistent with the CIT's opinion, on remand, and under respectful protest, we find that: (1) a rate of zero percent is appropriate for Meihua for the POR; (2) the separate rate is now calculated at zero percent for the POR; (3) Deosen Biochemical and Deosen Ordos did not comprise a single entity during the POR; and (4) the 2019-2020 administrative review for Deosen Biochemical should be rescinded. As a result, the overall dumping margin calculated for Meihua and assigned to Jianlong and Deosen Ordos as the all-others rate is zero percent. Because the overall dumping margin is revised from the *Final Results*, should the CIT affirm these final results of redetermination, we intend to publish a notice of court decision not in harmony with the results of the administrative review[66] and notice of amended final results in the *Federal Register*, and issue appropriate instructions to U.S. Customs and Border Protection, consistent with the discussion above.

5/20/2024

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

---

[66] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).